United States Bankruptcy Court
Southern District of Texas

**ENTERED**

July 01, 2025

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

-------------------------------------------------------- x

In re:                                              :    Chapter 11
                                                    :
WOLFSPEED, INC., *et al.*,                          :    Case No.  25-90163 (CML)
                                                    :
Debtors.[1]                                         :    (Jointly Administered)
                                                    :
-------------------------------------------------------- x

**ORDER (I) SCHEDULING COMBINED HEARING ON
(A) ADEQUACY OF DISCLOSURE STATEMENT, (B) CONFIRMATION
OF PLAN, AND (C) APPROVAL OF BACKSTOP AGREEMENT; (II) APPROVING
(A) SOLICITATION PROCEDURES AND (B) FORM AND MANNER OF NOTICE OF
COMMENCEMENT, COMBINED HEARING, AND OBJECTION DEADLINE;
(III) FIXING DEADLINE TO OBJECT TO DISCLOSURE STATEMENT AND
PLAN;(IV) CONDITIONALLY (A) DIRECTING THE UNITED STATES TRUSTEE
NOT TO CONVENE SECTION 341 MEETING OF CREDITORS AND (B) WAIVING
REQUIREMENT TO FILE STATEMENTS OF FINANCIAL AFFAIRS AND
SCHEDULES OF ASSETS AND LIABILITIES, (V) CONDITIONALLY APPROVING
THE <u>DISCLOSURE STATEMENT AND (VI) GRANTING RELATED RELIEF</u>**
**[Relates to Docket No.  9]**

Upon the emergency motion (the "***Motion***")[2] of the Debtors for entry of an order

(this "***Order***"):

    i.     scheduling the Combined Hearing to (a) approve the Disclosure Statement, (b) consider confirmation of the Plan, and (c) consider approval of the Debtors' entry into the Backstop Agreement;

    ii.    establishing the Objection Deadline;

    iii.   approving the Solicitation Procedures with respect to the Plan, including the forms of Ballots and Notice of Non-Voting Status;

---

[1]  The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2]  Capitalized terms used but not otherwise defined herein have the meaning assigned to them in the Motion.

iv.     approving the form and manner of the notice of the commencement of the Chapter 11 Cases, the Combined Hearing, and the Objection Deadline;

v.      so long as the Plan is confirmed on or before the SOFA/Schedule Deadline, (a) directing the U.S. Trustee not to convene the 341 Meeting, (b) waiving the requirement that the Debtors file SOFAs and Schedules, and (c) waiving the requirement that the Debtors file their 2015.3 Reports;

vi.     conditionally approving the Disclosure Statement; and

vii.    granting related relief,

all as more fully set forth in the Motion; and the Court having reviewed the Motion, and the First Day Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. § 1334; and the Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that the Court may enter a final order consistent with Article III of the United States Constitution; and the Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary, except as set forth in the Motion with respect to entry of this Order; and upon the record herein; and after due deliberation thereon; and all objections, if any, to the Motion having been withdrawn, resolved, or overruled; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Combined Hearing shall be held before this Court on September 8, 2025 at 1:00 p.m (Central Time) or as soon thereafter as counsel may be heard.  The Combined Hearing may be continued from time to without further notice other than adjournments announced in open court or in the filing of a notice or a hearing agenda in the Chapter 11 Cases.

2.     Any responses or objections to the adequacy of the Disclosure Statement or confirmation of the Plan must: (i) be in writing; (ii) conform to the applicable Bankruptcy Rules and the Bankruptcy Local Rules; (iii) set forth the name of the objecting party, the basis for the objection, and the specific grounds thereof; (iv) include proposed language that if included in the Plan would remedy the matters set forth in the objection; and (v) be filed with the Court, together with proof of service.  In addition to being filed with the Court, any such responses or objections must be served on the following Notice Parties so as to be received by the Objection Deadline— August 22, 2025 at 5:00 p.m. (Central Time):

i.      the Debtors, c/o Wolfspeed, Inc., 4600 Silicon Drive, Durham, NC 27703, Attn: Melissa Garrett (Melissa.Garrett@wolfspeed.com);

ii.     the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff (Jayson.B.Ruff@usdoj.gov) and Andrew Jimenez (Andrew.Jimenez@usdoj.gov);

iii.    Latham & Watkins LLP, 1271 Avenue of the Americas, New York, NY 10020, Attn: Ray C. Schrock (ray.schrock@lw.com); Alexander W. Welch (alex.welch@lw.com); Keith A. Simon (keith.simon@lw.com); Eric L. Einhorn (eric.einhorn@lw.com), proposed co-counsel to the Debtors;

iv.     Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Timothy A. ("Tad") Davidson II (taddavidson@hunton.com), Ashley L. Harper (ashleyharper@hunton.com), Philip M. Guffy (pguffy@hunton.com), proposed co-counsel to the Debtors;

v.      Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue New York, NY 10019, Attn: Ken Ziman (kziman@paulweiss.com); Kyle Kimpler (kkimpler@paulweiss.com); Stephanie P. Lascano (slascano@paulweiss.com); Tyler Zelinger (tzelinger@paulweiss.com), counsel to the Ad Hoc Senior Secured Group;

vi.     Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Ryan Preston Dahl (ryan.dahl@ropesgray.com); Matthew M. Roose (matthew.roose@ropesgray.com), Sam Badawi (sam.badawi@ropesgray.com); counsel to the Ad Hoc 26s/28s/29s Noteholder Group; and

vii.   Kirkland & Ellis LLP, 601 Lexington Avenue New York, NY 10022, Attn: Steven N. Serajeddini (steven.serajeddini@kirkland.com); Yusuf Salloum (yusuf.salloum@kirkland.com); Claire Stephens (claire.stephens@kirkland.com), counsel to Renesas.

**Any objections not timely filed and served in the manner set forth in this Order may not be considered and may be overruled.**

3.     The deadline to file any brief in support of the Disclosure Statement and confirmation of the Plan and reply to any objections shall be September 5, 2025 at 5:00 p.m. (Central Time).

4.     The Debtors are required to file the Initial Plan Supplement on or before August 12, 2025 or such date that is ten (10) days prior to the Objection Deadline, and the Final Plan Supplement as soon as practicable thereafter.

5.     The Debtors are required to file the proposed Confirmation Order on or before August 15, 2025, or such date that is seven (7) days prior to the Objection Deadline; *provided*, that the Debtors reserve the right to file a revised proposed Confirmation Order at any time prior to the Combined Hearing.

6.     The Debtors are authorized to combine the notice of the Combined Hearing and the Objection Deadline (and related procedures) with the notice of commencement of the Chapter 11 Cases.

7.     The Combined Notice of the Combined Hearing as proposed in the Motion and the form of notice annexed hereto as **Exhibit 1** shall be deemed good and sufficient notice of the Combined Hearing and the commencement of the Chapter 11 Cases and no further notice need be given; *provided*, that any provision of Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Plan to parties not entitled to vote or any parties in interest other than as prescribed in this Order shall be waived; *provided further*, that the Disclosure Statement

4

and Plan shall remain posted in PDF format at https://dm.epiq11.com/Wolfspeed and shall be provided in either electronic or paper form to any parties in interest upon written request to the Debtors.  The Debtors shall also serve a copy of the Combined Notice on all known creditors, interest holders, and interested parties as soon as reasonably practicable.

8.      The Debtors are authorized to mail the Combined Notice and the Notice of Non-Voting Status (including the Release Opt-Out Forms) to Holders in the Non-Voting Classes, in lieu of sending such Holders copies of the Disclosure Statement and the Plan, and the requirements under the Bankruptcy Rules or the Bankruptcy Local Rules, including Bankruptcy Rule 3017(d), to transmit copies of the Disclosure Statement and Plan to Holders in the Non-Voting Classes are hereby waived with respect to such Holders.  With respect to Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests), because such Claims and Interests are held by the Debtors' affiliates (and not individual creditors or interest holders), the requirement to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan is hereby waived.  The Debtors' request for waiver of any requirement to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan on Holders of such Claims and Interests is granted.

9.      The Debtors are authorized pursuant to Bankruptcy Rule 2002(1), to give supplemental publication notice of the Combined Hearing and Objection Deadline (in a form substantially similar to the Combined Notice or a summary thereof), no later than seven (7) days prior to the Combined Hearing, in the *New York Times* or a similar national publication.

10.      To the extent that section 1125(b) of the Bankruptcy Code requires the Debtors' prepetition solicitation of acceptances for the Plan to be pursuant to an approved disclosure statement to continue on a postpetition basis, the Court conditionally approves the Disclosure

Statement as having adequate information as required by section 1125 of the Bankruptcy Code without prejudice to any party in interest objecting to the Disclosure Statement at the Combined Hearing; *provided*, *that* any party in interest who has not (i) notified the Debtors of its intention to object to the Disclosure Statement on the basis that it does not include adequate information prior to the Voting Deadline, (ii) provided the Debtors with a written request for additional information that would cure such objection, and (iii) provided sufficient opportunity for the Debtors to cure such objection or provide such information, shall be deemed to have waived such objection to the Disclosure Statement.

11.     After the Petition Date, pursuant to sections 1125 and 1126 of the Bankruptcy Code and applicable non-bankruptcy law, the Debtors are authorized to continue their prepetition Solicitation of Eligible Holders in respect of the Plan, which commenced on June 27, 2025, and, upon entry of this Order, solicit Non-Eligible Holders as set forth in the Motion.

12.     The Solicitation Procedures utilized by the Debtors for distribution of the Solicitation Packages, as set forth more fully in the Motion and Ballots, in soliciting acceptances and rejections of the Plan satisfy the requirements of the Bankruptcy Code and the Bankruptcy Rules and are approved, including with respect to service of the Solicitation Package by email, overnight delivery, or such other manner of transmission as the Debtors, in their sole discretion, may determine.  No further notice or solicitation shall be required.

13.     The (i) Ballots, substantially in the forms attached to this Order as **Exhibits 3A, 3B, 3C, 4A, 4B, and 5**, (ii) Notice of Non-Voting Status and Release Opt-Out Form, substantially in the form attached to this Order as **Exhibits 2**, are approved.  The Debtors are authorized (without further approval of the Court), to make non-substantive modifications to the Combined Notice, Ballots, Notice of Non-Voting Status, Release Opt-Out Form, and associated materials.

14.     The procedures used for tabulation of votes to accept or reject the Plan as set forth in the Motion and as described in the Ballots are approved.

15.     The 341 Meeting shall be waived unless the Plan is not confirmed on or before September 15, 2025; *provided*, that such date may be further extended without further motion by the Debtors and without further order from the Court, upon written agreement between the Debtors and the U.S. Trustee (which written agreement may be by email) and upon notice filed on the docket and served on the Notice Parties and the Court; *provided further*, that this relief is without prejudice to the Debtors' rights to request further extensions thereof.

16.     The Voting Record Date of June 25, 2025 and the Voting Deadline of August 22, 2025 at 5:00 p.m. (Central Time) are each hereby approved; *provided*, that the Debtors may extend the Voting Deadline in their discretion.

17.     Notwithstanding any other provision of this Order, the Combined Hearing may be adjourned by the Debtors without further notice other than by filing a notice on the Court's docket indicating such adjournment and/or an announcement of the adjourned date or dates at the Combined Hearing.  The adjourned date or dates will be available on the electronic case filing docket and the Solicitation Agent's website at https://dm.epiq11.com/Wolfspeed.

18.     Nothing in the Motion or this Order shall be deemed as (a) an implication or admission as to the amount of, basis for, or validity of any claim against the Debtors; (b) a waiver or limitation of the Debtors' or any other party in interest's right to dispute the amount of, basis for, or validity of any claim; (c) a waiver of the Debtors' or any other party in interest's rights under the Bankruptcy Code or any other applicable non-bankruptcy law; (d) a waiver of the obligation of any party in interest to file a proof of claim; (e) a promise or requirement to pay any particular claim; (f) a waiver of any claims or causes of action which may exist against any entity

under the Bankruptcy Code or any other applicable law; (g) an admission as to the validity, priority, enforceability, or perfection of any lien on, security interest in, or other encumbrance on property of the Debtors' estates; or (h) a request or authorization to assume, adopt, or reject any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code.  Any payment made pursuant to this Order is not intended to be and should not be construed as an admission to the validity of any claim or waiver of the Debtors' or any other party in interest's rights to dispute such claim subsequently.

19.     Nothing in the Motion or this Order waives or modifies the rights and remedies of the Consenting Creditors (as defined in the Plan) under the Restructuring Support Agreement and the Backstop Agreement, including, without limitation, the consultation, consent, and termination rights of such parties contained therein.

20.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

21.     Notice of the Motion is adequate under Bankruptcy Rule 6004(a) and the Bankruptcy Local Rules.

22.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

23.     The Debtors are further authorized and empowered to take all actions necessary or appropriate to implement the relief granted in this Order.

24.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Signed:  July 01, 2025

_____
Christopher Lopez
United States Bankruptcy Judge

8

**<u>EXHIBIT 1</u>**

Combined Notice

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

```
------------------------------------------------------- x
                                              :
In re:                                        :   Chapter 11
                                              :
WOLFSPEED, INC., et al.,                      :   Case No. 25-90163 (CML)
                                              :
            Debtors.¹                         :   (Jointly Administered)
                                              :
------------------------------------------------------- x
```

**NOTICE OF (I) COMMENCEMENT OF CHAPTER 11 CASES,
(II) COMBINED HEARING ON DISCLOSURE STATEMENT, JOINT
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF
WOLFSPEED , INC. AND ITS DEBTOR AFFILIATE, AND RELATED MATTERS,
(III) OBJECTION DEADLINES, AND (IV) SUMMARY OF KEY TERMS RELATING
TO THE ASSUMPTION OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**NOTICE IS HEREBY GIVEN** as follows:

Wolfspeed, Inc. and its affiliated debtor, as debtors and debtors in possession (collectively, the "***Debtors***"), each commenced a case under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on June 30, 2025 (the "***Petition Date***").

Before the Petition Date, the Debtors commenced solicitation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Plan***")² attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the solicitation website maintained by the Debtors' solicitation agent, Epiq Corporate Restructuring, LLC (the "***Solicitation Agent***"), at https://dm.epiq11.com/Wolfspeed. Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (888) 818-4267 or Non U.S./Canada at +1 (971) 606-5246 or by sending an electronic mail message to Wolfspeed@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).

---

¹   The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339). The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

²   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

The Debtors are proposing a restructuring that will substantially deleverage their capital structure to reduce the go-forward cost of capital for their otherwise healthy business. Accordingly, this new capital will ensure the Debtors have sufficient liquidity on a post-emergence basis, without impairing business operations and, notably, satisfying general unsecured claims in full.  With the support of their key stakeholders and consummation of the Plan, the Debtors expect to emerge from these chapter 11 cases expeditiously with a healthier balance sheet and the ability to continue to serve and supply all domestic and international customers.

### Information Regarding Plan

The Debtors commenced solicitation of votes to accept the Plan from: Holders of Class 3 Senior Secured Notes Claims, Holders of Class 4 Convertible Notes Claims, and Holders of Class 5 Renesas Claims, each of record as of June 25, 2025.  Only Holders of Claims in Classes 3, 4, and 5 are entitled to vote to accept or reject the Plan.  All other Classes of Claims and Interests are either presumed to accept or deemed to reject the Plan and, therefore, Holders of such other Claims and Interests are not entitled to vote to accept or reject the Plan.  **The deadline for the submission of votes to accept or reject the Plan is August 22, 2025 at 5:00 p.m. (prevailing Central Time).**

**PLEASE BE ADVISED THAT THE PLAN CONTAINS RELEASE, EXCULPATION AND INJUNCTION PROVISIONS.  THESE PROVISIONS ARE SET FORTH IN <u>APPENDIX A</u>.**

**Specifically, if you are a Holder of a Claim or Interest, you may be deemed to grant the Third-Party Release under the Plan. Specifically, pursuant to Section 10.6 of the Plan, each Holder of a Claim or Interest is deemed to grant the Third-Party Release, to the maximum extent otherwise permitted by law, unless such Holder of a Claim or Interest timely opts out of providing the Third-Party Release.  The Third-Party Release is discussed further in Section 10.6 of the Disclosure Statement.**

**Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan.  Specifically, your recovery under the Plan will be the same if you opt out.**

The Court has scheduled a combined hearing to consider (i) final approval of the Disclosure Statement and any objections thereto, (ii) to consider confirmation of the Plan and any objections thereto, and (iii) to consider approval of the Debtors' entry into the Backstop Agreement and objections thereto to be held before the Court, Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002, **on September 8, 2025 at 1:00 P.M. (prevailing Central Time)** (the "***Combined Hearing***").  The time and location of the Combined Hearing may also be obtained by contacting the undersigned proposed counsel to the Debtors.  The Combined Hearing may be adjourned from time to time without further notice other than by filing a notice on the Court's docket indicating such adjournment and/or announcement of the adjournment date or dates at the Combined Hearing.  The adjourned dates will be available on the electronic case filing docket and the Solicitation Agent's website at https://dm.epiq11.com/Wolfspeed.

The Court has set the deadline for filing objections to the final approval of the Disclosure Statement, confirmation of the Plan, and the Debtors' entry into the Backstop Agreement

as August 22, at 5:00 p.m. (prevailing Central Time) (the "***Objection Deadline***").  Any objections to the Disclosure Statement and/or the Plan must be:  (a) in writing, (b) filed with the Clerk of the Court together with proof of service thereof, (c) set forth the name of the objecting party, and the nature and amount of any Claim or Interest asserted by the objecting party against the Debtors' estates or property of the Debtors, (d) state the legal and factual basis for such objection, and (e) conform to the applicable Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***") and the Bankruptcy Local Rules for the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Local Rules***").

