UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: WOLFSPEED, INC., | . | CASE NO. 4:25-BK-90163 |
| | . | |
| | . | HOUSTON, TEXAS |
| DEBTOR | . | TUESDAY, JULY 1, 2025 |
| | . | 02:02 P.M. TO 03:22 P.M. |

. . . . . . . . . . . . . . . .

FIRST DAY MOTIONS HEARING

PARTIES APPEARING VIA VIDEOCONFERENCE

BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES:               SEE NEXT PAGE

ELECTRONIC RECORDING OFFICER: YESENIA LILA

OFFICIAL INTERPRETER:      NONE PRESENT

COURTROOM DEPUTY:          NOT IDENTIFIED

TRANSCRIPTION SERVICE BY:

**Trinity Transcription Services**
1081 Main Street
Surgoinsville, TN 37873
281-782-0802
battshott@aol.com

**Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.**

```
                    UNITED STATES BANKRUPTCY COURT

                    SOUTHERN DISTRICT OF TEXAS

                        HOUSTON DIVISION

IN RE: WOLFSPEED, INC.,  .    CASE NO. 4:25-BK-90163
                         .
                         .    HOUSTON, TEXAS
              DEBTOR      .    TUESDAY, JULY 1, 2025
                         .    02:02 P.M. TO 03:22 P.M.
. . . . . . . . . . . . . . .

                    FIRST DAY MOTIONS HEARING

             PARTIES APPEARING VIA VIDEOCONFERENCE

           BEFORE THE HONORABLE CHRISTOPHER M. LOPEZ
                UNITED STATES BANKRUPTCY JUDGE


Appearances:

For THE DEBTOR:                ALEXANDER WELCH, ESQ.
                              RAY C. SCHROCK, ESQ.
                              JOSEPH SERINO, ESQ.
                              KEITH SIMON, ESQ.
                              RICHARD CANTORAL, ESQ.
                              ERIC EINHORN, ESQ.
                              BRIAN ROSEN, ESQ.
                              RYAN LINDSEY, ESQ.
                              REBEKAH PRESLEY, ESQ.
                              SAHIB SINGH, ESQ.
                              Latham & Watkins
                              (Proposed Counsel)
                              1271 Avenue of the Americas
                              New York, NY 10020


SENIOR SECURED NOTEHOLDERS:   KEN ZIMAN, ESQ.
                              Paul, Weiss, Rifkin, Wharton &
                                Garrison, LLP
                              1285 Avenue of the Americas
                              New York, NY 10019-6064


AD HOC GROUP OF CONVERTABLE   MATTHEW M. ROOSE, P.C.
NOTEHOLDERS:                  SAM BADAWI, ESQ.
                              CHRISTINE GERALD, ESQ.
                              Ropes & Grey
                              1211 Avenue of the Americas
                              New York, NY 10036
```

<u>Appearances</u> (cont.):


**AD HOC GROUP OF CONVERTABLE**          **PAUL E. HEATH, ESQ.**
**NOTEHOLDERS:**                         Vinson & Elkins
                                         845 Texas Avenue,  Suite 4700
                                         Houston, TX 77002


**For UNITED STATES TRUSTEE:**           **JASON RUFF, ESQ.**
                                         Office of the United States
                                           Trustee
                                         515 Rusk Street, Suite 3516
                                         Houston, TX 77002


**For RENESSAS:**                        **STEVE SERAJEDDINI, ESQ.**
                                         **YUSUF SALLOUM, ESQ.**
                                         Kirkland & Ellis
                                         601 Lexington Avenue
                                         New York, NY 10022


Transcriber:                             Cheryl Battaglia
                                         Trinity Transcription Services
                                         1081 Main Street
                                         Surgoinsville, TN 37873


**(See also electronic appearances)**

1

**Houston, Texas; Tuesday, July 1, 2025; 02:02 p.m.**

2        **(Parties Appearing Via Videoconference.)**

3            **THE COURT:**  Jump on the Southern District of Texas

4   webpage, you'll find my home page.  You'll find a place to make

5   an electronic appearance.  I'd ask that you please make one

6   there as well.

7            You may have a *pro hac* pending.  There's no need to

8   ask me for permission.  You are free to appear for today.  And

9   we will get to it as soon as we can, you know.

10           Good afternoon.  I believe I have unmuted a 212-9069.

11  I'm hoping that's Debtor's counsel.  If not, I'd ask the

12  Debtor's counsel please hit five star so they could make their

13  introductions, put on any preliminary presentation.  And then

14  I'll open it up further to make presentations as well.

15           **MR. WELCH:**  Can you ── can you hear us okay, Judge?

16           **THE COURT:**  I can.  Good afternoon.

17           **MR. WELCH:**  Afternoon, Judge.  Alexander Welch,

18  Latham and Watkins, proposed counsel for the Debtors.  That is,

19  also that Mr. Shrock is on his own screen and he's going to

20  kick off today.

21           **THE COURT:**  Okay.  I just unmuted a 1285, 906 number.

22  Is that ── Mr. Schrock, is that you?

23           **MR. SHROCK:**  Yes, it is, your Honor.  Can you hear me

24  okay?

25           **THE COURT:**  Just fine.  Good afternoon.

2

1        **(Pause in the proceeding.)**

2            **MR. SHROCK:**  Perfect.  Thanks very much.

3            Your Honor, again, Ray Schrock, Latham and Watkins

4    proposed counsel for the Debtors here today with several of my

5    partners that —— it takes a village certainly to bring these

6    cases into the starting line.

7            By those including my partner, Alex Welch, Keith

8    Simon.  Also with us, Joe Sereno, I believe is there on screen

9    with our first day declarant Dan Hugo (phonetic), as well as a

10   host of others that'll be coming on.

11           But, your Honor, I'd first like to thank you and your

12   chambers for seeing us on very short notice for these Chapter

13   pre-package cases.  I'd also like to thank the Office of the

14   United States Trustee for working with us and resolving any

15   issues prior to the start of today's hearing.

16           But if it's all right with your Honor, I do have a

17   first day demonstrative, which we filed at Docket Number 57.

18   And I believe that we've got Rich Cantoral should be prepared

19   to share a screen if —— if we can get him sharing privileges,

20   your Honor.

21           **THE COURT:**  You got it.  Mr. Cantoral, let me just

22   figure around the one day I'm terrible.  Oh, I see you there.

23           **MR. CANTORAL:**  Yes.

24           **THE COURT:**  All righty.

25       **(Pause in the proceeding.)**

3

1        **MR. CANTORAL:**  And I'll — I'll keep it speedy,

2   Judge.

3        **THE COURT:**  No.  No.  Take your time.  I've got

4   Mr. — actually, Mr. Shrock, before you begin, why don't I just

5   go ahead and just take appearances from every — anyone else

6   who wishes to make an appearance.  But I would just ask if

7   anyone had comments, that you not — you just wait until the

8   presentation is done.

9        But I'll take appearances now.  Here's a 202 number.

10       **(Pause in the proceeding.)**

11       **MR. RUFF:**  Good afternoon, your Honor.  Jason Ruff,

12   the U.S. Trustee's office.

13       **THE COURT:**  Okay.  Good afternoon.

14       Anyone else, please hit five star and I will unmute

15   your line now.

16       **(Pause in the proceeding.)**

17       **THE COURT:**  A 646 number?

18       **MR. ZIMAN:**  Your Honor, Ken Ziman, Paul, Weiss,

19   Rifkin, Wharton & Garrison LLP on behalf of the Senior Secured

20   Noteholders.

21       **THE COURT:**  Good afternoon.

22       **(Pause in the proceeding.)**

23       **THE COURT:**  A —

24       **MR. ZIMAN:**  Thank you.

25       **THE COURT:**  — 212-596 number?

4

1        **(Pause in the proceeding.)**

2            **MR. ROOSE:**  Good afternoon, your Honor, Matthew Roose

3     from Ropes and Grey.  I'm here with Paul Heath from Vinson and

4     Elkins.  And my colleagues Sam Bedawi and Christine Gerald.  We

5     represent the Ad Hoc Group of Convertible Noteholders.

6            **THE COURT:**  Good afternoon.

7        **(Pause in the proceeding.)**

8            **THE COURT:**  All right.  Those lines that I have

9     unmuted, I'd ask that you please just monitor yourselves and

10    keep your phone on mute.  Got two more and then I'll turn it to

11    Mr. Schrock.

12            A 312 number?

13            **MR. SALLOUM:**  Good afternoon, your Honor, Jusuf

14    Salloum from Kirkland and Ellis on behalf on Renesas.  I'm

15    joined with my partner, Steve Serajeddini as well.

16            **THE COURT:**  Good afternoon.

17            And there's a 212, your Honor.

18            **MR. SERAJEDDINI:**  Good afternoon, your Honor.

19    Mr. Salloum beat me to it.

20            **THE COURT:**  All right.  Good afternoon.

21            Okay.  Mr. Schrock, I will turn things over to your

22    team.

23            **MR. SHROCK:**  Okay.  Very good.  Thanks very much,

24    your Honor.  Again, for the record, Ray Schrock, Latham

25    Watkins, proposed counsel for the Debtors.

1          Rich, if you could switch it over to road map.  Do

2  you want me to talk briefly about, your Honor, I'm going to

3  cover the company background, the key stakeholders,

4  circumstances leading to the commencement of these cases and a

5  summary of the plan.

6          I'm then going to slip it over to Mr. Welch, who's

7  going to take you through what evidence we have, as well as the

8  path forward and the timeline.  And that'll be the conclusion

9  of the presentation in which we can hope to kick it off into

10  the motions right after that.

11          **(Pause in the proceeding.)**

12          **MR. SHROCK:**  So, I just moving along, Rich if you

13  could.

