IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

------------------------------------------------------------- x
                                                    :

In re:                                               :    Chapter 11

WOLFSPEED, INC., *et al.*,                 :    Case No. 25-90163 (CML)

        Debtors.[1]                           :    (Jointly Administered)

------------------------------------------------------------- x

**DEBTORS' <u>EMERGENCY</u> MOTION FOR AN
ORDER (I) AUTHORIZING THE PRIVATE SALE OF
MACOM SHARES FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
<u>AND OTHER INTERESTS AND (II) GRANTING RELATED RELIEF</u>**

> **Emergency relief has been requested. Relief is requested not later than 1:00 p.m. (prevailing Central Time) on September 8, 2025.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph. Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**
>
> **A hearing will be conducted on this matter on September 8, 2025 at 1:00 p.m. (prevailing Central Time) in Courtroom 401, 4th floor, 515 Rusk Street, Houston, Texas 77002. Participation at the hearing will only be permitted by an audio and video connection.**
>
> **Audio communication will be by use of the Court's dial-in facility. You may access the facility at 832-917-1510. Once connected, you will be asked to enter the conference room number. Judge Lopez's conference room number is 590153. Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Lopez's home page. The meeting code is "JudgeLopez". Click the settings icon in the upper right corner and enter your name under the personal information setting.**
>
> **Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Lopez home page. Select the case name, complete the required fields and click "Submit" to complete your appearance.**

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339). The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

Wolfspeed, Inc. and its debtor affiliate in the above-captioned Chapter 11 Cases (as defined herein), as debtors and debtors in possession (collectively, the "**Debtors**"), respectfully state as follows in support of this motion (this "**Motion**"):

## RELIEF REQUESTED

1. By this Motion, the Debtors seek entry of an order (the "**Proposed Order**"), substantially in the form attached hereto: (i) authorizing the Debtors to consummate a private sale of equity in MACOM Technology Solutions Holdings, Inc. ("**MACOM**") through Wells Fargo Securities, LLC (the "**Broker**"); and (ii) granting related relief. The Debtors respectfully request that the Court approve the proposed sale (the "**MACOM Shares Sale**") free and clear of all liens, claims, encumbrances, and other interests (collectively, the "**Interests**") to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

2. The Debtors believe the MACOM Shares Sale is fully in the ordinary course of the Debtors' business. Nonetheless, to provide the Broker with additional comfort, the Debtors are seeking Court approval of the MACOM Shares Sale in an abundance of caution.

## JURISDICTION AND VENUE

3. The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction to consider this Motion under 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b) and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4. The statutory and legal predicates for the relief requested herein are sections 105(a) and 363 of title 11 of the United States Code, 11 U.S.C. §§ 101–1532 (the "**Bankruptcy Code**"), rule 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rule 9013-1 of

2

the Bankruptcy Local Rules for the Southern District of Texas (the "**Bankruptcy Local Rules**"), and the Procedures for Complex Cases in the Southern District of Texas.

## BACKGROUND

5.  On June 30, 2025 (the "**Petition Date**"), the Debtors each commenced with the Court a voluntary case (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Debtors continue to operate their business and manage their properties as debtors in possession under sections 1107(a) and 1108 of the Bankruptcy Code. No trustee, examiner, or statutory committee has been appointed in the Chapter 11 Cases.

6.  The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Bankruptcy Rules and Rule 1015-1 of the Bankruptcy Local Rules.

7.  The factual background regarding the Debtors, including their business, their capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Daniel Hugo in Support of Chapter 11 Petitions and First Day Relief* (the "**First Day Declaration**") [Docket No. 5], and incorporated herein by reference.[2] In support of this Motion, the Debtors rely on the *Declaration of Daniel Hugo in Support of Debtors' Emergency Motion for an Order (I) Authorizing the Private Sale of MACOM Shares Free and Clear of Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* (the "**Hugo Declaration**") filed contemporaneously herewith.

8.  The Debtors, together with their non-debtor affiliates (collectively, the "**Company**"), are a leading producer of wide bandgap semiconductors, silicon carbide materials, and gallium nitride materials. The Company's products are used in a broad range of applications, including electric vehicles, motor drives, power supplies, military communications, radar, satellite,

---

[2] Capitalized terms used but not defined herein have the meanings given to them in the First Day Declaration.

