# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| WOLFSPEED, INC., *et al.*, | Case No. 25-90163 (CML) |
| Debtors.[1] | (Jointly Administered) |

### DECLARATION OF ALEXANDER TRACY IN SUPPORT OF CONFIRMATION OF JOINT PREPACKAGED CHAPTER 11 PLAN OF WOLFSPEED, INC. AND ITS DEBTOR AFFILIATE

I, Alexander Tracy, hereby declare that the following is true to the best of my knowledge, information and belief as set forth more fully below:[2]

1. I submit this declaration (the "**Declaration**") in connection with approval of the Debtors' *Disclosure Statement for Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and Its Debtor Affiliate* [Docket No. 7] (the "**Disclosure Statement**") and confirmation of the Debtors' *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and its Debtor Affiliate* [Docket No. 8] (as may be amended, modified, supplemented, or restated, the "**Plan**"), together with the agreements and other documents set forth in those certain Plan supplements, dated August 12, 2025 [Docket No. 168], August 19, 2025 [Docket No. 213], August 21, 2025 [Docket No. 236], September 4, 2025 [Docket No. 267], and September 5, 2025

---

[1] The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339). The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to them in the Plan or the Disclosure Statement (as such terms are defined below), as applicable.

[Docket No. 268] (the documents contained therein, as they have been or may be amended, modified, restated, or supplemented, collectively, the "**Plan Supplement**").

2. Except as otherwise indicated herein, the statements in this Declaration are based on (i) my personal knowledge or opinion, (ii) information I obtained from the Debtors' advisors, the Debtors' management, and employees of Perella (as defined below) working directly with me or under my supervision in the ordinary course of working on this matter, (iii) my active involvement in participating in the negotiations with the relevant counterparties (and their respective advisors) on behalf of the Debtors, and/or (iv) my review of the documents relevant to their issues. If called to testify under oath, I am able to and would testify to each of the facts set forth herein on the foregoing bases. I am not being compensated specifically for this testimony other than through non contingent payments received by Perella as a professional retained by the Debtors in accordance with Perella's engagement agreement (and this Court's order approving the same (*Order Approving Retention of Perella* [Docket. No. 229])).

3. I am a Partner at Perella Weinberg Partners LP (together with its corporate advisory affiliates, "**Perella**") and my office is located in Perella's New York office, at 767 5th Avenue, New York, New York 10153. As set forth in this Court's order authorizing Perella's retention, Perella is serving as investment banker to Debtor Wolfspeed, Inc. ("**Wolfspeed**"), together with its affiliated debtor and debtor in possession (collectively, the "**Debtors**") in the above captioned chapter 11 cases (the "**Chapter 11 Cases**").

4. Perella is an investment banking firm that provides strategic and financial advisory services, as well as capital markets knowledge, financing skills, and restructuring capabilities that are valuable for and used in large-scale corporate restructuring transactions. Perella's professionals have extensive experience providing investment banking services to financially

distressed companies, debtors in chapter 11 cases, and creditors, equity holders, purchasers, and other parties-in-interest constituencies in reorganization proceedings and complex financial restructurings, both in-court and out-of-court.

5.  For instance, Perella is providing or has recently provided investment banking and other services in connection with the chapter 11 restructurings involving, by way of example, the following companies: *In re Accelerate Diagnostics, Inc.*, Case No. 25-10837 (KBO) (Bankr. D. Del.); *In re Accuride Corporation*, Case No. 24-12289 (JKS) (Bankr. D. Del.); *In re Cal. Res. Corp.*, Case No. 20-33568 (DRJ) (Bankr. S.D. Tex.); *In re CARBO Ceramics Inc.*, Case No. 20-31973 (MI) (Bankr. S.D. Tex.); *In re Celsius Network LLC*, Case No. 22-10964 (MG) (Bankr. S.D.N.Y.); *In re Chesapeake Exploration, L.L.C., et al.*, Case No. 20-33239 (CML) (Bankr. S.D. Tex., Houston Div.); *In re Cineworld Grp. Plc*, Case No. 22-90168 (MI) (Bankr. S.D. Tex.); I*n re Clovis Oncology, Inc.*, Case No. 22-11292 (JKS) (Bankr. D. Del.); *In re CorEnergy Infrastructure Trust, Inc.*, Case No. 24-40236-can11 (Bankr. W.D. Mis.); *In re Ector County Energy Ctr. LLC*, Case No. 22-10320 (JTD) (Bankr. D. Del.); *In re Endo Int'l plc*, Case No. 22-22549 (JLG) (Bankr. S.D.N.Y.); *In re Enviva Pellets Epes Holdings, LLC*, Case No. 24-10454 (BFK) (Bankr. E.D. Va., Richmond Div.); *In re Franchise Group, Inc., et al.*, Case No. 24-12480 (LSS) (D. Del.); *In re FTX Trading LTD*, Case No. 22-11068 (JTD) (Bankr. D. Del.); *In re Garrett Motion Inc.*, Case No. 20-12212 (MEW) (Bankr. S.D.N.Y.); *In re Global Clean Energy Holdings, Inc., et al.*, Case No. 25-90113 (ARP) (Bankr. S.D. Tex., Houston Div.); *In re Hartshorne Holdings, LLC*, Case No. 20-40133 (THF) (Bankr. W.D. Ky.); *In re Hearthside Food Solutions, LLC, et al.*, Case No. 24-90586 (ARP) (Bankr. S.D. Tex., Houston Div.); *In re HighPoint Res. Corp.*, No. 21-10565 (CSS) (Bankr. D. Del.); *In re Hornblower Holdings LLC, et al.*, Case No. 24-90061 (MI) (Bankr. S.D. Tex, Houston Div.); *In re Invitae Corporation, et al.*, Case No. 24-11362 (MBK) (Bankr. D.