In addition to being filed with the Clerk of the Court, any such objections should be served upon the following parties in accordance with the Bankruptcy Local Rules:

i.  the Office of the United States Trustee for the Southern District of Texas, 515 Rusk Street, Suite 3516, Houston, Texas 77002, Attn: Jayson B. Ruff (jayson.b.ruff@usdoj.gov); Andrew Jimenez (andrew.jimenez@usdoj.gov);

ii.  the Debtors, c/o Wolfspeed, Inc., 4600 Silicon Drive, Durham, NC 27703 (Attn: Melissa Garrett);

iii.  Latham & Watkins LLP, 1271 Avenue of the Americas New York, NY 10020, Attn: Ray C. Schrock (ray.schrock@lw.com); Alexander W. Welch (alex.welch@lw.com); Keith A. Simon (keith.simon@lw.com); Eric L. Einhorn (eric.einhorn@lw.com), proposed co-counsel to the Debtors;

iv.  Hunton Andrews Kurth LLP, 600 Travis Street, Suite 4200, Houston, TX 77002, Attn: Tad Davidson (taddavidson@hunton.com); Ashley Harper (ashleyharper@hunton.com); Philip Guffy (pguffy@hunton.com), proposed co-counsel to the Debtors

v.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 6th Avenue New York, NY 10019, Attn: Ken Ziman (kziman@paulweiss.com); Kyle Kimpler (kkimpler@paulweiss.com); Stephanie P. Lascano (slascano@paulweiss.com); Tyler Zelinger (tzelinger@paulweiss.com), counsel to the Ad Hoc Senior Secured Group;

vi.  Ropes & Gray LLP, 1211 Avenue of the Americas, New York, NY 10036, Attn: Ryan Preston Dahl (ryan.dahl@ropesgray.com); Matthew M. Roose (matthew.roose@ropesgray.com), Sam Badawi (sam.badawi@ropesgray.com); counsel to the Ad Hoc 26s/28s/29s Noteholder Group; and

vii.  Kirkland & Ellis LLP, 601 Lexington Avenue New York, NY 10022, Attn: Steven N. Serajeddini (steven.serajeddini@kirkland.com); Claire Stephens (claire.stephens@kirkland.com), counsel to Renesas.

**UNLESS AN OBJECTION IS TIMELY FILED AND SERVED IN ACCORDANCE WITH THE PROCEDURES IN THIS NOTICE, SUCH OBJECTION MAY NOT BE CONSIDERED BY THE COURT AT THE COMBINED HEARING.**

**ANY PARTY IN INTEREST WHO HAS NOT (I) NOTIFIED THE DEBTORS OF ITS INTENTION TO OBJECT TO THE DISCLOSURE STATEMENT ON THE BASIS THAT IT DOES NOT INCLUDE ADEQUATE INFORMATION PRIOR TO THE VOTING DEADLINE, (II) PROVIDED THE DEBTORS WITH A WRITTEN REQUEST FOR ADDITIONAL INFORMATION THAT WOULD CURE SUCH OBJECTION, AND (III) PROVIDED SUFFICIENT OPPORTUNITY FOR THE DEBTORS TO CURE SUCH OBJECTION OR PROVIDE SUCH INFORMATION, SHALL BE DEEMED TO HAVE WAIVED SUCH OBJECTION TO THE DISCLOSURE STATEMENT.**

## Summary of the Plan

The following chart summarizes the treatment provided by the Plan to each Class of Claims and Interests:

| Class | Designation | Treatment | Entitled to Vote |
|-------|-------------|-----------|------------------|
| 1 | Other Secured Claims | Unimpaired | No (Presumed to Accept) |
| 2 | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| *3* | *Senior Secured Notes Claims* | *Impaired* | *Yes* |
| *4* | *Convertible Notes Claims* | *Impaired* | *Yes* |
| *5* | *Renesas Claims* | *Impaired* | *Yes* |
| 6 | General Unsecured Claims | Unimpaired | No (Presumed to Accept) |
| 7 | Intercompany Claims | Unimpaired / Impaired | No (Presumed to Accept / Deemed to Reject) |
| 8 | Intercompany Interests | Unimpaired / Impaired | No (Presumed to Accept / Deemed to Reject) |
| 9 | 510(b) Claims | Unimpaired | No (Presumed to Accept) |
| 10 | Existing Equity Interests | Impaired | No (Deemed to Reject) |

## Non-Voting Status of Holders of Certain Claims and Interests

As set forth above, certain Holders of Claims and Interests are **not** entitled to vote on the Plan. As a result, such parties did not receive any Ballots and other related solicitation materials to vote on the Plan. Claims in Classes 1, 2, 6, and 9 are Unimpaired under the Plan and, pursuant to Section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Claims or Interests in Classes 7 and 8 are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or deemed to reject the Plan, as applicable. Claims in Class 10 (collectively with Classes 1, 2, 6, 7, 8, and 9, the "***Non-Voting Classes***") are Impaired and its Holders are not receiving or retaining any property under the Plan on account of the value of their

Existing Equity Interests; provided, such Holders of Existing Equity Interests are receiving a recovery as a gift from applicable creditors. Accordingly, because their recovery is funded solely as a gift from applicable creditors, the Holders of Existing Equity Interests in Class 10 are conclusively deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code. In light of their presumed acceptance or rejection of the Plan, none of the Holders of Claims and Interests in the Non-Voting Classes were solicited to vote on the Plan. Instead, the Holders of Claims and Interests in the Notice of Non-Voting Status (other than Holders of Intercompany Claims and Intercompany Interests) will receive a Notice of Non-Voting Status and Release Opt-Out Form. Because the Intercompany Claims and Intercompany Interests are all held by the Debtors or affiliates of the Debtors, the Debtors did not provide the Holders in Class 8 (Intercompany Claims) or Class 9 (Intercompany Interests) with a Non-Voting Status Notice (or a Solicitation Package). Further, Holders of Claims or Interests in the Non-Voting Classes can access the Disclosure Statement and the Plan at no cost on the website maintained by the Solicitation Agent: https://dm.epiq11.com/Wolfspeed.

**<u>Key Terms Relating to Assumption of Executory Contracts and Unexpired Leases</u>**

**ARTICLE VIII OF THE PLAN CONTAINS THE FOLLOWING PROVISIONS REGARDING EXECUTORY CONTRACTS AND UNEXPIRED LEASES. PARTIES TO EXECUTORY CONTRACTS AND/OR UNEXPIRED LEASES ARE ADVISED AND ENCOURAGED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING SECTION VI, AS YOUR RIGHTS MIGHT BE AFFECTED.**

**The text of certain executory contract and unexpired lease provisions of the Plan are set forth below for your convenience, but you should review the Disclosure Statement and the Plan for a complete description of such provisions**:

<u>Assumption or Rejection of Executory Contracts and Unexpired Leases</u>

On the Effective Date, all Executory Contracts and Unexpired Leases of the Debtors, including, but not limited to, employee contracts, which have not expired by their own terms on or prior to the Confirmation Date, shall be deemed assumed by the Debtors in accordance with, and subject to, the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code, except for those Executory Contracts and Unexpired Leases that, in each case:

    i.    have been assumed, assumed and assigned, or rejected by the Debtors by prior order of the Bankruptcy Court;

    ii.    are the subject of a motion to reject Filed by the Debtors pending on the Effective Date;

    iii.    are identified as rejected Executory Contracts and Unexpired Leases by the Debtors on the Schedule of Rejected Executory Contracts and Unexpired Leases to be Filed in the Plan Supplement, which may be amended by the Debtors up to and through the Effective Date to add or remove Executory Contracts and Unexpired Leases by Filing with the Bankruptcy Court a subsequent Plan Supplement and serving it on the affected non-Debtor contract parties;

iv.    are rejected or terminated pursuant to the terms of the Plan; or

v.    are the subject of a pending Cure Dispute.

Without amending or altering any prior order of the Bankruptcy Court approving the assumption or rejection of any Executory Contract or Unexpired Lease, the Confirmation Order shall constitute an order of the Bankruptcy Court approving such assumptions, assumptions and assignments, and the rejection of Executory Contracts and Unexpired Leases set forth in the Schedule of Rejected Executory Contracts and Unexpired Leases provided for in the Plan pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

To the extent any provision in any Executory Contract or Unexpired Lease assumed or assumed and assigned (as applicable) pursuant to the Plan or any prior order of the Bankruptcy Court (including, without limitation, any "change of control" provision) prohibits, restricts or conditions, or purports to prohibit, restrict or condition, or is modified, breached or terminated, or deemed modified, breached or terminated by, (a) the commencement of the Chapter 11 Cases or the insolvency or financial condition of any Debtor at any time before the closing of its respective Chapter 11 Case, (b) any Debtor's or any Reorganized Debtor's assumption or assumption and assignment (as applicable) of such Executory Contract or Unexpired Lease or (c) the Confirmation or consummation of the Plan, then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to modify or terminate such Executory Contract or Unexpired Lease or to exercise any other default-related rights or remedies with respect thereto, and any required consent under any such contract or lease shall be deemed satisfied by the Confirmation of the Plan.

Each Executory Contract and Unexpired Lease assumed and/or assigned pursuant to the Plan shall revest in and be fully enforceable by the applicable Reorganized Debtor or the applicable assignee in accordance with its terms and conditions, except as modified by the provisions of the Plan, any order of the Bankruptcy Court approving its assumption and/or assignment, or applicable law.

The Debtors reserve the right, on or before the Effective Date, to amend the Schedule of Rejected Contracts and/or to add or remove any Executory Contract and Unexpired Lease; *provided*, the Debtors or Reorganized Debtors, as applicable, may amend the Schedule of Rejected Contracts to add or delete any Executory Contracts or Unexpired Leases after such date to the extent agreed with the relevant counterparties and entry of an order of the Bankruptcy Court.

The inclusion or exclusion of a contract or lease on any schedule or exhibit shall not constitute an admission by any Debtor that such contract or lease is an Executory Contract or Unexpired Lease or that any Debtor has any liability thereunder.

<u>Payments Related to Assumption of Executory Contracts and Unexpired Leases</u>

Any monetary defaults under each Executory Contract and Unexpired Lease to be assumed or assumed and assigned pursuant to the Plan shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the default amount in Cash on the Effective Date or on such

6

other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. In the event of a dispute regarding:  (a) the amount of any Cure Claim; (b) the ability of the Reorganized Debtors to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), if applicable, under the Executory Contract or the Unexpired Lease to be assumed; or (c) any other matter pertaining to assumption, the Cure Claims shall be paid following the entry of a Final Order resolving the dispute and approving the assumption of such Executory Contracts or Unexpired Leases; provided, that the Debtors or the Reorganized Debtors, as applicable, may settle any dispute regarding the amount of any Cure Claim without any further notice to or action, order or approval of the Bankruptcy Court.

<u>Claims on Account of the Rejection of Executory Contracts or Unexpired Leases</u>

All Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within twenty-one (21) days after service of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection.  Any Claim arising from the rejection of Executory Contracts or Unexpired Leases that becomes an Allowed Claim is classified and shall be treated as a Class 6 General Unsecured Claim.

Any Person or Entity that is required to File a Proof of Claim arising from the rejection of an Executory Contract or an Unexpired Lease that fails to timely do so shall be forever barred, estopped and enjoined from asserting such Claim, and such Claim shall not be enforceable, against the Debtors, the Reorganized Debtors or the Estates, and the Debtors, the Reorganized Debtors and their Estates and their respective assets and property shall be forever discharged from any and all indebtedness and liability with respect to such Claim unless otherwise ordered by the Bankruptcy Court or as otherwise provided in the Plan.  All such Claims shall, as of the Effective Date, be subject to the permanent injunction set forth in Section 10.5 the Plan.

<u>Modifications, Amendments, Supplements, Restatements, or Other Agreements</u>

Unless otherwise provided in the Plan or by separate order of the Bankruptcy Court, each Executory Contract and Unexpired Lease that is assumed shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such Executory Contract or Unexpired Lease.

Dated:  June 30, 2025
       Houston, Texas

Respectfully submitted,

*/s/  Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
       ashleyharper@hunton.com
       pguffy@hunton.com

- and –

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Alexander W. Welch (NY Bar No. 5624861)
Keith A. Simon (NY Bar No. 4636007)
Eric L. Einhorn (NY Bar No. 5568845)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:   ray.schrock@lw.com
       alex.welch@lw.com
       keith.simon@lw.com
       eric.einhorn@lw.com

*Proposed Attorneys for the Debtors*
*and Debtors in Possession*

**Appendix A**

**Release, Injunction, and Exculpation Provisions in the Plan**[1]

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

A.      Certain Relevant Definitions.

"*Exculpated Parties*" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"*Related Parties*" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"*Released Parties*" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"*Releases*" means, collectively, the releases set forth in Article 10.6 of the Plan.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.      Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated).  All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**C.**     Section 10.6 of the Plan – Releases.

**1.**     Releases by the Debtors.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors,  that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

3

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

    **2.**    <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**     Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

**EXHIBIT 2**

Notice of Non-Voting Status and Release Opt-Out Form

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

```
----------------------------------------------------------- x
                                                            :
In re:                                                      :    Chapter 11
                                                            :
WOLFSPEED, INC., et al.,                                    :    Case No. 25-90163 (CML)
                                                            :
                  Debtors.¹                                 :    (Jointly Administered)
                                                            :
----------------------------------------------------------- x
```

**NOTICE OF NON-VOTING STATUS AND RELEASE OPT-OUT FORM FOR**
**HOLDERS OF CLAIMS AND CERTAIN INTERESTS IN NON-VOTING CLASSES**

> **You are receiving this Notice of Non-Voting Status and Release Opt-Out Form because your rights may be affected under the Plan. Due to the nature and treatment of your Claim or Interest under the Plan, you are not entitled to vote on the Plan.**
>
> **You are hereby given notice and the opportunity to opt out of granting the Releases set forth in Section 10.6 of the Plan and described in Appendix A by filling out and returning the Release Opt-Out Form found in Appendix B. If you do not opt out of granting the Releases by following the instructions contained in this notice, you will automatically be deemed to have consented to the Releases set forth in Section 10.6 of the Plan. Please be advised that your decision to opt out does not affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out; however, in the event you opt out of the Releases, you will not be granted a release from the Releasing Parties under the Plan to the extent you are entitled to one.**
>
> **The Release Opt-out Form must be submitted no later than August 22, 2025, at 5:00 p.m. (prevailing Central Time)**
>
> **You should review this notice carefully and may wish to consult an attorney as your rights may be affected.**

*General Information Concerning this Notice of Non-Voting Status and Release Opt-Out Form*

      Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "**_Debtors_**"), each commenced a case under chapter 11 of title 11 of the United States Code

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339). The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

(the "***Bankruptcy Code***") in the United States Bankruptcy Court for the Southern District of Texas (the "***Court***") on June 30, 2025 (the "***Petition Date***").

Before the Petition Date, the Debtors commenced solicitation of the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Plan***")[2] attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***") pursuant to Sections 1125 and 1126(b) of the Bankruptcy Code. Copies of the Plan and the Disclosure Statement may be obtained free of charge by visiting the solicitation website maintained by the Debtors' solicitation agent, Epiq Corporate Restructuring, LLC (the "***Solicitation Agent***"), at https://dm.epiq11.com/Wolfspeed.

You are receiving this notice of non-voting status (this "***Notice***") and release opt-out form (the "***Release Opt-Out Form***") because, according to the Debtors' books and records, you may be a Holder of a Claim against or Interest in one or more of the Debtors that, due to the nature and treatment of such Claim or Interest under the Plan, ***is <u>not</u> entitled to vote on the Plan***. Specifically, under the terms of the Plan, Claims in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 6 (General Unsecured Claims), and Class 9 (510(b) Claims) are Unimpaired under the Plan and, and pursuant to Section 1126(f) of the Bankruptcy Code, are conclusively presumed to accept the Plan. Claims and Interests in Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) are either Unimpaired or Impaired under the Plan and are conclusively presumed to accept or deemed to reject the Plan, as applicable. Interests in Class 10 (Existing Equity Interests) (collectively with Classes 1, 2, 6, 7, 8, and 9, the "***Non-Voting Classes***") are Impaired and Holders of Class 10 Existing Equity Interests are not receiving or retaining any property under the Plan on account of the value of their Existing Equity Interests; provided, such Holders of Existing Equity Interests are receiving a recovery as a gift from applicable creditors as set forth in the Plan. Accordingly, because their recovery is funded solely as a gift from applicable creditors, the Holders of Existing Equity Interests in Class 10 are conclusively deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, Holders of Claims and Interests in Classes 1, 2, 6, 7, 8, 9, and 10 are not entitled to vote to accept or reject the Plan.

Section 10.6 of Plan contains certain debtor releases, ***third party releases***, exculpation, and injunction provisions. These provisions are also described in <u>Appendix A</u>. You are advised and encouraged to carefully review and consider the Plan, including the release, exculpation, and injunction provisions, as your rights might be affected. The Release Opt-Out Form provided in <u>Appendix B</u> provides you with the opportunity to elect to opt out of the releases described in <u>Appendix A</u>.

If you elect to opt out of the Releases you will not be deemed to have granted the Releases set forth in Section 10.6 of the Plan. If you opt out of the Releases, you will not be a Released Party under the Plan and will forgo any benefit of the Releases to which you may otherwise be

---

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan.

entitled.  The separate Release Opt-Out Form in <u>Appendix B</u> allows you the opportunity to opt out of the Releases.

*Making an Alternative Election Under this Release Opt-Out Form*

**Holders of Claims and Interests who take no action with respect to the Release Opt-Out Form will automatically be deemed to grant the releases contained in Section 10.6 of the Plan**.

You should review the Disclosure Statement and the Plan before you make any elections on the Release Opt-Out Form.  You may wish to seek legal advice concerning the elections available under the Release Opt-Out Form.