14          **(Pause in the proceeding.)**

15          **MR. SHROCK:**  So the company background, which is

16  outlined in the First Day Declaration of our Deputy CRO,

17  Mr. Hugo.  You know, we filed with two Debtors.  And it —— this

18  is a company that's been around for a very long time.  It is a

19  leading developer and manufacturer of wide band gap semi-

20  conductors.

21          The company's products, you know, have a broad range

22  of applications, including, you know, electric vehicles,

23  motorized power supplies, military communications, radar

24  satellite, and telecommunications.

25          It's a large company.  It is —— has operations, you

1  know, all over the world.  We have employees around the, you

2  know, the globe.  We have, you know, a very sophisticated

3  operation, you know, with —— you know, a lot of know how and

4  expertise that goes into manufacturing these —— these integral

5  products, which are critical, you know, not only just here

6  domestically but worldwide.

7        And next page.

8    **(Pause in the proceeding.)**

9      **MR. SHROCK:**  The organizational chart is set forth

10 here.  And you can see that we didn't file, obviously, the

11 foreign entities that are here on the chart.

12       But, you know, unlike many of our Debtors that come

13 before you, Judge, you know, the capital structure, aside from

14 the senior secured notes, was largely unsecured.  And so coming

15 into these cases, you know, there were certainly, you know, we

16 felt very good about, you know, the company's prospects moving

17 forward.  But we were facing a very significant leverage

18 problem.

19       And we'll be happy to answer any questions as we go

20 through just as we get into the details of the plan.

21       But let's keep it moving.

22   **(Pause in the proceeding.)**

23     **MR. SHROCK:**  So the pre-petition debt is outlined

24 here.  A little over seven billion, including non-general

25 unsecured claims, as well as trade claims.

1        This has been months in the making to negotiate this

2   plan, your Honor, as it, you know, we — we frequently see with

3   pre-packaged Chapter 11 cases.  But the outline here is, you

4   know, there's a billion five of senior secured notes.  They're

5   a company who was facing a near date of maturity of 2026

6   convertible notes of 577 million with 2028 convertible notes

7   are outlined here as well as the 2029.

8        They're deducting an ad hoc group among the '26, '28,

9   and '29 group.  And then a very large loan from Renesas of —

10   of just a little over $2 billion on top of the trade claims.

11        Let's keep going, guys.

12   **(Pause in the proceeding.)**

13        **MR. SHROCK:**  So the key stakeholders.

14        Keep going.  There you go.

15        So, again, you know, the company operates across 3

16   continents, 13 countries, maintains its headquarters in Durham,

17   North Carolina.  Certain members of the management team based

18   in Munich, Germany and Texas.  It's about 3500 employees.  And

19   the Debtors themselves employ 3300 employees.

20   **(Pause in the proceeding.)**

21        **MR. SHROCK:**  Keep going.  There we go.

22        So, the directors are outlined here.  And so, the

23   directors have been heavily engaged throughout this process.

24   We're very proud of corporate governance process we've run

25   coming into these cases, as well as historically.

8

1          There was a Finance Committee that's been

2 established, you know, for a very long time.  And having been

3 doing this for a while, your Honor, I would say the number of

4 meetings and the number of times that, you know, this Finance

5 Committee of independent directors met was on the upper end.

6          I think we were — we were actually approaching — I

7 don't think we quite made it to a hundred meetings, but we were

8 getting quite close.

9          And so it gives you some idea as to the level of

10 engagement by this independent board, and everybody wanting to

11 do the right thing, not just for the company, but for all of

12 the stakeholders that are around the table.  It's a public

13 company.  And, you know, we're all very mindful of that moving

14 forward.

15          The chief restructuring officer is Carl Andrianapoli

16 (phonetic).  Dan Hugo is with us today as our first day

17 declarant.  The Debtor's professionals are outlined here from

18 (indiscernible) Weinberg (phonetic) and STI Consulting.

19          And then on the next page —

20     **(Pause in the proceeding.)**

21     **MR. SHROCK:**  — you've got, so Mr. Zeigland

22 (phonetic), spent a lot of quality time together with Paul

23 Weiss (phonetic).  Loweless (phonetic) and Company is their

24 investment banker.  There's an ad hoc group of 26 from the

25 829's advised by Roose at Ropes and Gray, along with Mr. Dahl

1    and Disera (phonetic).  It was they, I believe, representing

2    that —— that large group.  Cain Meade (phonetic),

3    Mr. Serajeddini was Jusuf who were representing Renesas along

4    with PJT Partners.

5             Keep going please.

6             So, you know, why are we here?  The company was

7    facing, you know, very challenging regulatory environments

8    abroad or economic headwinds.  And faced significant challenges

9    coming into these cases.

10            I would say, first and foremost, to fund a growth

11   strategy and cap ex, the Debtors incurred substantial long-term

12   debt obligations, which have adversely impacted cash flow from

13   operations.

14            They also faced near dated maturities for certain of

15   the unsecured notes, you know what I mean, with those 2026.

16   And, you know, this —— even when you think about how quickly

17   things change and our fortunes can change so quickly, you know,

18   for the prospects of the company, you know, even just, you

19   know, just in the very recent past as the company was, you

20   know, raising this incremental debt, funding a lot of cap ex

21   for new —— new businesses, or for new, sorry, for new

22   manufacturing facilities.

23            You know, there was a time when, you know, you can

24   imagine the news, your Honor.  People said, listen, we can't

25   get the right type of, you know, semi-conductor chips.  The

1  company's facing all of these —— these backlogs and back

2  orders.  And people are afraid they couldn't get the company's

3  product.

4         And, you know, to be honest, you know, things changed

5  very quickly, you know, coming out of —— coming out of the

6  pandemic.  And the company saw its prospects, you know, briefly

7  come into, you know, come into view with the Chips Act funding

8  that, you know, was a highlight of the prior administration.

9         So with the change of administration, we certainly

10  ran into some, you know, headwinds and different political

11  circumstances as we're trying to close that off.

12         But, you know, I think that everybody was working

13  around the uncertainty and timing of funding around when the

14  company might, you know, receive, you know, additional funds.

15  Did they have a long-term, you know, viable capital structure,

16  and their ability to forecast future liquidity.

17         The one thing the company does have, the company has

18  cash.  But this board and, you know, this team really were

19  looking at saying what's the right thing to do for this company

20  now to put it on the best footing moving forward so that we

21  don't, you know, just take a lifeline, for instance, to give it

22  a short term fix and have its back up against the wall and not

23  be able to do the right thing for its employees and all the

24  stakeholders moving forward.

25         And, you know, through the engagement with its

1   stakeholders, as we'll outline, you know, ultimately decided

2   that it can get the most value for the stakeholders, get a

3   recovery even for common shareholders under this plan.  And,

4   frankly, put the company in the right footing and growth for

5   moving forward by engaging in these discussions now.

6            And that's the bottom line here is you don't see as

7   many companies, you know, the restructuring professionals, they

8   really take this step and say listen, we're doing the right

9   thing for the company.  We're not going to take the last ⸺ the

10  last breath or spend the last dollar.

11           We see the fact that the company, our judgment is

12  that they would not grow into this capital structure.  That was

13  certainly the view of the stakeholders around the table and the

14  (indiscernible) now, before their back was up against the wall,

15  they were able to get the most value for ⸺ for all of the

16  stakeholders.

17           And so, we're very proud of the ⸺ of the plan that

18  we've been able to negotiate.  You know, no one likes to file

19  for certainly for ⸺ for a Chapter 11.  And it's not a step

20  that you're going to take easily.

21           But when, you know, the fiduciaries around the table

22  are able to, you know, make that call, look at, you know, what

23  the circumstances that's facing us and make the hard choices,

24  and actually deliver on such a complicated plan, you know,

25  that, you know, had, you know, roughly 40 parties that were

12

1   effectively negotiating around the table, really was

2   remarkable.

3          And, you know, we think the company should be

4   applauded for taking the right steps to — to reorganize now.

5          **(Pause in the proceeding.)**

6          **MR. SHROCK:**  So let's keep moving, please.

7          **(Pause in the proceeding.)**

8          **MR. SHROCK:**  So the pre-petition restructuring

9   timeline, I just want to hit a few things here that, you know,

10  the company tried, in March you see in the middle of the page,

11  to execute on an out-of-court exchange transaction with

12  individual holders.

13         Ultimately, that did not work.  We tried very hard to

14  get there.  And I would say we were even close for a time with

15  a public market style exchange.  It — we couldn't pull it

16  together at the end of the day, but it wasn't for a lack of

17  trying.

18         We did have our stakeholders organized.  And we

19  quickly reengaged to determine if there was a path forward for

20  a global resolution.

21         We did have another subgroup of 2026 noteholders that

22  we do have more than two-thirds, obviously, of the — of the

23  relevant parties that is signed up.  We do have a full pre-

24  package Chapter 11 case here, being leveraging by billions of

25  dollars.

1          But that subgroup of 2026 holders, they were out

2    there to serve.  And company's evaluating, should they do

3    something near term?  They obviously —— they —— they had built

4    their own views about how their securities should be treated.

5          And ultimately, the company made the decision that,

6    you know, its key stakeholders around the table for the benefit

7    of its employees to, frankly, give a meaningful recovery to its

8    shareholders, that we're going to engage in a global

9    restructuring and actually fix the balance sheet right now.

10         So in May, we reached consensus around the high level

11   terms of the agreement to be implemented through pre-packaged

12   Chapter 11 cases on a very preliminary basis.

13         And when we conducted a third-party financing process

14   to market check new money back stop commitments and the

15   proposed transaction terms, ultimately resulting in an

16   restructuring support agreement that we executed just a short

17   time ago.  And we did commence solicitation of these cases

18   actually coming into this past weekend.

19         So, if we can go ahead and flip and see here to look

20   at more about the, you know, the plan and the leveraging.