3

and telecommunications. Established in 1987, the Company's headquarters are located in Durham, North Carolina and the majority of the Company's products are manufactured at the Company's production facilities in North Carolina, New York, and Arkansas.

9. On June 22, 2025, the Debtors entered into that certain Restructuring Support Agreement (as may be amended from time to time and including all exhibits thereto, the "*Restructuring Support Agreement*") with (i) an ad hoc group of secured noteholders (the "*Ad Hoc Senior Secured Noteholder Group*") that collectively hold, own, or control more than 97% of the aggregate outstanding principal amount of the Senior Secured Notes, (ii) an ad hoc group of unsecured noteholders (the "*Ad Hoc 26s/28s/29s Noteholder Group*") that collectively hold, own, or control more than 67% of the aggregate outstanding principal amount of the Convertible Notes, and (iii) Renesas Electronics America Inc. ("*Renesas*" and, together with the Ad Hoc Senior Secured Noteholder Group and the Ad Hoc 26s/28s/29s Noteholder Group, the "*Consenting Creditors*") which holds, owns, or controls 100% of the outstanding principal amount of loans under the Customer Refundable Deposit Agreement. Under the Restructuring Support Agreement, each of the Consenting Creditors has agreed to support the Company's restructuring pursuant to the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* (as may be modified, amended, or supplemented and including all exhibits, schedules, or supplements thereto, the "*Plan*") [Docket No. 8], which was filed on June 30, 2025 along with a corresponding disclosure statement (as may be amended, modified, or supplemented, the "*Disclosure Statement*") [Docket No. 7].

## THE MACOM TRANSACTION AND PROPOSED SALE

10. As part of their routine investment strategy, the Debtors acquire shares in companies as a result of various business transactions. Debtor Wolfspeed, Inc. is currently the holder of 711,528 shares in MACOM (the "*MACOM Shares*"), a publicly traded company, which

are the proceeds of a prepetition asset sale transaction (the "*Prior MACOM Transaction*").  As described in the Debtors' Disclosure Statement, the monetization of the MACOM Shares was originally scheduled to take place in October 2025, a date which the Debtors anticipated would be after their emergence from chapter 11.  Fortunately, the Debtors met certain milestones in the Prior MACOM Transaction that previously restricted the monetization of the MACOM Shares, thereby allowing the Debtors to seek to consummate this proposed sale of MACOM Shares earlier than expected.

11. The Debtors believe the MACOM Shares Sale is fully in the ordinary course of their business.  However, out of an abundance of caution, the Debtors have filed this Motion to provide the Broker with additional comfort at its request.  The Debtors believe this sale is in the ordinary course for a number of reasons.  First, the Debtors routinely engage in the purchase and sale of shares in money market funds in connection with their overall management of securities, and the contemplated sale of the MACOM Shares is commensurate with historical sales in both type and amount.

12. Second, the management of equity assets (like the MACOM Shares) is part of the Debtors' investment and risk strategy.  As a result, these transactions occur in the ordinary course of the Debtors' cash management operations and, in fact, the Debtors' risk management policy would preclude the Debtors from holding excess amounts of the equity assets.

13. Third, the purchase and sale of the MACOM Shares is not only typical behavior for the Debtors, it is typical across businesses for other similarly-sized companies holding securities.  In addition to being ordinary course, the Debtors' sale of the MACOM Shares was always the expected outcome as it (i) was contemplated by, and a part of, the underlying documentation in the Prior MACOM Transaction and (ii) disclosed in a number of different forecasts set forth by

the Debtors (including the Debtors' financial projections included with the Disclosure Statement at Docket No. 7). In light of the foregoing, the Debtors believe the contemplated sale of the MACOM Shares described above is within the ordinary course of business and only bring this Motion to provide the Broker with the requested comfort regarding the sale.