3

NJ); *In re Ion Geophysical Corp.*, Case No. 22-30987 (MI) (Bankr. S.D. Tex.); *In re Ligado Networks LLC*, Case No. 25-10006 (TMH) (Bankr. D. Del); *In re Limetree Bay Servs., LLC*, Case No. 21-32351 (DRJ) (Bankr. S.D. Tex.);  *In re MLN US Holdco LLC, et al.*, Case No. 25-90090 (CML) (Bankr. S.D. Tex., Houston Div.); *In re NanoString Techs. Inc.*, Case No. 24-10160 (CTG) (Bankr. D. Del.); *In re Nine Point Energy Holdings, Inc.*, Case No. 21-10570 (MFW) (Bankr. D. Del.); *In re Oldco Tire Distributors, Inc., et al.*, Case No. 24-12391 (CTG) (Bankr. D. Del.); *In re OSG Group Holdings, Inc.*, Case No. 23-90799 (CML) (Bankr. S.D. Tex.); *In re Quotient Ltd.*, Case No. 23-90003 (DRJ) (Bankr. S.D. Tex.); *In re Spirit Airlines, Inc., et al.*, Case No. 24-11988 (SHL) (Bankr. S.D. NY); *In re Talen Energy Supply, LLC*, Case No. 22- 90054 (MI) (Bankr. S.D. Tex.); *In re TPC Group Inc.*, Case No. 22-10493 (Bankr. D. Del.); and *In re Vertex Energy, Inc.*, Case No. 24-90507 (CML) (Bankr. S.D. Tex.).

6. Personally, I have approximately 25 years of investment banking and capital structure advisory experience assisting companies on a wide range of strategic matters and transactions.  I have advised senior management and boards of directors of companies, as well as investors and creditors, across a broad range of industries in connection with restructurings, mergers and acquisitions and financing transactions.  In particular, I have been involved in numerous restructurings, including, by way of example only, the following: American Tire Distributors Corporation; Blackhawk Mining; Caesars Entertainment Operating Company; Carbo Ceramics; Chesapeake Energy Corporation; Cineworld Group Plc; Dana Corporation; Diamond Offshore Drilling, Inc.;  Dura Automotive Systems; Excel Maritime Carriers; Extended Stay Hotels; Foresight Energy; Global Brokerage, Inc.; Hearthside Food Solutions; Hermitage Offshore Services Ltd.; Hexion, Inc.; Hornblower Holdings LLC; Ion Media Networks; iPayment, Inc.; MagnaChip Semiconductor; Memorial Production Partners LP; MLN US Holdco LLC; Molycorp,

Inc.; Oasis Petroleum, Inc.; Ocean Rig; Pacific Drilling S.A.; PG&E Corporation; Pyxus; Rex Energy; Seadrill Limited; Synagro Technologies; Talen Energy Supply, LLC; TPC Group, Inc.; and Valaris PLC.

7. Prior to joining Perella's investment banking team in July 2016, I held various positions at other institutions, including the position of Managing Director, at the investment banking firm Miller Buckfire & Co. LLC. Prior to that time, I was a Vice President at Chanin Capital Partners, which I joined in 2002. Prior to 2002, I worked within the mergers and acquisitions department of the investment banking division at Prudential Securities. I received a Bachelor of Arts Degree in Economics and a Bachelor of Arts Degree in English from Amherst College.