**Questions may be directed to the Debtors' Solicitation Agent at https://dm.epiq11.com/Wolfspeed.  Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at (888) 818 4267 or Non U.S./Canada at +1 (971) 606 5246 or by sending an electronic mail message to Wolfspeed@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line). The Plan, Disclosure Statement, and related documents are also available for a fee through the Court's electronic case filing system at www.txs.uscourts.gov using a PACER password (to obtain a PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).**

**YOU SHOULD NOT DIRECT ANY QUESTIONS TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

*[Remainder of page left intentionally blank]*

**Appendix A**

**Release, Injunction, and Exculpation Provisions in the Plan[1]**

---

[1]    Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

A.       Certain Relevant Definitions.

"***Exculpated Parties***" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"***Related Parties***" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"***Releases***" means, collectively, the releases set forth in Article 10.6 of the Plan.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.       Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated).  All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

C.      Section 10.6 of the Plan – Releases.

1.      Releases by the Debtors.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors,  that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct). Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

     **2.**    <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**  Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

Appendix B

Release Opt-Out Form

**Release Opt-Out Election**

**This election allows you to:**

**OPT OUT OF THE RELEASES IN THE PLAN, WHICH WILL DISQUALIFY YOU FROM BEING SUBJECT TO AND BENEFITING FROM THE RELEASES IN SECTION 10.6 OF THE PLAN. IF YOU DO NOT OPT OUT OF THE RELEASES BY CHECKING THE BOX BELOW, YOU WILL BE DEEMED TO HAVE CONCLUSIVELY, ABSOLUTELY, UNCONDITIONALLY, IRREVOCABLY, AND FOREVER RELEASED AND DISCHARGED THE DEBTORS, THE REORGANIZED DEBTORS, AND THE RELEASED PARTIES AS PROVIDED IN THE PLAN.**

　　**Complete and return this Form if you wish to elect to opt out of the releases contained in Section 10.6 of the Plan and described in <u>Appendix A</u>.**

*Summary of Election*

　　Section 10.6 of the Plan contains a third-party release that binds releasing parties, which is described in <u>Appendix A</u>.

**<u>IMPORTANT INFORMATION REGARDING THE RELEASE</u>**

　　**UNLESS YOU COMPLETE AND RETURN THIS RELEASE OPT-OUT FORM BY AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME), YOU WILL BE DEEMED TO HAVE GRANTED THE RELEASES CONTAINED IN SECTION 10.6 OF THE PLAN.**

*Instructions for Making a Release Opt-Out Election*

　　If you wish to make the election and opt out granting the releases contained in Section 10.6 of the Plan and described in <u>Appendix A</u>, check the box under "Your Election" below. If your election contained in this Release Opt-Out Form is not received by the Solicitation Agent by August 22, 2025 at 5:00p.m. (prevailing Central Time), your election will not count, your Release Opt-Out Form will not be effective, and you will be deemed to have consented to the releases provided for in Section 10.6 of the Plan. If your election is received and the Opt-Out box below is not checked, you will be deemed to have consented to the releases provided for in Section 10.6 of the Plan. Any Opt-Out election that is illegible or does not provide sufficient information to identify the Claim Holder or Interest Holder will not be valid.

　　All questions as to the validity, form, eligibility (including time of receipt), and acceptance and revocation of an Opt-Out election will be resolved by the Debtors or Reorganized Debtors (as applicable), in their sole discretion, which resolution will be final and binding.

　　If you have any questions on how to properly complete this Release Opt-Out Form, you may contact the Solicitation Agent at (888) 818-4267 or Non U.S./Canada at +1 (971) 606-5246 or by sending an electronic mail message to Wolfspeed@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).

**If you wish to make the Opt-Out election, please complete, sign, and date this release out-in form and return it (with a signature) promptly in the envelope provided (if applicable) or via hand delivery or overnight courier to:**

<div align="center">

**Wolfspeed, Inc.**
**c/o Epiq Ballot Processing**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

</div>

**To arrange hand delivery of your Release Opt Out Form, please email Wolfspeed@epiqglobal.com (with "Wolfspeed Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Solicitation Agent address above and provide the anticipated date and time of delivery.**

<div align="center">

**OR**

**BY ELECTRONIC, ONLINE SUBMISSION:**

</div>

**Please visit https://dm.epiq11.com/wolfspeed. Click on the "E-Opt Out" link under the Case Actions section of the Debtors' website and follow the directions to submit your Release Opt-Out Form. If you choose to submit your Release Opt-Out Form via the E-Opt Out system, you should not also return a hard copy of your Opt-Out. "E-Opting Out" is the sole manner in which this Release Opt-Out Form will be accepted via electronic or online transmission. Release Opt-Out Forms submitted by facsimile or email will not be counted.**

*Opt-Out Election*

The undersigned, a Holder of an Other Secured Claim, Other Priority Claim, General Unsecured Claim, 510(b) Claim, or Existing Equity Interest:

☐ ELECTS TO **OPT OUT OF** THE RELEASES IN SECTION 10.6 OF THE PLAN AND, AS A RESULT, NOT BE SUBJECT TO OR BENEFIT FROM THE RELEASES UNDER SECTION IX OF THE PLAN.

**If you have made the election above, you must complete and sign the below certification.**

## **Certification and Signature for Opt-Out Election**

**Certification.**  By signing this Release Opt-Out Form, the electing Claim Holder or Interest Holder, as applicable, certifies to the Court and the Debtors:

a.  that the Holder acknowledges that the election provided for in this Release Opt-Out Form is being made pursuant to the terms and conditions set forth in the Plan;

b.  that the Holder has the full power and authority to make the election provided for in this Release Opt-Out Form with respect to its Class 1, Class 2, Class 6, , Class 9, or Class 10 Claim or Interest.

Name of Holder (Please Print)  _____

Authorized Signature  _____

Name of Signatory  _____

Title, if by Authorized Agent[1]  _____

Street Address  _____

City, State, Zip Code  _____

Telephone Number  _____

Email  _____

Date Completed  _____

---

[1]  If you are completing this Release Opt-Out Form on behalf of another person or entity, indicate your relationship with such person or entity and the capacity in which you are signing.

5

**EXHIBIT 3-A**

Form of Class 3 Beneficial Holder Ballot (Senior Secured Notes Claims)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ----------------------------------------------------- x | Chapter 11 | |
| | : | |
| In re: | : | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| WOLFSPEED, INC., *et al.*, | : | |
| | : | |
| Debtors.[1] | : | If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| | : | |
| ----------------------------------------------------- x | | |

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF CLAIMS IN CLASS 3 (SENIOR SECURED NOTES CLAIMS) FOR VOTING TO ACCEPT OR REJECT THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF WOLFSPEED, INC. AND ITS DEBTOR AFFILIATE UNDER CHAPTER 11
OF THE BANKRUPTCY CODE**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (AS MAY BE EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION, THE "*VOTING DEADLINE*")**

---

Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***") are sending this beneficial holder ballot (the "***Beneficial Holder Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*, dated June 27, 2025 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Beneficial Holder Ballot and has also been posted on the Debtors' voting information website (located at **https://dm.epiq11.com/Wolfspeed**).  The Debtors' voting information website contains important information and key deadlines.

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you have not received or wish to obtain additional copies of the Plan and/or Disclosure Statement, please visit https://dm.epiq11.com/Wolfspeed or contact the Debtors' solicitation agent, Epiq Corporate

---

[1]    The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are:  Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2]    Capitalized terms used but not defined herein have the meanings given to them in the Plan.

Restructuring, LLC (the "***Solicitation Agent***"), at balloting@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).

This Beneficial Holder Ballot is being submitted to Beneficial Holders, as of June 25, 2025 (the "***Voting Record Date***"), of any Claim in Class 3 arising under or related to the Senior Secured Notes Indenture, which CUSIPs are indicated on Appendix B hereto (the "***Senior Secured Notes Claims***").

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") following the commencement of this solicitation.

If the Debtors commence the Chapter 11 Cases,  the Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***") and thereby made binding on you if: (i) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in any Impaired Voting Classes and (ii) the Plan otherwise satisfies the applicable requirements of Section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class rejecting the Plan and (z) otherwise satisfies the requirements of Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on each Senior Secured Notes Claims Holder whether or not such Senior Secured Noteholder votes to accept or reject the Plan or does not vote.

All pleadings and notices relating to the Debtors' Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings), will be made available for review on the case information website of the Solicitation Agent at https://dm.epiq11.com/Wolfspeed.

Holders of Class 3 Senior Secured Notes Claims are Impaired under the Plan and are, therefore, entitled to vote to accept or reject the Plan.  You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of such broker, bank, or other nominee (each of the foregoing, a "***Nominee***"), in each case as of the Voting Record Date, in accordance with the instructions provided by your Nominee, who will then process your vote and include it on a master ballot (a "***Master Ballot***") that your Nominee will return to the Solicitation Agent.  For your vote to count, your Beneficial Holder Ballot must be completed and returned to your Nominee in accordance with your Nominee's instructions, in all cases allowing sufficient time for your Nominee to receive and process your completed Beneficial Holder Ballot, then complete and return the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or prior to the Voting Deadline.

This Beneficial Holder Ballot is for Holders of Class 3 Senior Secured Notes Claims, which applicable CUSIPs for which are set forth on Appendix B hereto.

This Beneficial Holder Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan; and/or (ii) to opt out of the Releases (as defined below).

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 3 SENIOR SECURED NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, except to the extent that a Holder of an Allowed Senior Secured Notes Claim agrees to less favorable treatment of its Allowed Senior Secured Notes Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed Senior Secured Notes Claim, on the Effective Date, each Holder of an Allowed Senior Secured Notes Claim shall receive its Pro Rata Share of:  (i) the New Senior Secured Notes; and (ii) the Effective Date Cash Payment.

**Please be advised that if the Plan is consummated, Holders of Class 3 Senior Secured Notes Claims will be bound by the release, injunction, and exculpation provisions contained in Section 10.6 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Releases, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

[*Remainder of page left intentionally blank*]

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  JUNE 25, 2025

VOTING DEADLINE:  5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 22, 2025   (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE WITH SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE, COMPLETE THE MASTER BALLOT AND RETURN THE MASTER BALLOT TO THE SOLICITATION AGENT, SUCH THAT THE MASTER BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE MASTER BALLOT INDICATING YOUR VOTE CAST ON YOUR BENEFICIAL HOLDER BALLOT (OR OTHERWISE IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS) BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE RELEASES WILL NOT BE VALID.

IF YOUR NOMINEE CHOSE TO SEND YOU A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, YOUR NOMINEE WILL HAVE ALREADY COMPLETED ITEM 6 BELOW (INCLUDING SPECIFYING THE NOMINEE'S DTC PARTICIPANT NUMBER) AND EXECUTED THIS BENEFICIAL HOLDER BALLOT ON YOUR BEHALF, WITH YOUR BENEFICIAL ACCOUNT NUMBER OR NAME, THE AMOUNT OF CLAIMS HELD BY THE BENEFICIAL HOLDER AS OF THE VOTING RECORD DATE, AND A MEDALLION GUARANTEE STAMP CONFIRMING THE AMOUNT OF YOUR CLASS 3 CLAIM.  IF YOU RECEIVED A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, PLEASE COMPLETE THE REMAINING ITEMS ON THE BENEFICIAL HOLDER BALLOT AND RETURN THE BENEFICIAL HOLDER BALLOT DIRECTLY TO THE SOLICITATION AGENT BY NO LATER THAN THE VOTING DEADLINE USING THE RETURN ENVELOPE PROVIDED IN THE SOLICITATION

MATERIALS.  IF NO RETURN ENVELOPE WAS PROVIDED, YOU SHOULD CONTACT THE SOLICITATION AGENT FOR INSTRUCTIONS.

YOU SHOULD NOT SEND YOUR BENEFICIAL HOLDER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE BENEFICIAL HOLDER BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

IF YOU VOTE PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, YOU CERTIFY TO THE DEBTORS THAT YOU ARE AN ELIGIBLE HOLDER.

AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 3 SENIOR SECURED NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS: (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D OF THE SECURITIES ACT) (OR THEIR AUTHORIZED SIGNATORIES); OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.

A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 3 SENIOR SECURED NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.

PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, ONLY ELIGIBLE HOLDERS ARE ENTITLED TO VOTE PURSUANT TO THIS BENEFICIAL HOLDER BALLOT. IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS BENEFICIAL HOLDER BALLOT OR CAUSE YOUR NOMINEE TO SUBMIT A MASTER BALLOT ON YOUR BEHALF PRIOR TO THE ENTRY OF UNTIL THE SOLICITATION PROCEDURES ORDER. ANY BENEFICIAL HOLDER BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER BEFORE THE BANKRUPTCY COURT HAS ENTERED THE SOLICITATION PROCEDURES ORDER WILL NOT BE COUNTED.

## BENEFICIAL HOLDER BALLOT INSTRUCTIONS

1.      Complete Items 1 and 2.

2.      If you wish to opt out of the Releases, complete Item 3.

3.      Review the certification contained in Item 4.

4.      Review and, if applicable, complete the certification contained in Item 5.

5.      Review the certification contained in item 6

6.      Sign and date the Beneficial Holder Ballot and fill out the other required information (or otherwise follow the instructions of your Nominee).

7.      Return your completed Beneficial Holder Ballot to your Nominee so that your Nominee may complete the Master Ballot and return the Master Ballot to the Solicitation Agent no later than August 22, 2025 at 5:00 p.m. (prevailing Central Time).

8.      You must vote the full amount of your Class 3 Senior Secured Notes Claim *either* to accept *or* reject the Plan and may not split your vote.

9.      If you cast more than one Beneficial Holder Ballot voting the same Claims prior to the Voting Deadline, the latest dated, properly executed Beneficial Holder Ballot submitted to your Nominee or the Solicitation Agent, as applicable, will supersede any prior Beneficial Holder Ballot.

10.     If it is your Nominee's customary practice to collect your vote via voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

11.     The following Beneficial Holder Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (ii) any Beneficial Holder Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Beneficial Holder Ballot, (iv) any Beneficial Holder Ballot that does not contain an original signature, (v) any Beneficial Holder Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (vi) prior to the entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

12.     If a Beneficial Holder Ballot or Master Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion.  The method of delivery of the Beneficial Holder Ballot to the Nominee or the Solicitation Agent is at your election and risk.

13.     The Beneficial Holder Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

14.     In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Holder

Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15. There may be changes made to the Plan that do not have material adverse effects on an accepting Class. If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

**NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BENEFICIAL HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.**

[*Remainder of page left intentionally blank*]

8

**Item 1.**          **Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such a Beneficial Holder) of Class 3 Senior Secured Notes Claims, the CUSIP for which is indicated by your Nominee on <u>Appendix B</u> hereto, in the aggregate outstanding principal amount inserted into the box below, without regard to any accrued but unpaid interest.  If your Class 3 Senior Secured Notes Claims are held by a Nominee on your behalf and you do not know the principal amount of the Claims held, please contact your Nominee immediately to obtain the amount.

> $ _____

**Item 2.**          **Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to <u>Appendix A</u> and Article 10.6 of the Plan for information about the Releases.

Any Beneficial Holder Ballot that is executed by the Holder of a Class 3 Senior Secured Notes Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities.  Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The Beneficial Holder of the Class 3 Senior Secured Notes Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

> ☐ **ACCEPT** (vote FOR) the Plan.          ☐ **REJECT** (vote AGAINST) the Plan.

**Item 3.**          **Election to opt out of Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Releases.  **If you do not opt out of the Releases by checking the box below, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in the Plan.  If**

**you would otherwise be entitled to a Release under Section 10.6 of the Plan and set forth in <u>Appendix A,</u> but if you do not grant the Releases because you opted out, you will not receive the benefit of the Releases set forth in Section 10.6 of the Plan.  Please be advised that your decision to opt out <u>does not</u> affect the amount of distribution you will receive under the Plan. Specifically, your recovery under the Plan will be the same if you opt out; however, in the event you opt out of the Releases, you will <u>not</u> be granted a Release from the Releasing Parties under the Plan.  <u>You may wish to seek legal advice regarding your election.</u>**

---

☐ **Opt Out of the Releases**

---

**Item 4. Certification as to Class 3 Senior Secured Notes Claims Held in Additional Accounts.**

The undersigned hereby certifies that either (i) it has not submitted any other Beneficial Holder Ballots for other Class 3 Senior Secured Notes Claims held in other accounts or other record names, or (ii) if it has submitted Beneficial Holder Ballots for other Class 3 Senior Secured Notes Claims held in other accounts or other record names, then such Beneficial Holder Ballots indicate the same vote to accept or reject the Plan.  If the undersigned has submitted Beneficial Holder Ballots for other such Class 3 Senior Secured Notes Claims, then the undersigned certifies the accuracy of the information provided below as to such other Claims.

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED CLASS 3 – SENIOR SECURED NOTES CLAIMS ON A BENEFICIAL HOLDER BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

| Name of Beneficial Holder (or name of Nominee if Senior Secured Notes are held through a Nominee) | Account Number | Amount of Other Class 3 Senior Secured Notes Claims Voted | CUSIP of Other Class 3 Senior Secured Notes Claims Votes |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Item 5. Eligible Holder Certification.**

Prior to the entry of the solicitation procedures order, only Eligible Holders (as defined above) or their authorized signatories are entitled to vote. If you are an Eligible Holder, please confirm by checking the box below.

| Eligibility | | |
|---|---|---|
| The undersigned certifies that it is a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, as amended (the "Securities Act")), an "accredited investor" (as defined in Rule 501 of Regulation D of the Securities Act), or for a holder located outside of the United States, a person other than a "U.S. Person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. Person. | ☐ | By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder |

**Item 6. Certification.**

By returning this Beneficial Holder Ballot, the Holder of the Class 3 Senior Secured Notes Claims identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for the Class 3 Senior Secured Notes Claims identified in Item 1; (b) it was the Holder of the Class 3 Senior Secured Notes Claims identified in Item 1 as of the Voting Record Date and/or it has full power and authority to vote to accept or reject the Plan for the Class 3 Senior Secured Notes Claim identified in Item 1; (c) prior to the entry of the solicitation procedures order, it is (or is an authorized signatory of) an Eligible Holder (if voting prior to the entry of the solicitation procedures order); and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BENEFICIAL HOLDER BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____
Name of Beneficial Holder of Class 3 Senior Secured Notes Claims

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____

Street Address

_____

City, State, Zip Code

_____

Telephone Number

_____

Email Address

_____

Date Completed

This Beneficial Holder Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOU MUST FORWARD YOUR BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE WITH AMPLE TIME FOR YOUR NOMINEE TO COMPLETE THE MASTER BALLOT AND SUBMIT THE MASTER BALLOT TO THE SOLICITATION AGENT SO THAT THE SOLICITATION AGENT ACTUALLY RECEIVES THE MASTER BALLOT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 22, 2025, OR YOUR VOTE WILL NOT BE COUNTED.  PLEASE NOTE THAT YOUR NOMINEE MAY ESTABLISH AN EARLIER DEADLINE FOR YOU TO SUBMIT YOUR BENEFICIAL HOLDER BALLOT IN ORDER TO ALLOW ITSELF SUFFICIENT TIME TO DELIVER THE MASTER BALLOT TO THE SOLICITATION AGENT BY THE DEADLINE NOTED ABOVE.**

**Appendix A**

**Release, Injunction, and Exculpation Provisions in the Plan[1]**

---

[1]     Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

A.    Certain Relevant Definitions.

"*Exculpated Parties*" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"*Related Parties*" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"*Released Parties*" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"*Releases*" means, collectively, the releases set forth in Article 10.6 of the Plan.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.    Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**C.**     Section 10.6 of the Plan – Releases.