21       **(Pause in the proceeding.)**

22       **MR. SHROCK:**  You know, we have a deliberate and

23   expedited review of discreet issues, Judge.  We do have, as a

24   result of the negotiation with the key parties, there's a heavy

25   regulatory overlay that this —— with this business.  You know,

14

1   we need defense counter-intelligence, as well, (indiscernible)

2   approval to, you know, for the —— for some of the transactions

3   to ultimately to get through this.

4         But we've agreed to a date here that's very

5   deliberate.  You don't see with every pre-pack where, you know,

6   where —— and Mr. Welch talks about it, that, you know, listen,

7   we've agreed to three months from the time of signing the RSA

8   that we wouldn't, you know, emerge sooner than that, which you

9   don't see every day.

10        That's because of some of the regulatory overlay and

11  the time that it takes to get through critical steps toward

12  emergence.  And, frankly, to give us the best chance to get

13  those approvals, you know, inside of that date.

14        There's a heavy deleveraging here of over $4 billion

15  in unsecured bonds are going to be equitized and recapitalized

16  with a sustainable capital structure.

17        We're getting the minimal liquidity covenant under

18  our senior secured notes reduced from 750 to 375 million.

19  We're giving equity a meaningful recovery of three or five

20  percent, depending on whether or not these regulatory approvals

21  are obtained in conjunction with the Renesas equitization.

22        And all unsecured —— and creditors, employees remain

23  unimpaired throughout the cases.  The thousands of working

24  families that depend on Wolfspeed are going to have a place to

25  work.  And this company's going to be well positioned to

1    continue to be a public company with an independent board

2    moving forward.

3         This is just a little bit more detail around the pre-

4    petition versus the plan effective date capital structure.

5    There's a pay down in the senior unsecured notes that occurs

6    through the plan.  The convertible notes, you know, are going

7    to be equitized.  There's going to be some —— largely, there's

8    some new 2L convertible notes.  There's a take back instrument

9    for Renesas that results in the 200 million in debt and some

10   new takeback notes.

11        But, you know, going from 6.7 billion down to 2

12   billion in debt, you know, puts this company on really firm

13   footing.  We feel very good about, you know, its prospect

14   moving forward.

15        So here's some of the treatment summary.  We did

16   enter with, you know, more than 85 percent of the capital

17   structure already in support of these —— these plans.  But the

18   senior secured notes have already voted in favor of the

19   convertible notes.

20        We've already carried more than 67 percent.  We

21   expect that to continue to increase.  Renesas is impaired, has

22   agreed to vote in favor of the plan.  General unsecured claims

23   are going to be unimpaired, inner-company claims, inter-company

24   interests as well.  Five ten (b) claims are unimpaired.

25        And just a note on that, Judge, as we'll talk about

16

1  in the, you know, as we get to confirmation, that, you know, we

2  have a —— we have equity recovery here.  Okay.  We look at this

3  and say, what's going to be the most effective route to get to

4  that equity recovery.

5          There are some pre-petition, you know, 510(b) claims

6  that are out there.  But our view around the table was that

7  listen, it was going to —— we feel very good about our defenses

8  as a company.  And it was going to cost more, frankly, and it

9  was going to be highly diluted to the equity in order to —— to

10 do that and to actually, you know, compromise those claims.

11 Deal with that as part of the Chapter 11 case.

12         And so we've decided, listen, we can't let those

13 claims ride through with —— we go through the legal theories

14 around that, you know, and that horizontal gifting to —— to be

15 able to do that.

16         But I do want to highlight the 510(b) claims are

17 unimpaired.  You know, we feel that that's the right treatment,

18 you know moving forward.  And, frankly, for all of the

19 stakeholders that were at the table, everybody was in agreement

20 that this is the right way to treat those claims.

21         **(Pause in the proceeding.)**

22         **MR. SHROCK:**  Let's go ahead and flip, please.

23         **(Pause in the proceeding.)**

24         **MR. SHROCK:**  So, the summary of the plan terms, just

25 to give you a little bit more detail.

1          The senior secured notes are going to receive a cash

2    paydown of 250 million at a redemption price of, you know, of

3    109.  And they're going to lower the minimum liquidity

4    threshold from the 750 to 375.

5          The convertible notes are going to have the right to

6    purchase 2L convertible notes.  They get the 2L takeback notes

7    equal to 296.  They also get 56.3 percent of the new common

8    stock.  And, pursuant to a rights offering, a backstop

9    agreement provide new money to the company for a paydown.

10   That —— that's noted above.

11         Renesas gets new take back convertible notes equal to

12   204 million, 38.7 of Wolfspeed's new common stock, subject to,

13   you know, subject to regulatory approval, warrants exercisable

14   for five percent of —— of Wolfspeed's new common stock.  And,

15   if applicable, they get this contingent additional

16   consideration that's detailed, you know, as lowering the box.

17         So as part of the settlement with Renesas, the

18   Debtors and the other RSA parties, agreed that if Renesas does

19   not receive the requisite regulatory approval to enable it to

20   take delivery of its plan consideration, namely, equity

21   instruments within the agreed-upon timeframe, Renesas gets

22   additional consideration in the form of cash, second lien

23   notes, new common stock, and an extension of the expiration

24   date on the warrants.

25         That's why there's the difference in the three or

1   five percent of the recovery to the —— to the equity holders.

2   General unsecured claims receive payment in full in cash.  The

3   existing equity holders have the three or five.

4          Then, Rich, if we could just go.

5          The new 2L convertible notes receive a right to

6   purchase the pro rata share of 301 million of new 2L notes.

7   And the new 2L convertible notes are going to be issued,

8   pursuant to the parties offering the convertible to new common

9   stock of reorganized Wolfspeed.

10         There is a backstop commitment as part of this.  It's

11  been market checked.  And to be fully backstopped by the

12  consenting convertible noteholders, pursuant to the backstop

13  agreement.  And in return, the backstop parties will receive a

14  premium of 30.25 million payable in new 2L convertible notes.

15         Now, I know we're not here on confirmation.  But

16  painfully, aware of that, Judge.  But we did want to give you

17  and established stakeholders an overview of the, you know, the

18  very good treatment we've been able to negotiate for the

19  stakeholders here.

20         I do want to thank all of the RSA parties and all the

21  parties we've been negotiating with over the last several

22  months for getting us to this point.  But we're very much

23  looking forward to getting on with these cases.

24         And I'm happy to answer any questions you may have.

25         **THE COURT:**  No, no questions at this time.  Thank

19

1    you.

2              **MR. SHROCK:**  Thank you.

3              And with that, I'll turn it over to Mr. Welch to go

4    through item number five.

5              **THE COURT:**  Okay.  Let me just —— before we go to the

6    first day motions, is there anyone who just briefly wishes to

7    address the Court in connection with anything before we get

8    started on the motions?

9              **MR. RUFF:**  Your Honor, this is Jason Ruff with the

10   U.S. Trustee's office.

11             I just want to say thanks to the Debtors and their

12   team for working with us.  We did get in advance preview to any

13   of the motion —— or all of the motions that were filed and are

14   before your Honor.

15             I'm happy to report and —— and confirm that we were

16   able to work through all of our issues.  And so you'll probably

17   being hearing —— unless you have questions from me, your Honor,

18   you'll be hearing very little from me throughout the

19   presentation today.  Thank you.

20             **THE COURT:**  Thank you very much, Mr. Ruff.

21             **MR. SERAJEDDINI:**  Good afternoon, your Honor.  Can

22   you hear me okay?

23             **THE COURT:**  Just fine.

24             **MR. SERAJEDDINI:  (Telephonic interference –**

25   **transmission garbled – intermittently indiscernible.)**  For the

1  record, Steven Serajeddini of Kirkland and Ellis on behalf of

2  (indiscernible) for your Honor and giving (indiscernible) on

3  short notice.

4        Your Honor, my client is under (indiscernible) RSA.

5  We're a little bit of an unusual stakeholder in a Chapter 11.

6  So I wanted to give the Court a little background just very

7  briefly on who we are and how we got here.

8        **THE COURT:**  Sure.  Can you just get a little closer

9  to the phone?  I'm just having a little kind of back noise

10 hearing you.

11      **(Pause in the proceeding.)**

12      **MR. SERAJEDDINI:**  Is —— is that better now, your

13 Honor?

14      **THE COURT:**  Yes.  Thank you.

15      **(Pause in the proceeding.)**

16      **MR. SERAJIDINNI:**  Thank you.

17      If you don't mind, let me try one other thing.

18      **(Pause in the proceeding.)**

19      **MR. SERAJIDINNI:**  How's this, your Honor, any better?

20      **THE COURT:**  Oh, that's a lot better.  Thank you.

21      **MR. SERAJIDINNI:**  Okay.  I apologize.

22      So, your Honor, Renesas is a global leader in advance

23 semi-conductor solution.  We sell a range of products, operate

24 globally in 30 countries, and employ over 20,000.

25      Well, when you use a smart thermostat to cool your

1   house, or you take a ride in a self-driving car, part of that

2   device is powered by Renesas' technology.

3          In terms of how we got here.  We wanted to form a

4   commercial partnership with Wolfspeed in 2023, related to

5   either silicon carbine wafers (phonetic) that you heard today

6   from Mr. Shrock.  Wolfspeed was one of the few manufacturers.

7          And we discussed the various forms that that

8   arrangement could take.  But ultimately, we agreed on a wafer

9   supply agreement, accompanied by an unsecured deposit, the CRD

10  loans you heard about.

11         And that transaction was entered into about a week

12  after the Debtors entered into the 1L notes.  Now the

13  transaction provided that Renesas actually deposited two

14  billion dollars plus, so Wolfspeed could build out its

15  manufacturing and insure they could produce the wafers for

16  Renesas and other customers.

17         So, think of us as like submit the cost but never

18  really received the goods.  So fast forwarding to where

19  Mr. Shrock start with this negotiation, Renesas effectively

20  reacted to the Debtor's request that they try to see if there

21  was an out-of-court solution here.