14. The Debtors propose to sell the MACOM Shares through the Broker with whom they are currently finalizing a broker agreement. The Broker will assist the Debtors in finding a market buyer(s) for the MACOM Shares. Based on current market prices, the MACOM Shares Sale is expected to result in a net return of approximately $87 million for the Company one month ahead of the scheduled monetization of the MACOM Shares.

15. All stakeholders, including the Consenting Creditors, support the MACOM Shares Sale. The transaction will not prejudice any party in interest, and is the most efficient and value-maximizing approach to administering the MACOM Shares Sale. However, the Debtors are currently in disagreement with the Ad Hoc Senior Secured Noteholder Group over whether the proceeds from the MACOM Shares Sale require a paydown under the Senior Secured Notes Indenture. Although the Debtors and the Ad Hoc Senior Secured Noteholder Group have not yet reached an agreement regarding proceeds, the Debtors believe they are close to reaching a satisfactory resolution and expect to be able to advise the Court of such resolution at or prior to the hearing for this Motion. For the avoidance of doubt, the Debtors and Ad Hoc Senior Secured Noteholder Group continue to work to resolve this disagreement, and the Debtors are not seeking any relief with respect to this disagreement in the Proposed Order; however, should the Debtors and the Ad Hoc Senior Secured Noteholder Group reach agreement prior to the hearing for this Motion, the Debtors intend to file a revised Proposed Order reflecting such agreed application of proceeds.

16. Emergency relief is requested by September 8, 2025. The Debtors need to monetize the MACOM Shares Sale as soon as possible to capitalize on the current value of the MACOM Shares. Given the volatility of the stock market generally, the Debtors believe that this approach monetizes the MACOM Shares at fair market value and provides the most value to the Debtors' estates by executing the sale while MACOM stock is trading at a higher price. Any delay could result in the Debtors and their stakeholders receiving less value for the sale of the MACOM Shares.

## BASIS FOR RELIEF

I. **THE MACOM SHARES SALE IS A SOUND EXERCISE OF THE DEBTORS' BUSINESS JUDGMENT, IS APPROPRIATE PURSUANT TO BANKRUPTCY RULE 6004(F), AND SHOULD BE APPROVED**

17. Section 363(b) of the Bankruptcy Code provides that "[t]he [debtor-in-possession], after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor may sell estate property outside the ordinary course of business under this provision if there is a good business reason for doing so. *See, e.g., In re ASARCO, L.L.C.*, 650 F.3d 593, 601 (5th Cir. 2011). "Great judicial deference is given to the [debtor in possession's] exercise of business judgment" regarding the sale of estate property. *GBL Holding Co. v. Blackburn/Travis/Cole, Ltd.*, 331 B.R. 251, 254 (Bankr. N.D. Tex. 2005). Once a debtor articulates a valid business justification, then the burden of rebutting the "strong presumption . . . that the agreement at issue was negotiated in good faith and in the best interests of the estate" falls to parties opposing the transaction. *In re Filene's Basement*, No. 11-13511, 2014 WL 1713416, at *12 (Bankr. D. Del. Apr. 29, 2014); *see In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993). Thus, if a debtor satisfies the business judgment rule, the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

18. Bankruptcy Rule 6004(f)(1) authorizes a debtor to sell estate property outside of the ordinary course of its business by private sale or public auction. *See* Fed. R. Bankr. P. 6004(f)(1). Private sales are appropriate where the debtor demonstrates that the proposed sale is permissible pursuant to section 363 of the Bankruptcy Code. *See In re Cypresswood Land Partners, I*, 409 B.R. 396, 436 (Bankr. S.D. Tex. 2009) ("[T]here is no prohibition against a private sale . . . and there is no requirement that the sale be by public auction." (quoting *Penn. Mut. Life Ins. Co. v. Woodscape Ltd. P'ship* (*In re Woodscape Ltd. P'Ship*), 134 B.R. 165, 174 (Bankr. D. Md. 1991))); *In re Dura Auto. Sys., Inc.*, No. 06-11202, 2007 WL 7728109, at *88 (Bankr. D. Del. Aug. 15, 2007) ("[S]ales of property rights outside the ordinary course of business may be by private sale or public auction."). Additionally, a debtor has broad discretion to determine the manner in which its assets are sold. *See Berg v. Scanlon* (*In re Alisa P'ship*), 15 B.R. 802, 802 (Bankr. D. Del. 1981) (finding that section 363 of the Bankruptcy Code "clearly indicates that the manner of sale is within the discretion of the trustee"); *see also In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting that a trustee has ample authority to conduct a sale of estate property through a private or public sale).