8. In virtually all of those prior-listed restructuring cases on which I had worked, I actively advised clients with respect to issues involving chapter 11 plan negotiations, processing DIP financing, cash collateral usage, section 363 sale processes, negotiation of restructuring agreements, negotiation of plans of reorganization, and developing and implementing new money recapitalizations, in each case analyzing and evaluating business plans, cash flow forecasts, and liquidity needs, as well as evaluating, negotiating, and structuring DIP financings. It is in these capacities, in working together with bankruptcy counsel, that I am familiar with the chapter 11 process.

9. As a result of my and my team's work on this engagement, Perella is familiar with the Debtors' financial condition and business operations. The Debtors engaged Perella by an engagement letter dated February 19, 2025 (and amended on April 18, 2025), to provide, among other things, advice in connection with the Debtors' restructuring efforts. In providing these services to the Debtors in connection with these matters, Perella's professionals have worked

closely with the Debtors' management and other professionals and have become well-acquainted with the Debtors' businesses, capital structure and related matters, including with respect to the Debtors' negotiations with their lenders and bondholders on the proposed restructuring being pursued in these Chapter 11 Cases.

## Valuation Analysis

10. At the Debtors' request, and solely for purposes of the Plan and the Disclosure Statement, Perella performed an analysis to estimate a range of Enterprise Value (as defined in the Disclosure Statement) for the Reorganized Debtors on a consolidated going-concern basis and pro forma for the transactions contemplated by the Plan (the "***Valuation Analysis***," attached hereto as **Exhibit A**). The Valuation Analysis, which is attached to the Disclosure Statement as Exhibit F, is based on the Financial Projections (as defined in the Disclosure Statement), and financial and other information provided by the Debtors and other sources. The Valuation Analysis is based on information made available to Perella as of June 12, 2025.[3] The valuation estimates set forth in the Valuation Analysis represent valuation analyses of the Reorganized Debtors generally based on the application of customary valuation techniques deemed appropriate by Perella. In addition, the Valuation Analysis in this Declaration is described in greater detail in, and is subject to all of the assumptions and limitations set forth in, the Disclosure Statement.

11. Based on Perella's analysis, the estimated potential range of the Reorganized Debtors' Enterprise Value as of June 12, 2025, is approximately $2.35 billion to $2.85 billion, with a mathematical midpoint of $2.60 billion.

---

[3] Since June 12, 2025, no information has come to my or Perella's attention, nor have circumstances transpired that I am aware of, that would materially impact the valuation estimates set forth in the Valuation Analysis. For example, potential revisions to the Financial Projections arising from the contemplated timing and use of proceeds of the proposed MACOM Shares Sale (as defined in the *Debtors' Emergency Motion for an Order (I) Authorizing the Private Sale of MACOM Shares Free and Clear of Liens, Claims, Encumbrances, and Other Interests and (II) Granting Related Relief* [Docket No. 242]) would not materially impact the valuation estimates set forth in the Valuation Analysis.

12. In undertaking its Valuation Analysis, Perella assumed that the Financial Projections were reasonably prepared in good faith by the Debtors on a basis reflecting the Debtors' most accurate currently available estimates and management's judgments as to the future operating and financial performance of the Reorganized Debtors. Perella did not independently audit or verify such projections, and no independent valuations or appraisals of estimates of the Debtors were sought or obtained in connection herewith. Nonetheless, it is customary and industry standard practice to rely on financial projections and the operating and financial performance of entities based on management's projections. The Valuation Analysis therefore assumes that the actual performance of the Reorganized Debtors will correspond to the Financial Projections in all material respects.

13. In addition to reviewing the Financial Projections, in preparing the Valuation Analysis, Perella also met with the Debtors' senior management team to discuss the Debtors' assets, operations, and future prospects and to ask questions in relation to those items, reviewed the Debtors' historical financial information, reviewed certain of the Debtors' internal financial and operating data, reviewed publicly available third-party information, and conducted other analyses and inquiries as we deemed appropriate and relevant to the work we were performing. Perella assumed and relied on the accuracy and completeness of all financial and other information furnished to it by the Debtors' management and other parties as well as publicly available information, all as of June 12, 2025.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: September 5, 2025  
New York, New York

Respectfully submitted,

*/s/ Alexander Tracy*  
Alexander Tracy  
Perella Weinberg Partners LP