**1.**     <u>Releases by the Debtors</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

      **2.**    <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**     Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

Appendix B

Your Nominee may have checked a box below to indicate the CUSIP to which this Beneficial Holder Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Holder Ballot:

| Class 3 – Senior Secured Notes Claims | |
|---|---|
| ☐ | **977852 AE2 (Initial 144A)** |
| ☐ | **977852 AG7 (First Tranche 144A)** |
| ☐ | **977852 AF9 (Initial IAI)** |
| ☐ | **977852 AH5 (First Tranche IAI)** |
| ☐ | **U97162 AA6 (Initial Reg S)** |
| ☐ | **U97162 AB4 (First Tranche Reg S)** |

## **EXHIBIT 3-B**

Form of Class 3 Master Ballot (Senior Secured Notes Claims)

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| ----------------------------------------------------------- x | : | Chapter 11 |
| In re: | : | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| WOLFSPEED, INC., *et al.*, | : : | |
| Debtors.[1] | : | If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| ----------------------------------------------------------- x | : | |

### MASTER BALLOT FOR HOLDERS OF CLAIMS IN CLASS 3 (SENIOR SECURED NOTES CLAIMS) FOR VOTING TO ACCEPT OR REJECT THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF WOLFSPEED, INC. AND ITS DEBTOR AFFILIATE UNDER <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>

THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (AS MAY BE EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION, THE "*VOTING DEADLINE*")

PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, ONLY HOLDERS OF CLASS 3 SENIOR SECURED NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS ARE ENTITLED TO VOTE PURSUANT TO THIS MASTER BALLOT. ANY VOTE CAST ON THIS MASTER BALLOT PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER ON BEHALF OF A BENEFICIAL HOLDER WHO IS NOT ALSO AN ELIGIBLE HOLDER WILL NOT COUNT

AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 3 SENIOR SECURED NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS: (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D  OF THE SECURITIES ACT,) (OR THEIR AUTHORIZED SIGNATORIES); OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.

---

[1]   The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are:  Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

**A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 3 SENIOR SECURED NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.**

This master ballot (the "***Master Ballot***") is being submitted to brokers, dealers, commercial banks, trust companies, or other agent nominees ("***Nominees***") of beneficial holders of certain Claims (each a "***Beneficial Holder***") against Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***") in connection with the Debtors' solicitation of votes to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*, dated June 27, 2025 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*  (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Master Ballot and has also been posted on the Debtors' voting information website (**located at https://dm.epiq11.com/Wolfspeed**).  The Debtors' voting information website contains important information and other key deadlines.

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you or a Beneficial Holder of a Class 3 Senior Secured Notes Claim (as defined herein) does not have a copy or wish to obtain additional copies of the Plan and/or Disclosure Statement, please visit https://dm.epiq11.com/Wolfspeed or contact the Debtors' solicitation agent, Epiq Corporate Restructuring, LLC (the "***Solicitation Agent***"), at balloting@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).  Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at 646-362-6336.

This Master Ballot is being submitted to Nominees of Beneficial Holders, as of June 25, 2025 (the "***Voting Record Date***"), of any Claim in Class 3 arising under or related to the Senior Secured Notes Indenture, which CUSIPs are indicated on <u>Appendix B</u> hereto (the "***Senior Secured Notes Claims***").

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") following the commencement of this solicitation.

Upon receipt of these materials, you should <u>immediately</u> forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such Holders (the "***Beneficial Holder Ballot***") with a return envelope addressed to you, as provided in the attached instructions, if you intend to utilize the Master Ballot.  You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name and DTC Participant Number of the Nominee and (b) the principal amount of the Class 3 Senior Secured Notes Claims held by the Nominee for the Beneficial Holder, (ii) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class 3 Senior Secured Notes Claims owned by the Beneficial Holder as of the Voting Record Date, and (iii) forwarding

---

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

such Beneficial Holder Ballot, together with the Solicitation Materials, including a preaddressed, postage-paid return envelope addressed to the Solicitation Agent, to the Beneficial Holder.  The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, Item 4 and Item 5 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Solicitation Agent so that it is received before the Voting Deadline.

In addition, you are authorized to collect votes to accept or to reject the Plan from Holders of Class 3 Senior Secured Notes Claims in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Holders through online voting, by phone, facsimile, or other electronic means.

If the Debtors commence the Chapter 11 Cases,  the Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***") and thereby made binding on Holders of Class 3 Senior Secured Notes Claims if: (i) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in any Impaired Voting Class; and (ii) the Plan otherwise satisfies the applicable requirements of Section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of Section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on each of the Senior Secured Notes Claims Holder whether or not such Senior Secured Notes Claim Holder votes to accept or reject the Plan or does not vote.

Your receipt of this Master Ballot does not signify that a Beneficial Holder's Claim(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 Senior Secured Notes Claims.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan; and/or (ii) to opt out of the Releases as set forth in <u>Appendix A</u>.

[*Remainder of page left intentionally blank*]

3

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 3 SENIOR SECURED NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, except to the extent that a Holder of an Allowed Senior Secured Notes Claim agrees to less favorable treatment of its Allowed Senior Secured Notes Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed Senior Secured Notes Claim, on the Effective Date, each Holder of an Allowed Senior Secured Notes Claim shall receive its Pro Rata Share of:  (i) the New Senior Secured Notes; and (ii) the Effective Date Cash Payment.

**Please be advised that if the Plan is consummated, Holders of Class 3 Senior Secured Notes Claims will be bound by the release, injunction, and exculpation provisions contained in Section 10.6 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Releases, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

*[Remainder of page left intentionally blank]*

4

**IMPORTANT**

**YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU COMPLETE THE MASTER BALLOT.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.**

**THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.**

**VOTING RECORD DATE:  JUNE 25, 2025**

**VOTING DEADLINE: 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 22, 2025 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)**

---

**IF THE SOLICITATION AGENT DOES NOT ACTUALLY RECEIVE THE MASTER BALLOT BY THE VOTING DEADLINE, THE VOTES BY THE BENEFICIAL HOLDERS WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION BY THE BENEFICIAL HOLDERS TO OPT OUT OF THE RELEASES WILL NOT BE VALID.**

**YOU SHOULD NOT SEND THE MASTER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE MASTER BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.**

**IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON HOLDERS OF SENIOR SECURED NOTES CLAIMS WHETHER OR NOT THEY VOTE.**

*[Remainder of page left intentionally blank]*

5

## MASTER BALLOT INSTRUCTIONS

1. To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot with a return envelope addressed to you (unless you have elected to send pre-validated Beneficial Holder Ballots, in which case the return envelope should be addressed to the Solicitation Agent), so that such Holder may return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Solicitation Agent, such that the Solicitation Agent <u>actually receives</u> the Master Ballot before the Voting Deadline.

2. You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name and DTC Participant Number of the Nominee and (b) the principal amount of the Class 3 Senior Secured Notes Claims held by the Nominee for the Beneficial Holder, (ii) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class 3 Senior Secured Notes Claims owned by the Beneficial Holder as of the Voting Record Date, and (iii) forwarding such Beneficial Holder Ballot, together with the Solicitation Materials, including a preaddressed, postage-paid return envelope addressed to the Solicitation Agent, to the Beneficial Holder.  The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, Item 4 and Item 5 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Solicitation Agent so that it is received before the Voting Deadline.

3. With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (i) transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (ii) execute the Master Ballot; and (iii) deliver the Master Ballot to the Solicitation Agent in accordance with these instructions. Prior to entry of the solicitation procedures order, any Beneficial Holder Ballot received from a Beneficial Holder who has not certified therein that it is an Eligible Holder should not be included in this Master Ballot, and will not be counted.

4. Please keep any records of Beneficial Holder Ballots, whether in hard copy or by electronic direction, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court).  You may be ordered to produce the Beneficial Holder Ballots (or evidence of the votes submitted to you) to the Debtors or the Bankruptcy Court.

5. If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 3 Senior Secured Notes Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

6. The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any ballot that does not contain an original signature (provided, however, any valid ballot submitted electronically or by email shall be deemed to bear an original signature), (v) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (vi) prior to the entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

6

7.  If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion.  The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk.

8.  If a Beneficial Holder submits Ballots for multiple Class 3 Senior Secured Notes Claims, whether held in other accounts or other record names, and such Ballots indicate different or inconsistent votes to accept or reject the Plan, then all such Ballots will not be counted.

9.  For the avoidance of doubt, if it is your customary practice to collect votes from your Beneficial Holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

10. To the extent that conflicting votes or "over votes" are submitted by a Nominee, the Solicitation Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any over votes are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated Beneficial Holder Ballots that contained the over vote, but only to the extent of the Nominee's position in the applicable security.

11. The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

12. If a Beneficial Holder submits more than one Ballot voting the same Claims prior to the Voting Deadline, the latest dated, properly executed Ballot submitted will supersede any prior Ballot.

13. If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot

14. In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15. There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

16. NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<div style="border:1px solid black">

**<u>If by email</u>**

**Email completed Master Ballots to balloting@epiqglobal.com with the subject line "Wolfspeed Ballot"**

**<u>If by Regular Mail, Hand Delivery, or Overnight Courier</u>**

**Wolfspeed, Inc. Ballot Processing**
**c/o Epiq Ballot Processing**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

**(to arrange hand delivery of your Ballot, please email Wolfspeed@epiqglobal.com (with "Wolfspeed Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Solicitation Agent address above and provide the anticipated date and time of delivery)**

</div>

**THE VOTING DEADLINE IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

---

PLEASE COMPLETE ALL OF THE ITEMS BELOW BASED UPON ANY BENEFICIAL HOLDER
BALLOTS RECEIVED.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED,
THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

---

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐　　　is a Nominee for the Beneficial Holders in the principal amount of Class 3 Senior Secured Notes Claims listed in Item 2 below and is the registered holder of such Class 3 Senior Secured Notes Claims; or

☐　　　is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Class 3 Senior Secured Notes Claims in the principal amount listed in Item 2 below; or

☐　　　has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of Class 3 Senior Secured Notes Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 3 Senior Secured Notes Claims in the principal amount listed in Item 2 below.

**Item 2. Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class 3 Senior Secured Notes Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[3]

If the Beneficial Holder has checked the box on Item 5 of the Beneficial Holder Ballot pertaining to the Beneficial Holder being an Eligible Holder, please place an X in the appropriate column below for each Beneficial Holder that checked the box.

**VOTE ONE CUSIP PER MASTER BALLOT AND CHECK A BOX BELOW TO
INDICATE THE CUSIP VOTED ON THIS BALLOT**

---

[3]　Indicate in the appropriate column the principal amount of the Senior Secured Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  You may also provide a spreadsheet if additional space is needed.

Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

Prior to the entry of the solicitation procedures order, Beneficial Holder Ballots received from Beneficial Holders who do not certify as to their Eligible Holder status should not be included on this Master Ballot, and will not be counted.

| CUSIP: | 977852 AE2 (Initial 144A) | ☐ |
|---|---|---|
| CUSIP: | 977852 AF9 (Initial IAI) | ☐ |
| CUSIP: | U97162 AA6 (Initial Reg S) | ☐ |
| CUSIP: | 977852 AG7 (First Tranche 144A) | ☐ |
| CUSIP: | 977852 AH5 (First Tranche IAI) | ☐ |
| CUSIP: | U97162 AB4 (First Tranche Reg S) | ☐ |

| Your Customer Account Number for Each Beneficial Holder of Class 3 Senior Secured Notes Claims that Voted | Principal Amount of Senior Secured Notes Claims Held by Your Customer | Item 2. Vote on Plan | | Optional Release Opt-Out Election | Eligible Holder Certification |
|---|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 | Place a check below if the Beneficial Holder checked the box in Item 5 |
| 1. | | ☐ | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ | ☐ |

**Item 3. Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 3 Senior Secured Notes Claims Voted Through Other Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 4 of the Beneficial Holder Ballot, identifying any Class 3 Senior Secured Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Holder That Completed Item 4 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 4 OF THE BALLOTS: | | | |
| --- | --- | --- | --- | --- |
| | Name of Beneficial Holder (or name of Nominee if notes are held through a Nominee) | Account Number | Principal Amount of Other Class 3 Senior Secured Notes Claims Voted | CUSIP Number of Other Class 3 Senior Secured Notes Claims Voted |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)    (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 3 Senior Secured Notes Claims through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)    the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 3 Senior Secured Notes Claims through the undersigned; (ii) the respective amounts of Class 3 Senior Secured Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; (iv) each such Beneficial Holder's election with respect to the optional release election; (v) prior to the entry of the solicitation procedures order, each such Beneficial Holder's Eligible Holder status certification; and (vi) the customer account or other identification number for each such Beneficial Holder;

(c)    if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 3 Senior Secured Notes Claims, the undersigned confirms and attests to each of the certifications in Item 6 of the Beneficial Holder Ballot;

  (d)  each such Beneficial Holder has certified to the undersigned that such beneficial holder is a Beneficial Holder and/or is otherwise eligible to vote on the Plan; and

  (e)  the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

**Nominee Information and Signature.**

_____
Name of Nominee or Custodian

_____
DTC Participant Number

_____
Name of Proxy Holder or Agent for Nominee (if applicable)

_____
Signature

_____
Name of Signatory

_____
Title

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

This Master Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 22, 2025.**

Appendix A

Release, Injunction, And Exculpation Provisions in the Plan[1]

---

A.      Certain Relevant Definitions.

"*Exculpated Parties*" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"*Related Parties*" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"*Released Parties*" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"*Releases*" means, collectively, the releases set forth in Article 10.6 of the Plan.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.      Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

  **C.**  Section 10.6 of the Plan – Releases.

  **1.**  <u>Releases by the Debtors</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

    **2.**    <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**     Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

<u>Appendix B</u>

**This Master Ballot pertains to the below CUSIPS.**

| Class 3 – Senior Secured Notes Claims CUSIPS |
|:---:|
| **977852 AE2 (Initial 144A)** |
| **977852 AG7 (First Tranche 144A)** |
| **977852 AF9 (Initial IAI)** |
| **977852 AH5 (First Tranche IAI)** |
| **U97162 AA6 (Initial Reg S)** |
| **U97162 AB4 (First Tranche Reg S)** |

**EXHIBIT 3-C**

Form of Class 3 Registered Holder Ballot (Senior Secured Notes Claims)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

---------------------------------------------------------- x

In re:

WOLFSPEED, INC., *et al.*,

Debtors.[1]

---------------------------------------------------------- x

: Chapter 11
:
: IMPORTANT: No chapter 11 cases have been
: commenced as of the date of distribution of this ballot.
: This ballot is a prepetition solicitation of your vote on
: a prepackaged plan of reorganization.
:
: If chapter 11 cases are commenced, the Debtors will
: request joint administration of such cases.
:

**REGISTERED HOLDER BALLOT FOR HOLDERS OF CLAIMS IN CLASS 3 (SENIOR
SECURED NOTES CLAIMS) FOR VOTING TO ACCEPT OR REJECT THE JOINT
PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF WOLFSPEED,
INC. AND ITS DEBTOR AFFILIATE UNDER CHAPTER 11
OF THE BANKRUPTCY CODE**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (AS MAY BE
EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION, THE "*VOTING
DEADLINE*")**

---

Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***"), are sending this registered holder ballot (the "***Registered Holder Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*, dated June 27, 2025 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as Exhibit A to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Registered Holder Ballot and has also been posted on the Debtors' voting information website (located at **https://dm.epiq11.com/Wolfspeed**).  The Debtors' voting information website contains important information and key deadlines.

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you have not received or wish to obtain additional copies of the Plan and/or Disclosure Statement, please visit https://dm.epiq11.com/Wolfspeed or contact the Debtors' solicitation agent, Epiq Corporate

---

[1]   The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

Restructuring, LLC (the "**_Solicitation Agent_**"), at balloting@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).

This Registered Holder Ballot is being submitted to Holders, as of June 25, 2025 (the "**_Voting Record Date_**"), of any Claim in Class 3 arising under or related to the Senior Secured Notes Indenture (the "**_Senior Secured Notes Claims_**").

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "**_Chapter 11 Cases_**") under chapter 11 of title 11 of the United States Code (the "**_Bankruptcy Code_**") following the commencement of this solicitation.

If the Debtors commence the Chapter 11 Cases, the Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**_Bankruptcy Court_**") and thereby made binding on you if: (i) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in each impaired class of Claims and (ii) the Plan otherwise satisfies the applicable requirements of Section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class rejecting the Plan and (z) otherwise satisfies the requirements of Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on each Senior Secured Notes Claims Holder whether or not such Senior Secured Notes Claims Holder votes to accept or reject the Plan or does not vote.

All pleadings and notices relating to the Debtors' Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings), will be made available for review on the case information website of the Solicitation Agent at https://dm.epiq11.com/Wolfspeed.

Holders of Class 3 Senior Secured Notes Claims are Impaired under the Plan and are, therefore, entitled to vote to accept or reject the Plan.  In order for your vote to count, your Registered Holder Ballot must be completed and returned to the Solicitation Agent so that it is actually received by the Solicitation Agent on or prior to the Voting Deadline.

This Registered Holder Ballot is _not_ a letter of transmittal and may _not_ be used for any purpose other than (i) to cast a vote to accept or reject the Plan; and/or (ii) to opt out of the Releases (as defined below).