22         And when ultimately they pivoted to an Court

23  solution, Renesas pivoted with Wolfspeed.  But —— and as you

24  heard a little bit, and details are gory and complicated.  But

25  it was not a simple exercise at all, your Honor.  Renesas is

1  not a distressed investor.

2          We obviously did not fund the CRD to be part of a

3  restructuring.  When the Debtor switched to an equitization,

4  effectively, they were putting us in a position where our

5  funded deposit becoming equity.  And because both the company

6  is are multi-national companies that operate in highly

7  regulated space, it implicated a number of regulatory issues.

8  And there are a handful of very important approvals that we're

9  all working together to seek and achieve on a timely basis.

10          But the most important thing is where Mr. Shrock laid

11  out, which is we all wanted to move quickly with certainty.

12  And we work with the Debtors to find a solution which is the

13  one that you heard about that effectively allows us to support

14  this restructuring as a larger stakeholder and be able to work

15  to be sure to get this company out of a bankruptcy as quickly

16  as possible.

17          So there's a lot more work to do.  And we look

18  forward to doing it.  But that's ⸺ that's our perspective.

19  And if you have any questions for me, your Honor, I'll cede the

20  podium.

21          **THE COURT:**  No questions.  Thank you very much.

22      **(Pause in the proceeding.)**

23          **THE COURT:**  Okay.

24      **(Pause in the proceeding.)**

25          **MR. WELCH:**  Thank you, your Honor.  Alexander Welch,

23

1    Latham and Watkins, proposed counsel to the Debtors.

2            Your Honor, from here on out, what I would propose to

3    do is move into the record the evidence and the exhibit list.

4    And then go from there to scheduling.

5            If there's any objections to that, otherwise, I ——

6    I'll proceed with moving in the declaration of Daniel Hugo in

7    support of the Debtor's Chapter 11 petitions and first day

8    relief.  That was filed at Docket Number 5.  Mr. Hugo is here

9    and available for cross-examination.

10           And usual, your Honor, this declaration is moved only

11   for the purposes of today's hearing.  And all other rights are

12   reserved to further hearings, subsequent hearings, in

13   particular, confirmation.

14           **THE COURT:**  Thank you.  Does anyone object to the

15   admission of the Hugo declaration for purposes of today's

16   hearing?

17       **(No response.)**

18           **THE COURT:**  Okay.  It is admitted.

19       **(Debtor's Exhibit at Docket Number 5 was received into**

20   **evidence.)**

21           **THE COURT:**  And I will note that it was filed ——

22           **MR. WELCH:**  Thank you.

23           **THE COURT:**  —— at 5:47 p.m.  I'm not sure that was ——

24   that was great.  I really enjoy reading it around six p.m.  I'm

25   not sure I felt (indiscernible).  I just wanted to say I

24

1   appreciate it.  I'm not sure if it'll ever be done again.  But

2   I certainly appreciated it today —— yesterday as I was reading

3   the —— the pleadings during the —— in the evening.

4        So, I did get a chance to read every first day

5   pleading and the declaration carefully.  I very much appreciate

6   all the attention that went into it.

7        **(Pause in the proceeding.)**

8        **MR. WELCH:**  Thank you, your Honor.

9        A first —— first for me.  I don't feel like it won't

10  be the last.  But (indiscernible).

11       The exhibit list, also filed at Docket Number 29,

12  moved into evidence Exhibits 1 through 13 on that list.

13       **THE COURT:**  Yeah.  Any objection to the admission of

14  the exhibits?

15       **(No response.)**

16       **THE COURT:**  Okay.  They're admitted.

17       **(Debtor's Exhibit's Number 29-1 through 29-13 were**

18  **received into evidence.)**

19       **MR. WELCH:**  Your Honor, going —— moving to the

20  agenda.  And we're very grateful for your Honor's attention to

21  the —— the motions today.  Just noting for the record the order

22  procuring administration of these proceedings was entered prior

23  to the hearing, Number 33.  The order granting complex case

24  treatment entered at Number 34.  And order authorizing

25  employment of Epic (phonetic) at Number 35.  Which takes us

1  through agenda items one, two, and four of today's agenda.

2        If your Honor will permit me, I'll go slightly out of

3  order and address agent number five, which is the solicitation

4  procedures motion.

5        **THE COURT:**  Uh-huh.

6        **MR. WELCH:**  And if we can put the calendar back up.

7  I think that would be helpful.

8        **(Pause in the proceeding.)**

9        **MR. WELCH:**  Judge, as you heard from Mr. Shrock, one

10 thing that might have stood out to you as part of the schedule

11 is, although this is a pre-pack.  And we do want to emphasize

12 this is a pre-package Chapter 11 case, with all that that

13 entails, we are moving on a slightly more stretched timeline

14 than one might ordinarily see in such a case.

15       I think the reasons by now will become clear to you

16 in that we are looking to —— we had to agree.  We agreed to

17 more time.  And, therefore, we're using that time as I think we

18 would expect yourself and other parties like the United States

19 Trustee to do so, which is to get folks more time to digest the

20 documents.  Give the Debtors time to get the documents done.

21 Filed in time supplement.

22       Of course, we will, once the —— the times comes, we

23 will move with haste to a motion Chapter 11.  But we just want

24 to emphasize that though it is a slightly longer timeline

25 than —— than ordinary, we don't want to lose sight of the fact

26

1    that this is a pre-package Chapter 11 case.

2              Your Honor, the solicitation procedures motion was

3    filed at Docket Number 9 of the said agenda item 5.

4    Solicitation commenced prior to filing.  Commenced on —— on

5    Friday of last week, June 27th to the holders of senior secured

6    note claims, convertible notes claims in Renesas.

7              The motion itself should in —— in most respects be

8    familiar to your Honor and this Court, as the U.S. Trustee

9    pointed out, we have —— when we're able to share the —— the

10   motion and the order with the United States Trustee,

11   incorporate any comments that they had, as well as any comments

12   from —— from other parties.  Sign the RSA with us.  And those

13   have been incorporated.

14             Just, in summary, the motion seeks a combined

15   hearing, establishing objection deadline, approval of the

16   solicitation procedures, and —— and the ballots.  I'll turn to

17   scheduling in a second, because we were able to liaise with

18   your chambers on some available dates.

19             But one thing I would —— would note that may be

20   slightly out of the ordinary for your Honor.  It might not have

21   noticed it.  But we did ask, with respect to conditional

22   approval of the disclosure statement, that any parties that are

23   seeking to preserve an objection to the disclosure statement on

24   the basis of adequate —— adequate information bring that to the

25   attention of the Debtors ahead of the voting deadline, and give

27

1  the Debtors an opportunity to cure that, or provide that

2  adequate information, or additional adequate information.

3           With respect to the schedule itself, your Honor, as I

4  said, we were able to reach out and get some dates.  We

5  understand these were available.  And so it seeks a combined

6  hearing on the 8th of September.

7           **(Pause in the proceeding.)**

8           **MR. WELCH:**  I think that satisfies, yeah.

9           **THE COURT:**  Yeah.  So, September 8th sounds good.  I

10  think, um ——

11          **(Pause in the proceeding.)**

12          **THE COURT:**  I'm getting a message that 1:00 p.m.

13  would work for me on September 8th.

14          **MR. WELCH:**  One p.m.

15          **(Pause in the proceeding.)**

16          **MR. WELCH:**  Okay.  So unless your Honor had any other

17  questions on the motion specifically, we'd ask that it be

18  entered. And then I'll turn to one more agenda item, one more

19  scheduling item.

20          **(Pause in the proceeding.)**

21          **THE COURT:**  Let me just ask if anyone wishes to be

22  heard in connection with this motion.

23          **MR. WELCH:**  Your Honor ——

24          **THE COURT:**  Go ahead.

25          **MR. WELCH:**  Just one more point.  I was remiss.

1          As I mentioned before, it does include the ballots,

2    which include opt out releases ——

3          **THE COURT:**  Uh-huh.

4          **MR. WELCH:**  —— which, in a customary —— in this

5    jurisdiction, they are —— they do provide Debtor releases,

6    albeit they are subject to an ongoing investigation by an

7    independent committee of the —— of the Debtors.

8          I just wanted to make sure that that was clear on the

9    record.

10         **THE COURT:**  Yeah.  I saw it.

11     **(Pause in the proceeding.)**

12         **THE COURT:**  Okay.  I'll —— I'll just note, then, for

13   the record that the Court is considering an emergency motion

14   for an order to schedule a combined hearing on the adequacy of

15   the disclosure statement, confirmation of the plan.  That also

16   includes approval of a backstop agreement.  Asking me to

17   approve solicitation procedures today and to fix certain

18   deadlines related to consideration of the voting deadline, and

19   the combined hearing date, and the objection deadlines there.

20         I'm going to find that there's been, under the

21   circumstances, proper notice.  But really, what —— what the

22   Court is being asked for today, is to approve a procedure in

23   connection with the pre-package Chapter 11 plan.

24         I would note that the voting deadline is longer than

25   that is required under the Federal Rules of Bankruptcy

1    Procedure.  And so I'm — I'm comfortable with the deadlines

2    here, the time for voting, the dates related to combining a —

3    scheduling a combined hearing.

4            That's giving folks plenty of time under the

5    circumstances and more than it required under the Code and

6    under the Rules.  So I'm — I'm — I think —

7        **(Pause in the proceeding.)**

8        **THE COURT:**  — this is all appropriate.  And

9    everyone's rights are reserved in connection with a final

10   hearing.  And I'm — got no issues with giving folks

11   appropriate deadlines to, if there is an objection with respect

12   to the adequacy of information, to raise those issues timely.

13           And so, I've got no concerns about that as well.

14   I've had an opportunity to review the proposed order and the

15   proposed form.  Again, everyone's rights are preserved in

16   connection with plan confirmation and their rights to object to

17   anything in connection with disclosure statement.