19. Consummating the MACOM Shares Sale on the terms set forth herein represents a sound exercise of the Debtors' business judgment. First, the Debtors believe that the MACOM Shares Sale will allow the estates to capture the full economic value of the MACOM Shares. The consideration to the estates—the net proceeds of the sale of the MACOM Shares—represents the fair market value of the MACOM Shares, as demonstrated by the fact that the MACOM Shares will be sold at their publicly traded price through the Broker.

20. Second, the MACOM Shares Sale will monetize a valuable estate asset in a manner that is consistent with the Debtors' overall efforts to maximize value of their estates. The Debtors

are seeking to sell the MACOM Shares now (as opposed to the originally-anticipated October, 2025 monetization) while the value of the MACOM Shares are comparatively high, and any delay could result in the economic value of the MACOM Shares decreasing because of the volatility in the stock market.

21. The Debtors and their advisors have reviewed the structure and terms of the MACOM Shares Sale, and believe that proceeding via private sale is in the best interests of the Debtors' estates and should be approved. The Debtors have consulted with key stakeholders, including the Consenting Creditors, and there is broad consensus that this path delivers appropriate value, mitigates execution risk, and avoids unnecessary delay. The sale is proposed in good faith, reflects fair and reasonable consideration, and should be authorized pursuant to section 363(b) of the Bankruptcy Code. For these reasons, the MACOM Shares Sale is a sound exercise of the Debtors' business judgment and should be approved.

## II. THE SALE OF THE MACOM SHARES FREE AND CLEAR OF LIENS AND OTHER INTERESTS IS AUTHORIZED BY SECTION 363(F) OF THE BANKRUPTCY CODE

22. Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. *See* 11 U.S.C. § 363(f).

23. Section 363(f) of the Bankruptcy Code is drafted in the disjunctive. Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the sale of the applicable property free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed under the applicable

9

agreement. *See In re C-Power Prods., Inc.*, 230 B.R. 800, 803 (Bankr. N.D. Tex. 1998); *In re Nature Leisure Times, LLC*, No. 06-41357, 2007 Bankr. LEXIS 4333, at *7 (Bankr. E.D. Tex. Dec. 19, 2007). The Debtors do not believe that there are any Interests that encumber the MACOM Shares or the proceeds to be received from the contemplated sale of such shares. However, to the extent any party asserts an Interest in the MACOM Shares or the sale proceeds, the Debtors submit that the requirements of section 363(f) of the Bankruptcy Code are satisfied. Specifically, any such asserted Interest would be adequately protected by attachment to the net proceeds of the sale, with the same validity, priority, and extent as existed immediately prior to the transaction, pending further order of the Court. Moreover, it well-established that lienholders may be compelled through the Bankruptcy Code to accept money in satisfaction of such liens. *See In re TWA*, 322 F.3d 283, 290-91 (3d Cir. 2003); *In re Grand Slam, U.S.A., Inc.*, 178 B.R. 460, 461-62 (E.D. Mich. 1995); *Scherer v. Fed. Nat'l Mortg. Ass'n* (*In re Terrace Chalet Apartments, Ltd.*), 159 B.R. 821, 829-30 (N.D. Ill. 1993).

24. Accordingly, section 363(f)(3) and (f)(5) of the Bankruptcy Code is satisfied with respect to the proposed transaction. The Debtors therefore request authority to sell the MACOM Shares free and clear of all Interests, with any such Interests, if they exist, to attach to the net sale proceeds in the same order and priority as existed immediately prior to the sale, subject to further order of the Court.