**IMPORTANT NOTICE REGARDING TREATMENT**
**FOR HOLDERS OF CLASS 3 SENIOR SECURED NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, except to the extent that a Holder of an Allowed Senior Secured Notes Claim agrees to less favorable treatment of its Allowed Senior Secured Notes Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed Senior Secured Notes Claim, on the Effective Date, each Holder of an Allowed Senior Secured Notes Claim shall receive its Pro Rata Share of: (i) the New Senior Secured Notes; and (ii) the Effective Date Cash Payment.

**Please be advised that if the Plan is consummated, Holders of Class 3 Senior Secured Notes Claims will be bound by the release, injunction, and exculpation provisions contained in Section 10.6 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Releases, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

*[Remainder of page left intentionally blank]*

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  JUNE 25, 2025

VOTING DEADLINE:  5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 22, 2025 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS REGISTERED HOLDER BALLOT TO THE SOLICITATION AGENT, SUCH THAT THE REGISTERED HOLDER BALLOT IS **ACTUALLY RECEIVED** BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  IF THE SOLICITATION AGENT DOES NOT **ACTUALLY RECEIVE** THE REGISTERED HOLDER BALLOT INDICATING YOUR VOTE CAST ON YOUR REGISTERED HOLDER BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE RELEASES WILL NOT BE VALID.

YOU SHOULD NOT SEND YOUR REGISTERED HOLDER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE REGISTERED HOLDER BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

IF YOU VOTE PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, YOU CERTIFY TO THE DEBTORS THAT YOU ARE AN ELIGIBLE HOLDER.

AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 3 SENIOR SECURED NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS: (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED

IN RULE 501 OF REGULATION D OF THE SECURITIES ACT,) (OR THEIR AUTHORIZED SIGNATORIES); OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.

A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 3 SENIOR SECURED NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.

PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, ONLY ELIGIBLE HOLDERS ARE ENTITLED TO VOTE PURSUANT TO THIS REGISTERED HOLDER BALLOT. IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS REGISTERED HOLDER BALLOT UNTIL AFTER THE BANKRUPTCY COURT HAS ENTERED THE SOLICITATION PROCEDURES ORDER. ANY REGISTERED HOLDER BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER BEFORE THE BANKRUPTCY COURT HAS ENTERED THE SOLICITATION PROCEDURES ORDER WILL NOT BE COUNTED.

[*Remainder of page left intentionally blank*]

5

## REGISTERED HOLDER BALLOT INSTRUCTIONS

1.      Complete Item 1.

2.      Complete Item 2.

3.      If you wish to opt out of the Releases, complete Item 3.

4.      Review and, if applicable, complete the certification contained in Item 4.

5.      Review the certification contained in Item 5.

6.      Sign and date the Registered Holder Ballot and fill out the other required information.

7.      Return your completed Registered Holder Ballot to the Solicitation Agent no later than August 22, 2025 at 5:00 p.m. (prevailing Central Time).

8.      You must vote the full amount of your Class 3 Senior Secured Notes Claim *either* to accept *or* reject the Plan and may not split your vote.

9.      If you cast more than one Registered Holder Ballot voting the same Claims prior to the Voting Deadline, the latest dated, properly executed Registered Holder Ballot submitted to the Solicitation Agent will supersede any prior Registered Holder Ballot.

10.     The following Registered Holder Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Registered Holder Ballot that is illegible or contains insufficient information to permit the identification of the Registered Holder, (ii) any Registered Holder Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Registered Holder Ballot, (iv) any Registered Holder Ballot that does not contain an original signature, and (v) any Registered Holder Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (vi) prior to the entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

11.     If a Registered Holder Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion.  The method of delivery of the Registered Holder Ballot to the Solicitation Agent is at your election and risk.

12.     The Registered Holder Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

13.     In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Registered Holder Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

14.     There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

6

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS REGISTERED HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED REGISTERED HOLDER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<div align="center">

**<u>Via E-Ballot Portal</u>**

**Submit your Registered Holder Ballot via the Solicitation Agent's online portal, by visiting https://dm.epiq11.com/wolfspeed. Click on the "E-Ballot link" under the Case Action section of the website and follow the instructions to submit your E-Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID: _____**

**<u>If by Regular Mail, Hand Delivery, or Overnight Courier</u>**

**Wolfspeed, Inc.**
**c/o Epiq Ballot Processing**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

**(to arrange hand delivery of your Registered Holder Ballot, please email Balloting@epiqglobal.com (with "Wolfspeed Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Solicitation Agent address above and provide the anticipated date and time of delivery)**

</div>

**THE VOTING DEADLINE IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

*[Remainder of page left intentionally blank]*

**Item 1.**          **Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 3 Senior Secured Notes Claims in the aggregate outstanding principal amount inserted into the box below.

> $ _____

**Item 2.**          **Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to <u>Appendix A</u> and Article 10.6 of the Plan for information about the Releases.

Any Registered Holder Ballot that is executed by the Holder of a Class 3 Senior Secured Notes Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities.  Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The Holder of the Class 3 Senior Secured Notes Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

| ☐ **ACCEPT** (vote FOR) the Plan. | ☐ **REJECT** (vote AGAINST) the Plan. |

**Item 3.**          **Election to opt out of Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Releases.  **If you do not opt out of the Releases by checking the box below, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in the Plan.  If you would otherwise be entitled to a Release under Section 10.6 of the Plan and set forth in <u>Appendix A,</u> but if you do not grant the Releases because you opted out, you will not receive the benefit of the Releases set forth in Section 10.6 of the Plan.  Please be advised that your decision to opt out <u>does not</u> affect the amount of distribution you will receive under the Plan.**

8

**Specifically, your recovery under the Plan will be the same if you opt out; however, in the event you opt out of the Releases, you will <u>not</u> be granted a Release from the Releasing Parties under the Plan. You may wish to seek legal advice regarding your decision.**

☐ **Opt Out of the Releases**

**Item 4.        Eligible Holder Certification.**

Prior to the entry of the solicitation procedures order, only Eligible Holders (as defined in Rule 501(a) of the Securities Act of 1933, as amended) or their authorized signatories are entitled to vote. If you are an Eligible Holder, please confirm by checking the box below.

| Eligibility | | |
|---|---|---|
| The undersigned certifies that it is a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, as amended (the "Securities Act")), an "accredited investor" (as defined in Rule 501 of Regulation D of the Securities Act) or for a holder located outside of the United States, a person other than a "U.S. Person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. Person. | ☐ | By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder |

**Item 5.        Certification.**

By returning this Registered Holder Ballot, the Holder of the Class 3 Senior Secured Notes Claim identified in Item 1 certifies that (a) this Registered Holder Ballot is the only Registered Holder Ballot submitted for the Senior Secured Notes Claim identified in Item 1; (b) it was the Holder of the Senior Secured Notes Claim identified in Item 1 as of the Voting Record Date and/or it has full power and authority to vote to accept or reject the Plan for the Class 3 Senior Secured Notes Claim identified in Item 1; (c) prior to the entry of the solicitation procedures order, it is (or is an authorized signatory of) an Eligible Holder; and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS REGISTERED HOLDER BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____

Name of Holder of Class 3 Senior Secured Notes Claims

_____

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

This Registered Holder Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOU MUST SEND YOUR REGISTERED HOLDER BALLOT TO THE SOLICITATION AGENT SO THAT THE SOLICITATION AGENT ACTUALLY RECEIVES THE REGISTERED HOLDER BALLOT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 22, 2025, OR YOUR VOTE WILL NOT BE COUNTED.**

Appendix A

Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

A.    Certain Relevant Definitions.

"***Exculpated Parties***" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"***Related Parties***" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"***Releases***" means, collectively, the releases set forth in Article A of the Plan.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.    Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are,

to the fullest extent provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated).  All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**C.**     Section 10.6 of the Plan – Releases.

    1.     <u>Releases by the Debtors</u>.

3

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors,  that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt,

4

fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

2.     Releases by Holders of Claims and Interests.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the

Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors.  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**   Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document

6

created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

## EXHIBIT 4-A

Form of Class 4 Beneficial Holder Ballot (Convertible Notes Claims)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| ------------------------------------------------------- x | Chapter 11 | |

In re:

WOLFSPEED, INC., *et al.*,

Debtors.[1]

------------------------------------------------------- x

IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization.

If chapter 11 cases are commenced, the Debtors will request joint administration of such cases.

**BENEFICIAL HOLDER BALLOT FOR HOLDERS OF CLAIMS IN CLASS 4
(CONVERTIBLE NOTES CLAIMS) FOR VOTING TO ACCEPT OR REJECT THE
JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF
WOLFSPEED, INC. AND ITS DEBTOR AFFILIATE UNDER CHAPTER 11
OF THE BANKRUPTCY CODE**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (AS MAY BE
EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION, THE "*VOTING
DEADLINE*")**

---

Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***") are sending this beneficial holder ballot (the "***Beneficial Holder Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*, dated June 27, 2025 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as <u>Exhibit A</u> to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*  (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Beneficial Holder Ballot and has also been posted on the Debtors' voting information website (located at **https://dm.epiq11.com/Wolfspeed**).  The Debtors' voting information website contains important information and key deadlines.

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you have not received or wish to obtain additional copies of the Plan and/or Disclosure Statement, please visit https://dm.epiq11.com/wolfspeed or contact the Debtors' solicitation agent, Epiq Corporate

---

[1]   The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are:  Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

Restructuring, LLC (the "**Solicitation Agent**"), at balloting@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).

This Beneficial Holder Ballot is being submitted to Beneficial Holders, as of June 25, 2025 (the "**Voting Record Date**"), of any Claim in Class 4 arising under or related to the Convertible Notes Indenture, which CUSIPs are indicated on Appendix B hereto (the "**Convertible Notes Claims**").

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") following the commencement of this solicitation.

If the Debtors commence the Chapter 11 Cases,  the Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in any Impaired Voting Classes and (ii) the Plan otherwise satisfies the applicable requirements of Section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class rejecting the Plan and (z) otherwise satisfies the requirements of Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on the Convertible Noteholders whether or not a Convertible Noteholder votes to accept or reject the Plan or does not vote.

All pleadings and notices relating to the Debtors' Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings), will be made available for review on the case information website of the Solicitation Agent at https://dm.epiq11.com/wolfspeed.

Holders of Class 4 Convertible Notes Claims are Impaired under the Plan and are, therefore, entitled to vote to accept or reject the Plan.  You can cast your vote through this Beneficial Holder Ballot and return it to your broker, bank, or other nominee, or the agent of such broker, bank, or other nominee (each of the foregoing, a "**Nominee**"), in each case as of the Voting Record Date, in accordance with the instructions provided by your Nominee, who will then process your vote and include it on a master ballot (a "**Master Ballot**") that your Nominee will return to the Solicitation Agent.  For your vote to count, your Beneficial Holder Ballot must be completed and returned to your Nominee in accordance with your Nominee's instructions, in all cases allowing sufficient time for your Nominee to receive and process your completed Beneficial Holder Ballot, then complete and return the Master Ballot to the Solicitation Agent so that it is actually received by the Solicitation Agent on or prior to the Voting Deadline.

This Beneficial Holder Ballot is for Holders of Class 4 Convertible Notes Claims, which applicable CUSIPs for which are set forth on Appendix B hereto.

2

This Beneficial Holder Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan; and/or (ii) to opt out of the Releases (as defined below).

[*Remainder of page left intentionally blank*]

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 4 CONVERTIBLE NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, except to the extent that a Holder of an Allowed Convertible Notes Claim agrees to less favorable treatment of its Allowed Convertible Notes Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed Convertible Notes Claim, on the Effective Date, each Holder of an Allowed Convertible Notes Claim shall receive its Pro Rata Share of (i) the New 2L Convertible Notes Rights (subject to the Initial Backstop Parties' Premium and the Backstop Holdback Allocation); (ii) the New 2L Takeback Notes; and (iii) 56.3% of the New Common Stock (subject to dilution from, where applicable, the conversion of the New 2L Convertible Notes (including those issued on account of the Backstop Premium), the conversion of the New Renesas 2L Takeback Convertible Notes, the Incentive Plans, and the exercise of the Renesas Warrants).

**Please be advised that if the Plan is consummated, Holders of Class 4 Convertible Notes Claims will be bound by the release, injunction, and exculpation provisions contained in Section 10.6 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Releases, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

*[Remainder of page left intentionally blank]*

4

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  JUNE 25, 2025

VOTING DEADLINE:  5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 22, 2025   (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE WITH SUFFICIENT TIME FOR YOUR NOMINEE TO RECEIVE YOUR VOTE, COMPLETE THE MASTER BALLOT AND RETURN THE MASTER BALLOT TO THE SOLICITATION AGENT, SUCH THAT THE MASTER BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE MASTER BALLOT INDICATING YOUR VOTE CAST ON YOUR BENEFICIAL HOLDER BALLOT (OR OTHERWISE IN ACCORDANCE WITH YOUR NOMINEE'S INSTRUCTIONS) BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE RELEASES WILL NOT BE VALID.

IF YOUR NOMINEE CHOSE TO SEND YOU A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, YOUR NOMINEE WILL HAVE ALREADY COMPLETED ITEM 6 BELOW (INCLUDING SPECIFYING THE NOMINEE'S DTC PARTICIPANT NUMBER) AND EXECUTED THIS BENEFICIAL HOLDER BALLOT ON YOUR BEHALF, WITH YOUR BENEFICIAL ACCOUNT NUMBER OR NAME, THE AMOUNT OF CLAIMS HELD BY THE BENEFICIAL HOLDER AS OF THE VOTING RECORD DATE, AND A MEDALLION GUARANTEE STAMP CONFIRMING THE AMOUNT OF YOUR CLASS 4 CLAIM.  IF YOU RECEIVED A PRE-VALIDATED BENEFICIAL HOLDER BALLOT, PLEASE COMPLETE THE REMAINING ITEMS ON THE BENEFICIAL HOLDER BALLOT AND RETURN THE BENEFICIAL HOLDER BALLOT DIRECTLY TO THE SOLICITATION AGENT BY NO LATER THAN THE VOTING DEADLINE USING THE RETURN ENVELOPE PROVIDED IN THE SOLICITATION

5

MATERIALS.  IF NO RETURN ENVELOPE WAS PROVIDED, YOU SHOULD CONTACT THE SOLICITATION AGENT FOR INSTRUCTIONS.

YOU SHOULD NOT SEND YOUR BENEFICIAL HOLDER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS. IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

IF YOU VOTE PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, YOU CERTIFY TO THE DEBTORS THAT YOU ARE AN ELIGIBLE HOLDER.

AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 4 CONVERTIBLE NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS: (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D  OF THE SECURITIES ACT) (OR THEIR AUTHORIZED SIGNATORIES); OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.

A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 4 CONVERTIBLE NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.

PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, ONLY ELIGIBLE HOLDERS ARE ENTITLED TO VOTE PURSUANT TO THIS BENEFICIAL HOLDER BALLOT. IF YOU ARE NOT AN ELIGIBLE HOLDER, YOU SHOULD NOT SUBMIT THIS BALLOT OR CAUSE YOUR NOMINEE TO SUBMIT THIS BALLOT ON YOUR BEHALF PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER. ANY BENEFICIAL HOLDER BALLOT RECEIVED BY A NON-ELIGIBLE HOLDER BEFORE THE BANKRUPTCY COURT HAS ENTERED THE SOLICITATION PROCEDURES ORDER WILL NOT BE COUNTED.

[*Remainder of page left intentionally blank*]

## BENEFICIAL HOLDER BALLOT INSTRUCTIONS

1. Complete Items 1 and 2.

2. If you wish to opt out of the Releases, complete Item 3.

3. Review the certification contained in Item 4.

4. Review and, if applicable, complete the certification contained in Item 5.

5. Review the certification contained in Item 6.

6. Sign and date the Beneficial Holder Ballot and fill out the other required information (or otherwise follow the instructions of your Nominee).

7. Return your completed Beneficial Holder Ballot to your Nominee so that your Nominee may complete the Master Ballot and return the Master Ballot to the Solicitation Agent no later than August 22, 2025 at 5:00 p.m. (prevailing Central Time).

8. You must vote the full amount of your Class 4 Convertible Notes Claim *either* to accept *or* reject the Plan and may not split your vote.

9. If you cast more than one Beneficial Holder Ballot voting the same Claims prior to the Voting Deadline, the latest dated, properly executed Beneficial Holder Ballot submitted to your Nominee or the Solicitation Agent, as applicable, will supersede any prior Beneficial Holder Ballot.

10. If it is your Nominee's customary practice to collect your vote via voter information form, e-mail, telephone, or other means in lieu of this Beneficial Holder Ballot, you may follow your Nominee's instructions regarding the submission of your vote.

11. The following Beneficial Holder Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Beneficial Holder Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (ii) any Beneficial Holder Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Beneficial Holder Ballot, (iv) any Beneficial Holder Ballot that does not contain an original signature, (v) any Beneficial Holder Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (vi) prior to the entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

12. If a Beneficial Holder Ballot or Master Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion. The method of delivery of the Beneficial Holder Ballot to the Nominee or the Solicitation Agent is at your election and risk.

13. The Beneficial Holder Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

14. In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Beneficial Holder

7

Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15.    There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BENEFICIAL HOLDER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

*[Remainder of page left intentionally blank]*

8

**Item 1.        Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Beneficial Holder (or authorized signatory of such a Beneficial Holder) of Class 4 Convertible Notes Claims, the CUSIPs for which is indicated by your Nominee on <u>Appendix B</u> hereto, in the aggregate outstanding principal amount inserted into the box below, without regard to any accrued but unpaid interest.  If your Class 4 Convertible Notes Claims are held by a Nominee on your behalf and you do not know the principal amount of the Claims held, please contact your Nominee immediately to obtain the amount.

| |
|---|
| $ _____ |

**Item 2.        Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to <u>Appendix A</u> and Article 10.6 of the Plan for information about the Releases.