18           And I'm really just approving procedures and

19   deadlines, which are customary and appropriate in connection

20   with the pre-packaged Chapter 11 plan.  I'm relying in part on

21   the Hugo declaration and the related exhibits that were filed

22   in connection with the first day hearings.

23           I'm comfortable with where we are.  And I'm signing

24   the order at Docket Number 9.  The only question I have for

25   you, Mr. Welch, is — is this nine kind of the latest and

1  greatest?  Is that the version for me to sign today?

2          **MR. WELCH:**  It is.  It is, your Honor.

3          **THE COURT:**  Okay.  I'll get that signed and on the

4  docket.

5      **(Pause in the proceeding.)**

6          **MR. WELCH:**  Thank you, your Honor.

7          Just two small scheduling items before I cede the

8  podium for a little bit.  That combined hearing on the 8th at

9  1:00 p.m. CT, is also when we'd ask —— we would need to reserve

10 time for also the backstop hearing as well.

11         **THE COURT:**  Uh-huh.

12         **MR. WELCH:**  We've not filed a motion for that yet,

13 your Honor.  We will do so in advance of that hearing.  With,

14 you know, due notice for that.

15         But I just wanted to draw that to your attention as

16 well.  Just, again, in —— as a —— as a pre-package plan,

17 customarily, you know, to have that all the combined hearing.

18 We've done that as well.

19         **THE COURT:**  Yeah.  I think that makes a lot of sense.

20     **(Pause in the proceeding.)**

21         **MR. WELCH:**  One last item before we go into the

22 motions for those who do need a second day hearing, we have

23 scheduled.  I saw the schedule for August 6th.  Just wanted to

24 put that on your radar as we go through and fill in the orders

25 for those who do need a second day hearing.

1          **THE COURT:**  Do you already have a time for that?

2     **(Pause in the proceeding.)**

3          **THE COURT:**  August 6th.

4     **(Pause in the proceeding.)**

5          **THE COURT:**  Let me just check.

6          **MR. WELCH:**  Ten a.m., your Honor.

7          **THE COURT:**  Then that's what we're rolling with.

8     **(Pause in the proceeding.)**

9          **THE COURT:**  Ten a.m. it is.

10          **MR. WELCH:**  Thank you, your Honor.

11          I'll cede the podium now to my colleague,

12   Mr. Cantoral.  And then I'll see you a little later at the ——

13   and the caboose end of the hearing, your Honor.  Thank you all

14   very much.

15          **THE COURT:**  All right.  Thank you.

16     **(Pause in the proceeding.)**

17          **MR. CANTORAL:**  Good afternoon, your Honor.  Can you

18   hear me?

19          **THE COURT:**  Just fine.  Good afternoon.

20          **MR. CANTORAL:**  Great.  For the record, my name is

21   Richard Cantoral of Latham and Watkins, proposed counsel to the

22   Debtors.  I have the next item of our agenda, which is agenda

23   item number 3, that can be found at Document Number 14.

24          On this motion, the Debtors seek entry of an order

25   granting relief authorizing the Debtors to first file a

1   consolidated creditor matrix and to file a consolidated list of

2   the Debtor's largest 30 unsecured creditors.  Second, to waive

3   the requirement to file a list of, and provide notice directly

4   to, the beneficial equity holders.  And lastly, to redact in

5   the consolidated creditor matrix and other publicly-filed

6   documents any personally identifiable information.

7           As the U.S. Trustee previewed, we have previewed the

8   motion to them.  And they have signed off.

9           So unless your Honor has any questions for me, I'd

10  ask respectfully the order to be entered that can be found at

11  Docket Number 14.

12      **(Pause in the proceeding.)**

13          **THE COURT:**  Anyone wish to be heard in connection

14  with this motion?

15      **(No response.)**

16          **THE COURT:**  Okay.  I've had an opportunity to review

17  the motion.  The relief is appropriate in connection with this

18  case.  And I'm going to grant the motion.

19          Let's just see.  Give me one second.

20      **(Pause in the proceeding.)**

21          **THE COURT:**  You still want me to sign the order at

22  14?

23          **MR. CANTORAL:**  Yes, your Honor.

24          **THE COURT:**  Okay.

25      **(Pause in the proceeding.)**

1          **THE COURT:**  Yeah.  Looks good to me.  I'll get it

2  signed and on the docket.  Thank you.

3          **MR. CANTORAL:**  Thank you, your Honor.  I'll now cede

4  the podium, the virtual podium, to my colleague, Mr. Einhorn.

5      **(Pause in the proceeding.)**

6          **MR. EINHORN:**  Good afternoon, your Honor.  Can you

7  hear me okay?

8          **THE COURT:**  Just fine.  Good afternoon.

9          **MR. EINHORN:**  For the record, Eric Einhorn, from

10  Latham and Watkins, proposed counsel for the Debtors.

11          Your Honor, the next item on the agenda is the

12  Debtor's motion seeking interim order with respect to the

13  Debtor's use of cash collateral, which can be found at Docket

14  Number 6.

15      **(Pause in the proceeding.)**

16          **MR. EINHORN:**  As set forth in the motion and

17  Mr. Hugo's declaration, the Debtors have sufficient cash in

18  hand to fund these Chapter 11 cases.  However, the Debtor's

19  secured noteholders, with a lien on substantially all the

20  Debtor's assets, including such cash.

21          Consequently, Debtors have a critical need to access

22  its cash collateral to avoid immediate and irreparable harm to

23  the Debtor's estates.

24      **(Pause in the proceeding.)**

25          **MR. EINHORN:**  Your Honor, because the Debtors are

1  seeking use of cash collateral, rather than DIP financing, some

2  of the disfavored provisions in the Southern District of Texas

3  are not in play.

4        In fact, provisions that are often at issue,

5  including default provisions and remedies for stay relief upon

6  termination, have been agreed in that the secure noteholders

7  need to file a motion seeking stay relief on three days'

8  business —— three business days' notice and have a hearing.

9        These provisions were also negotiated with the help

10  of the United States Trustee.  As a result, given that the

11  motion order was negotiated with the secured noteholders, in

12  connection with the signing of the RSA, and subsequently shared

13  with the United States Trustee, we are fortunately before you,

14  your Honor, on a fully consensual basis.

15        In exchange for the noteholders' consent —— secured

16  noteholders' consent, the Debtors agreed to provide such

17  noteholders an adequate protection package appropriate for the

18  facts of this case, including adequate protection liens, super

19  priority claims, and payment of post-petition interest.

20        Further, there are a few items that may have stood

21  out to your Honor, which I wanted to quickly highlight, each of

22  which was agreed to as part of the RSA.

23        As Mr. Shrock stated earlier, the amount of minimum

24  liquidity, the threshold has dropped from 750 million as of the

25  petition date, will be reduced to 650 million through the first

1   three months of the case.

2          Thereafter, it will be dropped further.  It would go

3   from 650 to 600 million.  And then upon emergence, it would

4   drop to 375 million.

5          The next item is the commitment fee, which could be

6   found in Paragraphs 4H, pages 10 to 12 of the order — proposed

7   order.

8          This relates to an undrawn lines fee under a no

9   purchase agreement between the secured noteholders and the

10  Debtors.  As part of the global deal, the secured noteholders

11  agree to a 50 percent reduction of their outstanding commitment

12  fee with the remainder to be waived on the effective date,

13  which the Debtor has viewed as a material concession.

14         Then the last point I wanted to highlight is the

15  payment of professional fees of consenting creditors, so long

16  as the RSA is not terminated.  Such professionals for the '26,

17  '28, '29 ad hoc group and — and Renesas.

18         Additionally, your Honor, the order contains

19  customary termination rights for the secured noteholders, which

20  can be found at Paragraph 7 of the proposed order.  However, as

21  set forth in Paragraph 8, if the secured noteholders seek to

22  exercise such rights, they will have to file a motion as I

23  stated on three business days' notice and have a hearing.

24         Importantly, to the extent the Court determines that

25  a termination even had occurred, the Debtors retain the right

36

1    to seek Court approval to use cash collateral on a non-

2    consensual basis.

3         **(Pause in the proceeding.)**

4         **MR. EINHORN:**  Lastly, your Honor, as Mr. Welch

5    alluded to, we confirmed with your case manager when the Court

6    is available for a final hearing on cash collateral if needed.

7    And we added that date and time and the objection deadline to

8    the proposed order at Paragraph 30.

9         Accordingly, unless your Honor has any questions, the

10   Debtors would request that the Court enter the proposed order

11   filed at Docket Number 6-1.

12        **(Pause in the proceeding.)**

13        **THE COURT:**  Anyone wish to be heard in connection

14   with the cash collateral motion?

15        **(No response.)**

16        **THE COURT:**  Just give me one second.

17        **(Pause in the proceeding.)**

18        **THE COURT:**  Okay.  The Court  now considers an

19   emergency motion considering today an interim order authorizing

20   Debtor's use of cash collateral and granting adequate

21   protection to certain pre-petition secured parties and

22   scheduling a final hearing and granting related relief.

23        I'm going to find that there's been proper notice and

24   service under the circumstances.

25        **(Pause in the proceeding.)**

1          **THE COURT:**  The authority to use cash authority cash

2   collateral.  Debtor cannot use, I've got some interns in the

3   courtroom today.  And so I'll note that the Debtor cannot use

4   cash collateral without consent, or without an order of the

5   Court here.  There's a fully consensual use of cash collateral.

6   So that the request is to authorize the Debtors to use this

7   cash collateral in accordance with a proposed budget and

8   granting adequate protection on the proposed terms requested in

9   the interim order.

10         I've reviewed the proposed adequate protection

11   package, and the proposed budget, and the proposed terms of the

12   cash collateral order.  I will just note that it satisfies

13   Bankruptcy Code requirements and also has a —— a good dose of

14   practicality in it.