### III. THE PURCHASER OF MACOM SHARES IS A GOOD-FAITH PURCHASER AND ENTITLED TO THE FULL PROTECTION OF SECTION 363(M) OF THE BANKRUPTCY CODE

25. Section 363(m) of the Bankruptcy Code provides that "[t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith[.]" 11 U.S.C. § 363(m). Although "[t]he

Bankruptcy Code does not explicitly define 'good faith,'" the Fifth Circuit has stated that a good faith purchaser is one who (a) "purchases the assets for value, in good faith, and without notice of adverse claims" and (b) "one who does not engage in 'misconduct' including," among other things, "fraud, collusion between the purchaser and other bidders, or an attempt to take grossly unfair advantage of other bidders." *SR Constr., Inc. v. Hall Palm Springs, L.L.C.* (*In re Palm Springs II, L.L.C.*), 65 F.4th 752, 759 (5th Cir. 2023) (quoting *In re TMT Procurement Corp.*, 764 F.3d 512, 521 (5th Cir. 2014)). "Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders." *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986).

26.  Here, the proposed transaction is the product of good-faith, arm's-length negotiations among sophisticated parties, and the Debtors have disclosed the full terms of the transaction to the Court and key stakeholders. The structure of the sale was carefully developed to ensure that the Debtors receive fair market value for their interest in the MACOM Shares, as valued at the time of the sale.

27.  All parties to the transaction are represented by competent counsel, and the terms of the deal were subject to review and input from the Consenting Creditors. There is no indication of fraud, self-dealing, or other impropriety. Rather, the MACOM Shares Sale delivers fair and reasonable consideration to the Debtors' estate and provides a value-maximizing path for monetizing the MACOM Shares. Accordingly, the Debtors submit that the transaction has been proposed in good faith and request that the Court make a finding that the purchaser of the MACOM Shares is entitled to the protections of section 363(m) of the Bankruptcy Code.

**EMERGENCY CONSIDERATION**

28. The Debtors respectfully request emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1. As described in detail above, absent the Court granting the relief requested herein, the Debtors risk missing opportunities to expediently maximize the value of their assets for the benefit of their estates and key stakeholders. In particular, the Debtors need to move quickly to close the sale of the MACOM Shares to capitalize on the current value of those shares. While the Debtors believe the sale of the MACOM Shares would be in the ordinary course of their business, the Broker has made entry of an order approving the MACOM Shares Sale a condition of marketing the MACOM Shares. Accordingly, the Debtors submit that emergency consideration of the Motion is warranted under the circumstances and should be granted.

**NOTICE**

29. Notice of the Motion will be served on: (a) the Office of the United States Trustee for the Southern District of Texas; (b) counsel to the Ad Hoc Senior Secured Noteholder Group; (c) counsel to the Ad Hoc 26s/28s/29s Noteholder Group; (d) counsel to Renesas; (e) all parties reasonably known to the Debtors to assert an interest in the assets; (f) the creditors listed on the Debtors' consolidated list of 30 creditors holding the largest unsecured claims; (g) the United States Attorney for the Southern District of Texas; (h) the Internal Revenue Service; (i) the Securities and Exchange Commission; (j) the state attorneys general for states in which the Debtors conduct business; and (k) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, under the circumstances, no other or further notice is required.

30. A copy of the Motion is available on (a) the Court's website, at www.txs.uscourts.gov and (b) the website maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring LLC, at https://dm.epiq11.com/Wolfspeed.

[*Remainder of page intentionally left blank.*]

**WHEREFORE**, the Debtors respectfully request that the Court enter the Proposed Order granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  August 25, 2025  
       Houston, Texas

Respectfully submitted,

/s/ Timothy A. ("Tad") Davidson II
**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:   taddavidson@hunton.com
    ashleyharper@hunton.com
    pguffy@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Alexander W. Welch (NY Bar No. 5624861)
Keith A. Simon (NY Bar No. 4636007)
Eric L. Einhorn (NY Bar No. 5568845)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:   ray.schrock@lw.com
    alex.welch@lw.com
    keith.simon@lw.com
    eric.einhorn@lw.com

*Attorneys for the Debtors*
*and Debtors in Possession*

**CERTIFICATE OF SERVICE**

      I certify that on August 25, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

      */s/ Timothy A. ("Tad") Davidson II*
      Timothy A. ("Tad") Davidson II