Any Beneficial Holder Ballot that is executed by the Holder of a Class 4 Convertible Notes Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities.  Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The Holder of the Class 4 Convertible Notes Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

| |
|---|
| ☐ **ACCEPT** (vote FOR) the Plan.        ☐ **REJECT** (vote AGAINST) the Plan. |

**Item 3.        Election to opt out of Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Releases**.  If you do not opt out of the Releases by checking the box below, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in the Plan.  If**

**you would otherwise be entitled to a release under Section 10.6 of the Plan and set forth in <u>Appendix A,</u> but if you do not grant the Releases because you opted out, you will not receive the benefit of the Releases set forth in Section 10.6 of the Plan.  Please be advised that your decision to opt out <u>does not</u> affect the amount of distribution you will receive under the Plan.  Specifically, your recovery under the Plan will be the same if you opt out; however, in the event you opt out of the Releases, you will <u>not</u> be granted a release from the Releasing Parties under the Plan.  <u>You may wish to seek legal advice regarding your election.</u>**

<div style="border:1px solid black; text-align:center; padding:10px;">

☐ **Opt Out of the Releases**

</div>

**Item 4. Certification as to Class 4 Convertible Notes Claims Held in Additional Accounts.**

The undersigned hereby certifies that either (i) it has not submitted any other Beneficial Holder Ballots for other Class 4 Convertible Notes Claims held in other accounts or other record names, or (ii) if it has submitted Beneficial Holder Ballots for other Class 4 Convertible Notes Claims held in other accounts or other record names, then such Beneficial Holder Ballots indicate the same vote to accept or reject the Plan.  If the undersigned has submitted Beneficial Holder Ballots for other such Class 4 Convertible Notes Claims, then the undersigned certifies the accuracy of the information provided below as to such other Claims.

ONLY COMPLETE THIS SECTION IF YOU HAVE VOTED CLASS 4 – CONVERTIBLE NOTES CLAIMS ON A BENEFICIAL HOLDER BALLOT OTHER THAN THIS BENEFICIAL HOLDER BALLOT.

| Name of Beneficial Holder (or name of Nominee if Convertible Notes are held through a Nominee) | Account Number | Amount of Other Class 4 Convertible Notes Claims Voted | CUSIP of Other Class 4 Convertible Notes Claims Votes |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**Item 5.        Eligible Holder Certification.**

Prior to the entry of the solicitation procedures order, only Eligible Holders (as defined above) or their authorized signatories are entitled to vote. If you are an Eligible Holder, please confirm by checking the box below.

| Eligibility | | |
|---|---|---|
| The undersigned certifies that it is a "qualified institutional buyer" (as defined in Rule 144A of the Securities Act of 1933, as amended (the "Securities Act")), an "accredited investor" (as defined in Rule 501 of Regulation D of the Securities Act), or for a holder located outside of the United States, a person other than a "U.S. Person" (as defined in Rule 902(k) of Regulation S of the Securities Act) and not participating on behalf of or on account of a U.S. Person. | ☐ | By checking this box, the Holder of the Claims identified in Item 1 certifies that it is an Eligible Holder |

**Item 6.        Certification.**

By returning this Beneficial Holder Ballot, the Holder of the Class 4 Convertible Notes Claim identified in Item 1 certifies that (a) this Beneficial Holder Ballot is the only Beneficial Holder Ballot submitted for the Class 4 Convertible Notes Claim identified in Item 1; (b) it was the Holder of the Class 4 Convertible Notes Claim identified in Item 1 as of the Voting Record Date and/or it has full power and authority to vote to accept or reject the Plan for the Class 4 Convertible Notes Claim identified in Item 1; (c) it is (or is an authorized signatory of) an Eligible Holder (if voting prior to the entry of the solicitation procedures order); and (d) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BENEFICIAL HOLDER BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____
Name of Holder of Class 4 Convertible Notes Claim

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

This Beneficial Holder Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOU MUST FORWARD YOUR BENEFICIAL HOLDER BALLOT TO YOUR NOMINEE WITH AMPLE TIME FOR YOUR NOMINEE TO COMPLETE THE MASTER BALLOT AND SUBMIT THE MASTER BALLOT TO THE SOLICITATION AGENT SO THAT THE SOLICITATION AGENT ACTUALLY RECEIVES THE MASTER BALLOT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 22, 2025, OR YOUR VOTE WILL NOT BE COUNTED.  PLEASE NOTE THAT YOUR NOMINEE MAY ESTABLISH AN EARLIER DEADLINE FOR YOU TO SUBMIT YOUR BENEFICIAL HOLDER BALLOT IN ORDER TO ALLOW ITSELF SUFFICIENT TIME TO DELIVER THE MASTER BALLOT TO THE SOLICITATION AGENT BY THE DEADLINE NOTED ABOVE.**

<u>Appendix A</u>

Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1]    Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

A.      Certain Relevant Definitions.

"*Exculpated Parties*" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"*Related Parties*" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"*Released Parties*" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"*Releases*" means, collectively, the releases set forth in Article 10.6 of the Plan.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.      Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

C.     Section 10.6 of the Plan – Releases.

1.     <u>Releases by the Debtors.</u>

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

3

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct). Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

    **2.**    <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**      Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

<u>Appendix B</u>

Your Nominee may have checked a box below to indicate the CUSIP to which this Beneficial Holder Ballot pertains, or otherwise provided that information to you on a label or schedule attached to the Beneficial Holder Ballot:

| Class 4 – Convertible Notes Claims | |
| --- | --- |
| ☐ | **225447AD3 (2026 Convertible Notes)** |
| ☐ | **977852AB8 (2028 Convertible Notes)** |
| ☐ | **977852AD4 (2029 Convertible Notes)** |

**EXHIBIT 4-B**

Form of Master Ballot for Class 4 (Convertible Notes Claims)

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ------------------------------------------------------------ x | | Chapter 11 |
| | : | |
| In re: | : | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| | : | |
| WOLFSPEED, INC., *et al.*, | : | |
| | : | |
| Debtors.[1] | : | If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| | : | |
| ------------------------------------------------------------ x | | |

**MASTER BALLOT FOR HOLDERS OF CLAIMS IN CLASS 4 (CONVERTIBLE NOTES CLAIMS) FOR VOTING TO ACCEPT OR REJECT THE JOINT PREPACKAGED CHAPTER 11 PLAN OF REORGANIZATION OF WOLFSPEED, INC. AND ITS DEBTOR AFFILIATE UNDER <u>CHAPTER 11 OF THE BANKRUPTCY CODE</u>**

---

**THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (AS MAY BE EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION, THE "*VOTING DEADLINE*")**

**PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER, ONLY HOLDERS OF CLASS 4 CONVERTIBLE NOTES CLAIMS WHO ARE ELIGIBLE HOLDERS ARE ENTITLED TO VOTE PURSUANT TO THIS MASTER BALLOT. ANY VOTE CAST ON THIS MASTER BALLOT PRIOR TO THE ENTRY OF THE SOLICITATION PROCEDURES ORDER ON BEHALF OF A BENEFICIAL HOLDER WHO IS NOT ALSO AN ELIGIBLE HOLDER WILL NOT COUNT**

---

**AN "ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 4 CONVERTIBLE NOTES CLAIM THAT CERTIFIES TO THE REASONABLE SATISFACTION OF THE DEBTORS THAT IT IS: (I) A "QUALIFIED INSTITUTIONAL BUYER" (AS DEFINED IN RULE 144A OF THE SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT")), (II) AN "ACCREDITED INVESTOR" (AS DEFINED IN RULE 501 OF REGULATION D OF THE SECURITIES ACT,) (OR THEIR AUTHORIZED SIGNATORIES); OR (III) FOR HOLDERS LOCATED OUTSIDE THE UNITED STATES, A PERSON OTHER THAN A "U.S. PERSON" (AS DEFINED IN RULE 902(K) OF REGULATION S OF THE SECURITIES ACT) AND NOT PARTICIPATING ON BEHALF OF OR ON ACCOUNT OF A U.S. PERSON.**

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339). The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

**A "NON-ELIGIBLE HOLDER" IS A HOLDER OF A CLASS 4 CONVERTIBLE NOTES CLAIM THAT IS NOT AN ELIGIBLE HOLDER.**

This master ballot (the "***Master Ballot***") is being submitted to brokers, dealers, commercial banks, trust companies, or other agent nominees ("***Nominees***") of beneficial holders of certain Claims (each a "***Beneficial Holder***") against Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***") in connection with the Debtors' solicitation of votes to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*, dated June 27, 2025 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as Exhibit A to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Master Ballot and has also been posted on the Debtors' voting information website (**located at https://dm.epiq11.com/Wolfspeed**).  The Debtors' voting information website contains important information and other key deadlines.

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you or a Beneficial Holder of a Class 4 Convertible Notes Claim (as defined herein) does not have a copy or wish to obtain additional copies of the Plan and/or Disclosure Statement, please visit https://dm.epiq11.com/Wolfspeed or contact the Debtors' solicitation agent, Epiq Corporate Restructuring, LLC (the "***Solicitation Agent***"), at balloting@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).  Copies of the Plan and Disclosure Statement may also be obtained by calling the Solicitation Agent at 646-362-6336.

This Master Ballot is being submitted to Nominees of Beneficial Holders, as of June 25, 2025 (the "***Voting Record Date***"), of any Claim arising under or related to the Convertible Notes Indenture, which CUSIPs are indicated on Appendix B hereto (the "***Convertible Notes Claims***").

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "***Chapter 11 Cases***") under chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***") following the commencement of this solicitation.

Upon receipt of these materials, you should immediately forward to the Beneficial Holders the Disclosure Statement and the form of ballot for such Holders (the "***Beneficial Holder Ballot***") with a return envelope addressed to you, as provided in the attached instructions, if you intend to utilize the Master Ballot.  You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name and DTC Participant Number of the Nominee and (b) the principal amount of the Class 4 Convertible Notes Claims held by the Nominee for the Beneficial Holder, (ii) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class 4 Convertible Notes Claims owned by the Beneficial Holder as of the Voting Record Date, and (iii) forwarding such Beneficial Holder Ballot, together with the Solicitation Materials, including a preaddressed,

---

[2]   Capitalized terms used but not defined herein have the meanings given to them in the Plan.

postage-paid return envelope addressed to the Solicitation Agent, to the Beneficial Holder.  The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, Item 4 and Item 5 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Solicitation Agent so that it is received before the Voting Deadline.

In addition, you are authorized to collect votes to accept or to reject the Plan from Holders of Class 4 Convertible Notes Claims in accordance with your customary practices, including the use of a "voting instruction form" in lieu of (or in addition to) a Beneficial Holder Ballot, and collecting votes from Holders through online voting, by phone, facsimile, or other electronic means.

If the Debtors commence the Chapter 11 Cases,  the Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "***Bankruptcy Court***") and thereby made binding on Holders of Class 4 Convertible Notes Claims if: (i) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in any Impaired Voting Class; and (ii) the Plan otherwise satisfies the applicable requirements of Section 1129(a) of the Bankruptcy Code.  If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class or Classes rejecting the Plan and (z) otherwise satisfies the requirements of Section 1129(b) of the Bankruptcy Code. If the Plan is confirmed by the Bankruptcy Court, it will be binding on Holders of Convertible Notes Claims whether or not a Holder of a Convertible Notes Claim votes to accept or reject the Plan or does not vote.

Your receipt of this Master Ballot does not signify that a Beneficial Holder's Claim(s) has been or will be Allowed.  This Master Ballot is solely for purposes of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 4 Convertible Notes Claims.

This Master Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan; and/or (ii) to opt out of the Releases as set forth in Appendix A.

[*Remainder of page left intentionally blank*]

3

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 4 CONVERTIBLE NOTES CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed, and the Effective Date occurs, then On or as soon as reasonably practicable after the Effective Date, except to the extent that a Holder of an Allowed Convertible Notes Claim agrees to less favorable treatment of its Allowed Convertible Notes Claim, in full and final satisfaction, settlement, release, and discharge and in exchange for each Allowed Convertible Notes Claim, on the Effective Date, each Holder of an Allowed Convertible Notes Claim shall receive its Pro Rata Share of (i) the New 2L Convertible Notes Rights (subject to the Initial Backstop Parties' Premium and the Backstop Holdback Allocation); (ii) the New 2L Takeback Notes; and (iii) 56.3%[3] of the New Common Stock (subject to dilution from, where applicable, the conversion of the New 2L Convertible Notes (including those issued on account of the Backstop Premium), the conversion of the New Renesas 2L Takeback Convertible Notes, the Incentive Plans, and the exercise of the Renesas Warrants).

**Please be advised that if the Plan is consummated, Holders of Class 4 Convertible Notes Claims will be bound by the release, injunction, and exculpation provisions contained in Section 10.6 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Releases, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

[*Remainder of page left intentionally blank*]

---

[3]   Subject to adjustment based on final claims reconciliation as of the Petition Date.

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU COMPLETE THE MASTER BALLOT.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  JUNE 25, 2025

VOTING DEADLINE: 5:00 P.M. PREVAILING CENTRAL TIME ON AUGUST 22, 2025 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY</u> <u>RECEIVE</u> THE MASTER BALLOT BY THE VOTING DEADLINE, THE VOTES BY THE BENEFICIAL HOLDERS WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION BY THE BENEFICIAL HOLDERS TO OPT OUT OF THE RELEASES WILL NOT BE VALID.

YOU SHOULD NOT SEND THE MASTER BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE MASTER BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON HOLDERS OF CONVERTIBLE NOTES CLAIMS WHETHER OR NOT THEY VOTE.

*[Remainder of page left intentionally blank]*

5

## MASTER BALLOT INSTRUCTIONS

1. To have the votes of your Beneficial Holders count, you should already have delivered to each such holder a copy of the Disclosure Statement, along with a Beneficial Holder Ballot with a return envelope addressed to you (unless you have elected to send pre-validated Beneficial Holder Ballots, in which case the return envelope should be addressed to the Solicitation Agent), so such Holder may return their Beneficial Holder Ballot to you in sufficient time for you to complete and return the Master Ballot to the Solicitation Agent, so that the Solicitation Agent <u>actually receives</u> the Master Ballot before the Voting Deadline.

2. You may pre-validate the Beneficial Holder Ballots by (i) signing the Beneficial Holder Ballot and indicating on the Beneficial Holder Ballot the (a) name and DTC Participant Number of the Nominee and (b) the principal amount of the Class 4 Convertible Notes Claims held by the Nominee for the Beneficial Holder, (ii) applying a medallion guarantee stamp to the Beneficial Holder Ballot to certify the principal amount of the Class 4 Convertible Notes Claims owned by the Beneficial Holder as of the Voting Record Date, and (iii) forwarding such Beneficial Holder Ballot, together with the Solicitation Materials, including a preaddressed, postage-paid return envelope addressed to the Solicitation Agent, to the Beneficial Holder. The Beneficial Holder will be required to complete the information requested in Item 2, Item 3, Item 4 and Item 5 of the Beneficial Holder Ballot and return the pre-validated Beneficial Holder Ballot directly to the Solicitation Agent so that it is received before the Voting Deadline.

3. With regard to any Beneficial Holder Ballots returned to you, to have the vote of your Beneficial Holders count, you must: (i) transfer the requested information from each such Beneficial Holder Ballot onto the Master Ballot; (ii) execute the Master Ballot; and (iii) deliver the Master Ballot to the Solicitation Agent in accordance with these instructions. Prior to entry of the solicitation procedures order, **any Beneficial Holder Ballot received from a Beneficial Holder who has not certified therein that it is an Eligible Holder should not be included in this Master Ballot, and will not be counted.**

4. Please keep any records of Beneficial Holder Ballots, whether in hard copy or by electronic direction, for at least one year after the Voting Deadline (or such other date as is set by order of the Bankruptcy Court). You may be ordered to produce the Beneficial Holder Ballots (or evidence of the votes submitted to you) to the Debtors or the Bankruptcy Court.

5. If you are both the Nominee and Beneficial Holder, and you wish to vote such Class 4 Convertible Notes Claims for which you are a Beneficial Holder, you may return either a Beneficial Holder Ballot or the Master Ballot for such Claims.

6. The following ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (ii) any ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned ballot, (iv) any ballot that does not contain an original signature (provided, however, any valid Ballot submitted electronically or by email shall be deemed to bear an original signature), (v) any ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan, and (vi) prior to the entry of the solicitation procedures order, any Beneficial Holder Ballot submitted by or on behalf of a non-Eligible Holder.

7.   If the Master Ballot is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion.  The method of delivery of the Master Ballot to the Solicitation Agent is at your election and risk.

8.   If a Beneficial Holder submits Beneficial Holder Ballots for multiple Class 4 Convertible Notes Claims, whether held in other accounts or other record names, and such Beneficial Holder Ballots indicate different or inconsistent votes to accept or reject the Plan, then all such Beneficial Holder Ballots will not be counted.

9.   For the avoidance of doubt, if it is your customary practice to collect votes from your Beneficial Holder clients via voter information form, e-mail, telephone, or other means, you may employ those customary practices to collect votes from the Beneficial Holders in lieu of a Beneficial Holder Ballot.

10.  To the extent that conflicting votes or "over votes" are submitted by a Nominee, the Solicitation Agent, in good faith, will attempt to reconcile discrepancies with the Nominee.  To the extent that any over votes are not reconcilable prior to the preparation of the vote certification, the Solicitation Agent will apply the votes to accept and to reject the Plan in the same proportion as the votes to accept and reject the Plan submitted on the Master Ballots or pre-validated Beneficial Holder Ballots that contained the over vote, but only to the extent of the Nominee's position in the applicable security.

11.  The Master Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

12.  If a Beneficial Holder submits more than one Beneficial Holder Ballot voting the same Claims prior to the Voting Deadline, the latest dated, properly executed Beneficial Holder Ballot submitted will supersede any prior Beneficial Holder Ballot.

13.  If multiple Master Ballots are received prior to the Voting Deadline from the same Nominee with respect to the same Beneficial Holder Ballot belonging to a Beneficial Holder of a Claim, the vote on the last properly completed Master Ballot timely received will supersede and revoke the vote of such Beneficial Holder on any earlier received Master Ballot

14.  In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Master Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

15.  There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

16.  NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS MASTER BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<div style="border:1px solid black">

**<u>If by email</u>**

**Email completed Master Ballots to balloting@epiqglobal.com with the subject line "Wolfspeed Ballot"**

**<u>If by Regular Mail, Hand Delivery, or Overnight Courier</u>**

**Wolfspeed, Inc.**
**c/o Epiq Ballot Processing**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

**(to arrange hand delivery of your Master Ballot, please email balloting@epiqglobal.com (with "Wolfspeed Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Solicitation Agent address above and provide the anticipated date and time of delivery)**

</div>

**THE VOTING DEADLINE IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION.**

**PLEASE READ THE ATTACHED VOTING INFORMATION AND
INSTRUCTIONS BEFORE COMPLETING THIS MASTER BALLOT.**

PLEASE COMPLETE ALL OF THE ITEMS BELOW BASED UPON ANY BENEFICIAL HOLDER
BALLOTS RECEIVED.  IF THIS MASTER BALLOT HAS NOT BEEN PROPERLY COMPLETED,
THE VOTES OF THE BENEFICIAL HOLDERS MAY NOT BE COUNTED.