15         I very much appreciate.  And I know that there —— you

16   can obviously tell in connection with this case, and with the

17   Hugo declaration that there's a number —— a lot of negotiations

18   here that went forward.

19         But no one reached really hard in connection with

20   this motion today.  And so I very much appreciate that.  I'm ——

21   the package is appropriate under the circumstances.  And I will

22   grant the relief requested.

23         You've already filled out the date.  And I very much

24   appreciate that.  And I will get this signed and on the docket

25   today.

1          Thank you.

2      **(Pause in the proceeding.)**

3          **MR. WELCH:**  Thank you, your Honor.

4          **MR. EINHORN:**  Thank you, your Honor.

5          The next item on the agenda is the Debtor's motion

6   seeking Court approval of the rights offering and rights

7   offering procedures, which can be found at Docket Number 10.

8          Your Honor, the rights offering is the product of

9   extensive, arms length, and good faith negotiations and a key

10  component for the global resolution between the Debtors and the

11  consenting creditors.

12     **(Pause in the proceeding.)**

13         **MR. EINHORN:**  Specifically, the Debtors are focused

14  on having its procedures approved from a process standpoint.

15  To be clear, the Debtors are not seeking Court approval of the

16  backstop agreement or any associated premiums or fees today.

17  That will be done later in the case on normal notice.

18         So to get to the Court's approval, the Debtor's

19  rights offering is open to all holders of convertible notes

20  claims, who shall be eligible to participate and subscribe with

21  their pro rata share of approximately $301 million of new 2L

22  convertible notes at a purchase price of 91 percent of the

23  principal amount thereof.

24         Now, your Honor, pursuant to the backstop agreement,

25  which attached to the motion as Exhibit C, the rights offering

1  will be fully backstopped by certain holders of existing new 2L

2  convertible notes.  In exchange for providing such backstop,

3  the commitment parties will be entitled to a backstop premium

4  of 20 percent of the new 2L convertible notes, which will be

5  exclusively reserved for the initial backstop parties and

6  payable on the plan effective date.  And they will be a

7  backstop hold back allocation, which will be 20 — another 20

8  percent of the new 2L convertible notes, also exclusively

9  reserved for the backstop parties.

10        Accordingly, the rights offering procedures pertain

11  to the remaining 60 percent.  And that will be offered to

12  the — all convertible noteholders.  But as a reminder, neither

13  the backstop premium or the hold back allocation are being —

14  are asked to be approved today.

15        The Debtors are essentially just looking for the

16  procedures to be approved.

17        **(Pause in the proceeding.)**

18        **MR. EINHORN:**  Obtaining the funds pursuant to the

19  rights offering is critical to the Debtor's successful

20  implementation of the plan.

21        Specifically, such proceeds will be used to fund the

22  effective date cash payment to its secured noteholders while

23  allowing the Debtors to emerge from  Chapter 11 with adequate

24  capital to operate the reorganized business and position the

25  reorganized Debtors for growth and success.

1          From a scheduling perspective, the Debtors are

2    seeking to launch the rights offering on August 14th with a

3    subscription tender deadline set to expire on September 11th.

4          **(Pause in the proceeding.)**

5          **MR. EINHORN:**  Now, your Honor, the Debtors are

6    seeking to have this motion be heard on an emergency basis for

7    three reasons.

8          First, it will provide the Debtors, the commitment

9    parties, and the customer base with the comfort of knowing

10   there are Court-approved procedures that will allow for a

11   timely launch.

12         Second, the proposed timing aligns with the

13   confirmation timeline set forth in the scheduling order just

14   approved by the Court.  This timeline will give such eligible

15   holders a reasonable opportunity to make an informed investment

16   decision whether to participate in the rights offering prior to

17   have — prior to having to vote on the plan.

18         Third, the Debtors agree, at the lenders' request, to

19   have the procedures entered today.  And if eligible holders

20   have any issues down the road, we are more than happy then to

21   work with them.

22         Your Honor, I'm happy to go into additional detail

23   about specific rights offering procedures.  Unless your Honor

24   has any questions, I respectfully request that the Court enter

25   the propose order approving the rights offering, the rights

1    offering procedures filed at Docket Number 10-1.

2         **(Pause in the proceeding.)**

3         **THE COURT:**  Anyone wish to be heard in connection

4    with this motion?

5         **(No response.)**

6         **THE COURT:**  Just give me one moment.

7         **(Pause in the proceeding.)**

8         **THE COURT:**  Okay.  So, I'm going to consider an

9    emergency motion to approve rights offering procedures and

10   related forms.  I'm going to consider it today on an emergency

11   basis.

12         I think of all the motions that were filed, this

13   one —

14         **(Pause in the proceeding.)**

15         **THE COURT:**  — they all get close reads.  This one

16   got the closest read in terms of requirements why today.  Why

17   is it necessary?  Considerations of due process, notice to

18   other parties who may not have known about the case.

19         I think about the declaration that was filed today,

20   though, incredible numbers — incredible amount of support this

21   case came in with from really significant creditor groups.

22         **(Pause in the proceeding.)**

23         **THE COURT:**  You also think about the time that is

24   being requested.  And there's no objection here.

25         But I think in motions like this I've got to really

42

1  consider whether there's an appropriate time.  I mean,

2  whether ⸺ whether consciously or unconsciously I think other

3  folks could get jammed and unnecessarily hindered by a really

4  expedited timeline.

5          And I look at the dates in which you have here of

6  starting on August 14th through September the 11th.  That's the

7  subscription period.  I'm ⸺

8      **(Pause in the proceeding.)**

9      **THE COURT:**  I ⸺ I think every case is different.  I

10 think every case you've got to look at the timeline, the state

11 in which the case landed ashore.

12     **(Pause in the proceeding.)**

13     **THE COURT:**  When I consider all of the evidence that

14 is before me, I think in this case, this is appropriate.

15     **(Pause in the proceeding.)**

16     **THE COURT:**  There's just a lot of work that needs to

17 get done before a rights offering could get commenced.

18     **(Pause in the proceeding.)**

19     **THE COURT:**  And what I'm doing is approving the

20 procedures in place to get the wheels moving.  I'll let folks

21 know who are voting on this plan that the procedures are in

22 place to ⸺ to provide some additional clarity as to why they

23 think this plan will work.  And ⸺

24     **(Pause in the proceeding.)**

25         **THE COURT:**  ⸺ that there isn't kind of a ⸺

1        **(Pause in the proceeding.)**

2        **THE COURT:** —— a looming deadline that they need to

3    be answered before they could vote whether to accept or reject

4    the plan.

5             Again, I'm —— I'm really looking carefully about the

6    amount of time that was being proposed here, when it would

7    start.  I know I'm looking to launch this, you know, next week.

8    This is plenty of time.  It's really next month.

9             Gives me comfort that if someone wanted to come in

10   and talk to the Debtors, that they would have that opportunity

11   and come to the Court if need be.  But ——

12       **(Pause in the proceeding.)**

13       **THE COURT:**   —— the commitment parties would know that

14   they would —— there'd be some Court-approved procedures that

15   could allow them to launch this in a timely manner.

16       **(Pause in the proceeding.)**

17       **THE COURT:**  And the reality is, is that the money

18   that's going to be raised is going to be helpful for the

19   reorganized Debtor, assuming we get there.  And, again,

20   everybody's rights are reserved.  I'm just looking at from

21   where we are today.

22            There's an incredible amount of support that has gone

23   into this case on day one.  And they're represented by the

24   parties here are here.  And everybody's rights are preserved.

25   But is this ——

44

1      **(Pause in the proceeding.)**

2          **THE COURT:**  Has the Debtor satisfied business

3  judgment?  The answer is yes.

4      **(Pause in the proceeding.)**

5          **THE COURT:**  And I'm not approving the backstop today.

6  And I want to be really clear about that.  And counsel, you

7  must — you've — you've said that.  And I just — I take that

8  seriously.

9      **(Pause in the proceeding.)**

10         **THE COURT:**  But the process will start.  And we'll

11  see where it goes.

12     **(Pause in the proceeding.)**

13         **THE COURT:**  I think — again, I — I just want to

14  stress to everyone.  I think every case is different.  And the

15  answer could be yes on this case.  And the answer could be no.

16  I don't know other — and the answer could be we need to do

17  this in two weeks or three weeks in another case.

18         Every case is different.  And you look at every one

19  differently.  But in connection with this case, trade,

20  proposed — is proposed to be unimpaired.  I consider that,

21  too.

22     **(Pause in the proceeding.)**

23         **THE COURT:**  I've given this one a lot of thought

24  overnight.  Based upon what you're telling me, I'm comfortable

25  signing the agreement in this case.

1          **MR. EINHORN:**  Thank you, your Honor.

2          Unless you have any other questions for me, I will

3   now cede the podium to my colleague, Bryan Rosen.

4          **THE COURT:**  Thank you.

5          **MR. EINHORN:**  Thank you.

6      **(Pause in the proceeding.)**

7          **MS. ROSEN:**  Good afternoon, your Honor.  Bryan Rosen

8   of Latham and Watkins proposed counsel to the Debtors.

9          I'll be presenting the Debtor's cash management

10  motion, which is at Docket Number 12 in agenda item number 8.

11         The Debtor's cash management system is relatively

12  standard for a company of its size.  It includes 26 different

13  accounts that range from collection to disbursement, as well as

14  certain investment activities.

15         The motion seeks typical release to continue the

16  Debtor's cash management system, including honoring inter-

17  company transactions, granting a conditional 60-day waiver of

18  the 345(b) requirements, and related relief.

19         As Mr. Ruff noted, we were able to work with him in

20  his office, as well as the other contending creditors on the

21  form of order and believe we have a consensual form of order

22  before your Honor.