**Item 1. Certification of Authority to Vote.**

The undersigned certifies that, as of the Voting Record Date, the undersigned (please check the applicable box):

☐     is a Nominee for the Beneficial Holders in the principal amount of Class 4 Convertible Notes Claims listed in Item 2 below and is the registered holder of such Class 4 Convertible Notes Claims; or

☐     is acting under a power of attorney and/or agency (a copy of which must be provided upon request) granted by a Nominee that is the registered holder of Class 4 Convertible Notes Claims in the principal amount listed in Item 2 below; or

☐     has been granted a proxy (an original of which is annexed hereto) from a Nominee or a Beneficial Holder that is the registered holder of the principal amount of Class 4 Convertible Notes Claims listed in Item 2 below,

and accordingly, has full power and authority to vote to accept or reject the Plan on behalf of the Beneficial Holders of the Class 4 Convertible Notes Claims in the principal amount listed in Item 2 below.

**Item 2. Vote on the Plan.**

The undersigned transmits the following votes of Beneficial Holders in respect of their Class 4 Convertible Notes Claims and certifies that the following Beneficial Holders, as identified by their respective customer account numbers set forth below, are Beneficial Holders as of the Voting Record Date and have delivered to the undersigned, as Nominee, Beneficial Holder Ballots casting such votes.[4]

If the Beneficial Holder has checked the box on Item 5 of the Beneficial Ballot pertaining to the Beneficial Holder being an Eligible Holder, please place an X in the appropriate column below for each Beneficial Holder that checked the box.

**VOTE ONE CUSIP PER MASTER BALLOT AND CHECK A BOX BELOW TO
INDICATE THE CUSIP VOTED ON THIS MASTER BALLOT**

---

[4]   Indicate in the appropriate column the principal amount of the Convertible Notes Claims voted for each account, or attach such information to this Master Ballot in the form of the following table.  You may also provide a spreadsheet if additional space is needed.

Please note that each Beneficial Holder must vote all of such Beneficial Holder's Claims to accept or to reject the Plan and may not split such vote.  Any ballot executed by a Beneficial Holder that does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and a rejection of the Plan, and has not been corrected by the Voting Deadline, shall not be counted.

Prior to the entry of the solicitation procedures order, Beneficial Holder Ballots received from Beneficial Holders who do not certify as to their Eligible Holder status should not be included on this Master Ballot, and will not be counted.

| CUSIP (2026 Convertible Notes): | 225447 AD3 ☐ |
|---|---|
| CUSIP (2028 Convertible Notes): | 977852 AB8 ☐ |
| CUSIP (2029 Convertible Notes): | 977852 AD4 ☐ |

| Your Customer Account Number for Each Beneficial Holder of Class 4 Convertible Notes Claims that Voted | Principal Amount of Convertible Notes Claims Held by Your Customer | Item 2. Vote on Plan | | Optional Release Opt-Out Election | Eligible Holder Certification |
|---|---|---|---|---|---|
| | | ACCEPT | REJECT | Place a check below if the Beneficial Holder checked the box in Item 3 | Place a check below if the Beneficial Holder checked he box in Item 5 |
| 1. | | ☐ | ☐ | ☐ | ☐ |
| 2. | | ☐ | ☐ | ☐ | ☐ |
| 3. | | ☐ | ☐ | ☐ | ☐ |
| 4. | | ☐ | ☐ | ☐ | ☐ |
| 5. | | ☐ | ☐ | ☐ | ☐ |
| 6. | | ☐ | ☐ | ☐ | ☐ |
| 7. | | ☐ | ☐ | ☐ | ☐ |
| 8. | | ☐ | ☐ | ☐ | ☐ |
| 9. | | ☐ | ☐ | ☐ | ☐ |
| 10. | | ☐ | ☐ | ☐ | ☐ |

**Item 3. Certification as to Transcription of Information from Item 4 of the Beneficial Holder Ballots as to Class 4 Convertible Notes Claims Voted Through Other Beneficial Holder Ballots.**

The undersigned certifies that the undersigned has transcribed in the following table the information, if any, Beneficial Holders have provided in Item 4 of the Beneficial Holder Ballot, identifying any Class 4 Convertible Notes Claims for which such Beneficial Holders have submitted other ballots (other than to the undersigned):

| Your Customer Account Number for Each Beneficial Holder That Completed Item 4 of the Beneficial Holder Ballot | TRANSCRIBE FROM ITEM 4 OF THE BENEFICIAL HOLDER BALLOTS: | | | |
|---|---|---|---|---|
| | Name of Beneficial Holder (or name of Nominee if notes are held through a Nominee) | Account Number | Principal Amount of Other Class 4 Convertible Notes Claims Voted | CUSIP Number of Other Class 4 Convertible Notes Claims Voted |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

**Certification.**

By signing this Master Ballot, the undersigned certifies that:

(a)      (i) the undersigned has received a copy of the Disclosure Statement, Master Ballot and Beneficial Holder Ballot, and has delivered the Disclosure Statement and Beneficial Holder Ballot to Beneficial Holders holding Class 4 Convertible Notes Claims through the undersigned with a return envelope; (ii) the undersigned has received a completed and signed Beneficial Holder Ballot from each such Beneficial Holder as provided in this Master Ballot; (iii) the undersigned is the registered holder of the securities being voted or agent thereof; and (iv) the undersigned has been authorized by each such Beneficial Holder to vote on the Plan and to make applicable elections;

(b)      the undersigned has properly disclosed: (i) the number of Beneficial Holders voting Class 4 Convertible Notes Claims through the undersigned; (ii) the respective amounts of Class 4 Convertible Notes Claims owned by each such Beneficial Holder; (iii) each such Beneficial Holder's respective vote concerning the Plan; (iv) each such Beneficial Holder's election with respect to the optional release election; (v) prior to the entry of the solicitation procedures order, each such Beneficial Holder's Eligible Holder status certification; and (vi) the customer account or other identification number for each such Beneficial Holder;

(c)      if the undersigned is a Beneficial Holder and uses this Master Ballot to vote the undersigned's Class 4 Convertible Notes Claims, the undersigned confirms and attests to each of the certifications in Item 5 of the Beneficial Holder Ballot;

11

(d)      each such Beneficial Holder has certified to the undersigned that such beneficial holder is a Beneficial Holder and/or is otherwise eligible to vote on the Plan

(e)      all votes cast on this Master Ballot prior to the entry of the solicitation procedures are on behalf of Eligible Holders;

(f)      the undersigned will maintain Beneficial Holder Ballots and evidence of separate transactions returned by Beneficial Holders (whether properly completed or defective) for at least one year after the Voting Deadline, and disclose all such information to the Bankruptcy Court or the Debtors, as the case may be, if so ordered.

**Nominee Information and Signature.**

_____
Name of Nominee or Custodian

_____
DTC Participant Number

_____
Name of Proxy Holder or Agent for Nominee (if applicable)

_____
Signature

_____
Name of Signatory

_____
Title

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

This Master Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion

12

of a claim or equity interest, or the allowance of a claim or equity interest.

**YOUR COMPLETED MASTER BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 22, 2025.**

Appendix A

Release, Injunction, And Exculpation Provisions in the Plan[1]

---

[1] Capitalized terms used but not defined in this Appendix A have the meanings given to them in the Plan.

**A.** Certain Relevant Definitions.

"*Exculpated Parties*" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"*Related Parties*" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"*Released Parties*" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"*Releases*" means, collectively, the releases set forth in Article 10.6 of the Plan.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

**B.** Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated).  All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**C.**    Section 10.6 of the Plan – Releases.

**1.**    <u>Releases by the Debtors</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors, that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

    **2.**    <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors.  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.** Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

Appendix B

**This Master Ballot pertains to the below CUSIPS.**

| Class 4 – Convertible Notes Claims CUSIPS |
|---|
| **225447 AD3 (2026 Convertible Notes)** |
| **977852 AB8 (2028 Convertible Notes)** |
| **977852 AD4 (2029 Convertible Notes)** |

**EXHIBIT 5**

Form of Class 5 Ballot (Renesas Claims)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| ----------------------------------------------------------- x | Chapter 11 |
| : | |
| In re: : | IMPORTANT: No chapter 11 cases have been commenced as of the date of distribution of this ballot. This ballot is a prepetition solicitation of your vote on a prepackaged plan of reorganization. |
| WOLFSPEED, INC., *et al.*, : | |
| Debtors.[1] : | If chapter 11 cases are commenced, the Debtors will request joint administration of such cases. |
| ----------------------------------------------------------- x | |

**BALLOT FOR HOLDERS OF CLAIMS IN CLASS 5 (RENESAS CLAIMS) FOR
VOTING TO ACCEPT OR REJECT THE JOINT PREPACKAGED CHAPTER 11
PLAN OF REORGANIZATION OF WOLFSPEED, INC. AND ITS DEBTOR
AFFILIATE UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**

> **THE VOTING DEADLINE TO ACCEPT OR REJECT THE PLAN IS
> AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME) (AS MAY BE
> EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION, THE "*VOTING
> DEADLINE*")**

Wolfspeed, Inc. and its debtor affiliate, as debtors and debtors in possession (collectively, the "***Debtors***"), are sending this ballot (the "***Ballot***") to you to solicit your vote to accept or reject the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate*, dated June 27, 2025 (as may be amended, modified, or supplemented from time to time, the "***Plan***").[2]  The Plan is attached as Exhibit A to the proposed *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be amended, modified, or supplemented from time to time, the "***Disclosure Statement***"), which accompanies this Ballot and has also been posted on the Debtors' voting information website (located at **https://dm.epiq11.com/Wolfspeed**).  The Debtors' voting information website contains important information and key deadlines.

The Disclosure Statement provides information to assist Holders of Claims in the Voting Classes in deciding whether to accept or reject the Plan.  If you have not received or wish to obtain additional copies of the Plan and/or Disclosure Statement, please visit https://dm.epiq11.com/Wolfspeed or contact the Debtors' solicitation agent, Epiq Corporate

---

[1]  The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2]  Capitalized terms used but not defined herein have the meanings given to them in the Plan.

Restructuring, LLC (the "**Solicitation Agent**"), at Wolfspeed@epiqglobal.com (with "Wolfspeed Solicitation Inquiry" in the subject line).

This Ballot is being submitted to Holders, as of June 25, 2025 (the "**Voting Record Date**"), of any Claim in Class 5 arising under or related to the Unsecured Customer Refundable Deposit Agreement, dated as of July 5, 2023, and as amended to date, by and between Wolfspeed, Inc. and Renesas Electronics America Inc. (the "**Renesas Claims**").

The Debtors have not yet filed for relief under chapter 11 of the Bankruptcy Code and no court has approved the Disclosure Statement or the Plan. As described in the Disclosure Statement, the Debtors intend to commence cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") following the commencement of this solicitation.

If the Debtors commence the Chapter 11 Cases, the Plan can be confirmed by the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**") and thereby made binding on you if: (i) it is accepted by at least two-thirds of the aggregate principal amount and more than one-half in number of the Claims voted in any impaired class of Claims and (ii) the Plan otherwise satisfies the applicable requirements of Section 1129(a) of the Bankruptcy Code. If the requisite acceptances are not obtained, the Bankruptcy Court may nonetheless confirm the Plan if it finds that the Plan (y) provides fair and equitable treatment to, and does not unfairly discriminate against, the Class rejecting the Plan and (z) otherwise satisfies the requirements of Section 1129(b) of the Bankruptcy Code.  If the Plan is confirmed by the Bankruptcy Court, it will be binding on Renesas Claim Holders whether or not a Renesas Claim Holder votes to accept or reject the Plan or does not vote.

All pleadings and notices relating to the Debtors' Chapter 11 Cases that are filed with the Bankruptcy Court (including notices of the date and time of hearings), will be made available for review on the case information website of the Solicitation Agent at https://dm.epiq11.com/Wolfspeed.

Holders of Class 5 Renesas Claims are Impaired under the Plan and are, therefore, entitled to vote to accept or reject the Plan.  In order for your vote to count, your Ballot must be completed and returned to the Solicitation Agent so that it is actually received by the Solicitation Agent on or prior to the Voting Deadline.

This Ballot is *not* a letter of transmittal and may *not* be used for any purpose other than (i) to cast a vote to accept or reject the Plan; and/or (ii) to opt out of the Releases (as defined below).

**IMPORTANT NOTICE REGARDING TREATMENT
FOR HOLDERS OF CLASS 5 RENESAS CLAIMS**

As described in more detail in the Disclosure Statement and Plan, if the Plan is confirmed and the Effective Date occurs, then on or as soon as reasonably practicable after the Effective Date, except to the extent that Renesas agrees to a less favorable treatment, in full and final satisfaction, settlement, release, and discharge of all Renesas Claims, Renesas shall receive, subject in all respects to the terms of this Plan and applicable Plan Supplement Documents: (i) the Base Consideration; (ii) if applicable, and without duplication with clause (i) above, the Base Consideration Proceeds; and (iii) if the Regulatory Trigger Deadline occurs, the Contingent Additional Consideration.

**Please be advised that if the Plan is consummated, Holders of Class 5 Renesas Claims will be bound by the release, injunction, and exculpation provisions contained in Section 10.6 of the Plan and set forth in <u>Appendix A</u>, and if such Holders opt out of the Releases, they will not be deemed to have granted such releases and will not receive releases under the Plan.**

[*Remainder of page left intentionally blank*]

**IMPORTANT**

YOU SHOULD CAREFULLY REVIEW THE DISCLOSURE STATEMENT AND PLAN BEFORE YOU VOTE.  YOU MAY WISH TO SEEK LEGAL ADVICE CONCERNING THE PLAN AND THE CLASSIFICATION AND TREATMENT OF YOUR CLAIMS UNDER THE PLAN.

THE SOLICITATION AGENT IS NOT AUTHORIZED TO (AND WILL NOT) PROVIDE LEGAL ADVICE.

VOTING RECORD DATE:  JUNE 25, 2025

VOTING DEADLINE:  5:00 PM PREVAILING CENTRAL TIME ON AUGUST 22, 2025 (UNLESS EXTENDED BY THE DEBTORS IN THEIR SOLE DISCRETION)

---

FOR YOUR VOTE TO COUNT, YOU MUST SUBMIT THIS BALLOT TO THE SOLICITATION AGENT, SUCH THAT THE BALLOT IS <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE.  IF THE SOLICITATION AGENT DOES NOT <u>ACTUALLY RECEIVE</u> THE BALLOT INDICATING YOUR VOTE CAST ON YOUR BALLOT BY THE VOTING DEADLINE, YOUR VOTE WILL NOT BE COUNTED, EXCEPT AS DIRECTED BY THE DEBTORS IN THEIR SOLE DISCRETION, AND ANY ELECTION TO OPT OUT OF THE RELEASES WILL NOT BE VALID.

YOU SHOULD NOT SEND YOUR BALLOT TO ANY OF THE DEBTOR ENTITIES, DEBTORS' AGENTS (OTHER THAN THE SOLICITATION AGENT), OR DEBTORS' FINANCIAL OR LEGAL ADVISORS.  IF SO SENT, THE BALLOT WILL NOT BE COUNTED IN CONNECTION WITH THE PLAN.

IF THE PLAN IS CONFIRMED BY THE BANKRUPTCY COURT, IT WILL BE BINDING ON YOU WHETHER OR NOT YOU VOTE.

*[Remainder of page left intentionally blank]*

## BALLOT INSTRUCTIONS

1.      Complete Item 1.

2.      Complete Item 2.

3.      If you wish to opt out of the Releases, complete Item 3.

4.      Review the certification contained in Item 4.

5.      Sign and date the Ballot and fill out the other required information.

6.      Return your completed Ballot to the Solicitation Agent no later than August 22, 2025 at 5:00 p.m. (prevailing Central Time).

7.      You must vote the full amount of your Class 5 Renesas Claim *either* to accept *or* reject the Plan and may not split your vote.

8.      If you cast more than one Ballot voting the same Claims prior to the Voting Deadline, the latest dated, properly executed Ballot submitted to the Solicitation Agent will supersede any prior Ballot.

9.      The following Ballots will not be counted in determining the acceptance or rejection of the Plan: (i) any Ballot that is illegible or contains insufficient information to permit the identification of the Beneficial Holder, (ii) any Ballot cast by a Person that does not hold a Claim in a Class entitled to vote on the Plan, (iii) any unsigned Ballot, (iv) any Ballot that does not contain an original signature, and (v) any Ballot not marked to accept or reject the Plan, or marked both to accept and reject the Plan.

10.     If a Ballot with your vote is received after the Voting Deadline, it will not be counted, unless otherwise determined by the Debtors, in their sole discretion.  The method of delivery of the Ballot to the Solicitation Agent is at your election and risk.

11.     The Ballot should not be sent to the Debtors, the Bankruptcy Court, or the Debtors' financial or legal advisors.

12.     In the event that (i) the Debtors revoke or withdraw the Plan, or (ii) the Confirmation Order is not entered or consummation of the Plan does not occur, this Ballot shall automatically be null and void and deemed withdrawn without any requirement of affirmative action by or notice to you.

13.     There may be changes made to the Plan that do not have material adverse effects on an accepting Class.  If such non-material changes are made to the Plan, the Debtors will not resolicit votes for acceptance or rejection of the Plan.

NO PERSON HAS BEEN AUTHORIZED TO GIVE ANY INFORMATION OR ADVICE, OR TO MAKE ANY REPRESENTATION, OTHER THAN WHAT IS CONTAINED IN THE MATERIALS MAILED WITH THIS BALLOT, ANY SUPPLEMENTAL INFORMATION PROVIDED BY THE DEBTORS, OR OTHER MATERIALS AUTHORIZED BY THE BANKRUPTCY COURT.