23         Unless you have any questions, I would kindly request

24  entry of the proposed interim cash management order at Docket

25  Number 12.  As with the others that require final relief, we

 1  have filled in August 6th at 10:00 a.m. for the final hearing

 2  on this.

 3      **(Pause in the proceeding.)**

 4          **THE COURT:**  Anyone wish to be heard in connection

 5  with the cash management motion?

 6      **(No response.)**

 7          **THE COURT:**  Okay.  Before the Court is a request for

 8  an interim approval of a cash —— use of the cash management

 9  system.  This is really just to allow the Chapter 11 Debtor to

10  ease into the Chapter 11 process while maintaining its current

11  banking structure and the way the cash flows through its

12  internal system.

13          But it also provides and assures transparency that

14  Debtor cash, we all know where it is, and where it's being

15  held, and comfortable with where it's being held.  And it's

16  just an interim order.

17          So I'm comfortable approving this motion.  I've

18  signed it.

19          Where do we go next?

20      **(Pause in the proceeding.)**

21          **MS. ROSEN:**  Thank you, your Honor.  Just one from me

22  today.  So I'll pass the podium to my colleague, Mr. Ryan

23  Lindsey.

24          **THE COURT:**  Good afternoon.  Take care.

25      **(Pause in the proceeding.)**

1          **THE COURT:**  All right.

2      **(Pause in the proceeding.)**

3          **MR. LINDSEY:**  Good afternoon, your Honor.  Ryan

4   Lindsey of Latham and Watkins, proposed counsel to the Debtors.

5          Next on the list is the Debtor's insurance motion,

6   which can be found at Docket Number 16, item number nine on the

7   agenda.

8          By this motion, the Debtors seek entry of an order

9   authorizing the Debtors to maintain, renew, and supplement

10   their existing insurance programs in the ordinary course of

11   business, pay any premiums, deductibles, or other obligations

12   related to such insurance programs, including brokers fees and

13   payments under the Debtor's premium financing agreement.

14          In addition, the Debtors seek a modification of the

15   automatic stay to allow the Debtor's employees to proceed with

16   Workers Compensation claims during the pendency of these

17   Chapter 11 cases and permit D and O insurers to pay defense

18   costs of individuals covered by and payable under the Debtor's

19   pre-petition D and O policies.

20          The Debtors maintain a robust insurance program,

21   typical in scope and amount for companies of its size.  And

22   specifically, I —— I just wanted to discuss the D and O

23   policies and the modification of the automatic stay that we're

24   seeking under this motion.

25          Under the —— certain of the Debtor's D and O

1   policies, D and O insurers are obligated to pay legal fees

2   incurred in defense of claims against individuals covered by

3   such policies.  And we're requesting comfort language in the

4   order to make those D and O insurers comfortable with paying

5   those legal fees and expenses on a post-petition basis.

6          If the Court has no further questions or any

7   questions on this motion, we respectfully ask that the order at

8   Docket Number 16 be entered.

9          **THE COURT:**  No.  I'm comfortable.  Because of ——

10  we're going to have some other motions where you're going to

11  pay trade and critical vendors.  And trade is supposed to be

12  unimpaired in connection with this case.

13         And so when you look at this case on a whole, you're

14  going to maintain your customer programs.  And you're going to

15  end up paying employees.  So I'm okay with the relief requested

16  to continue to pay D and O defense costs and to limit the stay.

17  Cause you're going to take care of other folks as well today.

18         And so I'm comfortable with the relief requested.

19  Obviously, Debtor needs insurance.  It's super important in

20  connection with this case.

21         I —— I am comfortable with the comfort language that

22  is here.  It is a pre-package case.  And again —— again, the

23  items 10, 12, and 14 are —— are looming heavy for me.  And so I

24  find that very important.

25         I'm granting this because I know the other ones are

49

1   filed, too.  So thank you.  I've signed the order.

2          **MR. LINDSEY:**  Thank you, your Honor.

3          You are one step ahead of me, cause next on the list

4   is the all trade motion, which can be found at Docket Number

5   13, item number 10 of the agenda.

6          By this motion, the Debtors seek entry of an order

7   authorizing Debtors to pay pre-petition trade claims in the

8   ordinary course of business as such claims become due.

9          This case is a pre-package case of the Debtor's

10  proposed plan, which can be found at Docket Number 9, provides

11  for a payment in full of all general unsecured claims.

12          So the relief requested by this motion will only

13  alter the timing and not the quantum of those payments.

14      **(Pause in the proceeding.)**

15          **MR. LINDSEY:**  If the Court has no further ── no

16  questions, we would respectfully request that the order at

17  Docket Number 13 be entered.

18      **(Pause in the proceeding.)**

19          **THE COURT:**  Anyone wish to be heard in connection

20  with this motion?

21      **(No response.)**

22          **THE COURT:**  Okay.

23      **(Pause in the proceeding.)**

24          **THE COURT:**  The Court considers the all trade motion.

25  This is really a request to pay all general unsecured claims

1   pre-petition.  But is also —— sometimes there are some pre-

2   petition claims.  I don't —— the payment itself is not yet due

3   yet.  And so certain payments needs to just request to be paid

4   in the ordinary course of business.

5          So you're not kind of just making some lump sum

6   payment to everyone at one time.  It —— that will be paid out

7   over the course.

8          But we'll keep unsecured creditors, trade creditors,

9   satisfied, so that there's no disruption to the business.  And

10  you ——

11      **(Pause in the proceeding.)**

12      **THE COURT:**  —— can't overlook the proposed

13  restructuring here and the amount of —— of agreement to reduce

14  the amount of debt by literally billions of dollars and at the

15  same time paying all trade creditors.

16         This is certainly appropriate an exercise of the

17  Debtor's business judgment and only comes through lots of work

18  before this case got filed.

19         And so I will grant the relief requested.  It's

20  appropriate in this case.  And I'll grant the motion.

21      **(Pause in the proceeding.)**

22      **MR. LINDSEY:**  Thank you, your Honor.  There's nothing

23  further from me.  I'll turn the podium to my colleague, Rebekah

24  Presley.

25      **THE COURT:**  All right.  Thank you.

1      **(Pause in the proceeding.)**

2          **MS. PRESLEY:**  Good afternoon, your Honor.  For the

3      record, Rebecca Presley from Latham and Watkins, proposed

4      counsel to the Debtors.

5          Your Honor, the 11th item on the agenda is the taxes

6      motion, which is located at Docket Number 18.  By this motion,

7      the Debtors seek authorization to pay certain pre-petition

8      taxes and other charges.

9          The Debtors also see authorization to satisfy

10     obligations related to audits and assessments.  The Debtors

11     estimate that approximately $15.4 million in pre-petition taxes

12     and fees will become payable to the taxing and regulatory

13     authorities in the ordinary course of business during the

14     pendency of these cases.

15         Your Honor, it goes without saying that the payment

16     of these taxes is in the best interest of the Debtor and their

17     estates —— Debtors and their estates.

18         If the Debtors are unable to pay their taxes in a

19     timely manner, they could face fines and penalties, imposing

20     significant costs on the Debtors estates.

21         U.S. Trustee has received this motion.  And we

22     believe the proposed order is acceptable to the U.S. Trustee.

23         With that, unless your Honor has any questions, the

24     Debtors would request that the Court enter the proposed order

25     located at Docket Number 18.

1          **(Pause in the proceeding.)**

2          **THE COURT:**  Nope.  I've reviewed it.  I approve it.

3   Pay your taxes.  Thank you.

4          **MS. PRESLEY:**  Thank you, your Honor.

5          The next item on the agenda is the wages motion,

6   which is located at Docket Number 11.

7          By this motion, the Debtors seek authorization to

8   maintain their work force programs and to pay all employee

9   obligations totaling 6 —— $65.6 million.

10          These obligations primarily entail compensating

11   employees and other members of the work force and maintaining

12   employee benefits programs post-petition.

13          The Debtors do not by this motion seek to pay any

14   bonuses, retention payments, or severance to insiders.  The

15   Debtors do seek to continue paying all of those to non-insiders

16   in the ordinary course, including certain payments over the

17   statutory cap to non-insiders and the continuation of a

18   retention program for non-insiders.

19          The Debtors have approximately 3,325 employees,

20   independent contractors, and temporary staff.  Your Honor, the

21   employees are the life blood of the Debtors' businesses.  And

22   the Debtors submit that maintaining the employee compensation

23   and benefits programs and paying and pre-petition amounts

24   thereunder, is in the best interest of the Debtors' estates and

25   would maximize value for all parties.

1          U.S. Trustee has received this motion.  And we

2   believe the proposed order is acceptable to the U.S. Trustee.

3          With that, unless your Honor has any questions, the

4   Debtors would request that the Court enter the proposed order

5   located at Docket Number 11.

6          **THE COURT:**  Okay.

7          **(Pause in the proceeding.)**

8          **THE COURT:**  Any ──

9          **(Pause in the proceeding.)**

10          **THE COURT:**  ── bankruptcy lawyer who gets a case on

11   July 1st, first thing we think about is that actually for

12   employees in the United States, rent is due, mortgages are due,

13   folks' insurance payments get made.

14          And so this motion becomes super important to

15   bankruptcy judges to make sure that employees who have done

16   their work have comfort that they're going to get paid for the

17   work that they've done.  And that they're able to continue to

18   have the benefits and that there'd be no disruption.

19          And so, I happily approve this motion to continue the

20   benefits in the ordinary course of business and allow

21   management to make the announcement that the Court has signed

22   an order to make sure that the work that they did, they will be

23   paid for it.  And there'll be no disruption to their health

24   benefits and to their compensation programs for non-insider.

25          **MS. PRESLEY:**  Thank you, your Honor.

1          **THE COURT:**  Thank you.

2     **(Pause in the proceeding.)**

3          **MS. PRESLEY:**  With that, I will pass the podium to my

4  colleague, Mr. Singh.