**YOUR COMPLETED BALLOT MUST BE <u>ACTUALLY RECEIVED</u> BY THE SOLICITATION AGENT BY THE VOTING DEADLINE IN ONE OF THE MANNERS SET FORTH BELOW:**

<div style="border:1px solid black;">

<u>**Via E-Ballot Portal**</u>

**Submit your Ballot via the Solicitation Agent's online portal, by visiting https://dm.epiq11.com/wolfspeed. Click on the "E-Ballot link" under the Case Action section of the website and follow the instructions to submit your E-Ballot.**

**IMPORTANT NOTE: You will need the following information to retrieve and submit your customized E-Ballot:**

**Unique E-Ballot ID: _____**

<u>**If by Regular Mail, Hand Delivery, or Overnight Courier**</u>

**Wolfspeed, Inc.**
**c/o Epiq Ballot Processing**
**10300 SW Allen Blvd.**
**Beaverton, OR 97005**

**(to arrange hand delivery of your Ballot, please email Balloting@epiqglobal.com (with "Wolfspeed Ballot Delivery" in the subject line) at least 24 hours prior to your arrival at the Solicitation Agent address above and provide the anticipated date and time of delivery)**

</div>

**THE VOTING DEADLINE IS AUGUST 22, 2025 AT 5:00 P.M. (PREVAILING CENTRAL TIME).**

[*Remainder of page left intentionally blank*]

6

**Item 1.          Amount of Claim**

The undersigned hereby certifies that, as of the Voting Record Date, the undersigned was the Holder of Class 5 Renesas Claims in the aggregate outstanding principal amount inserted into the box below.

> $ _____

**Item 2.          Vote on Plan**

**IF YOU VOTE TO ACCEPT THE PLAN, YOUR VOTE CONSTITUTES AN ACCEPTANCE OF AND CONSENT TO THE CLASSIFICATION AND TREATMENT OF YOUR CLAIM UNDER THE PLAN.**

Regardless of whether you vote to accept or reject the Plan or if you do not cast a vote to accept or reject the Plan, please see Item 3 below and refer to Appendix A and Article 10.6 of the Plan for information about the Releases.

Any Ballot that is executed by the Holder of a Class 5 Renesas Claim that indicates both an acceptance and a rejection of the Plan or does not indicate either an acceptance or rejection of the Plan will not be counted.

**The Plan, though proposed jointly, constitutes separate plans proposed by each of the Debtor entities.  Your vote will count as votes for or against, as applicable, each plan proposed by each Debtor entity.**

The Holder of the Class 5 Renesas Claim identified in Item 1 votes as follows (check one box only – if you do not check a box or you check both boxes, your vote will not be counted):

> ☐  **ACCEPT** (vote FOR) the Plan.          ☐  **REJECT** (vote AGAINST) the Plan.

**Item 3.          Election to opt out of Releases**

Regardless of whether you voted to accept or reject the Plan in Item 2 above or abstained from voting to accept or reject the Plan, you may check the box below to opt out of the Releases**.  If you do not opt out of the Releases by checking the box below, you will be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged the Debtors, the Reorganized Debtors, and the Released Parties as provided in the Plan.  If you would otherwise be entitled to a release under Section 10.6 of the Plan and set forth in Appendix A, but if you do not grant the Releases because you opted out, you will not receive the benefit of the Releases set forth in Section 10.6 of the Plan.  Please be advised that your decision to opt out _does not_ affect the amount of distribution you will receive under the Plan.  Specifically, your recovery under the Plan will be the same if you opt out; however, in the**

7

event you opt out of the Releases, you will **<u>not</u>** be granted a release from the Releasing Parties under the Plan.  **<u>You may wish to seek legal advice regarding your election.</u>**

☐ **Opt Out of the Releases**

**Item 4.**        **Certification.**

By returning this Ballot, the Holder of the Class 5 Renesas Claim identified in Item 1 certifies that (a) this Ballot is the only Ballot submitted for the Renesas Claims that are identified in Item 1; (b) it was the Holder of the Renesas Claim identified in Item 1 and/or it has full power and authority to vote to accept or reject the Plan for the Class 5 Renesas Claim identified in Item 1; and (c) it has received a copy of the Disclosure Statement (including the exhibits thereto) and understands that the solicitation of votes for the Plan is subject to all of the terms and conditions set forth in the Disclosure Statement and Plan.

YOUR RECEIPT OF THIS BALLOT DOES NOT SIGNIFY THAT YOUR CLAIM HAS BEEN OR WILL BE ALLOWED.

_____
Name of Holder of Class 5 Renesas Claim

_____
Signature

_____
If by Authorized Agent, Name and Title

_____
Name of Institution

_____
Street Address

_____
City, State, Zip Code

_____
Telephone Number

_____
Email Address

_____
Date Completed

This Ballot shall not constitute or be deemed a proof of claim or equity interest, an assertion of a claim or equity interest, or the allowance of a claim or equity interest.

**YOU MUST SEND YOUR BALLOT TO THE SOLICITATION AGENT SO THAT THE SOLICITATION AGENT ACTUALLY RECEIVES THE BALLOT BY 5:00 P.M. (PREVAILING CENTRAL TIME) ON AUGUST 22, 2025, OR YOUR VOTE WILL NOT BE COUNTED.**

## Appendix A

**Release, Injunction, and Exculpation Provisions in the Plan[1]**

---

[1]   Capitalized terms used but not defined in this <u>Appendix A</u> have the meanings given to them in the Plan.

A.     Certain Relevant Definitions.

"*Exculpated Parties*" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"*Related Parties*" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"*Released Parties*" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties.  Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"*Releases*" means, collectively, the releases set forth in Article 10.6 of the Plan.

"*Releasing Parties*" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.     Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are, to the fullest extent

provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated).  All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party.  At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

**C.**     Section 10.6 of the Plan – Releases.

**1.**     <u>Releases by the Debtors</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors,  that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or

3

on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

**2.** <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange

for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors. Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**     Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.

A.      Certain Relevant Definitions.

"***Exculpated Parties***" means each of the following in their capacities as such and, in each case, to the maximum extent permitted by law: the Debtors and their Estates.

"***Related Parties***" means with respect to a Person, that Person's current and former affiliates, and such Person's and its current and former affiliates' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, predecessors, participants, successors, and assigns, subsidiaries, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, fiduciaries, trustees, advisory board members, financial advisors, limited partners, general partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, investment managers, investment advisors, representatives, and other professionals, and such Person's respective heirs, executors, estates, and nominees, each in their capacity as such.

"***Released Parties***" means, collectively, each of: (a) the Debtors; (b) the Reorganized Debtors; (c) Consenting Senior Secured Noteholders, (d) Consenting Convertible Noteholders, (e) the Senior Secured Notes Trustee, (f) Renesas; (g) the Backstop Parties and Initial Backstop Parties; and (h) with respect to each of the foregoing persons in clauses (a) through (g), all Related Parties. Notwithstanding the foregoing, any Person that opts out of the releases set forth in the Plan shall not be deemed a Released Party thereunder.

"***Releases***" means, collectively, the releases set forth in Article A of the Plan.

"***Releasing Parties***" means, collectively, each of, and in each case in its capacity as such: (a) each Debtor; (b) each Reorganized Debtor; (c) Consenting Senior Secured Noteholders; (d) Consenting Convertible Noteholders; (e) Renesas; (f) the Backstop Parties and Initial Backstop Parties; (g) each Holder of a Claim in a Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective ballot; (h) each Holder of a Claim or Interest in a Non-Voting Class that does not affirmatively elect to "opt out" of the Third-Party Release as provided on its respective Release Opt-Out Form; (i) each Related Party of each Entity in clauses (a) through (h), solely to the extent such Related Party (I) would be obligated to grant a release under principles of agency if it were so directed by the Entity in the foregoing clauses (a) through (h) to whom they are related or (II) may assert Claims or Causes of Action on behalf of or in a derivative capacity by or through an Entity in clause (a) through (h); *provided*, that, any Holder of a Claim or Interest that timely objects to the Third-Party Release, either through (i) a formal objection Filed on the docket of the Chapter 11 Cases or (ii) an informal objection provided to the Debtors by electronic mail, and such objection is not withdrawn on the docket of the Chapter 11 Cases or via electronic mail, as applicable, before the Confirmation Hearing, shall not be a "Releasing Party;" *provided, further,* that any Related Party of any Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)), including any separate branch, trading desk, fund and/or business group of a Consenting Creditor (including in such Consenting Creditor's capacity as an Entity in clauses (f) through (h)) shall not be deemed to be a Releasing Party themselves, unless such Related Party has itself signed the Restructuring Support Agreement, and further provided that the Notes Trustees shall be Releasing Parties solely in their respective capacities as Notes Trustee and not individually or in any other capacity.

B.      Section 10.5 of the Plan – Permanent Injunction.

Except as otherwise expressly provided in the Restructuring Support Agreement, the Plan or the Confirmation Order, from and after the Effective Date, all Persons and Entities are,

to the fullest extent provided under Section 524 and other applicable provisions of the Bankruptcy Code, permanently enjoined from (1) commencing or continuing, in any manner or in any place, any suit, action or other proceeding of any kind; (2) enforcing, attaching, collecting, or recovering in any manner or means any judgment, award, decree, or order; (3) creating, perfecting, or enforcing any Lien or encumbrance; (4) asserting a right of setoff or subrogation of any kind; or (5) commencing or continuing in any manner any action or other proceeding of any kind, in each case on account of or with respect to any Claim, demand, liability, obligation, debt, right, Cause of Action, Interest, or remedy released or to be released, exculpated or to be exculpated, settled or to be settled, or discharged or to be discharged pursuant to the Plan or the Confirmation Order against any Person or Entity so released, discharged, or exculpated (or the property or estate of any Person or Entity so released, discharged, or exculpated). All injunctions or stays provided for in the Chapter 11 Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

No Person or Entity may commence or pursue a Claim or Cause of Action, as applicable, of any kind against the Debtors, the Reorganized Debtors, the Exculpated Parties, or the Released Parties, as applicable, that relates to or is reasonably likely to relate to any act or omission in connection with, relating to, or arising out of a Claim or Cause of Action, as applicable, subject to Article IX of the Plan, without the Bankruptcy Court (i) first determining, after notice and a hearing, that such Claim or Cause of Action, as applicable, represents a colorable Claim of any kind, and (ii) specifically authorizing such Person or Entity to bring such Claim or Cause of Action, as applicable, against any such Debtor, Reorganized Debtor, Exculpated Party, or Released Party, as applicable; provided, that the foregoing shall only apply to Claims or Causes of Action brought against a Released Party if such Person or Entity bringing such Claim or Cause of Action is a Releasing Party. At the hearing for the Bankruptcy Court to determine whether such Claim or Cause of Action represents a colorable Claim of any kind, the Bankruptcy Court may, or shall if any Debtor, Reorganized Debtor, Exculpated Party, Released Party, or other party in interest requests by motion (oral motion being sufficient), direct that such Person or Entity seeking to commence or pursue such Claim or Cause of Action File a proposed complaint with the Bankruptcy Court embodying such Claim or Cause of Action, such complaint satisfying the applicable Rules of Federal Procedure, including Rule 8 and Rule 9 (as applicable), which the Bankruptcy Court shall assess before making a determination. For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claims or Causes of Action not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending. The Bankruptcy Court reserves jurisdiction to adjudicate any such claims to the maximum extent provided by the law.

C.      Section 10.6 of the Plan – Releases.

1.      <u>Releases by the Debtors</u>.

3

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, pursuant to section 1123(b) of the Bankruptcy Code, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each of Debtors, Reorganized Debtors, Reorganized Parent, and the Estates, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, Reorganized Parent, or the Reorganized Debtors,  that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Debtors do not release Claims or Causes of Action (1) that are of a commercial nature and arise in the ordinary course of business, such as accounts receivable and accounts payable on account of goods being sold and services being performed; (2) arising under an Executory Contract or Unexpired Lease that is assumed by the Debtors; or (3) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud, gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud (but not, for the avoidance of doubt,

fraudulent transfers), gross negligence, or willful misconduct).  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Debtor Release, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute the Bankruptcy Court's finding that the Debtor Release is: (1) in exchange for the good and valuable consideration provided by each of the Released Parties, including the Released Parties' substantial contributions to facilitating the Restructuring Transactions and implementing the Plan; (2) a good-faith settlement and compromise of the Claims released by the Debtors; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors, the Reorganized Debtors, the Reorganized Parent or the Debtors' Estates asserting any Claim or Cause of Action released pursuant to the Debtor Release.

2.      <u>Releases by Holders of Claims and Interests</u>.

To the fullest extent permitted by applicable law and approved by the Bankruptcy Court, and except as otherwise expressly set forth in the Plan or the Confirmation Order, as of the Effective Date, in exchange for good and valuable consideration, the adequacy of which is hereby confirmed, each Releasing Party, in each case on behalf of itself and its respective successors, assigns, and Representatives, and any and all other Entities who may purport to assert any Claim or Cause of Action, directly or derivatively, by, through, for, or because of the foregoing Entities, has and is deemed to have, forever and unconditionally, released, and absolved each Released Party from any and all Claims, obligations, rights, suits, damages, and Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims asserted or assertable on behalf of the Debtors, the Estates, the Reorganized Parent, or the Reorganized Debtors that such Entity would have been legally entitled to assert in its own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, including (1) the governance, management, transactions, ownership, or operation of the Debtors or the Non-Debtor Affiliates (2) the purchase, sale, or rescission of any Security of the Debtors or the Non-Debtor Affiliates, (3) the subject matter of, or the transactions, events, circumstances, acts or omissions giving rise to, any Claim or Interest that is treated in the Restructuring Transactions, including the negotiation, formulation, or preparation of the Restructuring Transactions, (4) the business or contractual arrangements between any Debtor or Non-Debtor Affiliate and any other Entity (including Consenting Creditors), (5) the Prepetition Credit Documents; (6) the Debtors' and Non-Debtor Affiliates' in- or out-of-court restructuring efforts, (7) intercompany transactions, (8) the formulation, preparation, dissemination, negotiation, solicitation, entry into, Filing, or consummation of the

Plan, the Plan Supplement the Disclosure Statement, the Restructuring Support Agreement and related prepetition transactions, the Definitive Documents, the Rights Offering Documents, the Corporate Governance Documents, the Chapter 11 Cases, or any Restructuring Transaction, (9) any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan, the Plan Supplement, the Disclosure Statement, the Restructuring Support Agreement, the Definitive Documents, the Rights Offering Documents, or the Corporate Governance Documents, the Chapter 11 Cases, the pursuit of confirmation and consummation of the Plan, the administration and implementation of the Plan or Confirmation Order, including the issuance or distribution of securities pursuant to the Plan, (10) the distribution, including any disbursements made by a Distribution Agent, of property under the Plan, or any other related agreement, or (11) any other act or omission, transaction, agreement, event, or other occurrence related to any of the foregoing and taking place on or before the Effective Date; provided, that the Releasing Parties do not release Claims or Causes of Action (1) arising out of, or related to, any act or omission of a Released Party that is determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction to have constituted actual fraud (but not, for the avoidance of doubt, fraudulent transfers), gross negligence, or willful misconduct (it being agreed that any Released Parties' consideration, approval, or receipt of any distribution did not arise from or relate to actual fraud, gross negligence, or willful misconduct) or (2) against a Released Party arising from any obligations owed to the Releasing Party that are wholly unrelated to the Debtors, the Reorganized Parent, or the Reorganized Debtors.  Notwithstanding anything to the contrary in the foregoing, the Releases set forth above do not release (1) any obligations of any Person or Entity under the Plan, the Confirmation Order, any other Definitive Document, any Restructuring Transaction, any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan or any agreement, Claim, or obligation arising or assumed under the Plan or (2) any Causes of Action specifically retained by the Debtors pursuant to the Schedule of Retained Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in the Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) given and made after due notice and opportunity for hearing; and (3) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

**D.**      Section 10.7 of the Plan – Exculpation.

Effective as of the Effective Date, to the fullest extent permitted by law, the Exculpated Parties shall neither have nor incur any liability to any Person or Entity for any Claims or Causes of Action for any act taken or omitted to be taken between the Petition Date and the Effective Date in connection with, or related to, formulating, negotiating, preparing, disseminating, implementing, administering, confirming or effecting the Confirmation or consummation (as applicable) of the Plan, the Restructuring Support Agreement and related prepetition transactions, and the Disclosure Statement including any disbursements made by a Distribution Agent in connection with the Plan, the Disclosure Statement, the Definitive Documents, the Corporate Governance Documents, the Prepetition Credit Documents, or any Restructuring Transaction, contract, instrument, release, or other agreement or document

created or entered into in connection with the Plan, or any other postpetition act taken or omitted to be taken in connection with or in contemplation of the restructuring of the Debtors, the approval of the Disclosure Statement or Confirmation or consummation of the Plan; provided, that the foregoing provisions of this exculpation shall not operate to waive or release: (1) any Claims or Causes of Action arising from willful misconduct, actual fraud (but not, for the avoidance of doubt, fraudulent transfers), or gross negligence of such applicable Exculpated Party as determined by Final Order of the Bankruptcy Court or any other court of competent jurisdiction; and/or (2) the rights of any Person or Entity to enforce the Plan. and the contracts, instruments, releases, indentures, and other agreements and documents delivered under or in connection with the Plan, or assumed pursuant to the Plan or Final Order of the Bankruptcy Court; provided further, that each Exculpated Party shall be entitled to rely upon the advice of counsel concerning its respective duties pursuant to, or in connection with, the above referenced documents, actions, or inactions.

The Exculpated Parties have, and upon consummation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

The foregoing exculpation shall be effective as of the Effective Date without further notice to or order of the Bankruptcy Court, act, or action under applicable law, regulation, order, or rule or the vote, consent, authorization, or approval of any Person or Entity.  For the avoidance of doubt and notwithstanding anything else in the Plan, the foregoing exculpation shall be limited to Persons that served as Estate fiduciaries during the Chapter 11 Cases.