5          **THE COURT:**  Thank you.

6     **(Pause in the proceeding.)**

7          **MR. SINGH:**  Good afternoon, your Honor.  Sahib Singh,

8  Latham and Watkins, proposed counsel to the Debtors.

9          The next item on the agenda is the Debtor's utilities

10  motion, which is agenda item 13, Docket Number 15.

11          Your Honor, the utilities motion requests approval of

12  standard adequate assurance procedures.  We propose to deposit

13  around $492,000 in an adequate assurance account for the

14  benefit of utility providers, and to establish procedures a

15  utility providers believes that they create a deposit if

16  needed.

17          In the meantime, utility providers will be prohibited

18  from discontinuing service.  And the Debtors intend to continue

19  paying utility providers for bills incurred throughout the

20  cases.

21          The deposit equals approximately 50 percent of the

22  Debtor's monthly utility spend, less amounts that are already

23  held by utility providers in the form of security deposits.

24          The Debtors have shared this motion and the proposed

25  order with the Office of the United States Trustee.  And we

55

1    believe the U.S. Trustee has signed off.

2           And unless your Honor has any questions, we ask that

3    the relief sought in the motion be granted and the proposed

4    order at Docket Number 15 be entered.

5           **THE COURT:**  Always appears as a very routine motion.

6    In this case it's like really important for Wolfspeed to make

7    sure that the lights stay on.  It's a crucial motion that you

8    just presented.  I very much appreciate the care in which you

9    did it.

10          **(Pause in the proceeding.)**

11          **THE COURT:**  The proposed procedures are appropriate

12   and will allow the Debtor's business to remain uninterrupted.

13   The Bankruptcy Code gives utilities the ability to actually

14   stop providing services unless there's adequate assurance

15   provided.

16          And the proposed procedures here provide that within

17   the meaning of Section 366 and also provide procedures where

18   someone wants to come and address the Court, they have that

19   opportunity to do so.

20          I will approve the procedures set forth in the

21   motion.  Thank you.

22          **(Pause in the proceeding.)**

23          **MR. SINGH:**  Thank you, your Honor.

24          The next item on the agenda, your Honor, is the

25   Debtor's customer programs motion, which is agenda item 14,

1    Docket Number 17.

2         Your Honor, the customer programs motion requests

3    authorization for the Debtors to honor pre-petition obligations

4    and to continue their customer programs to maintain customer

5    business relationships and good will.

6         The Debtors have established various customer

7    programs as detailed in the motion.  The Debtors estimate

8    approximately $12.4 million in unpaid pre-petition obligations

9    related to these programs, which is almost entirely in the form

10   of credits to be applied to future purchases.

11        The Debtors shared the motion and proposed order with

12   the Office of the United States Trustee.  And we believe the

13   United States Trustee has signed off.

14        And unless your Honor has any other questions, we

15   would ask the release —— relief sought in the motion be granted

16   and the proposed order at 17-1 be entered.

17        **(Pause in the proceeding.)**

18        **THE COURT:**  Hmmm.

19        **(Pause in the proceeding.)**

20        **THE COURT:**  Can you give me an example of a few of

21   the customer programs that you wish to continue?

22        **MR. SINGH:**  Yes, your Honor.

23        Well, all the —— all the programs are generally

24   discount programs for various customers and distributors.  And

25   like I said, they're almost always granted in the form of

1   credits to future purchases.

2          The one with the highest amount of pre-petition

3   obligation is the ship and debit program, which allows

4   distributors to sell products at a below market price and to

5   claim the difference in the form of those credits to future

6   purchases.

7          Would you like me to share the others as well?

8          **THE COURT:**  Sure.

9      **(Pause in the proceeding.)**

10     **MR. SINGH:**  The others include the price protection

11  program, which offers price adjustments to distributors if

12  product prices decrease post-purchase.  And the stock rotation

13  program allows certain distributors to return slow moving

14  inventory quarterly.

15         And the customers are a deposit program, which is

16  separate from the CRD that Renesas previewed earlier.  This

17  provides customers to —— the opportunity to issue deposits with

18  the company in order to guarantee allocations of product when

19  they become available.  To reserve's the operative word there.

20         And then finally, there's the other programs which

21  are usually small bespoke ad hoc initiatives that help the

22  Debtors manage their inventory.

23     **(Pause in the proceeding.)**

24         **THE COURT:**  That's fantastic.  Thank you.

25         I will approve the customer programs motion on an

1   emergency basis.

2       **(Pause in the proceeding.)**

3       **MR. SINGH:**  Thank you, your Honor.  I'll now cede the

4   podium back to Mr. Welch.

5       **THE COURT:**  Well done, counsel.

6       **(Pause in the proceeding.)**

7       **MR. WELCH:**  For the record, your Honor.  Alexander

8   Welch, Latham and Watkins, counsel —— proposed counsel to the

9   Debtors.

10      Thank you, your Honor.  Last agenda item for the day

11  is the NOL motion.  Your Honor, sometimes there are perfunctory

12  motions, certainly not in this case.

13      There's a bit of a nuance to this one.  So I'll take

14  you through it.  First, the Debtors do have significant tax

15  attributes, roughly 2.4 billion in federal NOL's, 128.7 million

16  in federal disallowed business interest carry forward, and ——

17  and others of significant value.

18      The procedures themselves are customary in the sense

19  that they are procedures and not substantive relief against

20  holders.  It is only with respect to in equity interest in the

21  company's existing common stock.  And the procedures are in

22  place for regular equity holders.

23      Those are all customary and in the form you would

24  expect.  The one nuance I refer to is we had gone and asked for

25  a little bit more in terms of restrictions on parties who are

1  party to the RSA, your Honor.

2         And the reason for that is into the restructuring

3  support agreement, there is a termination right where equity —

4  aggregate equity holdings of all of those RSA parties exceeds a

5  certain threshold.

6         There was some background there, your Honor.  There's

7  some concern about being deemed to group for SEC 13(d) filing

8  purposes.  And it was vital that that relief be built into the

9  restructuring support agreement.

10         The relief that we're asking in the order solely,

11  your Honor, with respect to the RSA parties or the consenting

12  creditors, just memorializes by order that which they've

13  already agreed to in the RSA.  And, therefore, they have by

14  definition consented to it.

15         We, of course, shared this motion with them.

16  Incorporated any comments they had.  But that greater

17  restriction sort of one of the older style NOL motion

18  restrictions we used to see years ago, would only apply to

19  them.

20         They would be the standard notice provisions with

21  respect to all other holders of equity.  There's no claims

22  restrictions under this motion.

23       **(Pause in the proceeding.)**

24       **THE COURT:**  You took my one —

25       **MR. WELCH:**  But, your Honor —

1          **THE COURT:**  No, you took my one question away.  I was

2     going to ask for a clarification on that very point with

3     consenting creditor trading prohibitions and ⸺ and how it was

4     going to work.

5          So I ⸺ let me just ask if anyone wishes to be heard

6     in connection with this motion.

7          **(No response.)**

8          **THE COURT:**  Okay.  I'm ⸺ I'm ⸺ before the Court is

9     emergency motion seeking approval of what we would call

10    notification procedures it's respect to NOL's, approving

11    restrictions, especially here in connection with certain

12    transfers of interests of the Debtors and certain claims of

13    worthlessness, and stock deductions, and the wrinkle that was

14    described by counsel.  The addition, which you don't see all

15    the time.

16         This is approving the consenting creditor trading

17    prohibition.  And I now have clarification on what that is.

18    And I'm crystal clear as to the what and the why.  And we

19    have ⸺

20         **(Pause in the proceeding.)**

21         **THE COURT:**  ⸺ the RSA parties here represented by

22    their counsel.

23         And I'm ⸺ and I take comfort in that as well.  The

24    relief requested is appropriate under the circumstances.  And

25    I'm comfortable granting the relief requested on an emergency

1 basis here.

2    **(Pause in the proceeding.)**

3        **THE COURT:** I've reviewed the proposed order, the

4 proposed procedures. And with the additional statements from

5 counsel, I'm comfortable granting the relief requested and

6 the — and the additional consenting creditor trading

7 prohibitions.

8        I'll get that signed and on the docket today.

9        **MR. WELCH:** Thank you, your Honor.

10       Last two items really just a thank you very much to

11 the Court. We know yours is a very busy one. And we're very

12 grateful for the opportunity you're always willing to provide

13 to the next generation of — of restructuring attorneys. So

14 thank you, your Honor.

15       **THE COURT:** Let me just thank everyone. And thank

16 all the younger lawyers.

17       Every — sometimes I turn my head to the side.

18 Whenever a young lawyer appears who I don't know, I look them

19 up. And so that way they get to know me. But then I also get

20 to know something and learn something about them.

21       And for every young attorney, restructuring

22 professional, who appeared today, it was an honor to be your

23 judge today. And I thank you very much for the preparation

24 that you showed and the dedication.

25       So I look forward to you appearing again at some

62

1   other point in the future.  I thank you.

2          **MR. WELCH:**  Thank you, your Honor.  Last point I

3   know ——

4          **THE COURT:**  Go ahead.

5          **MR. WELCH:**  Last point I know it's on everyone's

6   mind, happy Canada Day.

7       **(Pause in the proceeding.)**

8          **MR. WELCH:**  And we'll see you at the next hearing.

9          **THE COURT:**  All right, folks.  Thank you very much.

10  Have a good day.

11         **MR. WELCH:**  Thank you.

12      **(This proceeding was adjourned at 03:22 p.m.)**

13

14                      * * * * * * * *

15

16                      CERTIFICATION

17         I certify that the foregoing is a correct transcript

18  from the electronic sound recording of the proceedings in the

19  above-entitled matter.

20  ___/s/ *Cheryl L. Battaglia*___        ___July 12, 2025___

21         Transcriber                        Date

22  25-90163

23  07/01/25 - 07/12/25