**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

---------------------------------------------------------- x

In re:                                            :    Chapter 11

                                                  :

WOLFSPEED, INC., *et al.*,                        :    Case No. 25-90163 (CML)

                                                  :

                    Debtors.[1]                   :    (Jointly Administered)

                                                  :

---------------------------------------------------------- x

**NOTICE OF FILING OF SIXTH PLAN SUPPLEMENT**
**FOR THE JOINT PREPACKAGED CHAPTER 11 PLAN**
**OF REORGANIZATION OF WOLFSPEED, INC. AND ITS DEBTOR AFFILIATE**

As contemplated by the *Joint Prepackaged Chapter 11 Plan of Reorganization of Wolfspeed, Inc. and Its Debtor Affiliate* [Docket No. 8] (as may be amended, modified, or supplemented from time to time, and including all exhibits and supplements thereto, the "***Plan***"),[2] the above-captioned debtors and debtors-in-possession (collectively, the "***Debtors***") hereby file certain of the documents comprising the Plan Supplement as the exhibits attached to this Notice with the United States Bankruptcy Court for the Southern District of Texas (the "***Court***"). Capitalized terms used but not defined herein have the meanings set forth in the Plan.

On August 12, 2025, the Debtors filed the initial Plan Supplement [Docket No. 168] (the "***Initial Plan Supplement***").

On August 19, 2025, the Debtors filed the second Plan Supplement [Docket No. 213] (the "***Second Plan Supplement***").

On August 21, 2025, the Debtors filed the third Plan Supplement [Docket No. 236] (the "***Third Plan Supplement***").

On September 4, 2025, the Debtors filed the fourth Plan Supplement [Docket No. 267] (the "***Fourth Plan Supplement***").

On September 5, 2025, the Debtors filed the fifth Plan Supplement [Docket No. 268] (the "***Fifth Plan Supplement***").

---

[1]     The Debtors in these cases, together with the last four digits of each Debtor's taxpayer identification number, are: Wolfspeed, Inc. (2719) and Wolfspeed Texas LLC (0339).  The Debtors' mailing address is 4600 Silicon Drive, Durham, NC 27703.

[2]     Capitalized terms used but not defined herein have the meanings given to them in the Plan.

The Debtors hereby file the sixth Plan Supplement (the "***Sixth Plan Supplement***").

The Sixth Plan Supplement includes the following exhibits (in each case, as may be amended, modified, or supplemented from time to time):

| EXHIBIT | DOCUMENT |
|:---:|:---|
| M | Incentive Plans |
| M-1 | Long-Term Incentive Plan |
| M-2 | Redline of Long-Term Incentive Plan |
| M-3 | Management Incentive Plan |
| M-4 | Redline of Management Incentive Plan |

These documents remain subject to continuing negotiations in accordance with the terms of the Plan and the Restructuring Support Agreement and the final versions may contain material differences from the versions filed herewith. For the avoidance of doubt, the parties thereto have not consented to such document as being in final form and reserve all rights in that regard. Such parties reserve all of their respective rights with respect to such documents and to amend, modify, or supplement the Plan Supplement and any of the documents contained therein through the Effective Date in accordance with the terms of the Plan and the Restructuring Support Agreement. To the extent material amendments or modifications are made to any of these documents, the Debtors will file a revised version with the Court.

The Plan Supplement is integral to, part of, and incorporated by reference into the Plan. Please note, however, these documents have not yet been approved by the Court. If the Plan is confirmed, the documents contained in the Plan Supplement (including any amendments, modifications, or supplements thereto) will be approved by the Court pursuant to the order confirming the Plan.

The hearing to consider confirmation of the Plan and the adequacy of the Disclosure Statement (the "***Confirmation Hearing***") is scheduled to commence **on September 8, 2025 at 1:00 p.m. (Prevailing Central Time)** before Judge Christopher M. Lopez of the United States Bankruptcy Court, Southern District of Texas, 4th Floor, Courtroom 401, 515 Rusk Street, Houston, Texas 77002. **The Confirmation Hearing may be continued by the Court or by the Debtors without further notice other than by announcement of the same in open court and/or by filing and serving a notice of adjournment.**

Copies of the documents included in the Plan Supplement or the Plan, or any other document filed in the Chapter 11 Cases, may be obtained free of charge by visiting the website maintained by the Debtors' claims and noticing agent, Epiq Corporate Restructuring LLC, at https://dm.epiq11.com/Wolfspeed. You may also obtain copies of any pleadings filed in the Chapter 11 Cases through the Court's electronic case filing system at https://www.txs.uscourts.gov/page/bankruptcy-court using a PACER password (to obtain a

PACER password, go to the PACER website at http://pacer.psc.uscourts.gov).

**THIS NOTICE IS BEING SENT TO YOU FOR INFORMATIONAL PURPOSES ONLY.   IF YOU HAVE QUESTIONS WITH RESPECT TO ANYTHING STATED HEREIN OR IF YOU WOULD LIKE TO OBTAIN ADDITIONAL INFORMATION, PLEASE CONTACT THE NOTICE AND CLAIMS AGENT BY (A) CALLING (888) 818-4267 OR NON U.S./CANADA AT +1 (971) 606-5246, OR (B) EMAILING WOLFSPEED@EPIQGLOBAL.COM.   <u>PLEASE NOTE THAT THE NOTICE AND CLAIMS AGENT CANNOT PROVIDE LEGAL ADVICE</u>.**

Dated:  September 7, 2025      Respectfully submitted,
       Houston, Texas

*/s/ Timothy A. ("Tad") Davidson II*

**HUNTON ANDREWS KURTH LLP**
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone:  (713) 220-4200
Email:  taddavidson@hunton.com
       ashleyharper@hunton.com
       pguffy@hunton.com

- and -

**LATHAM & WATKINS LLP**
Ray C. Schrock (NY Bar No. 4860631)
Alexander W. Welch (NY Bar No. 5624861)
Keith A. Simon (NY Bar No. 4636007)
Eric L. Einhorn (NY Bar No. 5568845)
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:  ray.schrock@lw.com
       alex.welch@lw.com
       keith.simon@lw.com
       eric.einhorn@lw.com

*Attorneys for the Debtors*
*and Debtors in Possession*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 7, 2025, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

<u>*/s/ Timothy A. ("Tad") Davidson II*</u>
Timothy A. ("Tad") Davidson II

## EXHIBIT M

**Incentive Plans**

## EXHIBIT M-1

### Long-Term Incentive Plan



**2025 LONG-TERM INCENTIVE COMPENSATION PLAN**

## ARTICLE 1.    GENERAL PROVISIONS

*1.1    Establishment of Plan*. Wolfspeed, Inc., a North Carolina corporation (the "***Company***"), hereby establishes an incentive compensation plan to be known as the "Wolfspeed, Inc. 2025 Long-Term Incentive Compensation Plan" (the "***Plan***"), as set forth in this document.

*1.2    Purpose of Plan*. The objectives of the Plan are to (i) attract and retain employees and directors of the Company and its affiliates by providing competitive compensation opportunities; (ii) provide incentives to those individuals who contribute significantly to the long-term performance and growth of the Company and its affiliates; and (iii) align the long-term financial interests of employees and directors with those of the Company's shareholders.

*1.3    Types of Awards*. Awards under the Plan may be made to Eligible Participants who are employees in the form of (i) Incentive Stock Options, (ii) Nonqualified Stock Options, (iii) Stock Appreciation Rights, (iv) Restricted Stock, (v) Restricted Stock Units, (vi) Performance Shares, (vii) Performance Stock Units, (viii) Performance Units, (ix) Other Awards, or any combination of these.

*1.4    Effective Date*. The Plan was adopted by the Board of Directors of the Company on [_____], 2025 contingent on the approval of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). The Plan will become effective on the date the plan of reorganization of the Company filed with the Bankruptcy Court in connection with the Company's voluntary Chapter 11 case becomes effective in accordance with its terms (the "***Effective Date***").

## ARTICLE 2.    DEFINITIONS

Except where the context otherwise indicates, the following definitions apply:

2.1    "***409A Award***" means each Award that is subject to, and not exempt from, Section 409A of the Code.

2.2    "***Act***" means the Securities Exchange Act of 1934, as now in effect or as hereafter amended from time to time or any successor thereto. All citations to sections of the Act or rules thereunder are to such sections or rules as they may from time to time be amended or renumbered.

2.3    "***Affiliate***" means any corporation or other entity (including, but not limited to, a partnership or a limited liability company) that is affiliated with the Company through stock or equity ownership or otherwise and is designated as an Affiliate for purposes of this Plan by the Committee unless the context demands otherwise, or the term is otherwise expressly defined. For purposes of granting stock options or stock appreciation rights, an entity may not be considered an Affiliate if it results in noncompliance with Section 409A of the Code.

2.4    "***Award***" means an award granted to a Participant under the Plan that is an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Share, Performance Stock Unit, Performance Unit, Other Award, or combination of thereof.

2.5    "***Award Agreement***" or "***Agreement***" means the written or electronic agreement, notice, contract or other instrument or document evidencing an Award granted under the Plan. As determined by the Committee, each

Award Agreement shall consist of either (i) a written agreement in a form approved by the Committee and executed on behalf of the Company by an officer duly authorized to act on its behalf, or (ii) an electronic notice of Award grant in a form approved by the Committee and recorded by the Company (or its designee) in an electronic recordkeeping system used for the purpose of tracking Award grants under the Plan, and if required by the Committee, executed or otherwise electronically accepted by the recipient of the Award in such form and manner as the Committee may require. The Committee may authorize any officer of the Company (other than the particular Award recipient) to execute any or all Award Agreements on behalf the Company.

2.6    "*Award Pool*" shall have the meaning set forth in Section 4.1.

2.7    "*Board*" or "*Board of Directors*" means the Board of Directors of the Company.

2.8    "*Cause*" means, unless provided otherwise in the Award Agreement: (i) "Cause" as defined in an Individual Agreement to which a Participant is a party that is then in effect, or (ii) if there is no such Individual Agreement or if it does not define Cause, termination of the Participant's employment by the Company or any other Employer because of any conduct amounting to fraud, dishonesty, willful misconduct, negligence, activities materially harmful to the reputation of the Company or an Employer, insubordination, commission of or indictment for a felony or a crime involving moral turpitude, all as determined by the Committee in good faith, including but not limited to (as determined by the Committee in good faith), the (A) Participant's breach of any agreement between the Participant and an Employer (including but not limited to any agreement regarding confidential information, noncompetition, nonsolicitation or similar covenants), (B) Participant's intentional or negligent failure to perform a reasonably requested directive or assignment or to perform his duties to an Employer substantially in accordance with the Employer's operating and personnel policies and procedures generally applicable to all of its employees, (C) Participant's misappropriation or attempted misappropriation of any of the Employer's funds or property (including but not limited to intellectual property), (D) Participant's violation of the Company's or an Employer's written policies or codes of conduct, including written policies related to discrimination, harassment, retaliation, performance of illegal or unethical activities, or ethical misconduct, (E) Participant's failure to substantially perform the Participant's material duties to the Company or an Employer (other than as a result of physical or mental illness or injury) or to comply with a lawful directive or order of the Board, in either case that has continued after the Company or Employer has provided written notice of such failure and the Participant has not cured such failure (if curable) promptly after the date of such written notice, or (F) Participant's breach of fiduciary duty with respect to the Company or an Employer.

2.9    "*Change in Control*" or "*Change of Control*" will be deemed to have occurred upon the happening of any of the following events: (a) any "Person" as defined in Section 3(a)(9) of the Act, including a "group" (as that term is used in Sections 13(d)(3) and 14(d)(2) of the Act), but excluding the Company or any of its Affiliates and any employee benefit plan sponsored or maintained by any Affiliate of the Company (including any trustee of such plan acting as trustee), who together with its "affiliates" and "associates" (as those terms are defined in Rule 12b-2 under the Act) becomes the "Beneficial Owner" (within the meaning of Rule 13d-3 under the Act) of more than 50% of the then-outstanding Shares or the combined voting power of the then-outstanding securities of the Company entitled to vote generally in the election of its directors. For purposes of calculating the number of shares or voting power held by such Person and its affiliates and associates under this clause (a), there shall be excluded any securities acquired by such Person or its affiliates or associates directly from any Affiliate of the Company; (b) a sale or other disposition of all or substantially all of the Company's assets is consummated, other than such a sale or disposition that would not have constituted a Change of Control under clause (d) below had it been structured as a merger or consolidation; (c) the shareholders of the Company approve a definitive agreement or plan to liquidate the Company; or (d) a merger or consolidation of the Company with and into another entity is consummated, unless immediately following such transaction (i) more than 50% of the members of the governing body of the surviving entity were Directors at the time of execution of the initial agreement providing for such transaction, (ii) no "Person" (as defined in clause (a) above), together with its "affiliates" and "associates" (as defined in clause (a) above), is the "Beneficial Owner" (as defined in clause (a) above), directly or indirectly, of more than 50% of the then-outstanding equity interests of the surviving entity or the combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body, and (iii) more than 50% of the then-outstanding equity interests of the surviving entity and the combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body is "Beneficially Owned", directly or indirectly, by all or substantially all of the individuals and entities who were the "Beneficial Owners" of the Shares

immediately prior to such transaction in substantially the same proportions as their ownership immediately prior to such transaction;  To the extent any Award (or any portion thereof) pursuant to this Plan that is subject to Section 409A of the Code is to be made because of the occurrence of a Change in Control, then payment shall not be made unless such Change in Control also constitutes a "change in ownership," "change in effective control," or "change in ownership of a substantial portion of the Company's assets" within the meaning of Section 409A of the Code. The Committee shall have full and final authority, which shall be exercised in its sole discretion, to determine conclusively whether a Change in Control has occurred pursuant to the above definition, the date of such Change in Control and any incidental matters relating thereto; provided that any exercise of authority in conjunction with a determination of whether a Change in Control is a "change in control event" as defined in Treasury Regulation Section 1.409A-3(i)(5) shall be consistent with such regulation.

2.10    "**Code**" means the Internal Revenue Code of 1986 and all regulations, guidance, compliance programs and other interpretative authority issued thereunder, in each case, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

2.11    "**Committee**" means the Compensation Committee of the Board or such other committee as may be appointed by the Board from time to time to administer this Plan pursuant to Article 3. All of the members of the Committee shall be "Independent Directors" within the meaning of the NYSE's listing standards (as applicable). If the Committee does not exist or cannot function for any reason, the Board may take any action under the Plan that would otherwise be the responsibility of the Committee. If any member of the Committee does not qualify as a "Non Employee Director" within the meaning of Rule 16b 3 under the Act, the Board shall appoint a subcommittee of the Committee, consisting of at least two Directors who are not also employed by the Company or any other Employer, to grant Awards to Insiders. References to the Committee in the Plan shall include and, as appropriate, apply to any such subcommittee.

2.12    "**Company**" means Wolfspeed, Inc., a North Carolina corporation, and its successors and assigns.

2.13    "**Corporate Event**" shall have the meaning set forth in Section 15.5.

2.14    "**Director**" means any individual who is a member of the Board.

2.15    "**Disability**" means, unless provided otherwise in the Award Agreement, an individual's permanent and total disability as defined in Section 22(e)(3) of the Code whereby said individual is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the preceding provisions of this Section 2.15 or anything in any Award Agreement to the contrary, to the extent any provision of this Plan or an Award Agreement would cause a payment of a 409A Award to be made because of the Participant's Disability, then there shall not be a Disability that triggers payment until the date (if any) that the Participant is disabled within the meaning of Section 409A(a)(2)(C) of the Code. Any payment that would have been made except for the application of the preceding sentence shall be made in accordance with the payment schedule that would have applied in the absence of a Disability (and other Participant rights that are tied to a Disability, such as vesting, shall not be affected by the prior sentence).

2.16    "**DRO**" means a "domestic relations order" as defined by the Code or Title I of the Employee Retirement Income Security Act of 1974, as amended, or the rules thereunder.

2.17    "**Effective Date**" shall have the meaning set forth in Section 1.4.

2.18    "**Eligible Participant**" means any employee of any Employer and any Outside Director, subject to such limitations as may be provided by the Code, the Act or the Committee, as shall be determined by the Committee.

2.19    "**Employer**" means the Company and any entity during any period that it is a "parent corporation" or a "subsidiary corporation" with respect to the Company within the meaning of Sections 424(e) and 424(f) of the Code. With respect to all purposes of the Plan, including but not limited to, the establishment, amendment, termination,

operation and administration of the Plan, the Company shall be authorized to act on behalf of all other entities included within the definition of "Employer."

2.20     "*Fair Market Value*" or "*FMV*" means the fair market value of a Share, as determined in good faith by the Committee; provided, however, that unless otherwise directed by the Committee:

(a)     if the Shares are listed on the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session;

(b)     if the Shares are listed on a national or regional securities exchange other than the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session; or

(c)     if neither (a) nor (b) applies on the given date, the fair market value of a Share on that date shall be determined in good faith by the Committee, taking into account the requirements of Section 409A of the Code and any other applicable laws, rules, or regulations.

For purposes of subsection (a) above, if the Shares are traded on more than one national securities exchange, then the following exchange shall be referenced to determine Fair Market Value: (i) the NYSE if the Shares are then traded on such exchange and (ii) otherwise such other exchange on which Shares are traded as may be designated by the Committee.

Notwithstanding the foregoing but subject to the next paragraph, if the Committee determines in its discretion that an alternative definition of Fair Market Value should be used in connection with the grant, exercise, vesting, settlement or payout of any Award, it may specify such alternative definition in the Award Agreement. Such alternative definition may include a price that is based on the opening, actual, high, low, or average selling prices of a Share on the NYSE or other securities exchange on the given date, the trading date preceding the given date, the trading date next succeeding the given date, or an average of trading days.

Notwithstanding the foregoing, (i) in the case of an Option or SAR, Fair Market Value shall be determined in accordance with a definition of fair market value that permits the Award to be exempt from Section 409A of the Code; and (ii) in the case of an Option that is intended to qualify as an ISO under Section 422 of the Code, Fair Market Value shall be determined by the Committee in accordance with the requirements of Section 422 of the Code, as applicable.

2.21     "*Good Reason*" means the occurrence of any of the following, without the Participant's consent and not due to Cause: (i) a material reduction in the Participant's annual base salary or target annual bonus or (ii) the Company or an Employer requiring the Participant to relocate the Participant's principal place of business outside of a thirty-five (35) mile radius from the Participant's current principal place of employment; provided, however, that the Participant shall only have Good Reason if the Participant provides notice to the Company or Employer of the existence of the event or circumstances constituting Good Reason specified in either of the preceding clauses within ninety (90) days of the initial existence of such event or circumstances and if such event or circumstances are not cured within thirty (30) days after the Participant gives such written notice. If the Participant initiates a termination of employment for Good Reason, the actual date on which employment is terminated must occur within thirty (30) days after expiration of the cure period. The Participant's failure to timely give notice of the occurrence of a specific event that would otherwise constitute Good Reason shall not constitute a waiver of the Participant's right to give notice of any new subsequent event that would constitute Good Reason that occurs after such prior event (regardless of whether the new subsequent event is of the same or different nature as the preceding event). The Participant's actions approving in writing (or by such other means as is reliable and verifiable) any change, reduction, requirement or occurrence (that otherwise may be considered Good Reason) in the Participant's role as with the Company shall be considered consent for the purposes of this Good Reason definition.

4

2.22    "*Greater Than 10% Stockholder*" means a Participant who owns (within the meaning of Section 424(d) of the Code) stock of the Company possessing more than ten percent (10%) of the total combined voting power of all classes of stock of the Company or any "parent" or "subsidiary" (within the meaning of Section 424(e) or (f) of the Code, respectively), determined at the time an Option is granted.

2.23    "*Incentive Stock Option*" or "*ISO*" means an Option granted to an Eligible Participant under Article 5 which is designated as an Incentive Stock Option and intended to meet the requirements of Section 422 of the Code.

2.24    "*Individual Agreement*" means a written agreement between a Participant and the Company or any other Employer relating to employment by the Company or other Employer or to service as an Outside Director of the Company (other than an Award Agreement).

2.25    "*Insider*" shall mean an individual who is, on the relevant date, subject to the reporting requirements of Section 16(a) of the Act.

2.26    "*Nonqualified Stock Option*" or "*NQSO*" means an Option granted to an Eligible Participant under Article 5 which is not intended to meet the requirements of Section 422 of the Code or that otherwise does not meet such requirements.

2.27    "*NYSE*" means the New York Stock Exchange or its successor.

2.28    "*Option*" means an Incentive Stock Option or a Nonqualified Stock Option. An Option shall be designated in the applicable Award Agreement as either an Incentive Stock Option or a Nonqualified Stock Option, and in the absence of such designation, shall be treated as a Nonqualified Stock Option. Furthermore, any Option that is initially intended to be and is designated as an Incentive Stock Option but does not meet the requirements of Section 422 of the Code for any reason shall be treated as a Nonqualified Stock Option with respect to all or such portion that does not qualify as an Incentive Stock Option per Article 5.

2.29    "*Option Price*" means the price at which a Participant may purchase a Share pursuant to an Option.

2.30    "*Other Award*" means any form of equity-based or equity-related award, other than an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Stock or Performance Unit, that is granted pursuant to Article 9.

2.31    "*Outside Director*" means a member of the Board who is not an employee of the Company or any other Employer.

2.32    "*Participant*" means an Eligible Participant to whom an Award has been granted.

2.33    "*Performance Period*" shall have the meaning set forth in Section 8.2.

2.34    "*Performance Share*" means an Award under Article 8 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.35    "*Performance Unit*" means an Award under Article 8 that has a value set by the Committee (or that is determined by reference to a valuation formula specified by the Committee), which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.36    "*Plan*" means this Wolfspeed, Inc. 2025 Long-Term Incentive Compensation Plan set forth in this document and as it may be amended from time to time.

2.37    "*Reimbursement Expenses*" shall have the meaning set forth in Section 3.6.

2.38    "*Restricted Stock*" means an Award of Shares under Article 7, which Shares are issued with such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Shares, to sell, transfer, pledge or assign such Shares, to vote such Shares, and/or to receive any cash dividends with respect to such Shares, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.39    "*Restricted Stock Unit*" means an Award under Article 7 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, and that has such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Awards, to sell, transfer, pledge or assign such Awards, and/or to receive any cash dividend equivalents with respect to such Awards, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.40    "*Restriction Period*" means the period during which Restricted Stock or Restricted Stock Units are subject to one or more restrictions that will lapse based on the passage of time, the achievement of performance goals, or the occurrence of another event or events, as determined by the Committee and specified in the applicable Award Agreement.

2.41    "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement by and among the Company, Wolfspeed Texas LLC and the Consenting Creditors (as defined therein), dated June 22, 2025, including all exhibits, annexes and schedules attached thereto (as may be amended, supplemented or modified prior to the Effective Date). All references in the Plan to the Restructuring Support Agreement and the terms thereof shall be to the Restructuring Support Agreement as in effect immediately prior to any termination thereof and shall apply irrespective of any such termination.

2.42    "*SAR Price*" means the amount that is subtracted from the Fair Market Value of a Share at the time of exercise of a SAR to determine the amount payable, if any, upon exercise of the SAR.

2.43    "*Share*" means one share of common stock, par value $[____] per share, of the Company, as such Share may be adjusted pursuant to the provisions of Section 4.4.

2.44    "*Stock Appreciation Right*" or "*SAR*" means an Award granted under Article 6 which provides for an amount payable in Shares and/or cash, as determined by the Committee, equal to the excess of the Fair Market Value of a Share on the day the Stock Appreciation Right is exercised over the SAR Price.

2.45    "*Tandem SAR*" shall have the meaning set forth in Section 6.1.

2.46    "*Termination of Service*" means, unless provided otherwise in the Award Agreement, the discontinuance of employment of a Participant with the Employer for any reason, whether voluntary or involuntary, or in the case of an Outside Director, the discontinuance of services to the Company by an Outside Director, for any reason, whether voluntary or involuntary. Notwithstanding the foregoing, if a Participant becomes a consultant or independent contractor providing services to an Employer immediately upon terminating service as an employee, such seamless continuation of service as a consultant or contractor shall constitute a continuation of service with respect to Awards granted to the Participant while he or she served as an employee. Furthermore, if an Outside Director becomes an employee of the Company or any other Employer before or upon terminating service as an Outside Director, such employment will constitute a continuation of service with respect to Awards granted to the Participant while he or she served as a member of the Board. The determination of whether a Participant has discontinued employment or service shall be made by the Committee in its sole discretion. "Termination of Employment" as used in an Award Agreement shall mean Termination of Service and vice-versa.

## ARTICLE 3.    ADMINISTRATION

3.1    *Composition of Committee*. This Plan shall be administered by the Committee. The Committee shall consist of two or more Outside Directors who shall be appointed by the Board. The Board shall fill vacancies on the Committee and may from time to time remove or add members of the Committee. Except with respect to Awards to Outside Directors under Article 10, the Board, in its sole discretion, may exercise any authority of the Committee under this Plan in lieu of the Committee's exercise thereof and in such instances references herein to the Committee shall refer to the Board of Directors. Unless the Board directs otherwise, the Compensation Committee of the Board shall serve as the Committee.

3.2    *Authority of the Committee*.

(a)    The Committee shall have full and exclusive discretionary power to interpret the terms and intent of the Plan and any Award Agreement or other agreement or document ancillary to or in connection with this Plan as well as the right and power to construe and administer the Plan, to select Eligible Participants and the persons who are eligible to receive an Award, and to act in all matters pertaining to the granting of an Award and the contents of the Award Agreement evidencing the Award, including without limitation, the determination of the number of Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Performance Shares, Performance Stock Units, Performance Units or Other Awards subject to an Award and the form, terms, conditions and duration of each Award, and any amendment thereof consistent with the provisions of the Plan. The Committee may adopt such rules, regulations and procedures of general application for the administration of this Plan as it deems appropriate. The Committee shall be further authorized to act on behalf of all Affiliates and subsidiaries with respect to all purposes of the Plan.

(b)    The Committee may correct any defect, supply any omission or reconcile any inconsistency in the Plan or any Award Agreement in the manner and to the extent it shall deem desirable to carry it into effect.

(c)    In the event the Company shall assume outstanding employee benefit awards or the right or obligation to make future such awards in connection with the acquisition of another corporation or business entity, the Committee may, in its discretion, make such adjustments in the terms of Awards under the Plan as it shall deem appropriate.

(d)    The Committee shall have the discretion to determine the effect upon an Award and upon an individual's status as an employee or Outside Director under the Plan (including whether a Participant shall be deemed to have experienced a Termination of Service, or other change in status) and upon the vesting, expiration or forfeiture of an Award in the case of (i) any individual who is employed by an entity that ceases to qualify as an Employer, (ii) any leave of absence, (iii) any transfer between locations of employment with the Company and any other Employer (including Affiliates) or vice versa, (iv) any change in the Participant's status from an employee to a consultant or member of the Board of Directors, or vice versa, and (v) any employee who, at the request of the Employer or the Company, becomes employed by any partnership, joint venture, corporation or other entity not meeting the requirements of an Employer.

(e)    All actions, determinations and decisions of the Committee made or taken pursuant to grants of authority under the Plan or with respect to any questions arising in connection with the administration, operation, and interpretation of the Plan, including the severability of any and all of the provisions thereof, shall be conclusive, final and binding upon all parties, including the Company, its shareholders, Participants, Eligible Participants and their estates, beneficiaries and successors. The Committee shall consider such factors as it deems relevant to making or taking such actions, determinations and decisions including, without limitation, the recommendations or advice of any Director, officer or employee of the Company and such attorneys, consultants and accountants as it may select. A Participant or other holder of an Award may contest an action, determination or decision by the Committee with respect to such person or Award only on the grounds that such action, determination or decision was arbitrary or capricious or was unlawful, and any review of such action, determination or decision shall be limited to determining whether the Committee's decision or action was arbitrary or capricious or was unlawful.

3.3    *Rules for Foreign Jurisdictions*. Notwithstanding anything in the Plan to the contrary, the Committee may, in its sole discretion, amend or vary the terms of the Plan in order to conform such terms with the

requirements of each non-U.S. jurisdiction where an Eligible Participant is located or to meet the goals and objectives of the Plan; establish one or more sub-plans for these purposes; and establish administrative rules and procedures to facilitate the operation of the Plan in such non-U.S. jurisdictions.

3.4     *Delegation of Authority*. The Committee may, in its discretion, at any time and from time to time, delegate to one or more of the members of the Committee such of its powers as it deems appropriate (provided that any such delegation shall be to at least two members of the Committee with respect to Awards to Insiders). Except with respect to Awards to Insiders, the Committee may, in its discretion, at any time and from time to time, delegate to one or more persons who are not members of the Committee any or all of its authority and discretion under Section 3.2 and 3.3, to the full extent permitted by law and the rules of any exchange on which Shares are traded.

3.5     *Award Agreements*. Each Award granted under the Plan shall be evidenced by an Award Agreement. Each Award Agreement shall be subject to and incorporate, by reference or otherwise, the applicable terms and conditions of the Plan, and any other terms and conditions, not inconsistent with the Plan, as may be directed by the Committee, including without limitation, provisions related to the consequences of Termination of Service. A copy of such document shall be provided to the Participant, and the Committee may, but need not, require that the Participant sign a copy of the Award Agreement or otherwise confirm the Participant's acceptance of the provisions of the Award Agreement. The Participant shall in any event be deemed to have accepted the provisions of an Award Agreement delivered to the Participant with respect to an Award by exercising the Award or receiving any benefits thereunder.

3.6     *Indemnification*. In addition to such other rights of indemnification as they may have as members of the Board or as members of the Committee, the Company shall indemnify and hold harmless the members of the Committee against (i) reasonable expenses, including attorney's fees, actually and necessarily incurred in connection with the defense of any action, suit or proceeding, or in connection with any appeal thereof, to which they or any of them may be a party by reason of any action taken or failure to act under or in connection with the Plan or any Award granted thereunder, (ii) all amounts paid by them in settlement thereof, provided such settlement is approved by independent legal counsel selected by the Company, and (iii) all amounts paid by them in satisfaction of a judgment in any such action, suit or proceeding, except as to matters as to which the Committee member has been negligent or engaged in misconduct in the performance of his duties (all amounts reimbursed hereunder are referred to as the "***Reimbursement Expenses***"); provided, that within 60 days after institution of any such action, suit or proceeding, a Committee member shall in writing offer the Company the opportunity, at its own expense, to handle and defend the same. In the performance of its responsibilities with respect to the Plan, the members of the Committee shall be entitled to rely upon, and no member of the Committee shall be liable for any action taken or not taken in good faith reliance upon, information and/or advice furnished by the Company's officers or employees, the Company's accountants, or the Company's counsel. To the extent the entitlement to Reimbursement Expenses is subject to Section 409A of the Code, it applies during the lifetime of the Committee member; the Company shall pay each Reimbursement Expense no later than the end of the calendar year following the calendar year in which the Committee member incurred such Reimbursement Expense; the amount of Reimbursement Expenses available to a Committee member in one tax year will not affect the amount of Reimbursement Expenses available to the Committee member in any other tax year; and the entitlement to Reimbursement Expenses is not subject to liquidation or exchange for any other benefit.

## ARTICLE 4.     SHARES SUBJECT TO THE PLAN

4.1     *Aggregate Limits*.

(a)     Subject to adjustment as provided in Section 4.4, the aggregate number of Shares which may be issued pursuant to Awards under this Plan (the "***Award Pool***") shall be equal to the product calculated by multiplying five percent (5%) by the Shares outstanding on the Effective Date calculated on a pro forma basis assuming all New 2L Convertible Notes (as defined in the Restructuring Support Agreement) are treated as having converted into Shares on the Effective Date but excluding Shares issued upon conversion of the New Renesas 2L Takeback Convertible Notes (as defined in the Restructuring Support Agreement) and exercise of the Renesas Warrants (as defined in the Restructuring Support Agreement). Without limiting the foregoing, in accordance with the Restructuring Support Agreement, the terms and conditions of which are incorporated herein by reference and notwithstanding any termination thereof, Awards granted during fiscal year 2026 shall have a value as of the date of grant, as determined by the Board or Committee, equivalent to $26.6 million, and Awards granted during fiscal year 2027 shall have a value as of the date of grant, as determined by the Board or Committee, equivalent to $27.5 million.

(b)      Up to [_____] Shares are available for issuance pursuant to ISOs granted under the Plan. Otherwise, the Award Pool shall be available for all types of Awards granted under the Plan; there is no maximum number of Shares per type of Award. Such Shares shall be made available from Shares authorized but unissued, including Shares purchased in the open market or in private transactions.

4.2      *Share Counting Rules*.

(a)      Each Option shall be counted as one Share subject to an Award and deducted from the Award Pool.

(b)      Each share of Restricted Stock and each Restricted Stock Unit and each Other Award that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Restricted Stock Units and Other Awards that may not be settled in Shares shall not result in a deduction from the Award Pool.

(c)      Each Performance Share or Performance Stock Unit that may be settled in Shares shall be counted as one Share subject to an Award, based on the number of Shares that would be paid under the Performance Share or Performance Stock Unit for achievement of target performance, and deducted from the Award Pool. Each Performance Unit that may be settled in Shares shall be counted as a number of Shares subject to an Award, based on the number of Shares that would be paid under the Performance Unit for achievement of target performance, with the number determined by dividing the value of the Performance Unit at the time of grant by the Fair Market Value of a Share at the time of grant, and this number shall be deducted from the Award Pool. In both cases, in the event that the Award is later settled based on above-target performance, the number of Shares corresponding to the above-target performance, calculated pursuant to the applicable methodology specified above, shall be deducted from the Award Pool at the time of such settlement; in the event that the Award is later settled upon below-target performance, the number of Shares corresponding to the below-target performance, calculated pursuant to the applicable methodology specified above, shall be added back to the Award Pool. Performance Shares, Performance Stock Units, and Performance Units that may not be settled in Shares shall not result in a deduction from the Award Pool.

(d)      Each Stock Appreciation Right that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Stock Appreciation Rights that may not be settled in Shares shall not result in a deduction from the Award Pool.

(e)      If for any reason any Shares awarded or subject to issuance under the Plan are not issued, or are reacquired by the Company from the Participant or the Participant's transferee, for reasons including, but not limited to: (i) a forfeiture of Restricted Stock or a Restricted Stock Unit; (ii) the termination, expiration or cancellation of an Option, Stock Appreciation Right, Performance Share, Performance Stock Unit, Performance Unit or Other Award; (iii) Shares withheld for payment of taxes pursuant to Section 14.2 (other than for an Option or Stock Appreciation Right); or (iv) settlement of an Award in cash in lieu of Shares, such Shares shall again be available for issuance pursuant to an Award under the Plan and shall be added back to the Award Pool. Notwithstanding anything herein to the contrary: (i) Shares with respect to which a Stock Appreciation Right under the Plan is exercised; (ii) Shares tendered, withheld, or subject to an Option or Stock Appreciation Right granted under the Plan surrendered in connection with the payment of the Option Price upon exercise of an Option or Stock Appreciation Right, if applicable, or in connection with the Company's tax withholding obligations with respect to Options or stock-settled Stock Appreciation Rights granted under the Plan; (iii) Shares not issued upon the net settlement or net exercise of a stock-settled Stock Appreciation Right under the Plan; and (iv) Shares purchased by the Company with proceeds from the exercise of Options or Stock Appreciation Rights granted under the Plan shall not thereafter be available for issuance under the Plan nor added back to the Award Pool.

4.3      *Outside Director Award Limits*. Subject to adjustment as provided in Section 4.4, the aggregate grant date fair value (computed as of the Date of Grant in accordance with applicable financial accounting rules) of all Awards granted to any Outside Director during any single fiscal year, taken together with any cash fees paid to such Outside Director during such fiscal year, shall not exceed $1,000,000.

4.4      *Adjustment of Shares*. If any change in corporate capitalization, such as a stock split, reverse stock split, or stock dividend; or any corporate transaction such as a reorganization, reclassification, merger or consolidation

or separation, including a spin-off, of the Company or sale or other disposition by the Company of all or a portion of its assets, any other change in the Company's corporate structure, or any distribution to shareholders (other than an ordinary cash dividend) results in the outstanding Shares, or any securities exchanged therefore or received in their place, being exchanged for a different number or class of shares or other securities of the Company, or for shares of stock or other securities of any other corporation; or new, different or additional shares or other securities of the Company or of any other corporation being received by the holders of outstanding Shares; then the Committee shall make equitable adjustments, as it determines are necessary and appropriate, in:

        (a)     the number and class of stock or other securities that comprise the Award Pool as set forth in Section 4.1;

        (b)     the limitations on the aggregate number of Awards that may be granted in any one fiscal year to any one Participant may be provided for herein or pursuant to an Award Agreement;

        (c)     the number and class of stock or other securities subject to outstanding Awards, and which have not been issued or transferred under outstanding Awards;

        (d)     the Option Price under outstanding Options, the SAR Price under outstanding Stock Appreciation Rights and the number of Shares to be transferred in settlement of outstanding Options and Stock Appreciation Rights; and

        (e)     the terms, conditions or restrictions of any Award and Award Agreement, including the price payable for the acquisition of Shares.

It is intended that, if possible, any adjustments contemplated above shall be made in a manner that satisfies applicable legal requirements, as well as applicable requirements with respect to taxation (including, without limitation and as applicable in the circumstances, Sections 424 and 409A of the Code) and accounting (so as to not trigger any charge to earnings with respect to such adjustment).

Without limiting the generality of the above, any good faith determination by the Committee as to whether an adjustment is required in the circumstances and the extent and nature of any such adjustment shall be final, conclusive and binding on all persons.

Subject to the provisions of Article 15 and notwithstanding anything else herein to the contrary, without affecting the number of Shares reserved or available hereunder, the Committee may authorize the issuance or assumption of benefits under this Plan in connection with any merger, consolidation, acquisition of property or stock, or reorganization upon such terms and conditions as it may deem appropriate, subject to compliance with the rules under Sections 409A, 422 and 424 of the Code, as and where applicable.

## ARTICLE 5.    STOCK OPTIONS

*5.1    Grant of Options.* Subject to the provisions of the Plan, Options may be granted to Eligible Participants at any time and from time to time as shall be determined by the Committee. The Committee shall have sole discretion in determining the number of Shares subject to Options granted to each Participant. The Committee may grant a Participant ISOs, NQSOs or a combination thereof, and may vary such Awards among Participants; provided that only employees may be granted ISOs. Notwithstanding anything in this Article 5 to the contrary, except for Options that are specifically designated as intended to be subject to Section 409A of the Code, Options may only be granted to individuals who provide direct services on the date of grant of the Option to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-l(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised Options granted under the Plan.

*5.2    Award Agreement.* Each Option grant shall be evidenced by an Award Agreement that shall specify the Option Price, the duration of the Option, the number of Shares to which the Option pertains, the conditions upon

which the Option shall become vested and exercisable and such other provisions as the Committee shall determine. The Award Agreement shall further specify whether the Award is intended to be an ISO or an NQSO. Any portion of an Option that is not designated as an ISO or otherwise fails or is not qualified as an ISO (even if designated as an ISO) shall be an NQSO.

     *5.3*     *Option Price*. Subject to Section 5.8, the Option Price for each grant of an Option shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted. Notwithstanding the prior sentence, an Option may be granted with an Option Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted if such Option is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such Option Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the Option from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the Option is granted).

     *5.4*     *Duration of Options*. Each Option shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any Option that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such Option to the extent permitted by Sections 409A and 422 of the Code, or other applicable law; and provided, further, that no Option shall be exercisable later than the tenth (10th) anniversary of its grant date or, in the case of an ISO granted to a Greater Than 10% Stockholder, the fifth (5th) anniversary of its grant date.

     *5.5*     *Exercise of Options*. Options granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company, a subsidiary or any other Employer, to the extent permitted by applicable law, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Deferral of Option gains is not permitted.

     *5.6*     *Payment*. Options shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the Option is to be exercised and satisfying any requirements that the Committee may establish in or pursuant to the Award Agreement from time to time, together with, (a) payment in full of the Option Price for the number of Shares for which the Option is exercised, and (b) satisfaction in full of any withholding obligations for Tax-Related Items in a manner specified in Article 13. The Option Price shall be payable to the Company either: (a) in cash, (b) in a cash equivalent approved by the Committee, (c) if approved by the Committee, by tendering previously acquired Shares (or delivering a certification or attestation of ownership of such Shares) having an aggregate Fair Market Value at the time of exercise equal to the total Option Price (provided that the tendered Shares must have been held by the Participant for any period required by the Committee), (d) by a combination of (a), (b) and/or (c), and (e) any other method expressly approved or accepted by the Committee in the Committee's sole discretion. The Committee also may allow cashless exercises as permitted under Regulation T of the Federal Reserve Board, subject to applicable securities law restrictions, or by any other means which the Committee determines to be consistent with the Plan's purpose and applicable law. Unless otherwise authorized by the Committee, no Shares shall be delivered until the full Option Price has been paid.

     *5.7*     *Nontransferability of Options*.

     (a)     *Incentive Stock Options.* No ISO granted under the Plan may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, all ISOs granted to a Participant under the Plan shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an ISO be transferred for value or consideration.

     (b)     *Nonqualified Stock Options.* Except as otherwise provided in a Participant's Award Agreement consistent with securities and other applicable laws, rules and regulations, no NQSO granted under this Article 5 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by

the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all NQSOs granted to a Participant under this Article 5 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an NQSO be transferred for value or consideration.

5.8     *Special Rules for ISOs*. Notwithstanding the above, in no event shall any Greater Than 10% Stockholder be eligible to receive an ISO at an Option Price less than one hundred ten percent (110%) of the Fair Market Value of a share on the date the ISO is granted or be eligible to receive an ISO that is exercisable later than the fifth (5th) anniversary date of its grant. The aggregate Fair Market Value of shares with respect to which incentive stock options (within the meaning of Section 422 of the Code) granted to a Participant are first exercisable in any calendar year (under the Plan and all other incentive stock option plans of the Employer) shall not exceed $100,000. For this purpose, Fair Market Value shall be determined with respect to a particular incentive stock option on the date on which such incentive stock option is granted. In the event that this One Hundred Thousand Dollar ($100,000) limit is exceeded with respect to a Participant, then Incentive Stock Options granted under this Plan to such Participant shall, to the extent and in the order required by Treasury Regulations under Section 422 of the Code, automatically become NQSOs granted under this Plan. Solely for purposes of determining the limit on ISOs that may be granted under the Plan, the provisions of Section 4.2 that replenish or forgo a deduction from the Award Pool shall only be applied to the extent permitted by Section 422 of the Code and regulations promulgated thereunder.

## ARTICLE 6.     STOCK APPRECIATION RIGHTS

6.1     *Grant of SARs*. Subject to the terms and provisions of the Plan, SARs may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee. A Stock Appreciation Right may be granted to an Eligible Participant in connection with an Option granted under Article 5 of this Plan or may be granted independently of any Option. A Stock Appreciation Right shall entitle the holder, within the specified period, to exercise the SAR and receive in exchange a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the SAR Price, times the number of Shares with respect to which the SAR is exercised. A SAR granted in connection with an Option (a "***Tandem SAR***") shall entitle the holder of the related Option, within the period specified for the exercise of the Option, to surrender the unexercised Option, or a portion thereof, and to receive in exchange therefore a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the Option Price, times the number of Shares under the Option, or portion thereof, which is surrendered. Notwithstanding anything in this Article 6 to the contrary, except for SARs that are specifically designated as intended to be subject to Section 409A of the Code, SARs may only be granted to individuals who provide direct services on the date of grant of the SAR to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-l(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised SARs granted under the Plan.

6.2     *Award Agreement*. Each SAR grant shall be evidenced by an Award Agreement that shall specify the SAR Price, the duration of the SAR, the number of Shares with respect to which the SAR pertains, the conditions upon which the SAR shall become vested and exercisable and such other provisions as the Committee shall determine.

6.3     *Tandem SARs*. Each Tandem SAR shall be subject to the same terms and conditions as the related Option, including limitations on transferability, shall be exercisable only to the extent such Option is exercisable and shall terminate or lapse and cease to be exercisable when the related Option terminates or lapses. The grant of Stock Appreciation Rights related to ISOs must be concurrent with the grant of the ISOs. With respect to NQSOs, the grant either may be concurrent with the grant of the NQSOs, or in connection with NQSOs previously granted under Article 5, which are unexercised and have not terminated or lapsed.

6.4     *Payment*. The Committee shall have sole discretion to determine in each Award Agreement whether the payment with respect to the exercise of an SAR will be in the form of cash, Shares, or any combination thereof. If payment is to be made in Shares, the number of Shares shall be determined based on the Fair Market Value of a Share on the date of exercise.

*6.5    SAR Price*. The SAR Price for each grant of a SAR shall be determined by the Committee and shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted. Notwithstanding the prior sentence, a SAR may be granted with a SAR Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted if such SAR is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such SAR Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the SAR from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the SAR is granted).

*6.6    Duration of SARs*. Each SAR shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any SAR that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such SAR; and provided, further, that no SAR shall be exercisable later than the tenth (10th) anniversary of its grant date.

*6.7    Exercise of SARs*. SARs granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company or any Employer, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Upon exercise of a Tandem SAR, the number of Shares subject to exercise under the related Option shall automatically be reduced by the number of Shares represented by the Option or portion thereof which is surrendered. SARs shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the SAR is to be exercised and satisfying any requirements that the Committee may apply from time to time.

*6.8    Nontransferability of SARs*. Except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee consistent with securities and other applicable laws, rules and regulations, no SAR granted under this Article 6 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all SARs granted to a Participant under this Article 6 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may a SAR be transferred for value or consideration.

**ARTICLE 7.    RESTRICTED STOCK AND RESTRICTED STOCK UNITS**

*7.1    Grants of Restricted Stock and Restricted Stock Units*. Restricted Stock Awards and Restricted Stock Unit Awards may be made to Eligible Participants as an incentive for the performance of future services that the Committee in its sole discretion determines will contribute materially to the successful operation of the Employer. Subject to Article 11 with respect to grants to Outside Directors, Awards of Restricted Stock or Restricted Stock Units may be made either alone or in addition to or in tandem with other Awards granted under the Plan and may be current grants of Restricted Stock or Restricted Stock Units or deferred grants of Restricted Stock or Restricted Stock Units.

*7.2    Restricted Stock/Unit Award Agreement*.

(a)    In General. Each Award of Restricted Stock/Units shall be evidenced by an Award Agreement that shall set forth the terms of the Award, as determined by the Committee, including, without limitation, the number of Shares of Restricted Stock or the number of Restricted Stock Units granted; the purchase price, if any, to be paid for each Share of Restricted Stock or Restricted Stock Unit, which may be more than, equal to, or less than Fair Market Value of a Share and may be zero, subject to such minimum consideration as may be required by applicable law; any restrictions applicable to the Restricted Stock/Units such as continued service or achievement of performance goals, or both; the length of the Restriction Period and whether any circumstances, such as death, Disability, retirement (as defined in the applicable Award Agreement) or a Change in Control, will shorten or terminate the Restriction Period; and whether Restricted Stock Units will be settled in cash, Shares or a combination of cash and

13

Shares. The Restriction Period may be of any duration. The Award may provide for lapse of the Restriction Period in monthly or longer installments over the course of the Restriction Period, as determined by the Committee in its discretion.

(b)     Execution of Award Agreements. Notwithstanding Section 3.5, a Restricted Stock or Stock Unit Award must be accepted prior to the first vesting date or such other period as the Committee may specify, by executing a Restricted Stock/Unit Award Agreement, or otherwise electronically accepting the Award, and paying whatever price, if any, is required. The prospective recipient of a Restricted Stock or Restricted Stock Unit Award shall not have any rights with respect to such Award, unless and until such recipient has executed a Restricted Stock/Unit Award Agreement and has delivered a fully executed copy thereof to the Company, or otherwise electronically accepted the Award, and has otherwise complied with the applicable terms and conditions of such Award.

7.3     *Nontransferability*. Except as otherwise provided in this Article 7 or in an Award Agreement, no shares of Restricted Stock or Restricted Stock Units received by a Participant shall be sold, exchanged, transferred, pledged, assigned, hypothecated or otherwise disposed of during the Restriction Period or, in the case of Restricted Stock Units, until the date of delivery of Shares or other payment with respect to the Restricted Stock Units, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement, a Participant's rights under an Award of Restricted Stock or Restricted Stock Units shall be available during the Participant's lifetime only to the Participant or the Participant's legal representative.

7.4     *Certificates*. Upon an Award of Restricted Stock to a Participant, Shares of Restricted Stock shall be registered in the Participant's name. Certificates, if issued, may either be held in custody by the Company until the Restriction Period expires or until restrictions thereon otherwise lapse and/or be issued to the Participant and registered in the name of the Participant, bearing an appropriate restrictive legend and remaining subject to appropriate stop-transfer orders. If required by the Committee, the Participant shall deliver to the Company one or more stock powers endorsed in blank relating to the Restricted Stock. If and when the Restriction Period expires without a prior forfeiture of the Restricted Stock subject to such Restriction Period, unrestricted certificates for such shares shall be delivered to the Participant.

7.5     *Dividends and Other Distributions*. Except as provided in this Article 7 or in the Award Agreement, a Participant receiving a Restricted Stock Award shall have, with respect to such Award, all of the rights of a shareholder of the Company, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and the right to receive any dividends; provided, however, that, in all cases, (i) any dividends or other distributions on such Shares of Restricted Stock during the Restriction Period shall be either automatically deferred and reinvested in additional Shares of Restricted Stock or paid to the Company for the account of the Participant, in either case subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividends and other distributions shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with Section 409A of the Code. The Committee shall determine whether interest, if any, shall be paid on such amounts, the rate of any such interest, and the other terms applicable to such amounts (again, provided that all such terms shall, to the extent required, comply with Section 409A of the Code). A Participant receiving a Restricted Stock Unit Award shall not possess voting rights and shall accrue dividend equivalents on such Restricted Stock Units only to the extent provided in the Award Agreement relating to the Award; provided, however, that in all cases (i) any dividend equivalents payable on such Restricted Stock Unit Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

7.6     *Short-Term Deferral*. To the extent an Award described in this Section is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date on which there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

### ARTICLE 8. PERFORMANCE SHARES AND UNITS

8.1 *Grant of Performance Shares / Performance Stock Units / Performance Units*. Subject to the terms and provisions of the Plan, Performance Shares, Performance Stock Units ("**PSUs**"), and Performance Units may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee.

8.2 *Value of Performance Shares / Performance Stock Units and Performance Units*. Each Performance Unit shall have an initial value that is established by the Committee at the time of grant. Each Performance Share or Performance Stock Unit shall have an initial value equal to the Fair Market Value of a Share on the date of grant. In addition to any non-performance terms applicable to the Award, the Committee shall set performance goals in its discretion which, depending on the extent to which they are met, will determine the number and/or value of Performance Shares, Performance Stock Units, Performance Units or all three, as applicable, that will be paid out to the Participant. For purposes of this Article 8, the time period during which the performance goals must be met in order to determine the degree of payout and/or vesting with respect to an Award shall be called a "Performance Period."

8.3 *Earning of Performance Shares / Units*. Subject to the terms of this Plan, after the applicable Performance Period has ended, the holder of Performance Shares, Performance Stock Units, or Performance Units shall be entitled to receive a payout of the number and value of Performance Shares, Performance Stock Units, or Performance Units earned by the Participant over the Performance Period, to be determined as a function of the extent to which the corresponding performance goals have been achieved and any applicable non-performance terms have been met. The Committee may provide in the Award Agreement and/or an Individual Agreement that the Performance Shares, Performance Stock Units, or Performance Units are earned notwithstanding achievement of the performance goals only: (i) in the event of the Participant's death or Disability, (ii) in the event of the Participant's "retirement" (as such term is defined in the applicable Award Agreement), (iii) in connection with a Change of Control, or (iv) pursuant to Section 15.5.

8.4 *Form and Timing of Payment of Performance Shares, Performance Stock Units, or Performance Units*. Subject to the terms of this Plan and the applicable Award Agreement, the Committee, in its sole discretion, may pay earned Performance Shares, Performance Stock Units, and Performance Units in the form of cash or Shares or other Awards (or in a combination thereof) which have an aggregate Fair Market Value equal to the value of the earned Performance Shares, Performance Stock Units, and Performance Units at the close of the applicable Performance Period. Any such Shares may be granted subject to any restrictions deemed appropriate by the Committee. The determination of the Committee with respect to the form and timing of payout of such Awards shall be set forth in the Award Agreement pertaining to the grant of the Award.

Notwithstanding the foregoing, to the extent an Award described in this Article 8 is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

8.5 *Dividends and Other Distributions*. A Participant receiving a Performance Share, Performance Stock Unit, or Performance Unit Award shall not possess voting rights. A Participant receiving a Performance Share, Performance Stock Unit, Performance Unit Award or any other Award that is subject to performance conditions shall accrue dividend equivalents on such Award only to the extent provided in the Award Agreement relating to the Award; provided, however, that (i) any dividend equivalents payable on such Performance Shares, Performance Stock Units, Performance Units or other Award subject to performance conditions shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalent shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

  *8.6 Nontransferability*. Except as otherwise provided in this Article 8 or the applicable Award Agreement, Performance Shares, Performance Stock Units, and Performance Units may not be sold, exchanged, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in the applicable Award Agreement, a Participant's rights with respect to Performance Shares, Performance Stock Units, and Performance Units shall be available during the Participant's lifetime only by the Participant or the Participant's legal representative. In no event may a Performance Share, Performance Stock Unit, or Performance Unit be transferred for value or consideration.

## ARTICLE 9. OTHER AWARDS

  The Committee shall have the authority to specify the terms and provisions of other forms of equity-based or equity-related awards not described above that the Committee determines to be consistent with the purpose of the Plan and the interests of the Company. The Other Awards may provide for cash payments based in whole or in part on the value or future value of Shares, for the acquisition or future acquisition of Shares, or any combination of the foregoing. Notwithstanding the foregoing, where the value of an Other Award is based on the difference in the value of a Share at different points in time, the grant or exercise price will not be less than 100% of the Fair Market Value of the Shares on the date of grant unless the Other Award is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that the Other Award preserves the economic benefit of the replaced award and is either exempt from or in compliance with the requirements of Section 409A of the Code. A Participant receiving an Other Award shall accrue dividend equivalents on such Other Award only to the extent provided in the Award Agreement relating to the Other Award; provided, however, that (i) any dividend equivalents payable on such Other Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Other Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

## ARTICLE 10. PERFORMANCE MEASURES

  *10.1 In General*. The Committee may, in its discretion, include performance conditions or objectives in any Award. The Committee may provide for a threshold level of performance below which no amount of compensation will be paid, and the Committee may provide for the payment of differing amounts of compensation for different levels of performance.

  *10.2 Committee Determination of Achievement of Performance Goals; Adjustments*. For each Award that has been granted subject to a specified performance goal or objective, the Committee shall determine within an administratively practicable period following the end of the applicable Performance Period whether such performance goals or objectives for that Performance Period have been achieved and, if they have, the Committee shall so certify in writing and ascertain the amount payable under the applicable Award. If a performance goal or objective for a Performance Period is not achieved, the Committee in its sole discretion may nonetheless pay all or a portion of that Award based on such criteria as the Committee deems appropriate, including without limitation individual performance, Company-wide performance, or the performance of specific Employer entities or Affiliates, divisions, departments, regions, or service line or function employing the Participant.

  In determining whether any performance goal or objective has been satisfied, the Committee may include or exclude any or all items that are unusual or non-recurring, including but not limited to (i) charges, costs, benefits gains or income associated with reorganizations or restructurings of the Employer (or related entities and Affiliates), discontinued operations, goodwill, other intangible assets, long-lived assets (non-cash), real estate strategy, litigation, or the resolution of litigation (e.g., settlements, judgments, or attorneys' fees), or currency or commodity fluctuations; and (ii) the effects of changes in applicable laws, regulations or accounting principles. In addition, the Committee may adjust any performance objective for a Performance Period as it deems equitable to recognize unusual or non-recurring events affecting the Employer (or related entities and Affiliates), changes in tax laws or regulations or accounting procedures, mergers, acquisitions, and divestitures, or any other factors as the Committee may determine. To the extent that a performance objective is based on the price of a Share, then in the event of any stock dividend, stock split, combination of shares, recapitalization or other changes in the capital structure of the Company, any merger, consolidation, spin-off, reorganization, partial or complete liquidation or other distribution of assets (other than a

16

normal cash dividend), issuance of rights or warrants to purchase securities or any other corporate transaction having an effect similar to any of the foregoing, the Committee shall make or provide for such adjustments in such performance objective as the Committee in the Committee's sole discretion may in good faith determine to be equitably required in order to prevent dilution or enlargement of the rights of Participants.

## ARTICLE 11.   AWARDS TO OUTSIDE DIRECTORS

Awards to Outside Directors may be in the form of Nonqualified Stock Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Other Awards or a combination thereof.

## ARTICLE 12.   BENEFICIARY DESIGNATION

To the extent permitted by the Committee, each Participant under the Plan may, from time to time, in the manner determined by the Committee, name any beneficiary or beneficiaries (who may be named contingently or successively) to whom any benefit under the Plan is to be paid in case of his or her death before he or she receives any or all of such benefit. If any such designation is permitted, the Committee shall, in its sole discretion, establish rules and procedures for such designations. Unless different rules and procedures are established by the Committee, each such designation shall revoke all prior designations by the same Participant, shall be in a form prescribed by the Company, and will be effective only when filed by the Participant in writing with a designated representative of the Committee during the Participant's lifetime. In the absence of any such designation, benefits remaining unpaid at the Participant's death shall be paid to the Participant's estate or legal heirs.

## ARTICLE 13.   DEFERRALS

The Committee may permit or require a Participant to defer such Participant's receipt of the payment of cash or the delivery of Shares that would otherwise be due to such Participant by virtue of lapse or waiver of restrictions with respect to Restricted Stock or Restricted Stock Units, or the satisfaction of any requirements or goals with respect to Performance Shares, Performance Stock Units, or Performance Units. If any such deferral election is required or permitted, the Committee shall, in its sole discretion, establish rules and procedures for such deferrals, and the Committee may provide for such arrangements, including conversion to another form of Award that is available under the Plan and has equivalent value, as it deems necessary in order to permit the deferral of taxes in connection with such deferral by the Participant. Any deferrals required or permitted by the Committee of Awards shall be made in compliance with Section 409A of the Code.

## ARTICLE 14.   TAX WITHHOLDING

14.1   *Tax Withholding*. The Company shall have the power and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy federal, state, and local taxes, domestic or foreign, required by law or regulation to be withheld with respect to any taxable event arising as a result of this Plan or any Award. The Company shall not be required to issue Shares or to recognize the disposition of such Shares until such obligations are satisfied.

14.2   *Share Withholding*. Except as otherwise determined by the Committee or provided in an Award Agreement, with respect to tax withholding required upon the exercise of Options or SARs, upon the lapse of restrictions on Restricted Stock or Restricted Stock Units, upon the achievement of performance goals related to Performance Shares or Performance Units, or upon any other taxable event arising as a result of or in connection with an Award granted hereunder that is settled in Shares, unless other arrangements are made with the consent of the Committee, Participants shall satisfy the withholding requirement by: (i) having the Company withhold Shares having a Fair Market Value on the date the tax is to be determined equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee), or (ii) if approved by the Committee, authorizing the sale of Shares equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee). All such withholding arrangements shall be subject to any restrictions or limitations that the Committee, in its sole discretion, deems appropriate.

17

## ARTICLE 15.   AMENDMENT AND TERMINATION

15.1     *Amendment of Plan*. The Board may at any time terminate or from time to time amend the Plan in whole or in part, but, unless required by applicable law or applicable listing standard, no such action shall materially and adversely affect any rights or obligations with respect to any Awards previously granted under the Plan, unless the affected Participants consent in writing. The Company will also obtain the approval of the shareholders before amending the Plan to the extent required by Section 422 of the Code or the rules of any securities exchange or quotation or trading system on which Shares are traded or other applicable law.

15.2     *Amendment of Award; Repricing*. The Committee may, at any time, amend outstanding Awards in a manner not inconsistent with the terms of the Plan; provided, however, that if such amendment is adverse to the Participant, as determined by the Committee, the amendment shall not be effective unless and until the Participant consents, in writing, to such amendment, except as may be required by applicable law, as provided in Section 15.4 and Section 15.5, or as provided in the Award Agreement. To the extent not inconsistent with the terms of the Plan and the foregoing, the Committee may, at any time, amend an outstanding Award Agreement in a manner that is not unfavorable to the Participant without the consent of such Participant. Notwithstanding the above provision, the Committee shall not permit or effect a repricing, except in accordance with Section 4.4 or to the extent the repricing is approved by the shareholders of the Company; for this purpose, a repricing is an amendment to the terms of an outstanding Option or SAR that would reduce the Option Price or SAR Price of that Option or SAR, respectively, or a cancellation, exchange, substitution, buyout or surrender of an outstanding Option or SAR in exchange for cash, another Award or Option or SAR with an Option Price or SAR Price that is less than the Option Price or SAR Price of the original Option or SAR, respectively (or as further defined within US generally accepted accounting practices or any applicable stock exchange rule). Notwithstanding anything else in this Section 15.2, (i) no amendment of an Award Agreement shall cause an award to be subject to Section 409A of the Code, unless the Award Agreement, as amended, complies with the requirements of Section 409A of the Code, and (ii) no amendment of an Award Agreement that is subject to Section 409A of the Code shall cause such an Award Agreement (or the underlying Award) to violate Section 409A of the Code.

15.3     *Termination of Plan*. No Awards shall be granted under the Plan after the tenth anniversary of the Effective Date. However, Awards granted under the Plan on or prior to the tenth anniversary of the Effective Date shall remain outstanding beyond that date in accordance with the terms and conditions of the Plan and the Award Agreements corresponding to such Awards.

15.4     *Cancellation of Awards / Clawback*. The Committee may, in its discretion, specify in an Award Agreement or a policy that will be deemed incorporated into an Award Agreement by reference (regardless of whether such policy is established before or after the date of such Award Agreement), that a Participant's rights, payments, and benefits with respect to an Award shall be subject to reduction, cancellation, forfeiture, rescission or recoupment upon the occurrence of certain specified events, in addition to any otherwise applicable vesting, restrictions or performance conditions of an Award. Such events may include, but shall not be limited to, Termination of Service with or without Cause, breach of noncompetition, confidentiality, or other restrictive covenants that may apply to the Participant, or restatement of the Company's financial statements to reflect adverse results from those previously released financial statements, as a consequence of errors, omissions, fraud, or misconduct. In addition, all Awards under the Plan (and payments and Shares in settlement of Awards as well as any proceeds received from the disposition of such property) are subject to any clawback policy implemented, including any clawback policy adopted to comply with the requirements of applicable law, including Section 954 of the Dodd Frank Wall Street Reform and Consumer Protection Act and any rules or regulations promulgated thereunder, Rule 10D 1 under the Act, and the NYSE's listing standards (as applicable).

15.5     *Assumption or Acceleration of Awards*. In the event of a  Change in Control or any other corporate transaction to which the Committee deems this provision applicable (a "***Corporate Event***"), each Award outstanding at the time of the Corporate Event shall be assumed or an equivalent Award shall be substituted by the successor corporation or a parent or subsidiary of such successor corporation (and adjusted as appropriate), unless such successor corporation does not agree to assume the Award or to substitute an equivalent award (including a cash-based award), in which case the time- or service-based vesting of each Award shall fully accelerate and any performance- or milestone-based vesting condition shall be treated in accordance with the applicable Award Agreement. The Committee shall notify the Participant of any accelerated vesting provided in accordance with this Section 15.5 or

18

pursuant to an applicable Award Agreement and, subject to rescission if the Corporate Event is not successfully completed within a certain period, the Option or other Award shall be exercisable as to the vested Shares subject thereto (after giving effect to any such accelerated vesting) for a period of fifteen (15) days from the date of such notice (or such other period as provided by the Committee), and, to the extent not exercised, the Option or other Award will terminate upon the expiration of such period. Alternatively, the Committee may make provision for a cash payment in settlement of any or all vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement) or the cash, securities or property deliverable to the holder of any or all vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement), based upon, to the extent relevant under the circumstances, the distribution or consideration payable to holders of Shares upon or in respect of the Corporate Event. The Committee may adopt such valuation methodologies for outstanding Awards as it deems reasonable in the event of a cash settlement and, in the case of Options, SARs or similar rights, but without limitation on other methodologies, may base such settlement solely upon the excess (if any) of the per share amount payable upon or in respect of such event over the Option Price or SAR Price, as applicable, of the Award and may cancel each Option or SAR with an Option Price or SAR Price greater than the per share amount payable upon or in respect of such event without any payment to the person holding such Option or SAR. Any actions taken under this Section 15.5 shall be valid with respect to a 409A Award only to the extent that such action complies with Section 409A of the Code.

**ARTICLE 16.   MISCELLANEOUS PROVISIONS**

16.1    *Restrictions on Shares*. All certificates for Shares delivered under the Plan shall be subject to such stop-transfer orders and other restrictions as the Committee may deem advisable under the rules and regulations of the Securities and Exchange Commission, any securities exchange or quotation or trading system on which Shares are traded and any applicable federal, state, local or foreign laws, and the Committee may cause a legend or legends to be placed on any such certificates to make appropriate reference to such restrictions. In making such determination, the Committee may rely upon an opinion of counsel for the Company. Notwithstanding any other provision of the Plan, the Company shall have no liability to deliver any Shares under the Plan or make any other distribution of the benefits under the Plan unless such delivery or distribution would comply with all applicable laws (including, without limitation, the requirements of the Securities Act of 1933), and the applicable requirements of any securities exchange or quotation or trading system on which Shares are traded.

16.2    *Rights of a Shareholder*. Except as otherwise provided in Article 7 or in the applicable Restricted Stock Award Agreement, each Participant who receives an Award of Restricted Stock shall have all of the rights of a shareholder with respect to such Shares, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and receive dividends and other distributions. No Participant awarded an Option or Stock Appreciation Right shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares. Except as provided otherwise in the Plan or in an Award Agreement, no Participant awarded a Restricted Stock Unit, Performance Share, Performance Stock Unit, or Performance Unit shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares.

16.3    *No Implied Rights*. Nothing in the Plan or any Award granted under the Plan shall confer upon any Participant any right to continue in the service of the Employer, or to serve as a member of the Board, or interfere in any way with the right of the Employer to terminate his or her employment or other service relationship at any time. Except to the extent approved by the Board, no Award granted under the Plan shall be deemed salary or compensation for the purpose of computing benefits under any employee benefit plan, severance program, or other arrangement of the Employer for the benefit of its employees. The Plan is intended to be an "unfunded" plan for incentive and deferred compensation. No Participant shall have any claim to an Award until it is actually granted under the Plan. To the extent that any person acquires a right to receive payments from the Company under the Plan, such right shall, except as otherwise provided by the Committee, be no greater than the right of an unfunded and unsecured general creditor of the Company.

16.4    *Compliance with Laws*. The Plan and the grant of Awards shall be subject to all applicable federal, state local and foreign laws, rules, and regulations and to such approvals by any government or regulatory agency as may be required. Notwithstanding any other provision of the Plan, the Plan and any Award granted or awarded to an

Insider shall be subject to any additional limitations set forth in any applicable exemptive rule under Section 16 of the Act (including Rule 16b-3) that are requirements for the application of such exemptive rule. To the extent permitted by applicable law, the Plan and Awards granted or awarded hereunder shall be deemed amended to the extent necessary to conform to such applicable exemptive rule. Any provision herein relating to compliance with Rule 16b-3 under the Act shall not be applicable with respect to participation in the Plan by Participants who are not Insiders. If the Committee determines that the listing, registration or qualification upon any securities exchange or under any law of shares subject to any Award is necessary or desirable as a condition of, or in connection with, the granting of same or the issue or purchase of Shares thereunder, no such Award may be exercised in whole or in part (as applicable), no such Award may be paid out (as applicable) and no shares may be issued pursuant to such Award (as applicable) unless such listing, registration or qualification is effected free of any conditions not acceptable to the Committee.

16.5    *Section 409A.*

(a)     *General.* The Company intends that all Awards be structured to comply with, or be exempt from, Section 409A of the Code, such that no adverse tax consequences, interest, or penalties under Section 409A of the Code apply. Notwithstanding anything in the Plan or any Award Agreement to the contrary, the Committee may, without a Participant's consent, amend this Plan or Awards, adopt policies and procedures, or take any other actions (including amendments, policies, procedures and retroactive actions) as are necessary or appropriate to preserve the intended tax treatment of Awards, including any such actions intended to (i) exempt this Plan or any Award from Section 409A of the Code, or (ii) comply with Section 409A of the Code, including regulations, guidance, compliance programs and other interpretative authority that may be issued after an Award's grant date. The Company makes no representations or warranties as to an Award's tax treatment under Section 409A of the Code or otherwise. The Company will have no obligation under this Section 16.5 or otherwise to avoid the taxes, penalties or interest under Section 409A of the Code with respect to any Award and will have no liability to any Participant or any other person if any Award, compensation or other benefits under the Plan are determined to constitute noncompliant "nonqualified deferred compensation" subject to taxes, penalties or interest under Section 409A of the Code.

(b)     *Separation from Service.* Any payment or settlement of a 409A Award upon a Participant's Termination of Service will, to the extent necessary to avoid taxes under Section 409A of the Code, be made only upon the Participant's "separation from service" (within the meaning of Section 409A of the Code), whether such "separation from service" occurs upon or after the Participant's Termination of Service. For purposes of this Plan or any Award Agreement relating to any such payments or benefits, references to a "termination," "termination of employment" or like terms means a "separation from service."

(c)     *Payments to Specified Employees.* Notwithstanding any contrary provision in the Plan or any Award Agreement, any payment(s) of "nonqualified deferred compensation" required to be made under a 409A Award to a "specified employee" (as defined under Section 409A of the Code and as the Committee determines) due to such person's "separation from service" will, to the extent necessary to avoid taxes under Section 409A(a)(2)(B)(i) of the Code, be delayed for the six-month period immediately following such "separation from service" (or, if earlier, until the specified employee's death) and will instead be paid (as set forth in the Award Agreement) on the day immediately following such six-month period or as soon as administratively practicable thereafter (without interest). Any payments of "nonqualified deferred compensation" under such 409A Award payable more than six months following the Participant's "separation from service" will be paid at the time or times the payments are otherwise scheduled to be made.

(d)     *Separate Payments.* If an Award includes a "series of installment payments" within the meaning of Section 409A of the Code, the Participant's right to the series of installment payments will be treated as a right to a series of separate payments and not as a right to a single payment and, if an Award includes "dividend equivalents" within the meaning of Section 409A of the Code, the Participant's right to receive the dividend equivalents will be treated separately from the right to other amounts under the Award.

(e)     *Change in Control.* Any payment due under a 409A Award upon a Change in Control of the Company will be paid only if such Change in Control constitutes a "change in ownership" or "change in effective control" within the meaning of Section 409A of the Code, and in the event that such Change in Control does not constitute a "change in the ownership" or "change in the effective control" within the meaning of Section 409A of the

Code, such 409A Award for which payment is due upon a Change in Control of the Company will vest upon the Change in Control and any payment will be delayed until the first compliant date under Section 409A of the Code.

16.6    *Employees Based Outside of the United States.* Notwithstanding any provision of this Plan to the contrary, in order to comply with the laws in other countries in which the Company or any Employer (or the Affiliates and/or its subsidiaries of an Employer) operate or have employees or Directors, the Committee, in its sole discretion, shall, in addition to the administrative authority set forth in Section 3.3 of this Plan, have the power and authority to: (a) determine which Affiliates and subsidiaries, if any, may be covered by this Plan in accordance with all applicable laws; (b) determine which employees and/or Directors of an Employer outside the United States are eligible to participate in this Plan; (c) modify the terms and conditions of any Award granted to employees and/or Directors outside the United States, if any, to comply with applicable foreign laws; (d) establish sub-plans and modify exercise procedures and other terms and procedures, to the extent such actions may be necessary or advisable; and (e) take any action, before or after an Award is made, that it deems advisable to obtain approval or comply with any necessary local government regulatory exemptions or approvals. Notwithstanding the above, the Committee may not take any actions hereunder, and no Awards shall be granted, that would violate applicable law. For purposes of clarity, the terms and conditions contained herein which are subject to variation in a non-U.S. jurisdiction shall be reflected in a written addendum to the Plan and/or Award Agreement for such non-U.S. jurisdiction.

16.7    *Data Privacy.* As a condition for receiving any Award, each Participant explicitly and unambiguously consents to the collection, use and transfer, in electronic or other form, of personal data as described in this Section 16.7 by and among the Company and its subsidiaries and affiliates exclusively for implementing, administering and managing the Participant's participation in the Plan. The Company and its subsidiaries and affiliates may hold certain personal information about a Participant, including the Participant's name, address and telephone number; birthdate; social security, insurance number or other identification number; salary; nationality; job title(s); any Shares held in the Company or its subsidiaries and affiliates; and Award details, to implement, manage and administer the Plan and Awards (the "***Data***"). The Company and its subsidiaries and affiliates may transfer the Data amongst themselves as necessary to implement, administer and manage a Participant's participation in the Plan, and the Company and its subsidiaries and affiliates may transfer the Data to third parties assisting the Company with Plan implementation, administration and management. These recipients may be located in the Participant's country, or elsewhere, and the Participant's country may have different data privacy laws and protections than the recipients' country. By accepting an Award, each Participant authorizes such recipients to receive, possess, use, retain and transfer the Data, in electronic or other form, to implement, administer and manage the Participant's participation in the Plan, including any required Data transfer to a broker or other third party with whom the Company or the Participant may elect to deposit any Shares. The Data related to a Participant will be held only as long as necessary to implement, administer, and manage the Participant's participation in the Plan. A Participant may, at any time, view the Data that the Company holds regarding such Participant, request additional information about the storage and processing of the Data regarding such Participant, recommend any necessary corrections to the Data regarding the Participant or refuse or withdraw the consents in this Section 16.7 in writing, without cost, by contacting the local human resources representative. The Company may cancel Participant's ability to participate in the Plan and, in the Committee's sole discretion, the Participant may forfeit any outstanding Awards if the Participant refuses or withdraws the consents in this Section 16.7. For more information on the consequences of refusing or withdrawing consent, Participants may contact their local human resources representative.

16.8    *Whistleblower Protection.* Nothing contained in this Plan or any Award Agreement: (i) shall be deemed to prohibit any Participant from responding to a subpoena or order of a court or other governmental authority to testify or give evidence or engaging in conduct otherwise protected by the Sarbanes-Oxley Act; (ii) shall be deemed to prohibit any Participant from providing truthful information in good faith to any federal, state, or local governmental body, agency, or official investigating an alleged violation of any antidiscrimination or other employment-related law or otherwise gathering information or evidence pursuant to any official investigation, hearing, trial, or proceeding; (iii) is intended in any way to intimidate, coerce, deter, persuade, or compensate any Participant with respect to providing, withholding, or restricting any communication whatsoever to the extent prohibited under 18 U.S.C. §§ 201, 1503, or 1512 or under any similar or related provision of state or federal law; and (iv) is intended to require any Participant to provide notice to the Company, any Affiliate or any subsidiary or an attorney of any such entity before reporting any possible violations of federal law or regulation to any governmental agency or entity ("***Whistleblower Disclosures***") or to provide notice to the Company, any Affiliate, or any subsidiary or any attorney of any such entity after any Participant has made any such Whistleblower Disclosures.

16.9    *Transfer of Employee*. The transfer of an employee of the Company or any Employer from one Employer (or Affiliate or subsidiary of an Employer) to another Employer (or Affiliate or subsidiary of the other Employer) shall not be considered a termination of employment for Plan purposes unless required by applicable law; nor shall it be considered a termination of employment if an employee is placed on military, disability or sick leave or such other leave of absence which is considered by the Committee as continuing intact the employment relationship. If an employee's employment or other service relationship is with an Affiliate or subsidiary of an Employer and that entity ceases to be an Affiliate or subsidiary of the Employer, a termination of employment shall be deemed to have occurred when the entity ceases to be an Affiliate or subsidiary of such Employer unless the employee transfers the Employee's employment or other service relationship to the Employer or its remaining Affiliates or subsidiaries.

16.10    *Successors*. The terms of the Plan shall be binding upon the Company, and its successors and assigns.

16.11    *Tax Elections*. Each Participant shall give the Committee prompt written notice of any election made by such Participant under Section 83(b) of the Code or any similar provision thereof. Notwithstanding the preceding sentence, the Committee may condition any award on the Participant not making an election under Section 83(b) of the Code.

16.12    *No Fractional Shares*. No fractional Shares shall be issued or delivered pursuant to the Plan or any Award; in the discretion of the Committee, the Company shall forfeit the value of fractional shares or make cash payments in lieu of fractional Shares.

16.13    *Delivery of Title*. The Company shall have no obligation to issue or deliver evidence of title for Shares under the Plan prior to:

(a)    Obtaining any approvals from governmental agencies that the Company determines are necessary or advisable; and

(b)    Completing any registration or other qualification of the Shares under any applicable national or foreign law or ruling of any governmental body that the Company determines are necessary or advisable.

16.14    *Inability to Obtain Authority*. The inability of the Company (after reasonable efforts) to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and/or sale of any Awards or Shares hereunder, shall relieve the Company of any liability in respect of the failure to issue and/or sell such Awards or Shares as to which such requisite authority shall not have been obtained.

16.15    *Uncertificated Shares*. To the extent that the Plan provides for issuance of certificates to reflect the transfer of Shares, the transfer of such Shares may be effected on a noncertificated basis, to the extent not prohibited by applicable law or the rules of any stock exchange.

16.16    *Legal Construction*.

(a)    *Severability*. If any provision of this Plan or an Award Agreement is or becomes or is deemed invalid, illegal or unenforceable in any jurisdiction, or would result in the Plan or any Award Agreement not complying with any law deemed applicable by the Committee, such provision shall be construed or deemed amended to conform to applicable laws or, if it cannot be construed or deemed amended without, in the determination of the Committee, materially altering the intent of the Plan or the Award Agreement, it shall be stricken and the remainder of the Plan or the Award Agreement shall remain in full force and effect.

(b)    *Gender and Number*. Where the context permits, words in any gender shall include the other gender, words in the singular shall include the plural and words in the plural shall include the singular.

(c)    *Governing Law*. To the extent not preempted by federal law, the Plan and all Award Agreements hereunder, shall be construed in accordance with and governed by the substantive laws of the State of

North Carolina, excluding any conflicts or choice or law rule or principle that might otherwise refer construction or interpretation of the Plan or the Award Agreement (as applicable) to the substantive law of any other jurisdiction. Unless otherwise provided in the applicable Award Agreement, the recipient of an Award is deemed to submit to the exclusive jurisdiction and venue of the Federal and state courts of North Carolina to resolve any and all issues that may arise out of or relate to the Plan or such Award Agreement.

       (d)    *Governing Documents*. If any contradiction occurs between the Plan and any Award Agreement or other written agreement between a Participant and the Company (or any subsidiary), the Plan will govern, unless such Award Agreement or other written agreement was approved by the Committee and expressly provides that a specific provision of the Plan will not apply.

## **EXHIBIT M-2**

### **Redline of Long-Term Incentive Plan**

Attached hereto is a redline of the Long-Term Incentive Plan marked against the version filed as Exhibit M-1 to the Fourth Plan Supplement [Docket No. 267].



**2025 LONG-TERM INCENTIVE COMPENSATION PLAN**

## ARTICLE 1.   GENERAL PROVISIONS

*1.1      Establishment of Plan*. Wolfspeed, Inc., a North Carolina corporation (the "***Company***"), hereby establishes an incentive compensation plan to be known as the "Wolfspeed, Inc. 2025 Long-Term Incentive Compensation Plan" (the "***Plan***"), as set forth in this document.

*1.2      Purpose of Plan*. The objectives of the Plan are to (i) attract and retain employees and directors of the Company and its affiliates by providing competitive compensation opportunities; (ii) provide incentives to those individuals who contribute significantly to the long-term performance and growth of the Company and its affiliates; and (iii) align the long-term financial interests of employees and directors with those of the Company's shareholders.

*1.3      Types of Awards*. Awards under the Plan may be made to Eligible Participants who are employees in the form of (i) Incentive Stock Options, (ii) Nonqualified Stock Options, (iii) Stock Appreciation Rights, (iv) Restricted Stock, (v) Restricted Stock Units, (vi) Performance Shares, (vii) Performance Stock Units, (viii) Performance Units, (ix) Other Awards, or any combination of these.

*1.4      Effective Date*. The Plan was adopted by the Board of Directors of the Company on [_____], 2025 contingent on the approval of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). The Plan will become effective on the date the plan of reorganization of the Company filed with the Bankruptcy Court in connection with the Company's voluntary Chapter 11 case becomes effective in accordance with its terms (the "***Effective Date***").

## ARTICLE 2.   DEFINITIONS

Except where the context otherwise indicates, the following definitions apply:

2.1      "***409A Award***" means each Award that is subject to, and not exempt from, Section 409A of the Code.

2.2      "***Act***" means the Securities Exchange Act of 1934, as now in effect or as hereafter amended from time to time or any successor thereto. All citations to sections of the Act or rules thereunder are to such sections or rules as they may from time to time be amended or renumbered.

2.3      "***Affiliate***" means any corporation or other entity (including, but not limited to, a partnership or a limited liability company) that is affiliated with the Company through stock or equity ownership or otherwise and is designated as an Affiliate for purposes of this Plan by the Committee unless the context demands otherwise, or the term is otherwise expressly defined. For purposes of granting stock options or stock appreciation rights, an entity may not be considered an Affiliate if it results in noncompliance with Section 409A of the Code.

2.4      "***Award***" means an award granted to a Participant under the Plan that is an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Share, Performance Stock Unit, Performance Unit, Other Award, or combination of thereof.

2.5      "***Award Agreement***" or "***Agreement***" means the written or electronic agreement, notice, contract or other instrument or document evidencing an Award granted under the Plan. As determined by the Committee,

each Award Agreement shall consist of either (i) a written agreement in a form approved by the Committee and executed on behalf of the Company by an officer duly authorized to act on its behalf, or (ii) an electronic notice of Award grant in a form approved by the Committee and recorded by the Company (or its designee) in an electronic recordkeeping system used for the purpose of tracking Award grants under the Plan, and if required by the Committee, executed or otherwise electronically accepted by the recipient of the Award in such form and manner as the Committee may require. The Committee may authorize any officer of the Company (other than the particular Award recipient) to execute any or all Award Agreements on behalf the Company.

2.6     "**_Award Pool_**" shall have the meaning set forth in Section 4.1.

2.7     "**_Board_**" or "**_Board of Directors_**" means the Board of Directors of the Company.

2.8     "**_Cause_**" means, unless provided otherwise in the Award Agreement: (i) "Cause" as defined in an Individual Agreement to which a Participant is a party that is then in effect, or (ii) if there is no such Individual Agreement or if it does not define Cause, termination of the Participant's employment by the Company or any other Employer because of any conduct amounting to fraud, dishonesty, willful misconduct, negligence, activities materially harmful to the reputation of the Company or an Employer, insubordination, commission of or indictment for a felony or a crime involving moral turpitude, all as determined by the Committee in good faith, including but not limited to (as determined by the Committee in good faith), the (A) Participant's breach of any agreement between the Participant and an Employer (including but not limited to any agreement regarding confidential information, noncompetition, nonsolicitation or similar covenants), (B) Participant's intentional or negligent failure to perform a reasonably requested directive or assignment or to perform his duties to an Employer substantially in accordance with the Employer's operating and personnel policies and procedures generally applicable to all of its employees, (C) Participant's misappropriation or attempted misappropriation of any of the Employer's funds or property (including but not limited to intellectual property), (D) Participant's violation of the Company's or an Employer's written policies or codes of conduct, including written policies related to discrimination, harassment, retaliation, performance of illegal or unethical activities, or ethical misconduct, (E) Participant's failure to substantially perform the Participant's material duties to the Company or an Employer (other than as a result of physical or mental illness or injury) or to comply with a lawful directive or order of the Board, in either case that has continued after the Company or Employer has provided written notice of such failure and the Participant has not cured such failure (if curable) promptly after the date of such written notice, or (F) Participant's breach of fiduciary duty with respect to the Company or an Employer.

2.9     "**_Change in Control_**" or "**_Change of Control_**" will be deemed to have occurred upon the happening of any of the following events: (a) any "Person" as defined in Section 3(a)(9) of the Act, including a "group" (as that term is used in Sections 13(d)(3) and 14(d)(2) of the Act), but excluding the Company or any of its Affiliates and any employee benefit plan sponsored or maintained by any Affiliate of the Company (including any trustee of such plan acting as trustee), who together with its "affiliates" and "associates" (as those terms are defined in Rule 12b-2 under the Act) becomes the "Beneficial Owner" (within the meaning of Rule 13d-3 under the Act) of more than 50% of the then-outstanding Shares or the combined voting power of the then-outstanding securities of the Company entitled to vote generally in the election of its directors. For purposes of calculating the number of shares or voting power held by such Person and its affiliates and associates under this clause (a), there shall be excluded any securities acquired by such Person or its affiliates or associates directly from any Affiliate of the Company; (b) a sale or other disposition of all or substantially all of the Company's assets is consummated, other than such a sale or disposition that would not have constituted a Change of Control under clause (d) below had it been structured as a merger or consolidation; (c) the shareholders of the Company approve a definitive agreement or plan to liquidate the Company; or (d) a merger or consolidation of the Company with and into another entity is consummated, unless immediately following such transaction (i) more than 50% of the members of the governing body of the surviving entity were Directors at the time of execution of the initial agreement providing for such transaction, (ii) no "Person" (as defined in clause (a) above), together with its "affiliates" and "associates" (as defined in clause (a) above), is the "Beneficial Owner" (as defined in clause (a) above), directly or indirectly, of more than 50% of the then-outstanding equity interests of the surviving entity or the combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body, and (iii) more than 50% of the then-outstanding equity interests of the surviving entity and the combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body is "Beneficially Owned", directly or indirectly, by all or substantially

all of the individuals and entities who were the "Beneficial Owners" of the Shares immediately prior to such transaction in substantially the same proportions as their ownership immediately prior to such transaction;  To the extent any Award (or any portion thereof) pursuant to this Plan that is subject to Section 409A of the Code is to be made because of the occurrence of a Change in Control, then payment shall not be made unless such Change in Control also constitutes a "change in ownership," "change in effective control," or "change in ownership of a substantial portion of the Company's assets" within the meaning of Section 409A of the Code. The Committee shall have full and final authority, which shall be exercised in its sole discretion, to determine conclusively whether a Change in Control has occurred pursuant to the above definition, the date of such Change in Control and any incidental matters relating thereto; provided that any exercise of authority in conjunction with a determination of whether a Change in Control is a "change in control event" as defined in Treasury Regulation Section 1.409A-3(i)(5) shall be consistent with such regulation.

2.10    "*Code*" means the Internal Revenue Code of 1986 and all regulations, guidance, compliance programs and other interpretative authority issued thereunder, in each case, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

2.11    "*Committee*" means the Compensation Committee of the Board or such other committee as may be appointed by the Board from time to time to administer this Plan pursuant to Article 3. All of the members of the Committee shall be "Independent Directors" within the meaning of the NYSE's listing standards (as applicable). If the Committee does not exist or cannot function for any reason, the Board may take any action under the Plan that would otherwise be the responsibility of the Committee. If any member of the Committee does not qualify as a "Non Employee Director" within the meaning of Rule 16b 3 under the Act, the Board shall appoint a subcommittee of the Committee, consisting of at least two Directors who are not also employed by the Company or any other Employer, to grant Awards to Insiders. References to the Committee in the Plan shall include and, as appropriate, apply to any such subcommittee.

2.12    "*Company*" means Wolfspeed, Inc., a North Carolina corporation, and its successors and assigns.

2.13    "*Corporate Event*" shall have the meaning set forth in Section 15.5.

2.14    "*Director*" means any individual who is a member of the Board.

2.15    "*Disability*" means, unless provided otherwise in the Award Agreement, an individual's permanent and total disability as defined in Section 22(e)(3) of the Code whereby said individual is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the preceding provisions of this Section 2.15 or anything in any Award Agreement to the contrary, to the extent any provision of this Plan or an Award Agreement would cause a payment of a 409A Award to be made because of the Participant's Disability, then there shall not be a Disability that triggers payment until the date (if any) that the Participant is disabled within the meaning of Section 409A(a)(2)(C) of the Code. Any payment that would have been made except for the application of the preceding sentence shall be made in accordance with the payment schedule that would have applied in the absence of a Disability (and other Participant rights that are tied to a Disability, such as vesting, shall not be affected by the prior sentence).

2.16    "*DRO*" means a "domestic relations order" as defined by the Code or Title I of the Employee Retirement Income Security Act of 1974, as amended, or the rules thereunder.

2.17    "*Effective Date*" shall have the meaning set forth in Section 1.4.

2.18    "*Eligible Participant*" means any employee of any Employer and any Outside Director, subject to such limitations as may be provided by the Code, the Act or the Committee, as shall be determined by the Committee.

2.19    "*Employer*" means the Company and any entity during any period that it is a "parent corporation" or a "subsidiary corporation" with respect to the Company within the meaning of Sections 424(e) and 424(f) of the

3

Code. With respect to all purposes of the Plan, including but not limited to, the establishment, amendment, termination, operation and administration of the Plan, the Company shall be authorized to act on behalf of all other entities included within the definition of "Employer."

2.20    "*Fair Market Value*" or "*FMV*" means the fair market value of a Share, as determined in good faith by the Committee; provided, however, that unless otherwise directed by the Committee:

(a)    if the Shares are listed on the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session;

(b)    if the Shares are listed on a national or regional securities exchange other than the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session; or

(c)    if neither (a) nor (b) applies on the given date, the fair market value of a Share on that date shall be determined in good faith by the Committee, taking into account the requirements of Section 409A of the Code and any other applicable laws, rules, or regulations.

For purposes of subsection (a) above, if the Shares are traded on more than one national securities exchange, then the following exchange shall be referenced to determine Fair Market Value: (i) the NYSE if the Shares are then traded on such exchange and (ii) otherwise such other exchange on which Shares are traded as may be designated by the Committee.

Notwithstanding the foregoing but subject to the next paragraph, if the Committee determines in its discretion that an alternative definition of Fair Market Value should be used in connection with the grant, exercise, vesting, settlement or payout of any Award, it may specify such alternative definition in the Award Agreement. Such alternative definition may include a price that is based on the opening, actual, high, low, or average selling prices of a Share on the NYSE or other securities exchange on the given date, the trading date preceding the given date, the trading date next succeeding the given date, or an average of trading days.

Notwithstanding the foregoing, (i) in the case of an Option or SAR, Fair Market Value shall be determined in accordance with a definition of fair market value that permits the Award to be exempt from Section 409A of the Code; and (ii) in the case of an Option that is intended to qualify as an ISO under Section 422 of the Code, Fair Market Value shall be determined by the Committee in accordance with the requirements of Section 422 of the Code, as applicable.

2.21    "*Good Reason*" means the occurrence of any of the following, without the Participant's consent and not due to Cause: (i) a material reduction in the Participant's annual base salary or target annual bonus or (ii) the Company or an Employer requiring the Participant to relocate the Participant's principal place of business outside of a thirty-five (35) mile radius from the Participant's current principal place of employment; provided, however, that the Participant shall only have Good Reason if the Participant provides notice to the Company or Employer of the existence of the event or circumstances constituting Good Reason specified in either of the preceding clauses within ninety (90) days of the initial existence of such event or circumstances and if such event or circumstances are not cured within thirty (30) days after the Participant gives such written notice. If the Participant initiates a termination of employment for Good Reason, the actual date on which employment is terminated must occur within thirty (30) days after expiration of the cure period. The Participant's failure to timely give notice of the occurrence of a specific event that would otherwise constitute Good Reason shall not constitute a waiver of the Participant's right to give notice of any new subsequent event that would constitute Good Reason that occurs after such prior event (regardless of whether the new subsequent event is of the same or different nature as the preceding event). The Participant's actions approving in writing (or by such other means as is reliable and verifiable) any change, reduction, requirement

or occurrence (that otherwise may be considered Good Reason) in the Participant's role as with the Company shall be considered consent for the purposes of this Good Reason definition.

2.22    "***Greater Than 10% Stockholder***" means a Participant who owns (within the meaning of Section 424(d) of the Code) stock of the Company possessing more than ten percent (10%) of the total combined voting power of all classes of stock of the Company or any "parent" or "subsidiary" (within the meaning of Section 424(e) or (f) of the Code, respectively), determined at the time an Option is granted.

2.23    "***Incentive Stock Option***" or "***ISO***" means an Option granted to an Eligible Participant under Article 5 which is designated as an Incentive Stock Option and intended to meet the requirements of Section 422 of the Code.

2.24    "***Individual Agreement***" means a written agreement between a Participant and the Company or any other Employer relating to employment by the Company or other Employer or to service as an Outside Director of the Company (other than an Award Agreement).

2.25    "***Insider***" shall mean an individual who is, on the relevant date, subject to the reporting requirements of Section 16(a) of the Act.

2.26    "***Nonqualified Stock Option***" or "***NQSO***" means an Option granted to an Eligible Participant under Article 5 which is not intended to meet the requirements of Section 422 of the Code or that otherwise does not meet such requirements.

2.27    "***NYSE***" means the New York Stock Exchange or its successor.

2.28    "***Option***" means an Incentive Stock Option or a Nonqualified Stock Option. An Option shall be designated in the applicable Award Agreement as either an Incentive Stock Option or a Nonqualified Stock Option, and in the absence of such designation, shall be treated as a Nonqualified Stock Option. Furthermore, any Option that is initially intended to be and is designated as an Incentive Stock Option but does not meet the requirements of Section 422 of the Code for any reason shall be treated as a Nonqualified Stock Option with respect to all or such portion that does not qualify as an Incentive Stock Option per Article 5.

2.29    "***Option Price***" means the price at which a Participant may purchase a Share pursuant to an Option.

2.30    "***Other Award***" means any form of equity-based or equity-related award, other than an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Stock or Performance Unit, that is granted pursuant to Article 9.

2.31    "***Outside Director***" means a member of the Board who is not an employee of the Company or any other Employer.

2.32    "***Participant***" means an Eligible Participant to whom an Award has been granted.

2.33    "***Performance Period***" shall have the meaning set forth in Section 8.2.

2.34    "***Performance Share***" means an Award under Article 8 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.35    "***Performance Unit***" means an Award under Article 8 that has a value set by the Committee (or that is determined by reference to a valuation formula specified by the Committee), which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or

Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.36    "**Plan**" means this Wolfspeed, Inc. 2025 Long-Term Incentive Compensation Plan set forth in this document and as it may be amended from time to time.

2.37    "**Reimbursement Expenses**" shall have the meaning set forth in Section 3.6.

2.38    "**Restricted Stock**" means an Award of Shares under Article 7, which Shares are issued with such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Shares, to sell, transfer, pledge or assign such Shares, to vote such Shares, and/or to receive any cash dividends with respect to such Shares, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.39    "**Restricted Stock Unit**" means an Award under Article 7 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, and that has such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Awards, to sell, transfer, pledge or assign such Awards, and/or to receive any cash dividend equivalents with respect to such Awards, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.40    "**Restriction Period**" means the period during which Restricted Stock or Restricted Stock Units are subject to one or more restrictions that will lapse based on the passage of time, the achievement of performance goals, or the occurrence of another event or events, as determined by the Committee and specified in the applicable Award Agreement.

2.41    "**Restructuring Support Agreement**" means that certain Restructuring Support Agreement by and among the Company, Wolfspeed Texas LLC and the Consenting Creditors (as defined therein), dated June 22, 2025, including all exhibits, annexes and schedules attached thereto (as may be amended, supplemented or modified prior to the Effective Date). All references in the Plan to the Restructuring Support Agreement and the terms thereof shall be to the Restructuring Support Agreement as in effect immediately prior to any termination thereof and shall apply irrespective of any such termination.

2.42    "**SAR Price**" means the amount that is subtracted from the Fair Market Value of a Share at the time of exercise of a SAR to determine the amount payable, if any, upon exercise of the SAR.

2.43    "**Share**" means one share of common stock, par value $[____] per share, of the Company, as such Share may be adjusted pursuant to the provisions of Section 4.4.

2.44    "**Stock Appreciation Right**" or "**SAR**" means an Award granted under Article 6 which provides for an amount payable in Shares and/or cash, as determined by the Committee, equal to the excess of the Fair Market Value of a Share on the day the Stock Appreciation Right is exercised over the SAR Price.

2.45    "**Tandem SAR**" shall have the meaning set forth in Section 6.1.

2.46    "**Termination of Service**" means, unless provided otherwise in the Award Agreement, the discontinuance of employment of a Participant with the Employer for any reason, whether voluntary or involuntary, or in the case of an Outside Director, the discontinuance of services to the Company by an Outside Director, for any reason, whether voluntary or involuntary. Notwithstanding the foregoing, if a Participant becomes a consultant or independent contractor providing services to an Employer immediately upon terminating service as an employee, such seamless continuation of service as a consultant or contractor shall constitute a continuation of service with respect to Awards granted to the Participant while he or she served as an employee. Furthermore, if an Outside Director becomes an employee of the Company or any other Employer before or upon terminating service as an Outside Director, such employment will constitute a continuation of service with respect to Awards granted to the

Participant while he or she served as a member of the Board. The determination of whether a Participant has discontinued employment or service shall be made by the Committee in its sole discretion. "Termination of Employment" as used in an Award Agreement shall mean Termination of Service and vice-versa.

**ARTICLE 3.    ADMINISTRATION**

3.1     *Composition of Committee*. This Plan shall be administered by the Committee. The Committee shall consist of two or more Outside Directors who shall be appointed by the Board. The Board shall fill vacancies on the Committee and may from time to time remove or add members of the Committee. Except with respect to Awards to Outside Directors under Article 10, the Board, in its sole discretion, may exercise any authority of the Committee under this Plan in lieu of the Committee's exercise thereof and in such instances references herein to the Committee shall refer to the Board of Directors. Unless the Board directs otherwise, the Compensation Committee of the Board shall serve as the Committee.

3.2     *Authority of the Committee*.

(a)     The Committee shall have full and exclusive discretionary power to interpret the terms and intent of the Plan and any Award Agreement or other agreement or document ancillary to or in connection with this Plan as well as the right and power to construe and administer the Plan, to select Eligible Participants and the persons who are eligible to receive an Award, and to act in all matters pertaining to the granting of an Award and the contents of the Award Agreement evidencing the Award, including without limitation, the determination of the number of Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Performance Shares, Performance Stock Units, Performance Units or Other Awards subject to an Award and the form, terms, conditions and duration of each Award, and any amendment thereof consistent with the provisions of the Plan. The Committee may adopt such rules, regulations and procedures of general application for the administration of this Plan as it deems appropriate. The Committee shall be further authorized to act on behalf of all Affiliates and subsidiaries with respect to all purposes of the Plan.

(b)     The Committee may correct any defect, supply any omission or reconcile any inconsistency in the Plan or any Award Agreement in the manner and to the extent it shall deem desirable to carry it into effect.

(c)     In the event the Company shall assume outstanding employee benefit awards or the right or obligation to make future such awards in connection with the acquisition of another corporation or business entity, the Committee may, in its discretion, make such adjustments in the terms of Awards under the Plan as it shall deem appropriate.

(d)     The Committee shall have the discretion to determine the effect upon an Award and upon an individual's status as an employee or Outside Director under the Plan (including whether a Participant shall be deemed to have experienced a Termination of Service, or other change in status) and upon the vesting, expiration or forfeiture of an Award in the case of (i) any individual who is employed by an entity that ceases to qualify as an Employer, (ii) any leave of absence, (iii) any transfer between locations of employment with the Company and any other Employer (including Affiliates) or vice versa, (iv) any change in the Participant's status from an employee to a consultant or member of the Board of Directors, or vice versa, and (v) any employee who, at the request of the Employer or the Company, becomes employed by any partnership, joint venture, corporation or other entity not meeting the requirements of an Employer.

(e)     All actions, determinations and decisions of the Committee made or taken pursuant to grants of authority under the Plan or with respect to any questions arising in connection with the administration, operation, and interpretation of the Plan, including the severability of any and all of the provisions thereof, shall be conclusive, final and binding upon all parties, including the Company, its shareholders, Participants, Eligible Participants and their estates, beneficiaries and successors. The Committee shall consider such factors as it deems relevant to making or taking such actions, determinations and decisions including, without limitation, the recommendations or advice of any Director, officer or employee of the Company and such attorneys, consultants and accountants as it may select. A Participant or other holder of an Award may contest an action, determination or

decision by the Committee with respect to such person or Award only on the grounds that such action, determination or decision was arbitrary or capricious or was unlawful, and any review of such action, determination or decision shall be limited to determining whether the Committee's decision or action was arbitrary or capricious or was unlawful.

3.3     *Rules for Foreign Jurisdictions*. Notwithstanding anything in the Plan to the contrary, the Committee may, in its sole discretion, amend or vary the terms of the Plan in order to conform such terms with the requirements of each non-U.S. jurisdiction where an Eligible Participant is located or to meet the goals and objectives of the Plan; establish one or more sub-plans for these purposes; and establish administrative rules and procedures to facilitate the operation of the Plan in such non-U.S. jurisdictions.

3.4     *Delegation of Authority*. The Committee may, in its discretion, at any time and from time to time, delegate to one or more of the members of the Committee of its powers as it deems appropriate (provided that any such delegation shall be to at least two members of the Committee with respect to Awards to Insiders). Except with respect to Awards to Insiders, the Committee may, in its discretion, at any time and from time to time, delegate to one or more persons who are not members of the Committee any or all of its authority and discretion under Section 3.2 and 3.3, to the full extent permitted by law and the rules of any exchange on which Shares are traded.

3.5     *Award Agreements*. Each Award granted under the Plan shall be evidenced by an Award Agreement. Each Award Agreement shall be subject to and incorporate, by reference or otherwise, the applicable terms and conditions of the Plan, and any other terms and conditions, not inconsistent with the Plan, as may be directed by the Committee, including without limitation, provisions related to the consequences of Termination of Service. A copy of such document shall be provided to the Participant, and the Committee may, but need not, require that the Participant sign a copy of the Award Agreement or otherwise confirm the Participant's acceptance of the provisions of the Award Agreement. The Participant shall in any event be deemed to have accepted the provisions of an Award Agreement delivered to the Participant with respect to an Award by exercising the Award or receiving any benefits thereunder.

3.6     *Indemnification*. In addition to such other rights of indemnification as they may have as members of the Board or as members of the Committee, the Company shall indemnify and hold harmless the members of the Committee against (i) reasonable expenses, including attorney's fees, actually and necessarily incurred in connection with the defense of any action, suit or proceeding, or in connection with any appeal thereof, to which they or any of them may be a party by reason of any action taken or failure to act under or in connection with the Plan or any Award granted thereunder, (ii) all amounts paid by them in settlement thereof, provided such settlement is approved by independent legal counsel selected by the Company, and (iii) all amounts paid by them in satisfaction of a judgment in any such action, suit or proceeding, except as to matters as to which the Committee member has been negligent or engaged in misconduct in the performance of his duties (all amounts reimbursed hereunder are referred to as the "***Reimbursement Expenses***"); provided, that within 60 days after institution of any such action, suit or proceeding, a Committee member shall in writing offer the Company the opportunity, at its own expense, to handle and defend the same. In the performance of its responsibilities with respect to the Plan, the members of the Committee shall be entitled to rely upon, and no member of the Committee shall be liable for any action taken or not taken in good faith reliance upon, information and/or advice furnished by the Company's officers or employees, the Company's accountants, or the Company's counsel. To the extent the entitlement to Reimbursement Expenses is subject to Section 409A of the Code, it applies during the lifetime of the Committee member; the Company shall pay each Reimbursement Expense no later than the end of the calendar year following the calendar year in which the Committee member incurred such Reimbursement Expense; the amount of Reimbursement Expenses available to a Committee member in one tax year will not affect the amount of Reimbursement Expenses available to the Committee member in any other tax year; and the entitlement to Reimbursement Expenses is not subject to liquidation or exchange for any other benefit.

**ARTICLE 4.      SHARES SUBJECT TO THE PLAN**

    *4.1      Aggregate Limits.*

    (a)      Subject to adjustment as provided in Section 4.4, the aggregate number of Shares which may be issued pursuant to Awards under this Plan (the "***Award Pool***") shall be equal to the product calculated by multiplying five percent (5%) by the Shares outstanding on the Effective Date calculated on a pro forma basis assuming all New 2L Convertible Notes (as defined in the Restructuring Support Agreement) are treated as having converted into Shares on the Effective Date but excluding Shares issued upon conversion of the New Renesas 2L Takeback Convertible Notes (as defined in the Restructuring Support Agreement) and exercise of the Renesas Warrants (as defined in the Restructuring Support Agreement). Without limiting the foregoing, in accordance with the Restructuring Support Agreement, the terms and conditions of which are incorporated herein by reference and notwithstanding any termination thereof, Awards granted during fiscal year 2026 shall have a value as of the date of grant, as determined by the Board or Committee, equivalent to $26.6 million, and Awards granted during fiscal year 2027 shall have a value as of the date of grant, as determined by the Board or Committee, equivalent to $27.5 million.

    (b)      Up to [_____] Shares are available for issuance pursuant to ISOs granted under the Plan. Otherwise, the Award Pool shall be available for all types of Awards granted under the Plan; there is no maximum number of Shares per type of Award. Such Shares shall be made available from Shares authorized but unissued, including Shares purchased in the open market or in private transactions.

    *4.2      Share Counting Rules.*

    (a)      Each Option shall be counted as one Share subject to an Award and deducted from the Award Pool.

    (b)      Each share of Restricted Stock and each Restricted Stock Unit and each Other Award that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Restricted Stock Units and Other Awards that may not be settled in Shares shall not result in a deduction from the Award Pool.

    (c)      Each Performance Share or Performance Stock Unit that may be settled in Shares shall be counted as one Share subject to an Award, based on the number of Shares that would be paid under the Performance Share or Performance Stock Unit for achievement of target performance, and deducted from the Award Pool. Each Performance Unit that may be settled in Shares shall be counted as a number of Shares subject to an Award, based on the number of Shares that would be paid under the Performance Unit for achievement of target performance, with the number determined by dividing the value of the Performance Unit at the time of grant by the Fair Market Value of a Share at the time of grant, and this number shall be deducted from the Award Pool. In both cases, in the event that the Award is later settled based on above-target performance, the number of Shares corresponding to the above-target performance, calculated pursuant to the applicable methodology specified above, shall be deducted from the Award Pool at the time of such settlement; in the event that the Award is later settled upon below-target performance, the number of Shares corresponding to the below-target performance, calculated pursuant to the applicable methodology specified above, shall be added back to the Award Pool. Performance Shares, Performance Stock Units, and Performance Units that may not be settled in Shares shall not result in a deduction from the Award Pool.

    (d)      Each Stock Appreciation Right that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Stock Appreciation Rights that may not be settled in Shares shall not result in a deduction from the Award Pool.

    (e)      If for any reason any Shares awarded or subject to issuance under the Plan are not issued, or are reacquired by the Company from the Participant or the Participant's transferee, for reasons including, but not limited to: (i) a forfeiture of Restricted Stock or a Restricted Stock Unit; (ii) the termination, expiration or cancellation of an Option, Stock Appreciation Right, Performance Share, Performance Stock Unit, Performance Unit

or Other Award; (iii) Shares withheld for payment of taxes pursuant to Section 14.2 (other than for an Option or Stock Appreciation Right); or (iv) settlement of an Award in cash in lieu of Shares, such Shares shall again be available for issuance pursuant to an Award under the Plan and shall be added back to the Award Pool. Notwithstanding anything herein to the contrary: (i) Shares with respect to which a Stock Appreciation Right under the Plan is exercised; (ii) Shares tendered, withheld, or subject to an Option or Stock Appreciation Right granted under the Plan surrendered in connection with the payment of the Option Price upon exercise of an Option or Stock Appreciation Right, if applicable, or in connection with the Company's tax withholding obligations with respect to Options or stock-settled Stock Appreciation Rights granted under the Plan; (iii) Shares not issued upon the net settlement or net exercise of a stock-settled Stock Appreciation Right under the Plan; and (iv) Shares purchased by the Company with proceeds from the exercise of Options or Stock Appreciation Rights granted under the Plan shall not thereafter be available for issuance under the Plan nor added back to the Award Pool.

4.3     *Outside Director Award Limits*. Subject to adjustment as provided in Section 4.4, the aggregate grant date fair value (computed as of the Date of Grant in accordance with applicable financial accounting rules) of all Awards granted to any Outside Director during any single fiscal year, taken together with any cash fees paid to such Outside Director during such fiscal year, shall not exceed $1,000,000.

4.4     *Adjustment of Shares*. If any change in corporate capitalization, such as a stock split, reverse stock split, or stock dividend; or any corporate transaction such as a reorganization, reclassification, merger or consolidation or separation, including a spin-off, of the Company or sale or other disposition by the Company of all or a portion of its assets, any other change in the Company's corporate structure, or any distribution to shareholders (other than an ordinary cash dividend) results in the outstanding Shares, or any securities exchanged therefore or received in their place, being exchanged for a different number or class of shares or other securities of the Company, or for shares of stock or other securities of any other corporation; or new, different or additional shares or other securities of the Company or of any other corporation being received by the holders of outstanding Shares; then the Committee shall make equitable adjustments, as it determines are necessary and appropriate, in:

(a)     the number and class of stock or other securities that comprise the Award Pool as set forth in Section 4.1;

(b)     the limitations on the aggregate number of Awards that may be granted in any one fiscal year to any one Participant may be provided for herein or pursuant to an Award Agreement;

(c)     the number and class of stock or other securities subject to outstanding Awards, and which have not been issued or transferred under outstanding Awards;

(d)     the Option Price under outstanding Options, the SAR Price under outstanding Stock Appreciation Rights and the number of Shares to be transferred in settlement of outstanding Options and Stock Appreciation Rights; and

(e)     the terms, conditions or restrictions of any Award and Award Agreement, including the price payable for the acquisition of Shares.

It is intended that, if possible, any adjustments contemplated above shall be made in a manner that satisfies applicable legal requirements, as well as applicable requirements with respect to taxation (including, without limitation and as applicable in the circumstances, Sections 424 and 409A of the Code) and accounting (so as to not trigger any charge to earnings with respect to such adjustment).

Without limiting the generality of the above, any good faith determination by the Committee as to whether an adjustment is required in the circumstances and the extent and nature of any such adjustment shall be final, conclusive and binding on all persons.

Subject to the provisions of Article 15 and notwithstanding anything else herein to the contrary, without affecting the number of Shares reserved or available hereunder, the Committee may authorize the issuance or assumption of benefits under this Plan in connection with any merger, consolidation, acquisition of property or

stock, or reorganization upon such terms and conditions as it may deem appropriate, subject to compliance with the rules under Sections 409A, 422 and 424 of the Code, as and where applicable.

## ARTICLE 5.    STOCK OPTIONS

*5.1     Grant of Options*. Subject to the provisions of the Plan, Options may be granted to Eligible Participants at any time and from time to time as shall be determined by the Committee. The Committee shall have sole discretion in determining the number of Shares subject to Options granted to each Participant. The Committee may grant a Participant ISOs, NQSOs or a combination thereof, and may vary such Awards among Participants; provided that only employees may be granted ISOs. Notwithstanding anything in this Article 5 to the contrary, except for Options that are specifically designated as intended to be subject to Section 409A of the Code, Options may only be granted to individuals who provide direct services on the date of grant of the Option to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-I(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised Options granted under the Plan.

*5.2     Award Agreement*. Each Option grant shall be evidenced by an Award Agreement that shall specify the Option Price, the duration of the Option, the number of Shares to which the Option pertains, the conditions upon which the Option shall become vested and exercisable and such other provisions as the Committee shall determine. The Award Agreement shall further specify whether the Award is intended to be an ISO or an NQSO. Any portion of an Option that is not designated as an ISO or otherwise fails or is not qualified as an ISO (even if designated as an ISO) shall be an NQSO.

*5.3     Option Price*. Subject to Section 5.8, the Option Price for each grant of an Option shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted. Notwithstanding the prior sentence, an Option may be granted with an Option Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted if such Option is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such Option Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the Option from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the Option is granted).

*5.4     Duration of Options*. Each Option shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any Option that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such Option to the extent permitted by Sections 409A and 422 of the Code, or other applicable law; and provided, further, that no Option shall be exercisable later than the tenth (10th) anniversary of its grant date or, in the case of an ISO granted to a Greater Than 10% Stockholder, the fifth (5th) anniversary of its grant date.

*5.5     Exercise of Options*. Options granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company, a subsidiary or any other Employer, to the extent permitted by applicable law, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Deferral of Option gains is not permitted.

*5.6     Payment*. Options shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the Option is to be exercised and satisfying any requirements that the Committee may establish in or pursuant to the Award Agreement from time to time, together with, (a) payment in full of the Option Price for the number of Shares for which the Option is exercised, and (b) satisfaction in full of any withholding obligations for Tax-Related Items in a manner specified in Article 13. The Option Price shall be payable to the Company either: (a) in cash, (b) in a cash

equivalent approved by the Committee, (c) if approved by the Committee, by tendering previously acquired Shares (or delivering a certification or attestation of ownership of such Shares) having an aggregate Fair Market Value at the time of exercise equal to the total Option Price (provided that the tendered Shares must have been held by the Participant for any period required by the Committee), (d) by a combination of (a), (b) and/or (c), and (e) any other method expressly approved or accepted by the Committee in the Committee's sole discretion. The Committee also may allow cashless exercises as permitted under Regulation T of the Federal Reserve Board, subject to applicable securities law restrictions, or by any other means which the Committee determines to be consistent with the Plan's purpose and applicable law. Unless otherwise authorized by the Committee, no Shares shall be delivered until the full Option Price has been paid.

      *5.7*     *Nontransferability of Options.*

      (a)     *Incentive Stock Options.* No ISO granted under the Plan may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, all ISOs granted to a Participant under the Plan shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an ISO be transferred for value or consideration.

      (b)     *Nonqualified Stock Options.* Except as otherwise provided in a Participant's Award Agreement consistent with securities and other applicable laws, rules and regulations, no NQSO granted under this Article 5 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all NQSOs granted to a Participant under this Article 5 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an NQSO be transferred for value or consideration.

      *5.8*     *Special Rules for ISOs.* Notwithstanding the above, in no event shall any Greater Than 10% Stockholder be eligible to receive an ISO at an Option Price less than one hundred ten percent (110%) of the Fair Market Value of a share on the date the ISO is granted or be eligible to receive an ISO that is exercisable later than the fifth (5th) anniversary date of its grant. The aggregate Fair Market Value of shares with respect to which incentive stock options (within the meaning of Section 422 of the Code) granted to a Participant are first exercisable in any calendar year (under the Plan and all other incentive stock option plans of the Employer) shall not exceed $100,000. For this purpose, Fair Market Value shall be determined with respect to a particular incentive stock option on the date on which such incentive stock option is granted. In the event that this One Hundred Thousand Dollar ($100,000) limit is exceeded with respect to a Participant, then Incentive Stock Options granted under this Plan to such Participant shall, to the extent and in the order required by Treasury Regulations under Section 422 of the Code, automatically become NQSOs granted under this Plan. Solely for purposes of determining the limit on ISOs that may be granted under the Plan, the provisions of Section 4.2 that replenish or forgo a deduction from the Award Pool shall only be applied to the extent permitted by Section 422 of the Code and regulations promulgated thereunder.

**ARTICLE 6.**    **STOCK APPRECIATION RIGHTS**

      *6.1*     *Grant of SARs.* Subject to the terms and provisions of the Plan, SARs may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee. A Stock Appreciation Right may be granted to an Eligible Participant in connection with an Option granted under Article 5 of this Plan or may be granted independently of any Option. A Stock Appreciation Right shall entitle the holder, within the specified period, to exercise the SAR and receive in exchange a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the SAR Price, times the number of Shares with respect to which the SAR is exercised. A SAR granted in connection with an Option (a "***Tandem SAR***") shall entitle the holder of the related Option, within the period specified for the exercise of the Option, to surrender the unexercised Option, or a portion thereof, and to receive in exchange a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the Option Price, times the number of Shares under the Option, or portion thereof, which is surrendered. Notwithstanding anything in this Article 6 to the contrary, except for SARs that are specifically designated as intended to be subject to Section

409A of the Code, SARs may only be granted to individuals who provide direct services on the date of grant of the SAR to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-l(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised SARs granted under the Plan.

6.2     *Award Agreement*. Each SAR grant shall be evidenced by an Award Agreement that shall specify the SAR Price, the duration of the SAR, the number of Shares with respect to which the SAR pertains, the conditions upon which the SAR shall become vested and exercisable and such other provisions as the Committee shall determine.

6.3     *Tandem SARs*. Each Tandem SAR shall be subject to the same terms and conditions as the related Option, including limitations on transferability, shall be exercisable only to the extent such Option is exercisable and shall terminate or lapse and cease to be exercisable when the related Option terminates or lapses. The grant of Stock Appreciation Rights related to ISOs must be concurrent with the grant of the ISOs. With respect to NQSOs, the grant either may be concurrent with the grant of the NQSOs, or in connection with NQSOs previously granted under Article 5, which are unexercised and have not terminated or lapsed.

6.4     *Payment*. The Committee shall have sole discretion to determine in each Award Agreement whether the payment with respect to the exercise of an SAR will be in the form of cash, Shares, or any combination thereof. If payment is to be made in Shares, the number of Shares shall be determined based on the Fair Market Value of a Share on the date of exercise.

6.5     *SAR Price*. The SAR Price for each grant of a SAR shall be determined by the Committee and shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted. Notwithstanding the prior sentence, a SAR may be granted with a SAR Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted if such SAR is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such SAR Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the SAR from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the SAR is granted).

6.6     *Duration of SARs*. Each SAR shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any SAR that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such SAR; and provided, further, that no SAR shall be exercisable later than the tenth (10th) anniversary of its grant date.

6.7     *Exercise of SARs*. SARs granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company or any Employer, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Upon exercise of a Tandem SAR, the number of Shares subject to exercise under the related Option shall automatically be reduced by the number of Shares represented by the Option or portion thereof which is surrendered. SARs shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the SAR is to be exercised and satisfying any requirements that the Committee may apply from time to time.

6.8     *Nontransferability of SARs*. Except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee consistent with securities and other applicable laws, rules and regulations, no SAR granted under this Article 6 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any

time by the Committee, all SARs granted to a Participant under this Article 6 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may a SAR be transferred for value or consideration.

**ARTICLE 7.    RESTRICTED STOCK AND RESTRICTED STOCK UNITS**

7.1      *Grants of Restricted Stock and Restricted Stock Units*. Restricted Stock Awards and Restricted Stock Unit Awards may be made to Eligible Participants as an incentive for the performance of future services that the Committee in its sole discretion determines will contribute materially to the successful operation of the Employer. Subject to Article 11 with respect to grants to Outside Directors, Awards of Restricted Stock or Restricted Stock Units may be made either alone or in addition to or in tandem with other Awards granted under the Plan and may be current grants of Restricted Stock or Restricted Stock Units or deferred grants of Restricted Stock or Restricted Stock Units.

7.2      *Restricted Stock/Unit Award Agreement*.

(a)      In General. Each Award of Restricted Stock/Units shall be evidenced by an Award Agreement that shall set forth the terms of the Award, as determined by the Committee, including, without limitation, the number of Shares of Restricted Stock or the number of Restricted Stock Units granted; the purchase price, if any, to be paid for each Share of Restricted Stock or Restricted Stock Unit, which may be more than, equal to, or less than Fair Market Value of a Share and may be zero, subject to such minimum consideration as may be required by applicable law; any restrictions applicable to the Restricted Stock/Units such as continued service or achievement of performance goals, or both; the length of the Restriction Period and whether any circumstances, such as death, Disability, retirement (as defined in the applicable Award Agreement) or a Change in Control, will shorten or terminate the Restriction Period; and whether Restricted Stock Units will be settled in cash, Shares or a combination of cash and Shares. The Restriction Period may be of any duration. The Award may provide for lapse of the Restriction Period in monthly or longer installments over the course of the Restriction Period, as determined by the Committee in its discretion.

(b)      Execution of Award Agreements. Notwithstanding Section 3.5, a Restricted Stock or Stock Unit Award must be accepted prior to the first vesting date or such other period as the Committee may specify, by executing a Restricted Stock/Unit Award Agreement, or otherwise electronically accepting the Award, and paying whatever price, if any, is required. The prospective recipient of a Restricted Stock or Restricted Stock Unit Award shall not have any rights with respect to such Award, unless and until such recipient has executed a Restricted Stock/Unit Award Agreement and has delivered a fully executed copy thereof to the Company, or otherwise electronically accepted the Award, and has otherwise complied with the applicable terms and conditions of such Award.

7.3      *Nontransferability*. Except as otherwise provided in this Article 7 or in an Award Agreement, no shares of Restricted Stock or Restricted Stock Units received by a Participant shall be sold, exchanged, transferred, pledged, assigned, hypothecated or otherwise disposed of during the Restriction Period or, in the case of Restricted Stock Units, until the date of delivery of Shares or other payment with respect to the Restricted Stock Units, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement, a Participant's rights under an Award of Restricted Stock or Restricted Stock Units shall be available during the Participant's lifetime only to the Participant or the Participant's legal representative.

7.4      *Certificates*. Upon an Award of Restricted Stock to a Participant, Shares of Restricted Stock shall be registered in the Participant's name. Certificates, if issued, may either be held in custody by the Company until the Restriction Period expires or until restrictions thereon otherwise lapse and/or be issued to the Participant and registered in the name of the Participant, bearing an appropriate restrictive legend and remaining subject to appropriate stop-transfer orders. If required by the Committee, the Participant shall deliver to the Company one or more stock powers endorsed in blank relating to the Restricted Stock. If and when the Restriction Period expires

without a prior forfeiture of the Restricted Stock subject to such Restriction Period, unrestricted certificates for such shares shall be delivered to the Participant.

7.5     *Dividends and Other Distributions*. Except as provided in this Article 7 or in the Award Agreement, a Participant receiving a Restricted Stock Award shall have, with respect to such Award, all of the rights of a shareholder of the Company, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and the right to receive any dividends; provided, however, that, in all cases, (i) any dividends or other distributions on such Shares of Restricted Stock during the Restriction Period shall be either automatically deferred and reinvested in additional Shares of Restricted Stock or paid to the Company for the account of the Participant, in either case subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividends and other distributions shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with Section 409A of the Code. The Committee shall determine whether interest, if any, shall be paid on such amounts, the rate of any such interest, and the other terms applicable to such amounts (again, provided that all such terms shall, to the extent required, comply with Section 409A of the Code). A Participant receiving a Restricted Stock Unit Award shall not possess voting rights and shall accrue dividend equivalents on such Restricted Stock Units only to the extent provided in the Award Agreement relating to the Award; provided, however, that in all cases (i) any dividend equivalents payable on such Restricted Stock Unit Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

7.6     *Short-Term Deferral*. To the extent an Award described in this Section is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date on which there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

**ARTICLE 8.     PERFORMANCE SHARES AND UNITS**

8.1     *Grant of Performance Shares / Performance Stock Units / Performance Units*. Subject to the terms and provisions of the Plan, Performance Shares, Performance Stock Units ("**PSUs**"), and Performance Units may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee.

8.2     *Value of Performance Shares / Performance Stock Units and Performance Units*. Each Performance Unit shall have an initial value that is established by the Committee at the time of grant. Each Performance Share or Performance Stock Unit shall have an initial value equal to the Fair Market Value of a Share on the date of grant. In addition to any non-performance terms applicable to the Award, the Committee shall set performance goals in its discretion which, depending on the extent to which they are met, will determine the number and/or value of Performance Shares, Performance Stock Units, Performance Units or all three, as applicable, that will be paid out to the Participant. For purposes of this Article 8, the time period during which the performance goals must be met in order to determine the degree of payout and/or vesting with respect to an Award shall be called a "Performance Period."

8.3     *Earning of Performance Shares / Units*. Subject to the terms of this Plan, after the applicable Performance Period has ended, the holder of Performance Shares, Performance Stock Units, or Performance Units shall be entitled to receive a payout of the number and value of Performance Shares, Performance Stock Units, or Performance Units earned by the Participant over the Performance Period, to be determined as a function of the extent to which the corresponding performance goals have been achieved and any applicable non-performance terms have been met. The Committee may provide in the Award Agreement and/or an Individual Agreement that the Performance Shares, Performance Stock Units, or Performance Units are earned notwithstanding achievement of the performance goals only: (i) in the event of the Participant's death or Disability, (ii) in the event of the Participant's

"retirement" (as such term is defined in the applicable Award Agreement), (iii) in connection with a Change of Control, or (iv) pursuant to Section 15.5.

*8.4     Form and Timing of Payment of Performance Shares, Performance Stock Units, or Performance Units*. Subject to the terms of this Plan and the applicable Award Agreement, the Committee, in its sole discretion, may pay earned Performance Shares, Performance Stock Units, and Performance Units in the form of cash or Shares or other Awards (or in a combination thereof) which have an aggregate Fair Market Value equal to the value of the earned Performance Shares, Performance Stock Units, and Performance Units at the close of the applicable Performance Period. Any such Shares may be granted subject to any restrictions deemed appropriate by the Committee. The determination of the Committee with respect to the form and timing of payout of such Awards shall be set forth in the Award Agreement pertaining to the grant of the Award.

Notwithstanding the foregoing, to the extent an Award described in this Article 8 is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

*8.5     Dividends and Other Distributions*. A Participant receiving a Performance Share, Performance Stock Unit, or Performance Unit Award shall not possess voting rights. A Participant receiving a Performance Share, Performance Stock Unit, Performance Unit Award or any other Award that is subject to performance conditions shall accrue dividend equivalents on such Award only to the extent provided in the Award Agreement relating to the Award; provided, however, that (i) any dividend equivalents payable on such Performance Shares, Performance Stock Units, Performance Units or other Award subject to performance conditions shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalent shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

*8.6     Nontransferability*. Except as otherwise provided in this Article 8 or the applicable Award Agreement, Performance Shares, Performance Stock Units, and Performance Units may not be sold, exchanged, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in the applicable Award Agreement, a Participant's rights with respect to Performance Shares, Performance Stock Units, and Performance Units shall be available during the Participant's lifetime only by the Participant or the Participant's legal representative. In no event may a Performance Share, Performance Stock Unit, or Performance Unit be transferred for value or consideration.

## ARTICLE 9.     OTHER AWARDS

The Committee shall have the authority to specify the terms and provisions of other forms of equity-based or equity-related awards not described above that the Committee determines to be consistent with the purpose of the Plan and the interests of the Company. The Other Awards may provide for cash payments based in whole or in part on the value or future value of Shares, for the acquisition or future acquisition of Shares, or any combination of the foregoing. Notwithstanding the foregoing, where the value of an Other Award is based on the difference in the value of a Share at different points in time, the grant or exercise price will not be less than 100% of the Fair Market Value of the Shares on the date of grant unless the Other Award is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that the Other Award preserves the economic benefit of the replaced award and is either exempt from or in compliance with the requirements of Section 409A of the Code. A Participant receiving an Other Award shall accrue dividend equivalents on such Other Award only to the extent provided in the Award Agreement relating to the Other Award; provided, however, that (i) any dividend equivalents payable on such Other Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend

equivalents shall be included in the Award Agreement related to the Other Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

## ARTICLE 10.   PERFORMANCE MEASURES

10.1     *In General*. The Committee may, in its discretion, include performance conditions or objectives in any Award. The Committee may provide for a threshold level of performance below which no amount of compensation will be paid, and the Committee may provide for the payment of differing amounts of compensation for different levels of performance.

10.2     *Committee Determination of Achievement of Performance Goals; Adjustments*. For each Award that has been granted subject to a specified performance goal or objective, the Committee shall determine within an administratively practicable period following the end of the applicable Performance Period whether such performance goals or objectives for that Performance Period have been achieved and, if they have, the Committee shall so certify in writing and ascertain the amount payable under the applicable Award. If a performance goal or objective for a Performance Period is not achieved, the Committee in its sole discretion may nonetheless pay all or a portion of that Award based on such criteria as the Committee deems appropriate, including without limitation individual performance, Company-wide performance, or the performance of specific Employer entities or Affiliates, divisions, departments, regions, or service line or function employing the Participant.

In determining whether any performance goal or objective has been satisfied, the Committee may include or exclude any or all items that are unusual or non-recurring, including but not limited to (i) charges, costs, benefits gains or income associated with reorganizations or restructurings of the Employer (or related entities and Affiliates), discontinued operations, goodwill, other intangible assets, long-lived assets (non-cash), real estate strategy, litigation, or the resolution of litigation (e.g., settlements, judgments, or attorneys' fees), or currency or commodity fluctuations; and (ii) the effects of changes in applicable laws, regulations or accounting principles. In addition, the Committee may adjust any performance objective for a Performance Period as it deems equitable to recognize unusual or non-recurring events affecting the Employer (or related entities and Affiliates), changes in tax laws or regulations or accounting procedures, mergers, acquisitions, and divestitures, or any other factors as the Committee may determine. To the extent that a performance objective is based on the price of a Share, then in the event of any stock dividend, stock split, combination of shares, recapitalization or other changes in the capital structure of the Company, any merger, consolidation, spin-off, reorganization, partial or complete liquidation or other distribution of assets (other than a normal cash dividend), issuance of rights or warrants to purchase securities or any other corporate transaction having an effect similar to any of the foregoing, the Committee shall make or provide for such adjustments in such performance objective as the Committee in the Committee's sole discretion may in good faith determine to be equitably required in order to prevent dilution or enlargement of the rights of Participants.

## ARTICLE 11.   AWARDS TO OUTSIDE DIRECTORS

Awards to Outside Directors may be in the form of Nonqualified Stock Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Other Awards or a combination thereof.

## ARTICLE 12.   BENEFICIARY DESIGNATION

To the extent permitted by the Committee, each Participant under the Plan may, from time to time, in the manner determined by the Committee, name any beneficiary or beneficiaries (who may be named contingently or successively) to whom any benefit under the Plan is to be paid in case of his or her death before he or she receives any or all of such benefit. If any such designation is permitted, the Committee shall, in its sole discretion, establish rules and procedures for such designations. Unless different rules and procedures are established by the Committee, each such designation shall revoke all prior designations by the same Participant, shall be in a form prescribed by the Company, and will be effective only when filed by the Participant in writing with a designated representative of the Committee during the Participant's lifetime. In the absence of any such designation, benefits remaining unpaid at the Participant's death shall be paid to the Participant's estate or legal heirs.

**ARTICLE 13.    DEFERRALS**

The Committee may permit or require a Participant to defer such Participant's receipt of the payment of cash or the delivery of Shares that would otherwise be due to such Participant by virtue of lapse or waiver of restrictions with respect to Restricted Stock or Restricted Stock Units, or the satisfaction of any requirements or goals with respect to Performance Shares, Performance Stock Units, or Performance Units. If any such deferral election is required or permitted, the Committee shall, in its sole discretion, establish rules and procedures for such deferrals, and the Committee may provide for such arrangements, including conversion to another form of Award that is available under the Plan and has equivalent value, as it deems necessary in order to permit the deferral of taxes in connection with such deferral by the Participant. Any deferrals required or permitted by the Committee of Awards shall be made in compliance with Section 409A of the Code.

**ARTICLE 14.    TAX WITHHOLDING**

*14.1     Tax Withholding*. The Company shall have the power and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy federal, state, and local taxes, domestic or foreign, required by law or regulation to be withheld with respect to any taxable event arising as a result of this Plan or any Award. The Company shall not be required to issue Shares or to recognize the disposition of such Shares until such obligations are satisfied.

*14.2     Share Withholding*. Except as otherwise determined by the Committee or provided in an Award Agreement, with respect to tax withholding required upon the exercise of Options or SARs, upon the lapse of restrictions on Restricted Stock or Restricted Stock Units, upon the achievement of performance goals related to Performance Shares or Performance Units, or upon any other taxable event arising as a result of or in connection with an Award granted hereunder that is settled in Shares, unless other arrangements are made with the consent of the Committee, Participants shall satisfy the withholding requirement by: (i) having the Company withhold Shares having a Fair Market Value on the date the tax is to be determined equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee), or (ii) if approved by the Committee, authorizing the sale of Shares equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee). All such withholding arrangements shall be subject to any restrictions or limitations that the Committee, in its sole discretion, deems appropriate.

**ARTICLE 15.    AMENDMENT AND TERMINATION**

*15.1     Amendment of Plan*. The Board may at any time terminate or from time to time amend the Plan in whole or in part, but, unless required by applicable law or applicable listing standard, no such action shall materially and adversely affect any rights or obligations with respect to any Awards previously granted under the Plan, unless the affected Participants consent in writing. The Company will also obtain the approval of the shareholders before amending the Plan to the extent required by Section 422 of the Code or the rules of any securities exchange or quotation or trading system on which Shares are traded or other applicable law.

*15.2     Amendment of Award; Repricing*. The Committee may, at any time, amend outstanding Awards in a manner not inconsistent with the terms of the Plan; provided, however, that if such amendment is adverse to the Participant, as determined by the Committee, the amendment shall not be effective unless and until the Participant consents, in writing, to such amendment, except as may be required by applicable law, as provided in Section 15.4 and Section 15.5, or as provided in the Award Agreement. To the extent not inconsistent with the terms of the Plan and the foregoing, the Committee may, at any time, amend an outstanding Award Agreement in a manner that is not unfavorable to the Participant without the consent of such Participant. Notwithstanding the above provision, the Committee shall not permit or effect a repricing, except in accordance with Section 4.4 or to the extent the repricing is approved by the shareholders of the Company; for this purpose, a repricing is an amendment to the terms of an outstanding Option or SAR that would reduce the Option Price or SAR Price of that Option or SAR, respectively, or a cancellation, exchange, substitution, buyout or surrender of an outstanding Option or SAR in exchange for cash, another Award or Option or SAR with an Option Price or SAR Price that is less than the Option Price or SAR Price

of the original Option or SAR, respectively (or as further defined within US generally accepted accounting practices or any applicable stock exchange rule). Notwithstanding anything else in this Section 15.2, (i) no amendment of an Award Agreement shall cause an award to be subject to Section 409A of the Code, unless the Award Agreement, as amended, complies with the requirements of Section 409A of the Code, and (ii) no amendment of an Award Agreement that is subject to Section 409A of the Code shall cause such an Award Agreement (or the underlying Award) to violate Section 409A of the Code.

15.3     *Termination of Plan.* No Awards shall be granted under the Plan after the tenth anniversary of the Effective Date. However, Awards granted under the Plan on or prior to the tenth anniversary of the Effective Date shall remain outstanding beyond that date in accordance with the terms and conditions of the Plan and the Award Agreements corresponding to such Awards.

15.4     *Cancellation of Awards / Clawback.* The Committee may, in its discretion, specify in an Award Agreement or a policy that will be deemed incorporated into an Award Agreement by reference (regardless of whether such policy is established before or after the date of such Award Agreement), that a Participant's rights, payments, and benefits with respect to an Award shall be subject to reduction, cancellation, forfeiture, rescission or recoupment upon the occurrence of certain specified events, in addition to any otherwise applicable vesting, restrictions or performance conditions of an Award. Such events may include, but shall not be limited to, Termination of Service with or without Cause, breach of noncompetition, confidentiality, or other restrictive covenants that may apply to the Participant, or restatement of the Company's financial statements to reflect adverse results from those previously released financial statements, as a consequence of errors, omissions, fraud, or misconduct. In addition, all Awards under the Plan (and payments and Shares in settlement of Awards as well as any proceeds received from the disposition of such property) are subject to any clawback policy implemented, including any clawback policy adopted to comply with the requirements of applicable law, including Section 954 of the Dodd Frank Wall Street Reform and Consumer Protection Act and any rules or regulations promulgated thereunder, Rule 10D 1 under the Act, and the NYSE's listing standards (as applicable).

15.5     *Assumption or Acceleration of Awards.* In the event of a  Change in Control or any other corporate transaction to which the Committee deems this provision applicable (a "***Corporate Event***"), each Award outstanding at the time of the Corporate Event shall be assumed or an equivalent Award shall be substituted by the successor corporation or a parent or subsidiary of such successor corporation (and adjusted as appropriate), unless such successor corporation does not agree to assume the Award or to substitute an equivalent award (including a cash-based award), in which case the ~~Committee may, in lieu of such assumption or substitution, (a) provide for the Participant to have the right to exercise the Option or other Award as to all Shares, including Shares as to which the Option or other Award would not otherwise be exercisable (or with respect to Restricted Stock or Restricted Stock Units, provide that all restrictions shall lapse), or (b) if the Award is an Option or Stock Appreciation Right with an exercise price that equals or exceeds the price paid for a Share in connection with the Change in Control, cancel the Option or Stock Appreciation Right without payment due thereon.  If the Committee makes an Option or other Award fully exercisable in lieu of assumption or substitution in the event of a Corporate Event, the~~ **time- or service-based vesting of each Award shall fully accelerate and any performance- or milestone-based vesting condition shall be treated in accordance with the applicable Award Agreement. The** Committee shall notify the Participant ~~that~~**of any accelerated vesting provided in accordance with this Section 15.5 or pursuant to an applicable Award Agreement and**, subject to rescission if the Corporate Event is not successfully completed within a certain period, the Option or other Award shall be ~~fully~~ exercisable **as to the vested Shares subject thereto (after giving effect to any such accelerated vesting)** for a period of fifteen (15) days from the date of such notice (or such other period as provided by the Committee), and, to the extent not exercised, the Option or other Award will terminate upon the expiration of such period. Alternatively, the Committee may make provision for a cash payment in settlement of any or all ~~outstanding Awards~~**vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement)** or the cash, securities or property deliverable to the holder of any or all ~~outstanding Awards~~**vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement)**, based upon, to the extent relevant under the circumstances, the distribution or consideration payable to holders of Shares upon or in respect of the Corporate Event. The Committee may adopt such valuation methodologies for outstanding Awards as it deems reasonable in the event of a cash settlement and, in the case of Options, SARs or similar rights, but without limitation on other methodologies, may base such settlement solely upon the excess (if any) of the per share amount payable upon or in respect of such event over the Option Price or SAR Price, as

applicable, of the Award and may cancel each Option or SAR with an Option Price or SAR Price greater than the per share amount payable upon or in respect of such event without any payment to the person holding such Option or SAR. Any actions taken under this Section 15.5 shall be valid with respect to a 409A Award only to the extent that such action complies with Section 409A of the Code.

## ARTICLE 16.   MISCELLANEOUS PROVISIONS

16.1   *Restrictions on Shares*. All certificates for Shares delivered under the Plan shall be subject to such stop-transfer orders and other restrictions as the Committee may deem advisable under the rules and regulations of the Securities and Exchange Commission, any securities exchange or quotation or trading system on which Shares are traded and any applicable federal, state, local or foreign laws, and the Committee may cause a legend or legends to be placed on any such certificates to make appropriate reference to such restrictions. In making such determination, the Committee may rely upon an opinion of counsel for the Company. Notwithstanding any other provision of the Plan, the Company shall have no liability to deliver any Shares under the Plan or make any other distribution of the benefits under the Plan unless such delivery or distribution would comply with all applicable laws (including, without limitation, the requirements of the Securities Act of 1933), and the applicable requirements of any securities exchange or quotation or trading system on which Shares are traded.

16.2   *Rights of a Shareholder*. Except as otherwise provided in Article 7 or in the applicable Restricted Stock Award Agreement, each Participant who receives an Award of Restricted Stock shall have all of the rights of a shareholder with respect to such Shares, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and receive dividends and other distributions. No Participant awarded an Option or Stock Appreciation Right shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares. Except as provided otherwise in the Plan or in an Award Agreement, no Participant awarded a Restricted Stock Unit, Performance Share, Performance Stock Unit, or Performance Unit shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares.

16.3   *No Implied Rights*. Nothing in the Plan or any Award granted under the Plan shall confer upon any Participant any right to continue in the service of the Employer, or to serve as a member of the Board, or interfere in any way with the right of the Employer to terminate his or her employment or other service relationship at any time. Except to the extent approved by the Board, no Award granted under the Plan shall be deemed salary or compensation for the purpose of computing benefits under any employee benefit plan, severance program, or other arrangement of the Employer for the benefit of its employees. The Plan is intended to be an "unfunded" plan for incentive and deferred compensation. No Participant shall have any claim to an Award until it is actually granted under the Plan. To the extent that any person acquires a right to receive payments from the Company under the Plan, such right shall, except as otherwise provided by the Committee, be no greater than the right of an unfunded and unsecured general creditor of the Company.

16.4   *Compliance with Laws*. The Plan and the grant of Awards shall be subject to all applicable federal, state local and foreign laws, rules, and regulations and to such approvals by any government or regulatory agency as may be required. Notwithstanding any other provision of the Plan, the Plan and any Award granted or awarded to an Insider shall be subject to any additional limitations set forth in any applicable exemptive rule under Section 16 of the Act (including Rule 16b-3) that are requirements for the application of such exemptive rule. To the extent permitted by applicable law, the Plan and Awards granted or awarded hereunder shall be deemed amended to the extent necessary to conform to such applicable exemptive rule. Any provision herein relating to compliance with Rule 16b-3 under the Act shall not be applicable with respect to participation in the Plan by Participants who are not Insiders. If the Committee determines that the listing, registration or qualification upon any securities exchange or under any law of shares subject to any Award is necessary or desirable as a condition of, or in connection with, the granting of same or the issue or purchase of Shares thereunder, no such Award may be exercised in whole or in part (as applicable), no such Award may be paid out (as applicable) and no shares may be issued pursuant to such Award (as applicable) unless such listing, registration or qualification is effected free of any conditions not acceptable to the Committee.

16.5    *Section 409A.*

(a)    *General.* The Company intends that all Awards be structured to comply with, or be exempt from, Section 409A of the Code, such that no adverse tax consequences, interest, or penalties under Section 409A of the Code apply. Notwithstanding anything in the Plan or any Award Agreement to the contrary, the Committee may, without a Participant's consent, amend this Plan or Awards, adopt policies and procedures, or take any other actions (including amendments, policies, procedures and retroactive actions) as are necessary or appropriate to preserve the intended tax treatment of Awards, including any such actions intended to (i) exempt this Plan or any Award from Section 409A of the Code, or (ii) comply with Section 409A of the Code, including regulations, guidance, compliance programs and other interpretative authority that may be issued after an Award's grant date. The Company makes no representations or warranties as to an Award's tax treatment under Section 409A of the Code or otherwise. The Company will have no obligation under this Section 16.5 or otherwise to avoid the taxes, penalties or interest under Section 409A of the Code with respect to any Award and will have no liability to any Participant or any other person if any Award, compensation or other benefits under the Plan are determined to constitute noncompliant "nonqualified deferred compensation" subject to taxes, penalties or interest under Section 409A of the Code.

(b)    *Separation from Service.* Any payment or settlement of a 409A Award upon a Participant's Termination of Service will, to the extent necessary to avoid taxes under Section 409A of the Code, be made only upon the Participant's "separation from service" (within the meaning of Section 409A of the Code), whether such "separation from service" occurs upon or after the Participant's Termination of Service. For purposes of this Plan or any Award Agreement relating to any such payments or benefits, references to a "termination," "termination of employment" or like terms means a "separation from service."

(c)    *Payments to Specified Employees.* Notwithstanding any contrary provision in the Plan or any Award Agreement, any payment(s) of "nonqualified deferred compensation" required to be made under a 409A Award to a "specified employee" (as defined under Section 409A of the Code and as the Committee determines) due to such person's "separation from service" will, to the extent necessary to avoid taxes under Section 409A(a)(2)(B)(i) of the Code, be delayed for the six-month period immediately following such "separation from service" (or, if earlier, until the specified employee's death) and will instead be paid (as set forth in the Award Agreement) on the day immediately following such six-month period or as soon as administratively practicable thereafter (without interest). Any payments of "nonqualified deferred compensation" under such 409A Award payable more than six months following the Participant's "separation from service" will be paid at the time or times the payments are otherwise scheduled to be made.

(d)    *Separate Payments.* If an Award includes a "series of installment payments" within the meaning of Section 409A of the Code, the Participant's right to the series of installment payments will be treated as a right to a series of separate payments and not as a right to a single payment and, if an Award includes "dividend equivalents" within the meaning of Section 409A of the Code, the Participant's right to receive the dividend equivalents will be treated separately from the right to other amounts under the Award.

(e)    *Change in Control.* Any payment due under a 409A Award upon a Change in Control of the Company will be paid only if such Change in Control constitutes a "change in ownership" or "change in effective control" within the meaning of Section 409A of the Code, and in the event that such Change in Control does not constitute a "change in the ownership" or "change in the effective control" within the meaning of Section 409A of the Code, such 409A Award for which payment is due upon a Change in Control of the Company will vest upon the Change in Control and any payment will be delayed until the first compliant date under Section 409A of the Code.

16.6    *Employees Based Outside of the United States.* Notwithstanding any provision of this Plan to the contrary, in order to comply with the laws in other countries in which the Company or any Employer (or the Affiliates and/or its subsidiaries of an Employer) operate or have employees or Directors, the Committee, in its sole discretion, shall, in addition to the administrative authority set forth in Section 3.3 of this Plan, have the power and authority to: (a) determine which Affiliates and subsidiaries, if any, may be covered by this Plan in accordance with all applicable laws; (b) determine which employees and/or Directors of an Employer outside the United States are eligible to participate in this Plan; (c) modify the terms and conditions of any Award granted to employees and/or Directors outside the United States, if any, to comply with applicable foreign laws; (d) establish sub-plans and

modify exercise procedures and other terms and procedures, to the extent such actions may be necessary or advisable; and (e) take any action, before or after an Award is made, that it deems advisable to obtain approval or comply with any necessary local government regulatory exemptions or approvals. Notwithstanding the above, the Committee may not take any actions hereunder, and no Awards shall be granted, that would violate applicable law. For purposes of clarity, the terms and conditions contained herein which are subject to variation in a non-U.S. jurisdiction shall be reflected in a written addendum to the Plan and/or Award Agreement for such non-U.S. jurisdiction.

16.7    *Data Privacy.* As a condition for receiving any Award, each Participant explicitly and unambiguously consents to the collection, use and transfer, in electronic or other form, of personal data as described in this Section 16.7 by and among the Company and its subsidiaries and affiliates exclusively for implementing, administering and managing the Participant's participation in the Plan. The Company and its subsidiaries and affiliates may hold certain personal information about a Participant, including the Participant's name, address and telephone number; birthdate; social security, insurance number or other identification number; salary; nationality; job title(s); any Shares held in the Company or its subsidiaries and affiliates; and Award details, to implement, manage and administer the Plan and Awards (the "***Data***"). The Company and its subsidiaries and affiliates may transfer the Data amongst themselves as necessary to implement, administer and manage a Participant's participation in the Plan, and the Company and its subsidiaries and affiliates may transfer the Data to third parties assisting the Company with Plan implementation, administration and management. These recipients may be located in the Participant's country, or elsewhere, and the Participant's country may have different data privacy laws and protections than the recipients' country. By accepting an Award, each Participant authorizes such recipients to receive, possess, use, retain and transfer the Data, in electronic or other form, to implement, administer and manage the Participant's participation in the Plan, including any required Data transfer to a broker or other third party with whom the Company or the Participant may elect to deposit any Shares. The Data related to a Participant will be held only as long as necessary to implement, administer, and manage the Participant's participation in the Plan. A Participant may, at any time, view the Data that the Company holds regarding such Participant, request additional information about the storage and processing of the Data regarding such Participant, recommend any necessary corrections to the Data regarding the Participant or refuse or withdraw the consents in this Section 16.7 in writing, without cost, by contacting the local human resources representative. The Company may cancel Participant's ability to participate in the Plan and, in the Committee's sole discretion, the Participant may forfeit any outstanding Awards if the Participant refuses or withdraws the consents in this Section 16.7. For more information on the consequences of refusing or withdrawing consent, Participants may contact their local human resources representative.

16.8    *Whistleblower Protection.* Nothing contained in this Plan or any Award Agreement: (i) shall be deemed to prohibit any Participant from responding to a subpoena or order of a court or other governmental authority to testify or give evidence or engaging in conduct otherwise protected by the Sarbanes-Oxley Act; (ii) shall be deemed to prohibit any Participant from providing truthful information in good faith to any federal, state, or local governmental body, agency, or official investigating an alleged violation of any antidiscrimination or other employment-related law or otherwise gathering information or evidence pursuant to any official investigation, hearing, trial, or proceeding; (iii) is intended in any way to intimidate, coerce, deter, persuade, or compensate any Participant with respect to providing, withholding, or restricting any communication whatsoever to the extent prohibited under 18 U.S.C. §§ 201, 1503, or 1512 or under any similar or related provision of state or federal law; and (iv) is intended to require any Participant to provide notice to the Company, any Affiliate or any subsidiary or an attorney of any such entity before reporting any possible violations of federal law or regulation to any governmental agency or entity ("***Whistleblower Disclosures***") or to provide notice to the Company, any Affiliate, or any subsidiary or any attorney of any such entity after any Participant has made any such Whistleblower Disclosures.

16.9    *Transfer of Employee.* The transfer of an employee of the Company or any Employer from one Employer (or Affiliate or subsidiary of an Employer) to another Employer (or Affiliate or subsidiary of the other Employer) shall not be considered a termination of employment for Plan purposes unless required by applicable law; nor shall it be considered a termination of employment if an employee is placed on military, disability or sick leave or such other leave of absence which is considered by the Committee as continuing intact the employment relationship. If an employee's employment or other service relationship is with an Affiliate or subsidiary of an Employer and that entity ceases to be an Affiliate or subsidiary of the Employer, a termination of employment shall be deemed to have occurred when the entity ceases to be an Affiliate or subsidiary of such Employer unless the

employee transfers the Employee's employment or other service relationship to the Employer or its remaining Affiliates or subsidiaries.

16.10    *Successors*. The terms of the Plan shall be binding upon the Company, and its successors and assigns.

16.11    *Tax Elections*. Each Participant shall give the Committee prompt written notice of any election made by such Participant under Section 83(b) of the Code or any similar provision thereof. Notwithstanding the preceding sentence, the Committee may condition any award on the Participant not making an election under Section 83(b) of the Code.

16.12    *No Fractional Shares*. No fractional Shares shall be issued or delivered pursuant to the Plan or any Award; in the discretion of the Committee, the Company shall forfeit the value of fractional shares or make cash payments in lieu of fractional Shares.

16.13    *Delivery of Title*. The Company shall have no obligation to issue or deliver evidence of title for Shares under the Plan prior to:

(a)    Obtaining any approvals from governmental agencies that the Company determines are necessary or advisable; and

(b)    Completing any registration or other qualification of the Shares under any applicable national or foreign law or ruling of any governmental body that the Company determines are necessary or advisable.

16.14    *Inability to Obtain Authority*. The inability of the Company (after reasonable efforts) to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and/or sale of any Awards or Shares hereunder, shall relieve the Company of any liability in respect of the failure to issue and/or sell such Awards or Shares as to which such requisite authority shall not have been obtained.

16.15    *Uncertificated Shares*. To the extent that the Plan provides for issuance of certificates to reflect the transfer of Shares, the transfer of such Shares may be effected on a noncertificated basis, to the extent not prohibited by applicable law or the rules of any stock exchange.

16.16    *Legal Construction*.

(a)    *Severability*. If any provision of this Plan or an Award Agreement is or becomes or is deemed invalid, illegal or unenforceable in any jurisdiction, or would result in the Plan or any Award Agreement not complying with any law deemed applicable by the Committee, such provision shall be construed or deemed amended to conform to applicable laws or, if it cannot be construed or deemed amended without, in the determination of the Committee, materially altering the intent of the Plan or the Award Agreement, it shall be stricken and the remainder of the Plan or the Award Agreement shall remain in full force and effect.

(b)    *Gender and Number*. Where the context permits, words in any gender shall include the other gender, words in the singular shall include the plural and words in the plural shall include the singular.

(c)    *Governing Law*. To the extent not preempted by federal law, the Plan and all Award Agreements hereunder, shall be construed in accordance with and governed by the substantive laws of the State of North Carolina, excluding any conflicts or choice or law rule or principle that might otherwise refer construction or interpretation of the Plan or the Award Agreement (as applicable) to the substantive law of any other jurisdiction. Unless otherwise provided in the applicable Award Agreement, the recipient of an Award is deemed to submit to the exclusive jurisdiction and venue of the Federal and state courts of North Carolina to resolve any and all issues that may arise out of or relate to the Plan or such Award Agreement.

(d)      *Governing Documents*. If any contradiction occurs between the Plan and any Award Agreement or other written agreement between a Participant and the Company (or any subsidiary), the Plan will govern, unless such Award Agreement or other written agreement was approved by the Committee and expressly provides that a specific provision of the Plan will not apply.

## **EXHIBIT M-3**

### **Management Incentive Plan**



## 2025 MANAGEMENT INCENTIVE COMPENSATION PLAN

### ARTICLE 1.    GENERAL PROVISIONS

*1.1    Establishment of Plan*. Wolfspeed, Inc., a North Carolina corporation (the "***Company***"), hereby establishes an incentive compensation plan to be known as the "Wolfspeed, Inc. 2025 Management Incentive Compensation Plan" (the "***Plan***"), as set forth in this document.

*1.2    Purpose of Plan*. The objectives of the Plan are to (i) attract and retain employees of the Company and its affiliates by providing competitive compensation opportunities; (ii) provide incentives to those individuals who contribute significantly to the long-term performance and growth of the Company and its affiliates; and (iii) align the long-term financial interests of employees and directors with those of the Company's shareholders.

*1.3    Types of Awards*. Awards under the Plan may be made to Eligible Participants who are employees in the form of (i) Incentive Stock Options, (ii) Nonqualified Stock Options, (iii) Stock Appreciation Rights, (iv) Restricted Stock, (v) Restricted Stock Units, (vi) Performance Shares, (vii) Performance Stock Units, (viii) Performance Units, (ix) Other Awards, or any combination of these.

*1.4    Effective Date*. The Plan was adopted by the Board of Directors of the Company on [_____], 2025 contingent on the approval of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). The Plan will become effective on the date the plan of reorganization of the Company filed with the Bankruptcy Court in connection with the Company's voluntary Chapter 11 case becomes effective in accordance with its terms (the "***Effective Date***").

### ARTICLE 2.    DEFINITIONS

Except where the context otherwise indicates, the following definitions apply:

2.1    "***409A Award***" means each Award that is subject to, and not exempt from, Section 409A of the Code.

2.2    "***Act***" means the Securities Exchange Act of 1934, as now in effect or as hereafter amended from time to time or any successor thereto. All citations to sections of the Act or rules thereunder are to such sections or rules as they may from time to time be amended or renumbered.

2.3    "***Affiliate***" means any corporation or other entity (including, but not limited to, a partnership or a limited liability company) that is affiliated with the Company through stock or equity ownership or otherwise and is designated as an Affiliate for purposes of this Plan by the Committee unless the context demands otherwise, or the term is otherwise expressly defined. For purposes of granting stock options or stock appreciation rights, an entity may not be considered an Affiliate if it results in noncompliance with Section 409A of the Code.

2.4    "***Award***" means an award granted to a Participant under the Plan that is an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Share, Performance Stock Unit, Performance Unit, Other Award, or combination of thereof.

2.5    "***Award Agreement***" or "***Agreement***" means the written or electronic agreement, notice, contract or other instrument or document evidencing an Award granted under the Plan. As determined by the Committee, each Award Agreement shall consist of either (i) a written agreement in a form approved by the Committee and executed on behalf of the Company by an officer duly authorized to act on its behalf, or (ii) an electronic notice of Award grant in a form approved by the Committee and recorded by the Company (or its designee) in an electronic recordkeeping system used for the purpose of tracking Award grants under the Plan, and if required by the Committee, executed or otherwise electronically accepted by the recipient of the Award in such form and manner as the Committee may require. The Committee may authorize any officer of the Company (other than the particular Award recipient) to execute any or all Award Agreements on behalf the Company.

2.6    "***Award Pool***" shall have the meaning set forth in Section 4.1.

2.7    "***Board***" or "***Board of Directors***" means the Board of Directors of the Company.

2.8    "***Cause***" means, unless provided otherwise in the Award Agreement: (i) "Cause" as defined in an Individual Agreement to which a Participant is a party that is then in effect, or (ii) if there is no such Individual Agreement or if it does not define Cause, termination of the Participant's employment by the Company or any other Employer because of any conduct amounting to fraud, dishonesty, willful misconduct, negligence, activities materially harmful to the reputation of the Company or an Employer, insubordination, commission of or indictment for a felony or a crime involving moral turpitude, all as determined by the Committee in good faith, including but not limited to (as determined by the Committee in good faith), the (A) Participant's breach of any agreement between the Participant and an Employer (including but not limited to any agreement regarding confidential information, noncompetition, nonsolicitation or similar covenants), (B) Participant's intentional or negligent failure to perform a reasonably requested directive or assignment or to perform his duties to an Employer substantially in accordance with the Employer's operating and personnel policies and procedures generally applicable to all of its employees, (C) Participant's misappropriation or attempted misappropriation of any of the Employer's funds or property (including but not limited to intellectual property), (D) Participant's violation of the Company's or an Employer's written policies or codes of conduct, including written policies related to discrimination, harassment, retaliation, performance of illegal or unethical activities, or ethical misconduct, (E) Participant's failure to substantially perform the Participant's material duties to the Company or an Employer (other than as a result of physical or mental illness or injury) or to comply with a lawful directive or order of the Board, in either case that has continued after the Company or Employer has provided written notice of such failure and the Participant has not cured such failure (if curable) promptly after the date of such written notice, or (F) Participant's breach of fiduciary duty with respect to the Company or an Employer.

2.9    "***Change in Control***" or "***Change of Control***" will be deemed to have occurred upon the happening of any of the following events: (a) any "Person" as defined in Section 3(a)(9) of the Act, including a "group" (as that term is used in Sections 13(d)(3) and 14(d)(2) of the Act), but excluding the Company or any of its Affiliates and any employee benefit plan sponsored or maintained by any Affiliate of the Company (including any trustee of such plan acting as trustee), who together with its "affiliates" and "associates" (as those terms are defined in Rule 12b-2 under the Act) becomes the "Beneficial Owner" (within the meaning of Rule 13d-3 under the Act) of more than 50% of the then-outstanding Shares or the combined voting power of the then-outstanding securities of the Company entitled to vote generally in the election of its directors. For purposes of calculating the number of shares or voting power held by such Person and its affiliates and associates under this clause (a), there shall be excluded any securities acquired by such Person or its affiliates or associates directly from any Affiliate of the Company; (b) a sale or other disposition of all or substantially all of the Company's assets is consummated, other than such a sale or disposition that would not have constituted a Change of Control under clause (d) below had it been structured as a merger or consolidation; (c) the shareholders of the Company approve a definitive agreement or plan to liquidate the Company; or (d) a merger or consolidation of the Company with and into another entity is consummated, unless immediately following such transaction (i) more than 50% of the members of the governing body of the surviving entity were Directors at the time of execution of the initial agreement providing for such transaction, (ii) no "Person" (as defined in clause (a) above), together with its "affiliates" and "associates" (as defined in clause (a) above), is the "Beneficial Owner" (as defined in clause (a) above), directly or indirectly, of more than 50% of the then-outstanding equity interests of the surviving entity or the combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body, and (iii) more than 50% of the then-outstanding equity interests of the surviving entity and the combined voting power of the then-outstanding equity interests of the surviving

2

entity entitled to vote generally in the election of members of its governing body is "Beneficially Owned", directly or indirectly, by all or substantially all of the individuals and entities who were the "Beneficial Owners" of the Shares immediately prior to such transaction in substantially the same proportions as their ownership immediately prior to such transaction; To the extent any Award (or any portion thereof) pursuant to this Plan that is subject to Section 409A of the Code is to be made because of the occurrence of a Change in Control, then payment shall not be made unless such Change in Control also constitutes a "change in ownership," "change in effective control," or "change in ownership of a substantial portion of the Company's assets" within the meaning of Section 409A of the Code. The Committee shall have full and final authority, which shall be exercised in its sole discretion, to determine conclusively whether a Change in Control has occurred pursuant to the above definition, the date of such Change in Control and any incidental matters relating thereto; provided that any exercise of authority in conjunction with a determination of whether a Change in Control is a "change in control event" as defined in Treasury Regulation Section 1.409A-3(i)(5) shall be consistent with such regulation.

2.10    "**Code**" means the Internal Revenue Code of 1986 and all regulations, guidance, compliance programs and other interpretative authority issued thereunder, in each case, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

2.11    "**Committee**" means the Compensation Committee of the Board or such other committee as may be appointed by the Board from time to time to administer this Plan pursuant to Article 3. All of the members of the Committee shall be "Independent Directors" within the meaning of the NYSE's listing standards (as applicable). If the Committee does not exist or cannot function for any reason, the Board may take any action under the Plan that would otherwise be the responsibility of the Committee. If any member of the Committee does not qualify as a "Non Employee Director" within the meaning of Rule 16b 3 under the Act, the Board shall appoint a subcommittee of the Committee, consisting of at least two Directors who are not also employed by the Company or any other Employer, to grant Awards to Insiders. References to the Committee in the Plan shall include and, as appropriate, apply to any such subcommittee.

2.12    "**Company**" means Wolfspeed, Inc., a North Carolina corporation, and its successors and assigns.

2.13    "**Corporate Event**" shall have the meaning set forth in Section 15.5.

2.14    "**Director**" means any individual who is a member of the Board.

2.15    "**Disability**" means, unless provided otherwise in the Award Agreement, an individual's permanent and total disability as defined in Section 22(e)(3) of the Code whereby said individual is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the preceding provisions of this Section 2.15 or anything in any Award Agreement to the contrary, to the extent any provision of this Plan or an Award Agreement would cause a payment of a 409A Award to be made because of the Participant's Disability, then there shall not be a Disability that triggers payment until the date (if any) that the Participant is disabled within the meaning of Section 409A(a)(2)(C) of the Code. Any payment that would have been made except for the application of the preceding sentence shall be made in accordance with the payment schedule that would have applied in the absence of a Disability (and other Participant rights that are tied to a Disability, such as vesting, shall not be affected by the prior sentence).

2.16    "**DRO**" means a "domestic relations order" as defined by the Code or Title I of the Employee Retirement Income Security Act of 1974, as amended, or the rules thereunder.

2.17    "**Effective Date**" shall have the meaning set forth in Section 1.4.

2.18    "**Eligible Participant**" means, subject to such limitations as may be provided by the Code, the Act or the Committee, each executive officer and other key employee of any Employer, as determined by the Committee, and any other employee of any Employer and any Outside Director, in each case, to the extent deemed an Eligible Participant hereunder by the Committee.

2.19    "***Employer***" means the Company and any entity during any period that it is a "parent corporation" or a "subsidiary corporation" with respect to the Company within the meaning of Sections 424(e) and 424(f) of the Code. With respect to all purposes of the Plan, including but not limited to, the establishment, amendment, termination, operation and administration of the Plan, the Company shall be authorized to act on behalf of all other entities included within the definition of "Employer."

2.20    "***Fair Market Value***" or "***FMV***" means the fair market value of a Share, as determined in good faith by the Committee; provided, however, that unless otherwise directed by the Committee:

(a)    if the Shares are listed on the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session;

(b)    if the Shares are listed on a national or regional securities exchange other than the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session; or

(c)    if neither (a) nor (b) applies on the given date, the fair market value of a Share on that date shall be determined in good faith by the Committee, taking into account the requirements of Section 409A of the Code and any other applicable laws, rules, or regulations.

For purposes of subsection (a) above, if the Shares are traded on more than one national securities exchange, then the following exchange shall be referenced to determine Fair Market Value: (i) the NYSE if the Shares are then traded on such exchange and (ii) otherwise such other exchange on which Shares are traded as may be designated by the Committee.

Notwithstanding the foregoing but subject to the next paragraph, if the Committee determines in its discretion that an alternative definition of Fair Market Value should be used in connection with the grant, exercise, vesting, settlement or payout of any Award, it may specify such alternative definition in the Award Agreement. Such alternative definition may include a price that is based on the opening, actual, high, low, or average selling prices of a Share on the NYSE or other securities exchange on the given date, the trading date preceding the given date, the trading date next succeeding the given date, or an average of trading days.

Notwithstanding the foregoing, (i) in the case of an Option or SAR, Fair Market Value shall be determined in accordance with a definition of fair market value that permits the Award to be exempt from Section 409A of the Code; and (ii) in the case of an Option that is intended to qualify as an ISO under Section 422 of the Code, Fair Market Value shall be determined by the Committee in accordance with the requirements of Section 422 of the Code, as applicable.

2.21    "***Good Reason***" means the occurrence of any of the following, without the Participant's consent and not due to Cause: (i) a material reduction in the Participant's annual base salary or target annual bonus or (ii) the Company or an Employer requiring the Participant to relocate the Participant's principal place of business outside of a thirty-five (35) mile radius from the Participant's current principal place of employment; provided, however, that the Participant shall only have Good Reason if the Participant provides notice to the Company or Employer of the existence of the event or circumstances constituting Good Reason specified in either of the preceding clauses within ninety (90) days of the initial existence of such event or circumstances and if such event or circumstances are not cured within thirty (30) days after the Participant gives such written notice. If the Participant initiates a termination of employment for Good Reason, the actual date on which employment is terminated must occur within thirty (30) days after expiration of the cure period. The Participant's failure to timely give notice of the occurrence of a specific event that would otherwise constitute Good Reason shall not constitute a waiver of the Participant's right to give notice of any new subsequent event that would constitute Good Reason that occurs after such prior event (regardless of whether the new subsequent event is of the same or different nature as the preceding event). The Participant's actions approving in writing (or by such other means as is reliable and verifiable) any change, reduction, requirement or occurrence (that

otherwise may be considered Good Reason) in the Participant's role as with the Company shall be considered consent for the purposes of this Good Reason definition.

2.22    "***Greater Than 10% Stockholder***" means a Participant who owns (within the meaning of Section 424(d) of the Code) stock of the Company possessing more than ten percent (10%) of the total combined voting power of all classes of stock of the Company or any "parent" or "subsidiary" (within the meaning of Section 424(e) or (f) of the Code, respectively), determined at the time an Option is granted.

2.23    "***Incentive Stock Option***" or "***ISO***" means an Option granted to an Eligible Participant under Article 5 which is designated as an Incentive Stock Option and intended to meet the requirements of Section 422 of the Code.

2.24    "***Individual Agreement***" means a written agreement between a Participant and the Company or any other Employer relating to employment by the Company or other Employer or to service as an Outside Director of the Company (other than an Award Agreement).

2.25    "***Initial MIP Grants***" shall mean the Awards that are granted to Eligible Individuals upon, or as soon as administratively practicable following, the Effective Date in accordance with the terms and conditions set forth in the Restructuring Support Agreement.

2.26    "***Insider***" shall mean an individual who is, on the relevant date, subject to the reporting requirements of Section 16(a) of the Act.

2.27    "***Nonqualified Stock Option***" or "***NQSO***" means an Option granted to an Eligible Participant under Article 5 which is not intended to meet the requirements of Section 422 of the Code or that otherwise does not meet such requirements.

2.28    "***NYSE***" means the New York Stock Exchange or its successor.

2.29    "***Option***" means an Incentive Stock Option or a Nonqualified Stock Option. An Option shall be designated in the applicable Award Agreement as either an Incentive Stock Option or a Nonqualified Stock Option, and in the absence of such designation, shall be treated as a Nonqualified Stock Option. Furthermore, any Option that is initially intended to be and is designated as an Incentive Stock Option but does not meet the requirements of Section 422 of the Code for any reason shall be treated as a Nonqualified Stock Option with respect to all or such portion that does not qualify as an Incentive Stock Option per Article 5.

2.30    "***Option Price***" means the price at which a Participant may purchase a Share pursuant to an Option.

2.31    "***Other Award***" means any form of equity-based or equity-related award, other than an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Stock or Performance Unit, that is granted pursuant to Article 9.

2.32    "***Outside Director***" means a member of the Board who is not an employee of the Company or any other Employer.

2.33    "***Participant***" means an Eligible Participant to whom an Award has been granted.

2.34    "***Performance Period***" shall have the meaning set forth in Section 8.2.

2.35    "***Performance Share***" means an Award under Article 8 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.36     "*Performance Unit*" means an Award under Article 8 that has a value set by the Committee (or that is determined by reference to a valuation formula specified by the Committee), which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.37     "*Plan*" means this Wolfspeed, Inc. 2025 Management Incentive Compensation Plan set forth in this document and as it may be amended from time to time.

2.38     "*Reimbursement Expenses*" shall have the meaning set forth in Section 3.6.

2.39     "*Restricted Stock*" means an Award of Shares under Article 7, which Shares are issued with such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Shares, to sell, transfer, pledge or assign such Shares, to vote such Shares, and/or to receive any cash dividends with respect to such Shares, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.40     "*Restricted Stock Unit*" means an Award under Article 7 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, and that has such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Awards, to sell, transfer, pledge or assign such Awards, and/or to receive any cash dividend equivalents with respect to such Awards, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.41     "*Restriction Period*" means the period during which Restricted Stock or Restricted Stock Units are subject to one or more restrictions that will lapse based on the passage of time, the achievement of performance goals, or the occurrence of another event or events, as determined by the Committee and specified in the applicable Award Agreement.

2.42     "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement by and among the Company, Wolfspeed Texas LLC and the Consenting Creditors (as defined therein), dated June 22, 2025, including all exhibits, annexes and schedules attached thereto (as may be amended, supplemented or modified prior to the Effective Date). All references in the Plan to the Restructuring Support Agreement and the terms thereof shall be to the Restructuring Support Agreement as in effect immediately prior to any termination thereof and shall apply irrespective of any such termination.

2.43     "*SAR Price*" means the amount that is subtracted from the Fair Market Value of a Share at the time of exercise of a SAR to determine the amount payable, if any, upon exercise of the SAR.

2.44     "*Share*" means one share of common stock, par value $[____] per share, of the Company, as such Share may be adjusted pursuant to the provisions of Section 4.4.

2.45     "*Stock Appreciation Right*" or "*SAR*" means an Award granted under Article 6 which provides for an amount payable in Shares and/or cash, as determined by the Committee, equal to the excess of the Fair Market Value of a Share on the day the Stock Appreciation Right is exercised over the SAR Price.

2.46     "*Tandem SAR*" shall have the meaning set forth in Section 6.1.

2.47     "*Termination of Service*" means, unless provided otherwise in the Award Agreement, the discontinuance of employment of a Participant with the Employer for any reason, whether voluntary or involuntary, or in the case of an Outside Director, the discontinuance of services to the Company by an Outside Director, for any reason, whether voluntary or involuntary. Notwithstanding the foregoing, if a Participant becomes a consultant or independent contractor providing services to an Employer immediately upon terminating service as an employee, such seamless continuation of service as a consultant or contractor shall constitute a continuation of service with respect to

Awards granted to the Participant while he or she served as an employee. Furthermore, if an Outside Director becomes an employee of the Company or any other Employer before or upon terminating service as an Outside Director, such employment will constitute a continuation of service with respect to Awards granted to the Participant while he or she served as a member of the Board. The determination of whether a Participant has discontinued employment or service shall be made by the Committee in its sole discretion. "Termination of Employment" as used in an Award Agreement shall mean Termination of Service and vice-versa.

## ARTICLE 3.    ADMINISTRATION

3.1    *Composition of Committee*. This Plan shall be administered by the Committee. The Committee shall consist of two or more Outside Directors who shall be appointed by the Board. The Board shall fill vacancies on the Committee and may from time to time remove or add members of the Committee. Except with respect to Awards to Outside Directors under Article 10, the Board, in its sole discretion, may exercise any authority of the Committee under this Plan in lieu of the Committee's exercise thereof and in such instances references herein to the Committee shall refer to the Board of Directors. Unless the Board directs otherwise, the Compensation Committee of the Board shall serve as the Committee.

3.2    *Authority of the Committee*.

(a)    The Committee shall have full and exclusive discretionary power to interpret the terms and intent of the Plan and any Award Agreement or other agreement or document ancillary to or in connection with this Plan as well as the right and power to construe and administer the Plan, to select Eligible Participants and the persons who are eligible to receive an Award, and to act in all matters pertaining to the granting of an Award and the contents of the Award Agreement evidencing the Award, including without limitation, the determination of the number of Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Performance Shares, Performance Stock Units, Performance Units or Other Awards subject to an Award and the form, terms, conditions and duration of each Award, and any amendment thereof consistent with the provisions of the Plan. The Committee may adopt such rules, regulations and procedures of general application for the administration of this Plan as it deems appropriate. The Committee shall be further authorized to act on behalf of all Affiliates and subsidiaries with respect to all purposes of the Plan.

(b)    The Committee may correct any defect, supply any omission or reconcile any inconsistency in the Plan or any Award Agreement in the manner and to the extent it shall deem desirable to carry it into effect.

(c)    In the event the Company shall assume outstanding employee benefit awards or the right or obligation to make future such awards in connection with the acquisition of another corporation or business entity, the Committee may, in its discretion, make such adjustments in the terms of Awards under the Plan as it shall deem appropriate.

(d)    The Committee shall have the discretion to determine the effect upon an Award and upon an individual's status as an employee or Outside Director under the Plan (including whether a Participant shall be deemed to have experienced a Termination of Service, or other change in status) and upon the vesting, expiration or forfeiture of an Award in the case of (i) any individual who is employed by an entity that ceases to qualify as an Employer, (ii) any leave of absence, (iii) any transfer between locations of employment with the Company and any other Employer (including Affiliates) or vice versa, (iv) any change in the Participant's status from an employee to a consultant or member of the Board of Directors, or vice versa, and (v) any employee who, at the request of the Employer or the Company, becomes employed by any partnership, joint venture, corporation or other entity not meeting the requirements of an Employer.

(e)    All actions, determinations and decisions of the Committee made or taken pursuant to grants of authority under the Plan or with respect to any questions arising in connection with the administration, operation, and interpretation of the Plan, including the severability of any and all of the provisions thereof, shall be conclusive, final and binding upon all parties, including the Company, its shareholders, Participants, Eligible Participants and their estates, beneficiaries and successors. The Committee shall consider such factors as it deems relevant to making or taking such actions, determinations and decisions including, without limitation, the recommendations or advice of any Director, officer or employee of the Company and such attorneys, consultants and

accountants as it may select. A Participant or other holder of an Award may contest an action, determination or decision by the Committee with respect to such person or Award only on the grounds that such action, determination or decision was arbitrary or capricious or was unlawful, and any review of such action, determination or decision shall be limited to determining whether the Committee's decision or action was arbitrary or capricious or was unlawful.

    3.3    *Rules for Foreign Jurisdictions*. Notwithstanding anything in the Plan to the contrary, the Committee may, in its sole discretion, amend or vary the terms of the Plan in order to conform such terms with the requirements of each non-U.S. jurisdiction where an Eligible Participant is located or to meet the goals and objectives of the Plan; establish one or more sub-plans for these purposes; and establish administrative rules and procedures to facilitate the operation of the Plan in such non-U.S. jurisdictions.

    3.4    *Delegation of Authority*. The Committee may, in its discretion, at any time and from time to time, delegate to one or more of the members of the Committee such of its powers as it deems appropriate (provided that any such delegation shall be to at least two members of the Committee with respect to Awards to Insiders). Except with respect to Awards to Insiders, the Committee may, in its discretion, at any time and from time to time, delegate to one or more persons who are not members of the Committee any or all of its authority and discretion under Section 3.2 and 3.3, to the full extent permitted by law and the rules of any exchange on which Shares are traded.

    3.5    *Award Agreements*. Each Award granted under the Plan shall be evidenced by an Award Agreement. Each Award Agreement shall be subject to and incorporate, by reference or otherwise, the applicable terms and conditions of the Plan, and any other terms and conditions, not inconsistent with the Plan, as may be directed by the Committee, including without limitation, provisions related to the consequences of Termination of Service. A copy of such document shall be provided to the Participant, and the Committee may, but need not, require that the Participant sign a copy of the Award Agreement or otherwise confirm the Participant's acceptance of the provisions of the Award Agreement. The Participant shall in any event be deemed to have accepted the provisions of an Award Agreement delivered to the Participant with respect to an Award by exercising the Award or receiving any benefits thereunder.

    3.6    *Indemnification*. In addition to such other rights of indemnification as they may have as members of the Board or as members of the Committee, the Company shall indemnify and hold harmless the members of the Committee against (i) reasonable expenses, including attorney's fees, actually and necessarily incurred in connection with the defense of any action, suit or proceeding, or in connection with any appeal thereof, to which they or any of them may be a party by reason of any action taken or failure to act under or in connection with the Plan or any Award granted thereunder, (ii) all amounts paid by them in settlement thereof, provided such settlement is approved by independent legal counsel selected by the Company, and (iii) all amounts paid by them in satisfaction of a judgment in any such action, suit or proceeding, except as to matters as to which the Committee member has been negligent or engaged in misconduct in the performance of his duties (all amounts reimbursed hereunder are referred to as the "***Reimbursement Expenses***"); provided, that within 60 days after institution of any such action, suit or proceeding, a Committee member shall in writing offer the Company the opportunity, at its own expense, to handle and defend the same. In the performance of its responsibilities with respect to the Plan, the members of the Committee shall be entitled to rely upon, and no member of the Committee shall be liable for any action taken or not taken in good faith reliance upon, information and/or advice furnished by the Company's officers or employees, the Company's accountants, or the Company's counsel. To the extent the entitlement to Reimbursement Expenses is subject to Section 409A of the Code, it applies during the lifetime of the Committee member; the Company shall pay each Reimbursement Expense no later than the end of the calendar year following the calendar year in which the Committee member incurred such Reimbursement Expense; the amount of Reimbursement Expenses available to a Committee member in one tax year will not affect the amount of Reimbursement Expenses available to the Committee member in any other tax year; and the entitlement to Reimbursement Expenses is not subject to liquidation or exchange for any other benefit.

## ARTICLE 4.    SHARES SUBJECT TO THE PLAN

    4.1    *Aggregate Limits*.

    (a)    Subject to adjustment as provided in Section 4.4, the aggregate number of Shares which may be issued pursuant to Awards under this Plan (the "***Award Pool***") shall be equal to the product calculated by multiplying ten percent (10%) by the Shares outstanding on the Effective Date calculated on a pro forma basis assuming all New 2L Convertible Notes (as defined in the Restructuring Support Agreement) are treated as having

converted into Shares on the Effective Date but excluding Shares issued upon conversion of the New Renasas 2L Takeback Convertible Notes (as defined in the Restructuring Support Agreement) and exercise of the Renesas Warrants (as defined in the Restructuring Support Agreement).

(b)     Up to [_____] Shares are available for issuance pursuant to ISOs granted under the Plan. Otherwise, the Award Pool shall be available for all types of Awards granted under the Plan; there is no maximum number of Shares per type of Award. Such Shares shall be made available from Shares authorized but unissued, including Shares purchased in the open market or in private transactions.

4.2     *Share Counting Rules*.

(a)     Each Option shall be counted as one Share subject to an Award and deducted from the Award Pool.

(b)     Each share of Restricted Stock and each Restricted Stock Unit and each Other Award that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Restricted Stock Units and Other Awards that may not be settled in Shares shall not result in a deduction from the Award Pool.

(c)     Each Performance Share or Performance Stock Unit that may be settled in Shares shall be counted as one Share subject to an Award, based on the number of Shares that would be paid under the Performance Share or Performance Stock Unit for achievement of target performance, and deducted from the Award Pool. Each Performance Unit that may be settled in Shares shall be counted as a number of Shares subject to an Award, based on the number of Shares that would be paid under the Performance Unit for achievement of target performance, with the number determined by dividing the value of the Performance Unit at the time of grant by the Fair Market Value of a Share at the time of grant, and this number shall be deducted from the Award Pool. In both cases, in the event that the Award is later settled based on above-target performance, the number of Shares corresponding to the above-target performance, calculated pursuant to the applicable methodology specified above, shall be deducted from the Award Pool at the time of such settlement; in the event that the Award is later settled upon below-target performance, the number of Shares corresponding to the below-target performance, calculated pursuant to the applicable methodology specified above, shall be added back to the Award Pool. Performance Shares, Performance Stock Units, and Performance Units that may not be settled in Shares shall not result in a deduction from the Award Pool.

(d)     Each Stock Appreciation Right that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Stock Appreciation Rights that may not be settled in Shares shall not result in a deduction from the Award Pool.

(e)     If for any reason any Shares awarded or subject to issuance under the Plan are not issued, or are reacquired by the Company from the Participant or the Participant's transferee, for reasons including, but not limited to: (i) a forfeiture of Restricted Stock or a Restricted Stock Unit; (ii) the termination, expiration or cancellation of an Option, Stock Appreciation Right, Performance Share, Performance Stock Unit, Performance Unit or Other Award; (iii) Shares withheld for payment of taxes pursuant to Section 14.2 (other than for an Option or Stock Appreciation Right); or (iv) settlement of an Award in cash in lieu of Shares, such Shares shall again be available for issuance pursuant to an Award under the Plan and shall be added back to the Award Pool. Notwithstanding anything herein to the contrary: (i) Shares with respect to which a Stock Appreciation Right under the Plan is exercised; (ii) Shares tendered, withheld, or subject to an Option or Stock Appreciation Right granted under the Plan surrendered in connection with the payment of the Option Price upon exercise of an Option or Stock Appreciation Right, if applicable, or in connection with the Company's tax withholding obligations with respect to Options or stock-settled Stock Appreciation Rights granted under the Plan; (iii) Shares not issued upon the net settlement or net exercise of a stock-settled Stock Appreciation Right under the Plan; and (iv) Shares purchased by the Company with proceeds from the exercise of Options or Stock Appreciation Rights granted under the Plan shall not thereafter be available for issuance under the Plan nor added back to the Award Pool.

4.3     *Outside Director Award Limits*. Subject to adjustment as provided in Section 4.4, the aggregate grant date fair value (computed as of the Date of Grant in accordance with applicable financial accounting rules) of

all Awards granted to any Outside Director during any single fiscal year, taken together with any cash fees paid to such Outside Director during such fiscal year, shall not exceed $1,000,000.

    *4.4    Adjustment of Shares*. If any change in corporate capitalization, such as a stock split, reverse stock split, or stock dividend; or any corporate transaction such as a reorganization, reclassification, merger or consolidation or separation, including a spin-off, of the Company or sale or other disposition by the Company of all or a portion of its assets, any other change in the Company's corporate structure, or any distribution to shareholders (other than an ordinary cash dividend) results in the outstanding Shares, or any securities exchanged therefore or received in their place, being exchanged for a different number or class of shares or other securities of the Company, or for shares of stock or other securities of any other corporation; or new, different or additional shares or other securities of the Company or of any other corporation being received by the holders of outstanding Shares; then the Committee shall make equitable adjustments, as it determines are necessary and appropriate, in:

    (a)    the number and class of stock or other securities that comprise the Award Pool as set forth in Section 4.1;

    (b)    the limitations on the aggregate number of Awards that may be granted in any one fiscal year to any one Participant may be provided for herein or pursuant to an Award Agreement;

    (c)    the number and class of stock or other securities subject to outstanding Awards, and which have not been issued or transferred under outstanding Awards;

    (d)    the Option Price under outstanding Options, the SAR Price under outstanding Stock Appreciation Rights and the number of Shares to be transferred in settlement of outstanding Options and Stock Appreciation Rights; and

    (e)    the terms, conditions or restrictions of any Award and Award Agreement, including the price payable for the acquisition of Shares.

    It is intended that, if possible, any adjustments contemplated above shall be made in a manner that satisfies applicable legal requirements, as well as applicable requirements with respect to taxation (including, without limitation and as applicable in the circumstances, Sections 424 and 409A of the Code) and accounting (so as to not trigger any charge to earnings with respect to such adjustment).

    Without limiting the generality of the above, any good faith determination by the Committee as to whether an adjustment is required in the circumstances and the extent and nature of any such adjustment shall be final, conclusive and binding on all persons.

    Subject to the provisions of Article 15 and notwithstanding anything else herein to the contrary, without affecting the number of Shares reserved or available hereunder, the Committee may authorize the issuance or assumption of benefits under this Plan in connection with any merger, consolidation, acquisition of property or stock, or reorganization upon such terms and conditions as it may deem appropriate, subject to compliance with the rules under Sections 409A, 422 and 424 of the Code, as and where applicable.

**ARTICLE 5.    STOCK OPTIONS**

    *5.1    Grant of Options*. Subject to the provisions of the Plan, Options may be granted to Eligible Participants at any time and from time to time as shall be determined by the Committee. The Committee shall have sole discretion in determining the number of Shares subject to Options granted to each Participant. The Committee may grant a Participant ISOs, NQSOs or a combination thereof, and may vary such Awards among Participants; provided that only employees may be granted ISOs. Notwithstanding anything in this Article 5 to the contrary, except for Options that are specifically designated as intended to be subject to Section 409A of the Code, Options may only be granted to individuals who provide direct services on the date of grant of the Option to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-l(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of

this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised Options granted under the Plan.

5.2    *Award Agreement*. Each Option grant shall be evidenced by an Award Agreement that shall specify the Option Price, the duration of the Option, the number of Shares to which the Option pertains, the conditions upon which the Option shall become vested and exercisable and such other provisions as the Committee shall determine. The Award Agreement shall further specify whether the Award is intended to be an ISO or an NQSO. Any portion of an Option that is not designated as an ISO or otherwise fails or is not qualified as an ISO (even if designated as an ISO) shall be an NQSO.

5.3    *Option Price*. Subject to Section 5.8, the Option Price for each grant of an Option shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted. Notwithstanding the prior sentence, an Option may be granted with an Option Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted if such Option is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such Option Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the Option from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the Option is granted).

5.4    *Duration of Options*. Each Option shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any Option that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such Option to the extent permitted by Sections 409A and 422 of the Code, or other applicable law; and provided, further, that no Option shall be exercisable later than the tenth (10th) anniversary of its grant date or, in the case of an ISO granted to a Greater Than 10% Stockholder, the fifth (5th) anniversary of its grant date.

5.5    *Exercise of Options*. Options granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company, a subsidiary or any other Employer, to the extent permitted by applicable law, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Deferral of Option gains is not permitted.

5.6    *Payment*. Options shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the Option is to be exercised and satisfying any requirements that the Committee may establish in or pursuant to the Award Agreement from time to time, together with, (a) payment in full of the Option Price for the number of Shares for which the Option is exercised, and (b) satisfaction in full of any withholding obligations for Tax-Related Items in a manner specified in Article 13. The Option Price shall be payable to the Company either: (a) in cash, (b) in a cash equivalent approved by the Committee, (c) if approved by the Committee, by tendering previously acquired Shares (or delivering a certification or attestation of ownership of such Shares) having an aggregate Fair Market Value at the time of exercise equal to the total Option Price (provided that the tendered Shares must have been held by the Participant for any period required by the Committee), (d) by a combination of (a), (b) and/or (c), and (e) any other method expressly approved or accepted by the Committee in the Committee's sole discretion. The Committee also may allow cashless exercises as permitted under Regulation T of the Federal Reserve Board, subject to applicable securities law restrictions, or by any other means which the Committee determines to be consistent with the Plan's purpose and applicable law. Unless otherwise authorized by the Committee, no Shares shall be delivered until the full Option Price has been paid.

5.7    *Nontransferability of Options*.

(a)    *Incentive Stock Options.* No ISO granted under the Plan may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, all ISOs granted to a Participant under the Plan shall

be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an ISO be transferred for value or consideration.

(b)     *Nonqualified Stock Options.* Except as otherwise provided in a Participant's Award Agreement consistent with securities and other applicable laws, rules and regulations, no NQSO granted under this Article 5 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all NQSOs granted to a Participant under this Article 5 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an NQSO be transferred for value or consideration.

5.8     *Special Rules for ISOs.* Notwithstanding the above, in no event shall any Greater Than 10% Stockholder be eligible to receive an ISO at an Option Price less than one hundred ten percent (110%) of the Fair Market Value of a share on the date the ISO is granted or be eligible to receive an ISO that is exercisable later than the fifth (5th) anniversary date of its grant. The aggregate Fair Market Value of shares with respect to which incentive stock options (within the meaning of Section 422 of the Code) granted to a Participant are first exercisable in any calendar year (under the Plan and all other incentive stock option plans of the Employer) shall not exceed $100,000. For this purpose, Fair Market Value shall be determined with respect to a particular incentive stock option on the date on which such incentive stock option is granted. In the event that this One Hundred Thousand Dollar ($100,000) limit is exceeded with respect to a Participant, then Incentive Stock Options granted under this Plan to such Participant shall, to the extent and in the order required by Treasury Regulations under Section 422 of the Code, automatically become NQSOs granted under this Plan. Solely for purposes of determining the limit on ISOs that may be granted under the Plan, the provisions of Section 4.2 that replenish or forgo a deduction from the Award Pool shall only be applied to the extent permitted by Section 422 of the Code and regulations promulgated thereunder.

## ARTICLE 6.    STOCK APPRECIATION RIGHTS

6.1     *Grant of SARs.* Subject to the terms and provisions of the Plan, SARs may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee. A Stock Appreciation Right may be granted to an Eligible Participant in connection with an Option granted under Article 5 of this Plan or may be granted independently of any Option. A Stock Appreciation Right shall entitle the holder, within the specified period, to exercise the SAR and receive in exchange a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the SAR Price, times the number of Shares with respect to which the SAR is exercised. A SAR granted in connection with an Option (a "***Tandem SAR***") shall entitle the holder of the related Option, within the period specified for the exercise of the Option, to surrender the unexercised Option, or a portion thereof, and to receive in exchange therefore a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the Option Price, times the number of Shares under the Option, or portion thereof, which is surrendered. Notwithstanding anything in this Article 6 to the contrary, except for SARs that are specifically designated as intended to be subject to Section 409A of the Code, SARs may only be granted to individuals who provide direct services on the date of grant of the SAR to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-l(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised SARs granted under the Plan.

6.2     *Award Agreement.* Each SAR grant shall be evidenced by an Award Agreement that shall specify the SAR Price, the duration of the SAR, the number of Shares with respect to which the SAR pertains, the conditions upon which the SAR shall become vested and exercisable and such other provisions as the Committee shall determine.

6.3     *Tandem SARs.* Each Tandem SAR shall be subject to the same terms and conditions as the related Option, including limitations on transferability, shall be exercisable only to the extent such Option is exercisable and shall terminate or lapse and cease to be exercisable when the related Option terminates or lapses. The grant of Stock Appreciation Rights related to ISOs must be concurrent with the grant of the ISOs. With respect to NQSOs, the grant either may be concurrent with the grant of the NQSOs, or in connection with NQSOs previously granted under Article 5, which are unexercised and have not terminated or lapsed.

6.4     *Payment*. The Committee shall have sole discretion to determine in each Award Agreement whether the payment with respect to the exercise of an SAR will be in the form of cash, Shares, or any combination thereof. If payment is to be made in Shares, the number of Shares shall be determined based on the Fair Market Value of a Share on the date of exercise.

6.5     *SAR Price*. The SAR Price for each grant of a SAR shall be determined by the Committee and shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted. Notwithstanding the prior sentence, a SAR may be granted with a SAR Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted if such SAR is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such SAR Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the SAR from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the SAR is granted).

6.6     *Duration of SARs*. Each SAR shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any SAR that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such SAR; and provided, further, that no SAR shall be exercisable later than the tenth (10th) anniversary of its grant date.

6.7     *Exercise of SARs*. SARs granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company or any Employer, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Upon exercise of a Tandem SAR, the number of Shares subject to exercise under the related Option shall automatically be reduced by the number of Shares represented by the Option or portion thereof which is surrendered. SARs shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the SAR is to be exercised and satisfying any requirements that the Committee may apply from time to time.

6.8     *Nontransferability of SARs*. Except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee consistent with securities and other applicable laws, rules and regulations, no SAR granted under this Article 6 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all SARs granted to a Participant under this Article 6 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may a SAR be transferred for value or consideration.

## ARTICLE 7.     RESTRICTED STOCK AND RESTRICTED STOCK UNITS

7.1     *Grants of Restricted Stock and Restricted Stock Units*. Restricted Stock Awards and Restricted Stock Unit Awards may be made to Eligible Participants as an incentive for the performance of future services that the Committee in its sole discretion determines will contribute materially to the successful operation of the Employer. Awards of Restricted Stock or Restricted Stock Units may be made either alone or in addition to or in tandem with other Awards granted under the Plan and may be current grants of Restricted Stock or Restricted Stock Units or deferred grants of Restricted Stock or Restricted Stock Units.

7.2     *Restricted Stock/Unit Award Agreement*.

(a)     <u>In General</u>. Each Award of Restricted Stock/Units shall be evidenced by an Award Agreement that shall set forth the terms of the Award, as determined by the Committee, including, without limitation, the number of Shares of Restricted Stock or the number of Restricted Stock Units granted; the purchase price, if any, to be paid for each Share of Restricted Stock or Restricted Stock Unit, which may be more than, equal to, or less than

Fair Market Value of a Share and may be zero, subject to such minimum consideration as may be required by applicable law; any restrictions applicable to the Restricted Stock/Units such as continued service or achievement of performance goals, or both; the length of the Restriction Period and whether any circumstances, such as death, Disability, retirement (as defined in the applicable Award Agreement) or a Change in Control, will shorten or terminate the Restriction Period; and whether Restricted Stock Units will be settled in cash, Shares or a combination of cash and Shares. The Restriction Period may be of any duration. The Award may provide for lapse of the Restriction Period in monthly or longer installments over the course of the Restriction Period, as determined by the Committee in its discretion.

(b)   Execution of Award Agreements. Notwithstanding Section 3.5, a Restricted Stock or Stock Unit Award must be accepted prior to the first vesting date or such other period as the Committee may specify, by executing a Restricted Stock/Unit Award Agreement, or otherwise electronically accepting the Award, and paying whatever price, if any, is required. The prospective recipient of a Restricted Stock or Restricted Stock Unit Award shall not have any rights with respect to such Award, unless and until such recipient has executed a Restricted Stock/Unit Award Agreement and has delivered a fully executed copy thereof to the Company, or otherwise electronically accepted the Award, and has otherwise complied with the applicable terms and conditions of such Award.

7.3   Nontransferability. Except as otherwise provided in this Article 7 or in an Award Agreement, no shares of Restricted Stock or Restricted Stock Units received by a Participant shall be sold, exchanged, transferred, pledged, assigned, hypothecated or otherwise disposed of during the Restriction Period or, in the case of Restricted Stock Units, until the date of delivery of Shares or other payment with respect to the Restricted Stock Units, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement, a Participant's rights under an Award of Restricted Stock or Restricted Stock Units shall be available during the Participant's lifetime only to the Participant or the Participant's legal representative.

7.4   Certificates. Upon an Award of Restricted Stock to a Participant, Shares of Restricted Stock shall be registered in the Participant's name. Certificates, if issued, may either be held in custody by the Company until the Restriction Period expires or until restrictions thereon otherwise lapse and/or be issued to the Participant and registered in the name of the Participant, bearing an appropriate restrictive legend and remaining subject to appropriate stop-transfer orders. If required by the Committee, the Participant shall deliver to the Company one or more stock powers endorsed in blank relating to the Restricted Stock. If and when the Restriction Period expires without a prior forfeiture of the Restricted Stock subject to such Restriction Period, unrestricted certificates for such shares shall be delivered to the Participant.

7.5   Dividends and Other Distributions. Except as provided in this Article 7 or in the Award Agreement, a Participant receiving a Restricted Stock Award shall have, with respect to such Award, all of the rights of a shareholder of the Company, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and the right to receive any dividends; provided, however, that, in all cases, (i) any dividends or other distributions on such Shares of Restricted Stock during the Restriction Period shall be either automatically deferred and reinvested in additional Shares of Restricted Stock or paid to the Company for the account of the Participant, in either case subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividends and other distributions shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with Section 409A of the Code. The Committee shall determine whether interest, if any, shall be paid on such amounts, the rate of any such interest, and the other terms applicable to such amounts (again, provided that all such terms shall, to the extent required, comply with Section 409A of the Code). A Participant receiving a Restricted Stock Unit Award shall not possess voting rights and shall accrue dividend equivalents on such Restricted Stock Units only to the extent provided in the Award Agreement relating to the Award; provided, however, that in all cases (i) any dividend equivalents payable on such Restricted Stock Unit Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

7.6   Short-Term Deferral. To the extent an Award described in this Section is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the

14

satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date on which there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

## ARTICLE 8.    PERFORMANCE SHARES AND UNITS

8.1    *Grant of Performance Shares / Performance Stock Units / Performance Units*. Subject to the terms and provisions of the Plan, Performance Shares, Performance Stock Units ("***PSUs***"), and Performance Units may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee.

8.2    *Value of Performance Shares / Performance Stock Units and Performance Units*. Each Performance Unit shall have an initial value that is established by the Committee at the time of grant. Each Performance Share or Performance Stock Unit shall have an initial value equal to the Fair Market Value of a Share on the date of grant. In addition to any non-performance terms applicable to the Award, the Committee shall set performance goals in its discretion which, depending on the extent to which they are met, will determine the number and/or value of Performance Shares, Performance Stock Units, Performance Units or all three, as applicable, that will be paid out to the Participant. For purposes of this Article 8, the time period during which the performance goals must be met in order to determine the degree of payout and/or vesting with respect to an Award shall be called a "***Performance Period***."

8.3    *Earning of Performance Shares / Units*. Subject to the terms of this Plan, after the applicable Performance Period has ended, the holder of Performance Shares, Performance Stock Units, or Performance Units shall be entitled to receive a payout of the number and value of Performance Shares, Performance Stock Units, or Performance Units earned by the Participant over the Performance Period, to be determined as a function of the extent to which the corresponding performance goals have been achieved and any applicable non-performance terms have been met. The Committee may provide in the Award Agreement and/or an Individual Agreement that the Performance Shares, Performance Stock Units, or Performance Units are earned notwithstanding achievement of the performance goals only: (i) in the event of the Participant's death or Disability, (ii) in the event of the Participant's "retirement" (as such term is defined in the applicable Award Agreement), (iii) in connection with a Change of Control, or (iv) pursuant to Section 15.5.

8.4    *Form and Timing of Payment of Performance Shares, Performance Stock Units, or Performance Units*. Subject to the terms of this Plan and the applicable Award Agreement, the Committee, in its sole discretion, may pay earned Performance Shares, Performance Stock Units, and Performance Units in the form of cash or Shares or other Awards (or in a combination thereof) which have an aggregate Fair Market Value equal to the value of the earned Performance Shares, Performance Stock Units, and Performance Units at the close of the applicable Performance Period. Any such Shares may be granted subject to any restrictions deemed appropriate by the Committee. The determination of the Committee with respect to the form and timing of payout of such Awards shall be set forth in the Award Agreement pertaining to the grant of the Award.

Notwithstanding the foregoing, to the extent an Award described in this Article 8 is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

8.5    *Dividends and Other Distributions*. A Participant receiving a Performance Share, Performance Stock Unit, or Performance Unit Award shall not possess voting rights. A Participant receiving a Performance Share, Performance Stock Unit, Performance Unit Award or any other Award that is subject to performance conditions shall accrue dividend equivalents on such Award only to the extent provided in the Award Agreement relating to the Award; provided, however, that (i) any dividend equivalents payable on such Performance Shares, Performance Stock Units,

Performance Units or other Award subject to performance conditions shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalent shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

8.6     *Nontransferability*. Except as otherwise provided in this Article 8 or the applicable Award Agreement, Performance Shares, Performance Stock Units, and Performance Units may not be sold, exchanged, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in the applicable Award Agreement, a Participant's rights with respect to Performance Shares, Performance Stock Units, and Performance Units shall be available during the Participant's lifetime only by the Participant or the Participant's legal representative. In no event may a Performance Share, Performance Stock Unit, or Performance Unit be transferred for value or consideration.

## ARTICLE 9.     OTHER AWARDS

The Committee shall have the authority to specify the terms and provisions of other forms of equity-based or equity-related awards not described above that the Committee determines to be consistent with the purpose of the Plan and the interests of the Company. The Other Awards may provide for cash payments based in whole or in part on the value or future value of Shares, for the acquisition or future acquisition of Shares, or any combination of the foregoing. Notwithstanding the foregoing, where the value of an Other Award is based on the difference in the value of a Share at different points in time, the grant or exercise price will not be less than 100% of the Fair Market Value of the Shares on the date of grant unless the Other Award is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that the Other Award preserves the economic benefit of the replaced award and is either exempt from or in compliance with the requirements of Section 409A of the Code. A Participant receiving an Other Award shall accrue dividend equivalents on such Other Award only to the extent provided in the Award Agreement relating to the Other Award; provided, however, that (i) any dividend equivalents payable on such Other Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Other Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

## ARTICLE 10.     PERFORMANCE MEASURES

10.1     *In General*. The Committee may, in its discretion, include performance conditions or objectives in any Award. The Committee may provide for a threshold level of performance below which no amount of compensation will be paid, and the Committee may provide for the payment of differing amounts of compensation for different levels of performance.

10.2     *Committee Determination of Achievement of Performance Goals; Adjustments*. For each Award that has been granted subject to a specified performance goal or objective, the Committee shall determine within an administratively practicable period following the end of the applicable Performance Period whether such performance goals or objectives for that Performance Period have been achieved and, if they have, the Committee shall so certify in writing and ascertain the amount payable under the applicable Award. If a performance goal or objective for a Performance Period is not achieved, the Committee in its sole discretion may nonetheless pay all or a portion of that Award based on such criteria as the Committee deems appropriate, including without limitation individual performance, Company-wide performance, or the performance of specific Employer entities or Affiliates, divisions, departments, regions, or service line or function employing the Participant.

In determining whether any performance goal or objective has been satisfied, the Committee may include or exclude any or all items that are unusual or non-recurring, including but not limited to (i) charges, costs, benefits gains or income associated with reorganizations or restructurings of the Employer (or related entities and Affiliates), discontinued operations, goodwill, other intangible assets, long-lived assets (non-cash), real estate strategy, litigation, or the resolution of litigation (e.g., settlements, judgments, or attorneys' fees), or currency or commodity fluctuations; and (ii) the effects of changes in applicable laws, regulations or accounting principles. In addition, the Committee may adjust any performance objective for a Performance Period as it deems equitable to recognize unusual or non-recurring

16

events affecting the Employer (or related entities and Affiliates), changes in tax laws or regulations or accounting procedures, mergers, acquisitions, and divestitures, or any other factors as the Committee may determine. To the extent that a performance objective is based on the price of a Share, then in the event of any stock dividend, stock split, combination of shares, recapitalization or other changes in the capital structure of the Company, any merger, consolidation, spin-off, reorganization, partial or complete liquidation or other distribution of assets (other than a normal cash dividend), issuance of rights or warrants to purchase securities or any other corporate transaction having an effect similar to any of the foregoing, the Committee shall make or provide for such adjustments in such performance objective as the Committee in the Committee's sole discretion may in good faith determine to be equitably required in order to prevent dilution or enlargement of the rights of Participants.

## ARTICLE 11.    INITIAL MIP GRANTS

Notwithstanding anything to the contrary in this Plan, the Initial MIP Grants shall be awarded to Eligible Individuals in such amounts and consistent with such vesting and other terms and conditions as are set forth in the Restructuring Support Agreement, the terms and conditions of which are incorporated herein by reference and notwithstanding any earlier termination thereof.

## ARTICLE 12.    BENEFICIARY DESIGNATION

To the extent permitted by the Committee, each Participant under the Plan may, from time to time, in the manner determined by the Committee, name any beneficiary or beneficiaries (who may be named contingently or successively) to whom any benefit under the Plan is to be paid in case of his or her death before he or she receives any or all of such benefit. If any such designation is permitted, the Committee shall, in its sole discretion, establish rules and procedures for such designations. Unless different rules and procedures are established by the Committee, each such designation shall revoke all prior designations by the same Participant, shall be in a form prescribed by the Company, and will be effective only when filed by the Participant in writing with a designated representative of the Committee during the Participant's lifetime. In the absence of any such designation, benefits remaining unpaid at the Participant's death shall be paid to the Participant's estate or legal heirs.

## ARTICLE 13.    DEFERRALS

The Committee may permit or require a Participant to defer such Participant's receipt of the payment of cash or the delivery of Shares that would otherwise be due to such Participant by virtue of lapse or waiver of restrictions with respect to Restricted Stock or Restricted Stock Units, or the satisfaction of any requirements or goals with respect to Performance Shares, Performance Stock Units, or Performance Units. If any such deferral election is required or permitted, the Committee shall, in its sole discretion, establish rules and procedures for such deferrals, and the Committee may provide for such arrangements, including conversion to another form of Award that is available under the Plan and has equivalent value, as it deems necessary in order to permit the deferral of taxes in connection with such deferral by the Participant. Any deferrals required or permitted by the Committee of Awards shall be made in compliance with Section 409A of the Code.

## ARTICLE 14.    TAX WITHHOLDING

*14.1    Tax Withholding.* The Company shall have the power and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy federal, state, and local taxes, domestic or foreign, required by law or regulation to be withheld with respect to any taxable event arising as a result of this Plan or any Award. The Company shall not be required to issue Shares or to recognize the disposition of such Shares until such obligations are satisfied.

*14.2    Share Withholding.* Except as otherwise determined by the Committee or provided in an Award Agreement, with respect to tax withholding required upon the exercise of Options or SARs, upon the lapse of restrictions on Restricted Stock or Restricted Stock Units, upon the achievement of performance goals related to Performance Shares or Performance Units, or upon any other taxable event arising as a result of or in connection with an Award granted hereunder that is settled in Shares, unless other arrangements are made with the consent of the Committee, Participants shall satisfy the withholding requirement by: (i) having the Company withhold Shares having

a Fair Market Value on the date the tax is to be determined equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee), or (ii) if approved by the Committee, authorizing the sale of Shares equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee). All such withholding arrangements shall be subject to any restrictions or limitations that the Committee, in its sole discretion, deems appropriate.

## ARTICLE 15.    AMENDMENT AND TERMINATION

15.1    *Amendment of Plan*. The Board may at any time terminate or from time to time amend the Plan in whole or in part, but, unless required by applicable law or applicable listing standard, no such action shall materially and adversely affect any rights or obligations with respect to any Awards previously granted under the Plan, unless the affected Participants consent in writing. The Company will also obtain the approval of the shareholders before amending the Plan to the extent required by Section 422 of the Code or the rules of any securities exchange or quotation or trading system on which Shares are traded or other applicable law.

15.2    *Amendment of Award; Repricing*. The Committee may, at any time, amend outstanding Awards in a manner not inconsistent with the terms of the Plan; provided, however, that if such amendment is adverse to the Participant, as determined by the Committee, the amendment shall not be effective unless and until the Participant consents, in writing, to such amendment, except as may be required by applicable law, as provided in Section 15.4 and Section 15.5, or as provided in the Award Agreement. To the extent not inconsistent with the terms of the Plan and the foregoing, the Committee may, at any time, amend an outstanding Award Agreement in a manner that is not unfavorable to the Participant without the consent of such Participant. Notwithstanding the above provision, the Committee shall not permit or effect a repricing, except in accordance with Section 4.4 or to the extent the repricing is approved by the shareholders of the Company; for this purpose, a repricing is an amendment to the terms of an outstanding Option or SAR that would reduce the Option Price or SAR Price of that Option or SAR, respectively, or a cancellation, exchange, substitution, buyout or surrender of an outstanding Option or SAR in exchange for cash, another Award or Option or SAR with an Option Price or SAR Price that is less than the Option Price or SAR Price of the original Option or SAR, respectively (or as further defined within US generally accepted accounting practices or any applicable stock exchange rule). Notwithstanding anything else in this Section 15.2, (i) no amendment of an Award Agreement shall cause an award to be subject to Section 409A of the Code, unless the Award Agreement, as amended, complies with the requirements of Section 409A of the Code, and (ii) no amendment of an Award Agreement that is subject to Section 409A of the Code shall cause such an Award Agreement (or the underlying Award) to violate Section 409A of the Code.

15.3    *Termination of Plan*. No Awards shall be granted under the Plan after the tenth anniversary of the Effective Date. However, Awards granted under the Plan on or prior to the tenth anniversary of the Effective Date shall remain outstanding beyond that date in accordance with the terms and conditions of the Plan and the Award Agreements corresponding to such Awards.

15.4    *Cancellation of Awards / Clawback*. The Committee may, in its discretion, specify in an Award Agreement or a policy that will be deemed incorporated into an Award Agreement by reference (regardless of whether such policy is established before or after the date of such Award Agreement), that a Participant's rights, payments, and benefits with respect to an Award shall be subject to reduction, cancellation, forfeiture, rescission or recoupment upon the occurrence of certain specified events, in addition to any otherwise applicable vesting, restrictions or performance conditions of an Award. Such events may include, but shall not be limited to, Termination of Service with or without Cause, breach of noncompetition, confidentiality, or other restrictive covenants that may apply to the Participant, or restatement of the Company's financial statements to reflect adverse results from those previously released financial statements, as a consequence of errors, omissions, fraud, or misconduct. In addition, all Awards under the Plan (and payments and Shares in settlement of Awards as well as any proceeds received from the disposition of such property) are subject to any clawback policy implemented, including any clawback policy adopted to comply with the requirements of applicable law, including Section 954 of the Dodd Frank Wall Street Reform and Consumer

Protection Act and any rules or regulations promulgated thereunder, Rule 10D-1 under the Act, and the NYSE's listing standards (as applicable).

15.5    *Assumption or Acceleration of Awards*. In the event of a Change in Control or any other corporate transaction to which the Committee deems this provision applicable (a "**Corporate Event**"), each Award outstanding at the time of the Corporate Event shall be assumed or an equivalent Award shall be substituted by the successor corporation or a parent or subsidiary of such successor corporation (and adjusted as appropriate), unless such successor corporation does not agree to assume the Award or to substitute an equivalent award (including a cash-based award), in which case the time- or service-based vesting of each Award shall fully accelerate and any performance- or milestone-based vesting condition shall be treated in accordance with the applicable Award Agreement. The Committee shall notify the Participant of any accelerated vesting provided in accordance with this Section 15.5 or pursuant to an applicable Award Agreement and, subject to rescission if the Corporate Event is not successfully completed within a certain period, the Option or other Award shall be exercisable as to the vested Shares subject thereto (after giving effect to any such accelerated vesting) for a period of fifteen (15) days from the date of such notice (or such other period as provided by the Committee), and, to the extent not exercised, the Option or other Award will terminate upon the expiration of such period. Alternatively, the Committee may make provision for a cash payment in settlement of any or all vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement) or the cash, securities or property deliverable to the holder of any or all vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement), based upon, to the extent relevant under the circumstances, the distribution or consideration payable to holders of Shares upon or in respect of the Corporate Event. The Committee may adopt such valuation methodologies for outstanding Awards as it deems reasonable in the event of a cash settlement and, in the case of Options, SARs or similar rights, but without limitation on other methodologies, may base such settlement solely upon the excess (if any) of the per share amount payable upon or in respect of such event over the Option Price or SAR Price, as applicable, of the Award and may cancel each Option or SAR with an Option Price or SAR Price greater than the per share amount payable upon or in respect of such event without any payment to the person holding such Option or SAR. Any actions taken under this Section 15.5 shall be valid with respect to a 409A Award only to the extent that such action complies with Section 409A of the Code.

## ARTICLE 16.    MISCELLANEOUS PROVISIONS

16.1    *Restrictions on Shares*. All certificates for Shares delivered under the Plan shall be subject to such stop-transfer orders and other restrictions as the Committee may deem advisable under the rules and regulations of the Securities and Exchange Commission, any securities exchange or quotation or trading system on which Shares are traded and any applicable federal, state, local or foreign laws, and the Committee may cause a legend or legends to be placed on any such certificates to make appropriate reference to such restrictions. In making such determination, the Committee may rely upon an opinion of counsel for the Company. Notwithstanding any other provision of the Plan, the Company shall have no liability to deliver any Shares under the Plan or make any other distribution of the benefits under the Plan unless such delivery or distribution would comply with all applicable laws (including, without limitation, the requirements of the Securities Act of 1933), and the applicable requirements of any securities exchange or quotation or trading system on which Shares are traded.

16.2    *Rights of a Shareholder*. Except as otherwise provided in Article 7 or in the applicable Restricted Stock Award Agreement, each Participant who receives an Award of Restricted Stock shall have all of the rights of a shareholder with respect to such Shares, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and receive dividends and other distributions. No Participant awarded an Option or Stock Appreciation Right shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares. Except as provided otherwise in the Plan or in an Award Agreement, no Participant awarded a Restricted Stock Unit, Performance Share, Performance Stock Unit, or Performance Unit shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares.

16.3    *No Implied Rights*. Nothing in the Plan or any Award granted under the Plan shall confer upon any Participant any right to continue in the service of the Employer, or to serve as a member of the Board, or interfere in any way with the right of the Employer to terminate his or her employment or other service relationship at any time.

Except to the extent approved by the Board, no Award granted under the Plan shall be deemed salary or compensation for the purpose of computing benefits under any employee benefit plan, severance program, or other arrangement of the Employer for the benefit of its employees. The Plan is intended to be an "unfunded" plan for incentive and deferred compensation. No Participant shall have any claim to an Award until it is actually granted under the Plan. To the extent that any person acquires a right to receive payments from the Company under the Plan, such right shall, except as otherwise provided by the Committee, be no greater than the right of an unfunded and unsecured general creditor of the Company.

16.4     *Compliance with Laws*. The Plan and the grant of Awards shall be subject to all applicable federal, state local and foreign laws, rules, and regulations and to such approvals by any government or regulatory agency as may be required. Notwithstanding any other provision of the Plan, the Plan and any Award granted or awarded to an Insider shall be subject to any additional limitations set forth in any applicable exemptive rule under Section 16 of the Act (including Rule 16b-3) that are requirements for the application of such exemptive rule. To the extent permitted by applicable law, the Plan and Awards granted or awarded hereunder shall be deemed amended to the extent necessary to conform to such applicable exemptive rule. Any provision herein relating to compliance with Rule 16b-3 under the Act shall not be applicable with respect to participation in the Plan by Participants who are not Insiders. If the Committee determines that the listing, registration or qualification upon any securities exchange or under any law of shares subject to any Award is necessary or desirable as a condition of, or in connection with, the granting of same or the issue or purchase of Shares thereunder, no such Award may be exercised in whole or in part (as applicable), no such Award may be paid out (as applicable) and no shares may be issued pursuant to such Award (as applicable) unless such listing, registration or qualification is effected free of any conditions not acceptable to the Committee.

16.5     *Section 409A*.

(a)     *General*. The Company intends that all Awards be structured to comply with, or be exempt from, Section 409A of the Code, such that no adverse tax consequences, interest, or penalties under Section 409A of the Code apply. Notwithstanding anything in the Plan or any Award Agreement to the contrary, the Committee may, without a Participant's consent, amend this Plan or Awards, adopt policies and procedures, or take any other actions (including amendments, policies, procedures and retroactive actions) as are necessary or appropriate to preserve the intended tax treatment of Awards, including any such actions intended to (i) exempt this Plan or any Award from Section 409A of the Code, or (ii) comply with Section 409A of the Code, including regulations, guidance, compliance programs and other interpretative authority that may be issued after an Award's grant date. The Company makes no representations or warranties as to an Award's tax treatment under Section 409A of the Code or otherwise. The Company will have no obligation under this Section 16.5 or otherwise to avoid the taxes, penalties or interest under Section 409A of the Code with respect to any Award and will have no liability to any Participant or any other person if any Award, compensation or other benefits under the Plan are determined to constitute noncompliant "nonqualified deferred compensation" subject to taxes, penalties or interest under Section 409A of the Code.

(b)     *Separation from Service*. Any payment or settlement of a 409A Award upon a Participant's Termination of Service will, to the extent necessary to avoid taxes under Section 409A of the Code, be made only upon the Participant's "separation from service" (within the meaning of Section 409A of the Code), whether such "separation from service" occurs upon or after the Participant's Termination of Service. For purposes of this Plan or any Award Agreement relating to any such payments or benefits, references to a "termination," "termination of employment" or like terms means a "separation from service."

(c)     *Payments to Specified Employees*. Notwithstanding any contrary provision in the Plan or any Award Agreement, any payment(s) of "nonqualified deferred compensation" required to be made under a 409A Award to a "specified employee" (as defined under Section 409A of the Code and as the Committee determines) due to such person's "separation from service" will, to the extent necessary to avoid taxes under Section 409A(a)(2)(B)(i) of the Code, be delayed for the six-month period immediately following such "separation from service" (or, if earlier, until the specified employee's death) and will instead be paid (as set forth in the Award Agreement) on the day immediately following such six-month period or as soon as administratively practicable thereafter (without interest). Any payments of "nonqualified deferred compensation" under such 409A Award payable more than six months following the Participant's "separation from service" will be paid at the time or times the payments are otherwise scheduled to be made.

(d)     *Separate Payments*. If an Award includes a "series of installment payments" within the meaning of Section 409A of the Code, the Participant's right to the series of installment payments will be treated as a right to a series of separate payments and not as a right to a single payment and, if an Award includes "dividend equivalents" within the meaning of Section 409A of the Code, the Participant's right to receive the dividend equivalents will be treated separately from the right to other amounts under the Award.

(e)     *Change in Control*. Any payment due under a 409A Award upon a Change in Control of the Company will be paid only if such Change in Control constitutes a "change in ownership" or "change in effective control" within the meaning of Section 409A of the Code, and in the event that such Change in Control does not constitute a "change in the ownership" or "change in the effective control" within the meaning of Section 409A of the Code, such 409A Award for which payment is due upon a Change in Control of the Company will vest upon the Change in Control and any payment will be delayed until the first compliant date under Section 409A of the Code.

*16.6     Employees Based Outside of the United States*. Notwithstanding any provision of this Plan to the contrary, in order to comply with the laws in other countries in which the Company or any Employer (or the Affiliates and/or its subsidiaries of an Employer) operate or have employees or Directors, the Committee, in its sole discretion, shall, in addition to the administrative authority set forth in Section 3.3 of this Plan, have the power and authority to: (a) determine which Affiliates and subsidiaries, if any, may be covered by this Plan in accordance with all applicable laws; (b) determine which employees and/or Directors of an Employer outside the United States are eligible to participate in this Plan; (c) modify the terms and conditions of any Award granted to employees and/or Directors outside the United States, if any, to comply with applicable foreign laws; (d) establish sub-plans and modify exercise procedures and other terms and procedures, to the extent such actions may be necessary or advisable; and (e) take any action, before or after an Award is made, that it deems advisable to obtain approval or comply with any necessary local government regulatory exemptions or approvals. Notwithstanding the above, the Committee may not take any actions hereunder, and no Awards shall be granted, that would violate applicable law. For purposes of clarity, the terms and conditions contained herein which are subject to variation in a non-U.S. jurisdiction shall be reflected in a written addendum to the Plan and/or Award Agreement for such non-U.S. jurisdiction.

*16.7     Data Privacy.* As a condition for receiving any Award, each Participant explicitly and unambiguously consents to the collection, use and transfer, in electronic or other form, of personal data as described in this Section 16.7 by and among the Company and its subsidiaries and affiliates exclusively for implementing, administering and managing the Participant's participation in the Plan. The Company and its subsidiaries and affiliates may hold certain personal information about a Participant, including the Participant's name, address and telephone number; birthdate; social security, insurance number or other identification number; salary; nationality; job title(s); any Shares held in the Company or its subsidiaries and affiliates; and Award details, to implement, manage and administer the Plan and Awards (the "***Data***"). The Company and its subsidiaries and affiliates may transfer the Data amongst themselves as necessary to implement, administer and manage a Participant's participation in the Plan, and the Company and its subsidiaries and affiliates may transfer the Data to third parties assisting the Company with Plan implementation, administration and management. These recipients may be located in the Participant's country, or elsewhere, and the Participant's country may have different data privacy laws and protections than the recipients' country. By accepting an Award, each Participant authorizes such recipients to receive, possess, use, retain and transfer the Data, in electronic or other form, to implement, administer and manage the Participant's participation in the Plan, including any required Data transfer to a broker or other third party with whom the Company or the Participant may elect to deposit any Shares. The Data related to a Participant will be held only as long as necessary to implement, administer, and manage the Participant's participation in the Plan. A Participant may, at any time, view the Data that the Company holds regarding such Participant, request additional information about the storage and processing of the Data regarding such Participant, recommend any necessary corrections to the Data regarding the Participant or refuse or withdraw the consents in this Section 16.7 in writing, without cost, by contacting the local human resources representative. The Company may cancel Participant's ability to participate in the Plan and, in the Committee's sole discretion, the Participant may forfeit any outstanding Awards if the Participant refuses or withdraws the consents in this Section 16.7. For more information on the consequences of refusing or withdrawing consent, Participants may contact their local human resources representative.

*16.8     Whistleblower Protection*. Nothing contained in this Plan or any Award Agreement: (i) shall be deemed to prohibit any Participant from responding to a subpoena or order of a court or other governmental authority to testify or give evidence or engaging in conduct otherwise protected by the Sarbanes-Oxley Act; (ii) shall be deemed

to prohibit any Participant from providing truthful information in good faith to any federal, state, or local governmental body, agency, or official investigating an alleged violation of any antidiscrimination or other employment-related law or otherwise gathering information or evidence pursuant to any official investigation, hearing, trial, or proceeding; (iii) is intended in any way to intimidate, coerce, deter, persuade, or compensate any Participant with respect to providing, withholding, or restricting any communication whatsoever to the extent prohibited under 18 U.S.C. §§ 201, 1503, or 1512 or under any similar or related provision of state or federal law; and (iv) is intended to require any Participant to provide notice to the Company, any Affiliate or any subsidiary or an attorney of any such entity before reporting any possible violations of federal law or regulation to any governmental agency or entity ("**Whistleblower Disclosures**") or to provide notice to the Company, any Affiliate, or any subsidiary or any attorney of any such entity after any Participant has made any such Whistleblower Disclosures.

16.9    *Transfer of Employee.* The transfer of an employee of the Company or any Employer from one Employer (or Affiliate or subsidiary of an Employer) to another Employer (or Affiliate or subsidiary of the other Employer) shall not be considered a termination of employment for Plan purposes unless required by applicable law; nor shall it be considered a termination of employment if an employee is placed on military, disability or sick leave or such other leave of absence which is considered by the Committee as continuing intact the employment relationship. If an employee's employment or other service relationship is with an Affiliate or subsidiary of an Employer and that entity ceases to be an Affiliate or subsidiary of such Employer, a termination of employment shall be deemed to have occurred when the entity ceases to be an Affiliate or subsidiary of such Employer unless the employee transfers the Employee's employment or other service relationship to the Employer or its remaining Affiliates or subsidiaries.

16.10    *Successors.* The terms of the Plan shall be binding upon the Company, and its successors and assigns.

16.11    *Tax Elections.* Each Participant shall give the Committee prompt written notice of any election made by such Participant under Section 83(b) of the Code or any similar provision thereof. Notwithstanding the preceding sentence, the Committee may condition any award on the Participant not making an election under Section 83(b) of the Code.

16.12    *No Fractional Shares.* No fractional Shares shall be issued or delivered pursuant to the Plan or any Award; in the discretion of the Committee, the Company shall forfeit the value of fractional shares or make cash payments in lieu of fractional Shares.

16.13    *Delivery of Title.* The Company shall have no obligation to issue or deliver evidence of title for Shares under the Plan prior to:

(a)    Obtaining any approvals from governmental agencies that the Company determines are necessary or advisable; and

(b)    Completing any registration or other qualification of the Shares under any applicable national or foreign law or ruling of any governmental body that the Company determines are necessary or advisable.

16.14    *Inability to Obtain Authority.* The inability of the Company (after reasonable efforts) to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and/or sale of any Awards or Shares hereunder, shall relieve the Company of any liability in respect of the failure to issue and/or sell such Awards or Shares as to which such requisite authority shall not have been obtained.

16.15    *Uncertificated Shares.* To the extent that the Plan provides for issuance of certificates to reflect the transfer of Shares, the transfer of such Shares may be effected on a noncertificated basis, to the extent not prohibited by applicable law or the rules of any stock exchange.

16.16    *Legal Construction*.

(a)    *Severability*. If any provision of this Plan or an Award Agreement is or becomes or is deemed invalid, illegal or unenforceable in any jurisdiction, or would result in the Plan or any Award Agreement not complying with any law deemed applicable by the Committee, such provision shall be construed or deemed amended to conform to applicable laws or, if it cannot be construed or deemed amended without, in the determination of the Committee, materially altering the intent of the Plan or the Award Agreement, it shall be stricken and the remainder of the Plan or the Award Agreement shall remain in full force and effect.

(b)    *Gender and Number*. Where the context permits, words in any gender shall include the other gender, words in the singular shall include the plural and words in the plural shall include the singular.

(c)    *Governing Law*. To the extent not preempted by federal law, the Plan and all Award Agreements hereunder, shall be construed in accordance with and governed by the substantive laws of the State of North Carolina, excluding any conflicts or choice or law rule or principle that might otherwise refer construction or interpretation of the Plan or the Award Agreement (as applicable) to the substantive law of any other jurisdiction. Unless otherwise provided in the applicable Award Agreement, the recipient of an Award is deemed to submit to the exclusive jurisdiction and venue of the Federal and state courts of North Carolina to resolve any and all issues that may arise out of or relate to the Plan or such Award Agreement.

(d)    *Governing Documents*. If any contradiction occurs between the Plan and any Award Agreement or other written agreement between a Participant and the Company (or any subsidiary), the Plan will govern, unless such Award Agreement or other written agreement was approved by the Committee and expressly provides that a specific provision of the Plan will not apply.

## **EXHIBIT M-4**

### **Redline of Management Incentive Plan**

Attached hereto is a redline of the Management Incentive Plan marked against the version filed as Exhibit M-2 to the Fourth Plan Supplement [Docket No. 267].



### 2025 MANAGEMENT INCENTIVE COMPENSATION PLAN

## ARTICLE 1.    GENERAL PROVISIONS

*1.1    Establishment of Plan.* Wolfspeed, Inc., a North Carolina corporation (the "***Company***"), hereby establishes an incentive compensation plan to be known as the "Wolfspeed, Inc. 2025 Management Incentive Compensation Plan" (the "***Plan***"), as set forth in this document.

*1.2    Purpose of Plan.* The objectives of the Plan are to (i) attract and retain employees of the Company and its affiliates by providing competitive compensation opportunities; (ii) provide incentives to those individuals who contribute significantly to the long-term performance and growth of the Company and its affiliates; and (iii) align the long-term financial interests of employees and directors with those of the Company's shareholders.

*1.3    Types of Awards.* Awards under the Plan may be made to Eligible Participants who are employees in the form of (i) Incentive Stock Options, (ii) Nonqualified Stock Options, (iii) Stock Appreciation Rights, (iv) Restricted Stock, (v) Restricted Stock Units, (vi) Performance Shares, (vii) Performance Stock Units, (viii) Performance Units, (ix) Other Awards, or any combination of these.

*1.4    Effective Date.* The Plan was adopted by the Board of Directors of the Company on [_____], 2025 contingent on the approval of the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "***Bankruptcy Court***"). The Plan will become effective on the date the plan of reorganization of the Company filed with the Bankruptcy Court in connection with the Company's voluntary Chapter 11 case becomes effective in accordance with its terms (the "***Effective Date***").

## ARTICLE 2.    DEFINITIONS

Except where the context otherwise indicates, the following definitions apply:

2.1    "***409A Award***" means each Award that is subject to, and not exempt from, Section 409A of the Code.

2.2    "***Act***" means the Securities Exchange Act of 1934, as now in effect or as hereafter amended from time to time or any successor thereto. All citations to sections of the Act or rules thereunder are to such sections or rules as they may from time to time be amended or renumbered.

2.3    "***Affiliate***" means any corporation or other entity (including, but not limited to, a partnership or a limited liability company) that is affiliated with the Company through stock or equity ownership or otherwise and is designated as an Affiliate for purposes of this Plan by the Committee unless the context demands otherwise, or the term is otherwise expressly defined. For purposes of granting stock options or stock appreciation rights, an entity may not be considered an Affiliate if it results in noncompliance with Section 409A of the Code.

2.4    "***Award***" means an award granted to a Participant under the Plan that is an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Share, Performance Stock Unit, Performance Unit, Other Award, or combination of thereof.

2.5        "**_Award Agreement_**" or "**_Agreement_**" means the written or electronic agreement, notice, contract or other instrument or document evidencing an Award granted under the Plan. As determined by the Committee, each Award Agreement shall consist of either (i) a written agreement in a form approved by the Committee and executed on behalf of the Company by an officer duly authorized to act on its behalf, or (ii) an electronic notice of Award grant in a form approved by the Committee and recorded by the Company (or its designee) in an electronic recordkeeping system used for the purpose of tracking Award grants under the Plan, and if required by the Committee, executed or otherwise electronically accepted by the recipient of the Award in such form and manner as the Committee may require. The Committee may authorize any officer of the Company (other than the particular Award recipient) to execute any or all Award Agreements on behalf the Company.

2.6        "**_Award Pool_**" shall have the meaning set forth in Section 4.1.

2.7        "**_Board_**" or "**_Board of Directors_**" means the Board of Directors of the Company.

2.8        "**_Cause_**" means, unless provided otherwise in the Award Agreement: (i) "Cause" as defined in an Individual Agreement to which a Participant is a party that is then in effect, or (ii) if there is no such Individual Agreement or if it does not define Cause, termination of the Participant's employment by the Company or any other Employer because of any conduct amounting to fraud, dishonesty, willful misconduct, negligence, activities materially harmful to the reputation of the Company or an Employer, insubordination, commission of or indictment for a felony or a crime involving moral turpitude, all as determined by the Committee in good faith, including but not limited to (as determined by the Committee in good faith), the (A) Participant's breach of any agreement between the Participant and an Employer (including but not limited to any agreement regarding confidential information, noncompetition, nonsolicitation or similar covenants), (B) Participant's intentional or negligent failure to perform a reasonably requested directive or assignment or to perform his duties to an Employer substantially in accordance with the Employer's operating and personnel policies and procedures generally applicable to all of its employees, (C) Participant's misappropriation or attempted misappropriation of any of the Employer's funds or property (including but not limited to intellectual property), (D) Participant's violation of the Company's or an Employer's written policies or codes of conduct, including written policies related to discrimination, harassment, retaliation, performance of illegal or unethical activities, or ethical misconduct, (E) Participant's failure to substantially perform the Participant's material duties to the Company or an Employer (other than as a result of physical or mental illness or injury) or to comply with a lawful directive or order of the Board, in either case that has continued after the Company or Employer has provided written notice of such failure and the Participant has not cured such failure (if curable) promptly after the date of such written notice, or (F) Participant's breach of fiduciary duty with respect to the Company or an Employer.

2.9        "**_Change in Control_**" or "**_Change of Control_**" will be deemed to have occurred upon the happening of any of the following events: (a) any "Person" as defined in Section 3(a)(9) of the Act, including a "group" (as that term is used in Sections 13(d)(3) and 14(d)(2) of the Act), but excluding the Company or any of its Affiliates and any employee benefit plan sponsored or maintained by any Affiliate of the Company (including any trustee of such plan acting as trustee), who together with its "affiliates" and "associates" (as those terms are defined in Rule 12b-2 under the Act) becomes the "Beneficial Owner" (within the meaning of Rule 13d-3 under the Act) of more than 50% of the then-outstanding Shares or the combined voting power of the then-outstanding securities of the Company entitled to vote generally in the election of its directors. For purposes of calculating the number of shares or voting power held by such Person and its affiliates and associates under this clause (a), there shall be excluded any securities acquired by such Person or its affiliates or associates directly from any Affiliate of the Company; (b) a sale or other disposition of all or substantially all of the Company's assets is consummated, other than such a sale or disposition that would not have constituted a Change of Control under clause (d) below had it been structured as a merger or consolidation; (c) the shareholders of the Company approve a definitive agreement or plan to liquidate the Company; or (d) a merger or consolidation of the Company with and into another entity is consummated, unless immediately following such transaction (i) more than 50% of the members of the governing body of the surviving entity were Directors at the time of execution of the initial agreement providing for such transaction, (ii) no "Person" (as defined in clause (a) above), together with its "affiliates" and "associates" (as defined in clause (a) above), is the "Beneficial Owner" (as defined in clause (a) above), directly or indirectly, of more than 50% of the then-outstanding equity interests of the surviving entity or the combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body, and (iii) more than 50% of the then-outstanding equity interests of the surviving entity and the

2

combined voting power of the then-outstanding equity interests of the surviving entity entitled to vote generally in the election of members of its governing body is "Beneficially Owned", directly or indirectly, by all or substantially all of the individuals and entities who were the "Beneficial Owners" of the Shares immediately prior to such transaction in substantially the same proportions as their ownership immediately prior to such transaction;  To the extent any Award (or any portion thereof) pursuant to this Plan that is subject to Section 409A of the Code is to be made because of the occurrence of a Change in Control, then payment shall not be made unless such Change in Control also constitutes a "change in ownership," "change in effective control," or "change in ownership of a substantial portion of the Company's assets" within the meaning of Section 409A of the Code. The Committee shall have full and final authority, which shall be exercised in its sole discretion, to determine conclusively whether a Change in Control has occurred pursuant to the above definition, the date of such Change in Control and any incidental matters relating thereto; provided that any exercise of authority in conjunction with a determination of whether a Change in Control is a "change in control event" as defined in Treasury Regulation Section 1.409A-3(i)(5) shall be consistent with such regulation.

2.10    "*Code*" means the Internal Revenue Code of 1986 and all regulations, guidance, compliance programs and other interpretative authority issued thereunder, in each case, as now in effect or as hereafter amended. All citations to sections of the Code are to such sections as they may from time to time be amended or renumbered.

2.11    "*Committee*" means the Compensation Committee of the Board or such other committee as may be appointed by the Board from time to time to administer this Plan pursuant to Article 3. All of the members of the Committee shall be "Independent Directors" within the meaning of the NYSE's listing standards (as applicable). If the Committee does not exist or cannot function for any reason, the Board may take any action under the Plan that would otherwise be the responsibility of the Committee. If any member of the Committee does not qualify as a "Non Employee Director" within the meaning of Rule 16b 3 under the Act, the Board shall appoint a subcommittee of the Committee, consisting of at least two Directors who are not also employed by the Company or any other Employer, to grant Awards to Insiders. References to the Committee in the Plan shall include and, as appropriate, apply to any such subcommittee.

2.12    "*Company*" means Wolfspeed, Inc., a North Carolina corporation, and its successors and assigns.

2.13    "*Corporate Event*" shall have the meaning set forth in Section 15.5.

2.14    "*Director*" means any individual who is a member of the Board.

2.15    "*Disability*" means, unless provided otherwise in the Award Agreement, an individual's permanent and total disability as defined in Section 22(e)(3) of the Code whereby said individual is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Notwithstanding the preceding provisions of this Section 2.15 or anything in any Award Agreement to the contrary, to the extent any provision of this Plan or an Award Agreement would cause a payment of a 409A Award to be made because of the Participant's Disability, then there shall not be a Disability that triggers payment until the date (if any) that the Participant is disabled within the meaning of Section 409A(a)(2)(C) of the Code. Any payment that would have been made except for the application of the preceding sentence shall be made in accordance with the payment schedule that would have applied in the absence of a Disability (and other Participant rights that are tied to a Disability, such as vesting, shall not be affected by the prior sentence).

2.16    "*DRO*" means a "domestic relations order" as defined by the Code or Title I of the Employee Retirement Income Security Act of 1974, as amended, or the rules thereunder.

2.17    "*Effective Date*" shall have the meaning set forth in Section 1.4.

2.18    "*Eligible Participant*" means, subject to such limitations as may be provided by the Code, the Act or the Committee, each executive officer and other key employee of any Employer, as determined by the Committee,

and any other employee of any Employer and any Outside Director, in each case, to the extent deemed an Eligible Participant hereunder by the Committee.

2.19    "*Employer*" means the Company and any entity during any period that it is a "parent corporation" or a "subsidiary corporation" with respect to the Company within the meaning of Sections 424(e) and 424(f) of the Code. With respect to all purposes of the Plan, including but not limited to, the establishment, amendment, termination, operation and administration of the Plan, the Company shall be authorized to act on behalf of all other entities included within the definition of "Employer."

2.20    "*Fair Market Value*" or "*FMV*" means the fair market value of a Share, as determined in good faith by the Committee; provided, however, that unless otherwise directed by the Committee:

(a)    if the Shares are listed on the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session;

(b)    if the Shares are listed on a national or regional securities exchange other than the NYSE on the given date, Fair Market Value on such date shall be the last sale price reported for the Shares on such system during the regular trading session on such date or, if no sale was reported during the regular trading session on such date, on the last day preceding such date on which a sale was reported during the regular trading session; or

(c)    if neither (a) nor (b) applies on the given date, the fair market value of a Share on that date shall be determined in good faith by the Committee, taking into account the requirements of Section 409A of the Code and any other applicable laws, rules, or regulations.

For purposes of subsection (a) above, if the Shares are traded on more than one national securities exchange, then the following exchange shall be referenced to determine Fair Market Value: (i) the NYSE if the Shares are then traded on such exchange and (ii) otherwise such other exchange on which Shares are traded as may be designated by the Committee.

Notwithstanding the foregoing but subject to the next paragraph, if the Committee determines in its discretion that an alternative definition of Fair Market Value should be used in connection with the grant, exercise, vesting, settlement or payout of any Award, it may specify such alternative definition in the Award Agreement. Such alternative definition may include a price that is based on the opening, actual, high, low, or average selling prices of a Share on the NYSE or other securities exchange on the given date, the trading date preceding the given date, the trading date next succeeding the given date, or an average of trading days.

Notwithstanding the foregoing, (i) in the case of an Option or SAR, Fair Market Value shall be determined in accordance with a definition of fair market value that permits the Award to be exempt from Section 409A of the Code; and (ii) in the case of an Option that is intended to qualify as an ISO under Section 422 of the Code, Fair Market Value shall be determined by the Committee in accordance with the requirements of Section 422 of the Code, as applicable.

2.21    "*Good Reason*" means the occurrence of any of the following, without the Participant's consent and not due to Cause: (i) a material reduction in the Participant's annual base salary or target annual bonus or (ii) the Company or an Employer requiring the Participant to relocate the Participant's principal place of business outside of a thirty-five (35) mile radius from the Participant's current principal place of employment; provided, however, that the Participant shall only have Good Reason if the Participant provides notice to the Company or Employer of the existence of the event or circumstances constituting Good Reason specified in either of the preceding clauses within ninety (90) days of the initial existence of such event or circumstances and if such event or circumstances are not cured within thirty (30) days after the Participant gives such written notice. If the Participant initiates a termination of employment for Good Reason, the actual date on which employment is terminated must occur within thirty (30) days after expiration of the cure period. The Participant's failure to timely give notice of the occurrence of a specific event that would otherwise constitute Good Reason shall not constitute a waiver of the Participant's right to give

4

notice of any new subsequent event that would constitute Good Reason that occurs after such prior event (regardless of whether the new subsequent event is of the same or different nature as the preceding event). The Participant's actions approving in writing (or by such other means as is reliable and verifiable) any change, reduction, requirement or occurrence (that otherwise may be considered Good Reason) in the Participant's role as with the Company shall be considered consent for the purposes of this Good Reason definition.

2.22 "***Greater Than 10% Stockholder***" means a Participant who owns (within the meaning of Section 424(d) of the Code) stock of the Company possessing more than ten percent (10%) of the total combined voting power of all classes of stock of the Company or any "parent" or "subsidiary" (within the meaning of Section 424(e) or (f) of the Code, respectively), determined at the time an Option is granted.

2.23 "***Incentive Stock Option***" or "***ISO***" means an Option granted to an Eligible Participant under Article 5 which is designated as an Incentive Stock Option and intended to meet the requirements of Section 422 of the Code.

2.24 "***Individual Agreement***" means a written agreement between a Participant and the Company or any other Employer relating to employment by the Company or other Employer or to service as an Outside Director of the Company (other than an Award Agreement).

2.25 "***Initial MIP Grants***" shall mean the Awards that are granted to Eligible Individuals upon, or as soon as administratively practicable following, the Effective Date in accordance with the terms and conditions set forth in the Restructuring Support Agreement.

2.26 "***Insider***" shall mean an individual who is, on the relevant date, subject to the reporting requirements of Section 16(a) of the Act.

2.27 "***Nonqualified Stock Option***" or "***NQSO***" means an Option granted to an Eligible Participant under Article 5 which is not intended to meet the requirements of Section 422 of the Code or that otherwise does not meet such requirements.

2.28 "***NYSE***" means the New York Stock Exchange or its successor.

2.29 "***Option***" means an Incentive Stock Option or a Nonqualified Stock Option. An Option shall be designated in the applicable Award Agreement as either an Incentive Stock Option or a Nonqualified Stock Option, and in the absence of such designation, shall be treated as a Nonqualified Stock Option. Furthermore, any Option that is initially intended to be and is designated as an Incentive Stock Option but does not meet the requirements of Section 422 of the Code for any reason shall be treated as a Nonqualified Stock Option with respect to all or such portion that does not qualify as an Incentive Stock Option per Article 5.

2.30 "***Option Price***" means the price at which a Participant may purchase a Share pursuant to an Option.

2.31 "***Other Award***" means any form of equity-based or equity-related award, other than an Option, Stock Appreciation Right, Restricted Stock, Restricted Stock Unit, Performance Stock or Performance Unit, that is granted pursuant to Article 9.

2.32 "***Outside Director***" means a member of the Board who is not an employee of the Company or any other Employer.

2.33 "***Participant***" means an Eligible Participant to whom an Award has been granted.

2.34 "***Performance Period***" shall have the meaning set forth in Section 8.2.

2.35 "***Performance Share***" means an Award under Article 8 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including

without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.36      "*Performance Unit*" means an Award under Article 8 that has a value set by the Committee (or that is determined by reference to a valuation formula specified by the Committee), which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, upon achievement of such performance objectives during the relevant Performance Period as the Committee shall establish at the time of such Award or thereafter.

2.37      "*Plan*" means this Wolfspeed, Inc. 2025 Management Incentive Compensation Plan set forth in this document and as it may be amended from time to time.

2.38      "*Reimbursement Expenses*" shall have the meaning set forth in Section 3.6.

2.39      "*Restricted Stock*" means an Award of Shares under Article 7, which Shares are issued with such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Shares, to sell, transfer, pledge or assign such Shares, to vote such Shares, and/or to receive any cash dividends with respect to such Shares, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.40      "*Restricted Stock Unit*" means an Award under Article 7 that is valued by reference to a Share, which value may be paid to the Participant by delivery of such property as the Committee shall determine, including without limitation, cash or Shares, or any combination thereof, and that has such restriction(s) as the Committee, in its sole discretion, may impose, including without limitation, any restriction on the right to retain such Awards, to sell, transfer, pledge or assign such Awards, and/or to receive any cash dividend equivalents with respect to such Awards, which restrictions may lapse separately or in combination at such time or times, in installments or otherwise, as the Committee may deem appropriate.

2.41      "*Restriction Period*" means the period during which Restricted Stock or Restricted Stock Units are subject to one or more restrictions that will lapse based on the passage of time, the achievement of performance goals, or the occurrence of another event or events, as determined by the Committee and specified in the applicable Award Agreement.

2.42      "*Restructuring Support Agreement*" means that certain Restructuring Support Agreement by and among the Company, Wolfspeed Texas LLC and the Consenting Creditors (as defined therein), dated June 22, 2025, including all exhibits, annexes and schedules attached thereto (as may be amended, supplemented or modified prior to the Effective Date). All references in the Plan to the Restructuring Support Agreement and the terms thereof shall be to the Restructuring Support Agreement as in effect immediately prior to any termination thereof and shall apply irrespective of any such termination.

2.43      "*SAR Price*" means the amount that is subtracted from the Fair Market Value of a Share at the time of exercise of a SAR to determine the amount payable, if any, upon exercise of the SAR.

2.44      "*Share*" means one share of common stock, par value $[____] per share, of the Company, as such Share may be adjusted pursuant to the provisions of Section 4.4.

2.45      "*Stock Appreciation Right*" or "*SAR*" means an Award granted under Article 6 which provides for an amount payable in Shares and/or cash, as determined by the Committee, equal to the excess of the Fair Market Value of a Share on the day the Stock Appreciation Right is exercised over the SAR Price.

2.46      "*Tandem SAR*" shall have the meaning set forth in Section 6.1.

2.47      "*Termination of Service*" means, unless provided otherwise in the Award Agreement, the discontinuance of employment of a Participant with the Employer for any reason, whether voluntary or involuntary, or in the case of an Outside Director, the discontinuance of services to the Company by an Outside Director, for any

reason, whether voluntary or involuntary. Notwithstanding the foregoing, if a Participant becomes a consultant or independent contractor providing services to an Employer immediately upon terminating service as an employee, such seamless continuation of service as a consultant or contractor shall constitute a continuation of service with respect to Awards granted to the Participant while he or she served as an employee. Furthermore, if an Outside Director becomes an employee of the Company or any other Employer before or upon terminating service as an Outside Director, such employment will constitute a continuation of service with respect to Awards granted to the Participant while he or she served as a member of the Board. The determination of whether a Participant has discontinued employment or service shall be made by the Committee in its sole discretion. "Termination of Employment" as used in an Award Agreement shall mean Termination of Service and vice-versa.

## ARTICLE 3.    ADMINISTRATION

*3.1    Composition of Committee*. This Plan shall be administered by the Committee. The Committee shall consist of two or more Outside Directors who shall be appointed by the Board. The Board shall fill vacancies on the Committee and may from time to time remove or add members of the Committee. Except with respect to Awards to Outside Directors under Article 10, the Board, in its sole discretion, may exercise any authority of the Committee under this Plan in lieu of the Committee's exercise thereof and in such instances references herein to the Committee shall refer to the Board of Directors. Unless the Board directs otherwise, the Compensation Committee of the Board shall serve as the Committee.

*3.2    Authority of the Committee*.

(a)    The Committee shall have full and exclusive discretionary power to interpret the terms and intent of the Plan and any Award Agreement or other agreement or document ancillary to or in connection with this Plan as well as the right and power to construe and administer the Plan, to select Eligible Participants and the persons who are eligible to receive an Award, and to act in all matters pertaining to the granting of an Award and the contents of the Award Agreement evidencing the Award, including without limitation, the determination of the number of Options, Stock Appreciation Rights, Restricted Stock, Restricted Stock Units, Performance Shares, Performance Stock Units, Performance Units or Other Awards subject to an Award and the form, terms, conditions and duration of each Award, and any amendment thereof consistent with the provisions of the Plan. The Committee may adopt such rules, regulations and procedures of general application for the administration of this Plan as it deems appropriate. The Committee shall be further authorized to act on behalf of all Affiliates and subsidiaries with respect to all purposes of the Plan.

(b)    The Committee may correct any defect, supply any omission or reconcile any inconsistency in the Plan or any Award Agreement in the manner and to the extent it shall deem desirable to carry it into effect.

(c)    In the event the Company shall assume outstanding employee benefit awards or the right or obligation to make future such awards in connection with the acquisition of another corporation or business entity, the Committee may, in its discretion, make such adjustments in the terms of Awards under the Plan as it shall deem appropriate.

(d)    The Committee shall have the discretion to determine the effect upon an Award and upon an individual's status as an employee or Outside Director under the Plan (including whether a Participant shall be deemed to have experienced a Termination of Service, or other change in status) and upon the vesting, expiration or forfeiture of an Award in the case of (i) any individual who is employed by an entity that ceases to qualify as an Employer, (ii) any leave of absence, (iii) any transfer between locations of employment with the Company and any other Employer (including Affiliates) or vice versa, (iv) any change in the Participant's status from an employee to a consultant or member of the Board of Directors, or vice versa, and (v) any employee who, at the request of the Employer or the Company, becomes employed by any partnership, joint venture, corporation or other entity not meeting the requirements of an Employer.

(e)    All actions, determinations and decisions of the Committee made or taken pursuant to grants of authority under the Plan or with respect to any questions arising in connection with the administration,

operation, and interpretation of the Plan, including the severability of any and all of the provisions thereof, shall be conclusive, final and binding upon all parties, including the Company, its shareholders, Participants, Eligible Participants and their estates, beneficiaries and successors. The Committee shall consider such factors as it deems relevant to making or taking such actions, determinations and decisions including, without limitation, the recommendations or advice of any Director, officer or employee of the Company and such attorneys, consultants and accountants as it may select. A Participant or other holder of an Award may contest an action, determination or decision by the Committee with respect to such person or Award only on the grounds that such action, determination or decision was arbitrary or capricious or was unlawful, and any review of such action, determination or decision shall be limited to determining whether the Committee's decision or action was arbitrary or capricious or was unlawful.

3.3     *Rules for Foreign Jurisdictions*. Notwithstanding anything in the Plan to the contrary, the Committee may, in its sole discretion, amend or vary the terms of the Plan in order to conform such terms with the requirements of each non-U.S. jurisdiction where an Eligible Participant is located or to meet the goals and objectives of the Plan; establish one or more sub-plans for these purposes; and establish administrative rules and procedures to facilitate the operation of the Plan in such non-U.S. jurisdictions.

3.4     *Delegation of Authority*. The Committee may, in its discretion, at any time and from time to time, delegate to one or more of the members of the Committee such of its powers as it deems appropriate (provided that any such delegation shall be to at least two members of the Committee with respect to Awards to Insiders). Except with respect to Awards to Insiders, the Committee may, in its discretion, at any time and from time to time, delegate to one or more persons who are not members of the Committee any or all of its authority and discretion under Section 3.2 and 3.3, to the full extent permitted by law and the rules of any exchange on which Shares are traded.

3.5     *Award Agreements*. Each Award granted under the Plan shall be evidenced by an Award Agreement. Each Award Agreement shall be subject to and incorporate, by reference or otherwise, the applicable terms and conditions of the Plan, and any other terms and conditions, not inconsistent with the Plan, as may be directed by the Committee, including without limitation, provisions related to the consequences of Termination of Service. A copy of such document shall be provided to the Participant, and the Committee may, but need not, require that the Participant sign a copy of the Award Agreement or otherwise confirm the Participant's acceptance of the provisions of the Award Agreement. The Participant shall in any event be deemed to have accepted the provisions of an Award Agreement delivered to the Participant with respect to an Award by exercising the Award or receiving any benefits thereunder.

3.6     *Indemnification*. In addition to such other rights of indemnification as they may have as members of the Board or as members of the Committee, the Company shall indemnify and hold harmless the members of the Committee against (i) reasonable expenses, including attorney's fees, actually and necessarily incurred in connection with the defense of any action, suit or proceeding, or in connection with any appeal thereof, to which they or any of them may be a party by reason of any action taken or failure to act under or in connection with the Plan or any Award granted thereunder, (ii) all amounts paid by them in settlement thereof, provided such settlement is approved by independent legal counsel selected by the Company, and (iii) all amounts paid by them in satisfaction of a judgment in any such action, suit or proceeding, except as to matters as to which the Committee member has been negligent or engaged in misconduct in the performance of his duties (all amounts reimbursed hereunder are referred to as the "***Reimbursement Expenses***"); provided, that within 60 days after institution of any such action, suit or proceeding, a Committee member shall in writing offer the Company the opportunity, at its own expense, to handle and defend the same. In the performance of its responsibilities with respect to the Plan, the members of the Committee shall be entitled to rely upon, and no member of the Committee shall be liable for any action taken or not taken in good faith reliance upon, information and/or advice furnished by the Company's officers or employees, the Company's accountants, or the Company's counsel. To the extent the entitlement to Reimbursement Expenses is subject to Section 409A of the Code, it applies during the lifetime of the Committee member; the Company shall pay each Reimbursement Expense no later than the end of the calendar year following the calendar year in which the Committee member incurred such Reimbursement Expense; the amount of Reimbursement Expenses available to a Committee member in one tax year will not affect the amount of Reimbursement Expenses available to the Committee member in any other tax year; and the entitlement to Reimbursement Expenses is not subject to liquidation or exchange for any other benefit.

**ARTICLE 4.     SHARES SUBJECT TO THE PLAN**

4.1     *Aggregate Limits*.

(a)     Subject to adjustment as provided in Section 4.4, the aggregate number of Shares which may be issued pursuant to Awards under this Plan (the "***Award Pool***") shall be equal to the product calculated by multiplying ten percent (10%) by the Shares outstanding on the Effective Date calculated on a pro forma basis assuming all New 2L Convertible Notes (as defined in the Restructuring Support Agreement) are treated as having converted into Shares on the Effective Date but excluding Shares issued upon conversion of the New Renesas 2L Takeback Convertible Notes (as defined in the Restructuring Support Agreement) and exercise of the Renesas Warrants (as defined in the Restructuring Support Agreement).

(b)     Up to [_____] Shares are available for issuance pursuant to ISOs granted under the Plan. Otherwise, the Award Pool shall be available for all types of Awards granted under the Plan; there is no maximum number of Shares per type of Award. Such Shares shall be made available from Shares authorized but unissued, including Shares purchased in the open market or in private transactions.

4.2     *Share Counting Rules*.

(a)     Each Option shall be counted as one Share subject to an Award and deducted from the Award Pool.

(b)     Each share of Restricted Stock and each Restricted Stock Unit and each Other Award that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Restricted Stock Units and Other Awards that may not be settled in Shares shall not result in a deduction from the Award Pool.

(c)     Each Performance Share or Performance Stock Unit that may be settled in Shares shall be counted as one Share subject to an Award, based on the number of Shares that would be paid under the Performance Share or Performance Stock Unit for achievement of target performance, and deducted from the Award Pool. Each Performance Unit that may be settled in Shares shall be counted as a number of Shares subject to an Award, based on the number of Shares that would be paid under the Performance Unit for achievement of target performance, with the number determined by dividing the value of the Performance Unit at the time of grant by the Fair Market Value of a Share at the time of grant, and this number shall be deducted from the Award Pool. In both cases, in the event that the Award is later settled based on above-target performance, the number of Shares corresponding to the above-target performance, calculated pursuant to the applicable methodology specified above, shall be deducted from the Award Pool at the time of such settlement; in the event that the Award is later settled upon below-target performance, the number of Shares corresponding to the below-target performance, calculated pursuant to the applicable methodology specified above, shall be added back to the Award Pool. Performance Shares, Performance Stock Units, and Performance Units that may not be settled in Shares shall not result in a deduction from the Award Pool.

(d)     Each Stock Appreciation Right that may be settled in Shares shall be counted as one Share subject to an Award and deducted from the Award Pool. Stock Appreciation Rights that may not be settled in Shares shall not result in a deduction from the Award Pool.

(e)     If for any reason any Shares awarded or subject to issuance under the Plan are not issued, or are reacquired by the Company from the Participant or the Participant's transferee, for reasons including, but not limited to: (i) a forfeiture of Restricted Stock or a Restricted Stock Unit; (ii) the termination, expiration or cancellation of an Option, Stock Appreciation Right, Performance Share, Performance Stock Unit, Performance Unit or Other Award; (iii) Shares withheld for payment of taxes pursuant to Section 14.2 (other than for an Option or Stock Appreciation Right); or (iv) settlement of an Award in cash in lieu of Shares, such Shares shall again be available for issuance pursuant to an Award under the Plan and shall be added back to the Award Pool. Notwithstanding anything herein to the contrary: (i) Shares with respect to which a Stock Appreciation Right under the Plan is exercised; (ii) Shares tendered, withheld, or subject to an Option or Stock Appreciation Right granted

9

under the Plan surrendered in connection with the payment of the Option Price upon exercise of an Option or Stock Appreciation Right, if applicable, or in connection with the Company's tax withholding obligations with respect to Options or stock-settled Stock Appreciation Rights granted under the Plan; (iii) Shares not issued upon the net settlement or net exercise of a stock-settled Stock Appreciation Right under the Plan; and (iv) Shares purchased by the Company with proceeds from the exercise of Options or Stock Appreciation Rights granted under the Plan shall not thereafter be available for issuance under the Plan nor added back to the Award Pool.

4.3     *Outside Director Award Limits*. Subject to adjustment as provided in Section 4.4, the aggregate grant date fair value (computed as of the Date of Grant in accordance with applicable financial accounting rules) of all Awards granted to any Outside Director during any single fiscal year, taken together with any cash fees paid to such Outside Director during such fiscal year, shall not exceed $1,000,000.

4.4     *Adjustment of Shares*. If any change in corporate capitalization, such as a stock split, reverse stock split, or stock dividend; or any corporate transaction such as a reorganization, reclassification, merger or consolidation or separation, including a spin-off, of the Company or sale or other disposition by the Company of all or a portion of its assets, any other change in the Company's corporate structure, or any distribution to shareholders (other than an ordinary cash dividend) results in the outstanding Shares, or any securities exchanged therefore or received in their place, being exchanged for a different number or class of shares or other securities of the Company, or for shares of stock or other securities of any other corporation; or new, different or additional shares or other securities of the Company or of any other corporation being received by the holders of outstanding Shares; then the Committee shall make equitable adjustments, as it determines are necessary and appropriate, in:

(a)     the number and class of stock or other securities that comprise the Award Pool as set forth in Section 4.1;

(b)     the limitations on the aggregate number of Awards that may be granted in any one fiscal year to any one Participant may be provided for herein or pursuant to an Award Agreement;

(c)     the number and class of stock or other securities subject to outstanding Awards, and which have not been issued or transferred under outstanding Awards;

(d)     the Option Price under outstanding Options, the SAR Price under outstanding Stock Appreciation Rights and the number of Shares to be transferred in settlement of outstanding Options and Stock Appreciation Rights; and

(e)     the terms, conditions or restrictions of any Award and Award Agreement, including the price payable for the acquisition of Shares.

It is intended that, if possible, any adjustments contemplated above shall be made in a manner that satisfies applicable legal requirements, as well as applicable requirements with respect to taxation (including, without limitation and as applicable in the circumstances, Sections 424 and 409A of the Code) and accounting (so as to not trigger any charge to earnings with respect to such adjustment).

Without limiting the generality of the above, any good faith determination by the Committee as to whether an adjustment is required in the circumstances and the extent and nature of any such adjustment shall be final, conclusive and binding on all persons.

Subject to the provisions of Article 15 and notwithstanding anything else herein to the contrary, without affecting the number of Shares reserved or available hereunder, the Committee may authorize the issuance or assumption of benefits under this Plan in connection with any merger, consolidation, acquisition of property or stock, or reorganization upon such terms and conditions as it may deem appropriate, subject to compliance with the rules under Sections 409A, 422 and 424 of the Code, as and where applicable.

## ARTICLE 5.    STOCK OPTIONS

5.1     *Grant of Options*. Subject to the provisions of the Plan, Options may be granted to Eligible Participants at any time and from time to time as shall be determined by the Committee. The Committee shall have sole discretion in determining the number of Shares subject to Options granted to each Participant. The Committee may grant a Participant ISOs, NQSOs or a combination thereof, and may vary such Awards among Participants; provided that only employees may be granted ISOs. Notwithstanding anything in this Article 5 to the contrary, except for Options that are specifically designated as intended to be subject to Section 409A of the Code, Options may only be granted to individuals who provide direct services on the date of grant of the Option to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-1(b)(5)(iii)(E)) in each entity in the chain. Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised Options granted under the Plan.

5.2     *Award Agreement*. Each Option grant shall be evidenced by an Award Agreement that shall specify the Option Price, the duration of the Option, the number of Shares to which the Option pertains, the conditions upon which the Option shall become vested and exercisable and such other provisions as the Committee shall determine. The Award Agreement shall further specify whether the Award is intended to be an ISO or an NQSO. Any portion of an Option that is not designated as an ISO or otherwise fails or is not qualified as an ISO (even if designated as an ISO) shall be an NQSO.

5.3     *Option Price*. Subject to Section 5.8, the Option Price for each grant of an Option shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted. Notwithstanding the prior sentence, an Option may be granted with an Option Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the Option is granted if such Option is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such Option Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the Option from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the Option is granted).

5.4     *Duration of Options*. Each Option shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any Option that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such Option to the extent permitted by Sections 409A and 422 of the Code, or other applicable law; and provided, further, that no Option shall be exercisable later than the tenth (10th) anniversary of its grant date or, in the case of an ISO granted to a Greater Than 10% Stockholder, the fifth (5th) anniversary of its grant date.

5.5     *Exercise of Options*. Options granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company, a subsidiary or any other Employer, to the extent permitted by applicable law, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Deferral of Option gains is not permitted.

5.6     *Payment*. Options shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the Option is to be exercised and satisfying any requirements that the Committee may establish in or pursuant to the Award Agreement from time to time, together with, (a) payment in full of the Option Price for the number of Shares for which the Option is exercised, and (b) satisfaction in full of any withholding obligations for Tax-Related Items in a manner specified in Article 13. The Option Price shall be payable to the Company either: (a) in cash, (b) in a cash equivalent approved by the Committee, (c) if approved by the Committee, by tendering previously acquired Shares (or delivering a certification or attestation of ownership of such Shares) having an aggregate Fair Market Value at the time of exercise equal to the total Option Price (provided that the tendered Shares must have been held by the

Participant for any period required by the Committee), (d) by a combination of (a), (b) and/or (c), and (e) any other method expressly approved or accepted by the Committee in the Committee's sole discretion. The Committee also may allow cashless exercises as permitted under Regulation T of the Federal Reserve Board, subject to applicable securities law restrictions, or by any other means which the Committee determines to be consistent with the Plan's purpose and applicable law. Unless otherwise authorized by the Committee, no Shares shall be delivered until the full Option Price has been paid.

5.7     *Nontransferability of Options*.

(a)     *Incentive Stock Options.* No ISO granted under the Plan may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, all ISOs granted to a Participant under the Plan shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an ISO be transferred for value or consideration.

(b)     *Nonqualified Stock Options.* Except as otherwise provided in a Participant's Award Agreement consistent with securities and other applicable laws, rules and regulations, no NQSO granted under this Article 5 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all NQSOs granted to a Participant under this Article 5 shall be exercisable during his or her lifetime only by such Participant or the Participant's legal representative. In no event may an NQSO be transferred for value or consideration.

5.8     *Special Rules for ISOs*. Notwithstanding the above, in no event shall any Greater Than 10% Stockholder be eligible to receive an ISO at an Option Price less than one hundred ten percent (110%) of the Fair Market Value of a share on the date the ISO is granted or be eligible to receive an ISO that is exercisable later than the fifth (5th) anniversary date of its grant. The aggregate Fair Market Value of shares with respect to which incentive stock options (within the meaning of Section 422 of the Code) granted to a Participant are first exercisable in any calendar year (under the Plan and all other incentive stock option plans of the Employer) shall not exceed $100,000. For this purpose, Fair Market Value shall be determined with respect to a particular incentive stock option on the date on which such incentive stock option is granted. In the event that this One Hundred Thousand Dollar ($100,000) limit is exceeded with respect to a Participant, then Incentive Stock Options granted under this Plan to such Participant shall, to the extent and in the order required by Treasury Regulations under Section 422 of the Code, automatically become NQSOs granted under this Plan. Solely for purposes of determining the limit on ISOs that may be granted under the Plan, the provisions of Section 4.2 that replenish or forgo a deduction from the Award Pool shall only be applied to the extent permitted by Section 422 of the Code and regulations promulgated thereunder.

**ARTICLE 6.     STOCK APPRECIATION RIGHTS**

6.1     *Grant of SARs*. Subject to the terms and provisions of the Plan, SARs may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee. A Stock Appreciation Right may be granted to an Eligible Participant in connection with an Option granted under Article 5 of this Plan or may be granted independently of any Option. A Stock Appreciation Right shall entitle the holder, within the specified period, to exercise the SAR and receive in exchange a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the SAR Price, times the number of Shares with respect to which the SAR is exercised. A SAR granted in connection with an Option (a "***Tandem SAR***") shall entitle the holder of the related Option, within the period specified for the exercise of the Option, to surrender the unexercised Option, or a portion thereof, and to receive in exchange therefore a payment having an aggregate value equal to the amount by which the Fair Market Value of a Share exceeds the Option Price, times the number of Shares under the Option, or portion thereof, which is surrendered. Notwithstanding anything in this Article 6 to the contrary, except for SARs that are specifically designated as intended to be subject to Section 409A of the Code, SARs may only be granted to individuals who provide direct services on the date of grant of the SAR to the Company or another entity in a chain of entities in which the Company or another such entity has a controlling interest (within the meaning of Treasury Regulation § 1.409A-l(b)(5)(iii)(E)) in each entity in the chain.

Notwithstanding any other provisions of this Plan to the contrary, Participants shall not be entitled to dividends or dividend equivalents on unexercised SARs granted under the Plan.

6.2     *Award Agreement*. Each SAR grant shall be evidenced by an Award Agreement that shall specify the SAR Price, the duration of the SAR, the number of Shares with respect to which the SAR pertains, the conditions upon which the SAR shall become vested and exercisable and such other provisions as the Committee shall determine.

6.3     *Tandem SARs*. Each Tandem SAR shall be subject to the same terms and conditions as the related Option, including limitations on transferability, shall be exercisable only to the extent such Option is exercisable and shall terminate or lapse and cease to be exercisable when the related Option terminates or lapses. The grant of Stock Appreciation Rights related to ISOs must be concurrent with the grant of the ISOs. With respect to NQSOs, the grant either may be concurrent with the grant of the NQSOs, or in connection with NQSOs previously granted under Article 5, which are unexercised and have not terminated or lapsed.

6.4     *Payment*. The Committee shall have sole discretion to determine in each Award Agreement whether the payment with respect to the exercise of an SAR will be in the form of cash, Shares, or any combination thereof. If payment is to be made in Shares, the number of Shares shall be determined based on the Fair Market Value of a Share on the date of exercise.

6.5     *SAR Price*. The SAR Price for each grant of a SAR shall be determined by the Committee and shall not be less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted. Notwithstanding the prior sentence, a SAR may be granted with a SAR Price that is less than one hundred percent (100%) of the Fair Market Value of a Share on the date the SAR is granted if such SAR is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that such SAR Price is appropriate to preserve the economic benefit of the replaced award and will not impair the exemption of the SAR from Section 409A of the Code (unless the Committee clearly and expressly foregoes such exemption at the time the SAR is granted).

6.6     *Duration of SARs*. Each SAR shall expire at such time as the Committee shall determine at the time of grant; provided, however, that the Committee may extend the term of any SAR that would otherwise expire at a time when the Participant is not permitted by applicable law or Company policy to exercise such SAR; and provided, further, that no SAR shall be exercisable later than the tenth (10th) anniversary of its grant date.

6.7     *Exercise of SARs*. SARs granted under the Plan shall be exercisable at such times and be subject to such restrictions and conditions as the Committee shall in each instance approve, including conditions related to the employment of or provision of services by the Participant with the Company or any Employer, which need not be the same for each grant or for each Participant. The Committee may provide in the Award Agreement and/or an Individual Agreement that vesting of the Award shall accelerate or other restrictions applicable to the Award shall lapse only: (i) in the event of the Participant's death, Disability, or retirement (as defined in the applicable Award Agreement), (ii) in connection with a Change of Control, or (iii) pursuant to Section 15.5. Upon exercise of a Tandem SAR, the number of Shares subject to exercise under the related Option shall automatically be reduced by the number of Shares represented by the Option or portion thereof which is surrendered. SARs shall be exercised by the delivery of written or electronic notice of exercise to the Company or its designated representative, setting forth the number of Shares with respect to which the SAR is to be exercised and satisfying any requirements that the Committee may apply from time to time.

6.8     *Nontransferability of SARs*. Except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee consistent with securities and other applicable laws, rules and regulations, no SAR granted under this Article 6 may be sold, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement or otherwise determined at any time by the Committee, all SARs granted to a Participant under this Article 6 shall be exercisable during his or her

lifetime only by such Participant or the Participant's legal representative. In no event may a SAR be transferred for value or consideration.

## ARTICLE 7.     RESTRICTED STOCK AND RESTRICTED STOCK UNITS

*7.1     Grants of Restricted Stock and Restricted Stock Units.* Restricted Stock Awards and Restricted Stock Unit Awards may be made to Eligible Participants as an incentive for the performance of future services that the Committee in its sole discretion determines will contribute materially to the successful operation of the Employer. Awards of Restricted Stock or Restricted Stock Units may be made either alone or in addition to or in tandem with other Awards granted under the Plan and may be current grants of Restricted Stock or Restricted Stock Units or deferred grants of Restricted Stock or Restricted Stock Units.

*7.2     Restricted Stock/Unit Award Agreement.*

(a)     <u>In General</u>. Each Award of Restricted Stock/Units shall be evidenced by an Award Agreement that shall set forth the terms of the Award, as determined by the Committee, including, without limitation, the number of Shares of Restricted Stock or the number of Restricted Stock Units granted; the purchase price, if any, to be paid for each Share of Restricted Stock or Restricted Stock Unit, which may be more than, equal to, or less than Fair Market Value of a Share and may be zero, subject to such minimum consideration as may be required by applicable law; any restrictions applicable to the Restricted Stock/Units such as continued service or achievement of performance goals, or both; the length of the Restriction Period and whether any circumstances, such as death, Disability, retirement (as defined in the applicable Award Agreement) or a Change in Control, will shorten or terminate the Restriction Period; and whether Restricted Stock Units will be settled in cash, Shares or a combination of cash and Shares. The Restriction Period may be of any duration. The Award may provide for lapse of the Restriction Period in monthly or longer installments over the course of the Restriction Period, as determined by the Committee in its discretion.

(b)     <u>Execution of Award Agreements</u>. Notwithstanding Section 3.5, a Restricted Stock or Stock Unit Award must be accepted prior to the first vesting date or such other period as the Committee may specify, by executing a Restricted Stock/Unit Award Agreement, or otherwise electronically accepting the Award, and paying whatever price, if any, is required. The prospective recipient of a Restricted Stock or Restricted Stock Unit Award shall not have any rights with respect to such Award, unless and until such recipient has executed a Restricted Stock/Unit Award Agreement and has delivered a fully executed copy thereof to the Company, or otherwise electronically accepted the Award, and has otherwise complied with the applicable terms and conditions of such Award.

*7.3     Nontransferability.* Except as otherwise provided in this Article 7 or in an Award Agreement, no shares of Restricted Stock or Restricted Stock Units received by a Participant shall be sold, exchanged, transferred, pledged, assigned, hypothecated or otherwise disposed of during the Restriction Period or, in the case of Restricted Stock Units, until the date of delivery of Shares or other payment with respect to the Restricted Stock Units, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in an Award Agreement, a Participant's rights under an Award of Restricted Stock or Restricted Stock Units shall be available during the Participant's lifetime only to the Participant or the Participant's legal representative.

*7.4     Certificates.* Upon an Award of Restricted Stock to a Participant, Shares of Restricted Stock shall be registered in the Participant's name. Certificates, if issued, may either be held in custody by the Company until the Restriction Period expires or until restrictions thereon otherwise lapse and/or be issued to the Participant and registered in the name of the Participant, bearing an appropriate restrictive legend and remaining subject to appropriate stop-transfer orders. If required by the Committee, the Participant shall deliver to the Company one or more stock powers endorsed in blank relating to the Restricted Stock. If and when the Restriction Period expires without a prior forfeiture of the Restricted Stock subject to such Restriction Period, unrestricted certificates for such shares shall be delivered to the Participant.

7.5     *Dividends and Other Distributions*. Except as provided in this Article 7 or in the Award Agreement, a Participant receiving a Restricted Stock Award shall have, with respect to such Award, all of the rights of a shareholder of the Company, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and the right to receive any dividends; provided, however, that, in all cases, (i) any dividends or other distributions on such Shares of Restricted Stock during the Restriction Period shall be either automatically deferred and reinvested in additional Shares of Restricted Stock or paid to the Company for the account of the Participant, in either case subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividends and other distributions shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with Section 409A of the Code. The Committee shall determine whether interest, if any, shall be paid on such amounts, the rate of any such interest, and the other terms applicable to such amounts (again, provided that all such terms shall, to the extent required, comply with Section 409A of the Code). A Participant receiving a Restricted Stock Unit Award shall not possess voting rights and shall accrue dividend equivalents on such Restricted Stock Units only to the extent provided in the Award Agreement relating to the Award; provided, however, that in all cases (i) any dividend equivalents payable on such Restricted Stock Unit Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

7.6     *Short-Term Deferral*. To the extent an Award described in this Section is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date on which there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

## ARTICLE 8.     PERFORMANCE SHARES AND UNITS

8.1     *Grant of Performance Shares / Performance Stock Units / Performance Units*. Subject to the terms and provisions of the Plan, Performance Shares, Performance Stock Units ("***PSUs***"), and Performance Units may be granted to Eligible Participants in such amounts and upon such terms, and at any time and from time to time, as shall be determined by the Committee.

8.2     *Value of Performance Shares / Performance Stock Units and Performance Units*. Each Performance Unit shall have an initial value that is established by the Committee at the time of grant. Each Performance Share or Performance Stock Unit shall have an initial value equal to the Fair Market Value of a Share on the date of grant. In addition to any non-performance terms applicable to the Award, the Committee shall set performance goals in its discretion which, depending on the extent to which they are met, will determine the number and/or value of Performance Shares, Performance Stock Units, Performance Units or all three, as applicable, that will be paid out to the Participant. For purposes of this Article 8, the time period during which the performance goals must be met in order to determine the degree of payout and/or vesting with respect to an Award shall be called a "***Performance Period***."

8.3     *Earning of Performance Shares / Units*. Subject to the terms of this Plan, after the applicable Performance Period has ended, the holder of Performance Shares, Performance Stock Units, or Performance Units shall be entitled to receive a payout of the number and value of Performance Shares, Performance Stock Units, or Performance Units earned by the Participant over the Performance Period, to be determined as a function of the extent to which the corresponding performance goals have been achieved and any applicable non-performance terms have been met. The Committee may provide in the Award Agreement and/or an Individual Agreement that the Performance Shares, Performance Stock Units, or Performance Units are earned notwithstanding achievement of the performance goals only: (i) in the event of the Participant's death or Disability, (ii) in the event of the Participant's "retirement" (as such term is defined in the applicable Award Agreement), (iii) in connection with a Change of Control, or (iv) pursuant to Section 15.5.

     *8.4*     *Form and Timing of Payment of Performance Shares, Performance Stock Units, or Performance Units*. Subject to the terms of this Plan and the applicable Award Agreement, the Committee, in its sole discretion, may pay earned Performance Shares, Performance Stock Units, and Performance Units in the form of cash or Shares or other Awards (or in a combination thereof) which have an aggregate Fair Market Value equal to the value of the earned Performance Shares, Performance Stock Units, and Performance Units at the close of the applicable Performance Period. Any such Shares may be granted subject to any restrictions deemed appropriate by the Committee. The determination of the Committee with respect to the form and timing of payout of such Awards shall be set forth in the Award Agreement pertaining to the grant of the Award.

Notwithstanding the foregoing, to the extent an Award described in this Article 8 is a 409A Award and is subject to a substantial risk of forfeiture within the meaning of Section 409A of the Code (or will be granted upon the satisfaction of a condition that constitutes such a substantial risk of forfeiture), any compensation due under the Award (or pursuant to a commitment to grant an Award) shall be paid in full not later than the 60th day following the date there is no longer such a substantial risk of forfeiture with respect to the Award (and the Participant shall have no right to designate the year of the payment), unless the Committee shall clearly and expressly provide otherwise at the time of granting the Award.

     *8.5*     *Dividends and Other Distributions*. A Participant receiving a Performance Share, Performance Stock Unit, or Performance Unit Award shall not possess voting rights. A Participant receiving a Performance Share, Performance Stock Unit, Performance Unit Award or any other Award that is subject to performance conditions shall accrue dividend equivalents on such Award only to the extent provided in the Award Agreement relating to the Award; provided, however, that (i) any dividend equivalents payable on such Performance Shares, Performance Stock Units, Performance Units or other Award subject to performance conditions shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalent shall be included in the Award Agreement related to the Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

     *8.6*     *Nontransferability*. Except as otherwise provided in this Article 8 or the applicable Award Agreement, Performance Shares, Performance Stock Units, and Performance Units may not be sold, exchanged, transferred, pledged, assigned, or otherwise alienated or hypothecated, other than by will or by the laws of descent and distribution or, subject to the Committee's consent, pursuant to a DRO. Further, except as otherwise provided in the applicable Award Agreement, a Participant's rights with respect to Performance Shares, Performance Stock Units, and Performance Units shall be available during the Participant's lifetime only by the Participant or the Participant's legal representative. In no event may a Performance Share, Performance Stock Unit, or Performance Unit be transferred for value or consideration.

## ARTICLE 9.   OTHER AWARDS

     The Committee shall have the authority to specify the terms and provisions of other forms of equity-based or equity-related awards not described above that the Committee determines to be consistent with the purpose of the Plan and the interests of the Company. The Other Awards may provide for cash payments based in whole or in part on the value or future value of Shares, for the acquisition or future acquisition of Shares, or any combination of the foregoing. Notwithstanding the foregoing, where the value of an Other Award is based on the difference in the value of a Share at different points in time, the grant or exercise price will not be less than 100% of the Fair Market Value of the Shares on the date of grant unless the Other Award is granted in replacement for an award previously granted by an entity that is assumed by the Company in a business combination, provided that the Committee determines that the Other Award preserves the economic benefit of the replaced award and is either exempt from or in compliance with the requirements of Section 409A of the Code. A Participant receiving an Other Award shall accrue dividend equivalents on such Other Award only to the extent provided in the Award Agreement relating to the Other Award; provided, however, that (i) any dividend equivalents payable on such Other Award shall be subject to the same restrictions on vesting as the underlying Award, and (ii) all terms and conditions for payment of such dividend equivalents shall be included in the Award Agreement related to the Other Award and shall, to the extent required, comply with the requirements of Section 409A of the Code.

## ARTICLE 10.    PERFORMANCE MEASURES

10.1    *In General*. The Committee may, in its discretion, include performance conditions or objectives in any Award. The Committee may provide for a threshold level of performance below which no amount of compensation will be paid, and the Committee may provide for the payment of differing amounts of compensation for different levels of performance.

10.2    *Committee Determination of Achievement of Performance Goals; Adjustments*. For each Award that has been granted subject to a specified performance goal or objective, the Committee shall determine within an administratively practicable period following the end of the applicable Performance Period whether such performance goals or objectives for that Performance Period have been achieved and, if they have, the Committee shall so certify in writing and ascertain the amount payable under the applicable Award. If a performance goal or objective for a Performance Period is not achieved, the Committee in its sole discretion may nonetheless pay all or a portion of that Award based on such criteria as the Committee deems appropriate, including without limitation individual performance, Company-wide performance, or the performance of specific Employer entities or Affiliates, divisions, departments, regions, or service line or function employing the Participant.

In determining whether any performance goal or objective has been satisfied, the Committee may include or exclude any or all items that are unusual or non-recurring, including but not limited to (i) charges, costs, benefits gains or income associated with reorganizations or restructurings of the Employer (or related entities and Affiliates), discontinued operations, goodwill, other intangible assets, long-lived assets (non-cash), real estate strategy, litigation, or the resolution of litigation (e.g., settlements, judgments, or attorneys' fees), or currency or commodity fluctuations; and (ii) the effects of changes in applicable laws, regulations or accounting principles. In addition, the Committee may adjust any performance objective for a Performance Period as it deems equitable to recognize unusual or non-recurring events affecting the Employer (or related entities and Affiliates), changes in tax laws or regulations or accounting procedures, mergers, acquisitions, and divestitures, or any other factors as the Committee may determine. To the extent that a performance objective is based on the price of a Share, then in the event of any stock dividend, stock split, combination of shares, recapitalization or other changes in the capital structure of the Company, any merger, consolidation, spin-off, reorganization, partial or complete liquidation or other distribution of assets (other than a normal cash dividend), issuance of rights or warrants to purchase securities or any other corporate transaction having an effect similar to any of the foregoing, the Committee shall make or provide for such adjustments in such performance objective as the Committee in the Committee's sole discretion may in good faith determine to be equitably required in order to prevent dilution or enlargement of the rights of Participants.

## ARTICLE 11.    INITIAL MIP GRANTS

Notwithstanding anything to the contrary in this Plan, the Initial MIP Grants shall be awarded to Eligible Individuals in such amounts and consistent with such vesting and other terms and conditions as are set forth in the Restructuring Support Agreement, the terms and conditions of which are incorporated herein by reference and notwithstanding any earlier termination thereof.

## ARTICLE 12.    BENEFICIARY DESIGNATION

To the extent permitted by the Committee, each Participant under the Plan may, from time to time, in the manner determined by the Committee, name any beneficiary or beneficiaries (who may be named contingently or successively) to whom any benefit under the Plan is to be paid in case of his or her death before he or she receives any or all of such benefit. If any such designation is permitted, the Committee shall, in its sole discretion, establish rules and procedures for such designations. Unless different rules and procedures are established by the Committee, each such designation shall revoke all prior designations by the same Participant, shall be in a form prescribed by the Company, and will be effective only when filed by the Participant in writing with a designated representative of the Committee during the Participant's lifetime. In the absence of any such designation, benefits remaining unpaid at the Participant's death shall be paid to the Participant's estate or legal heirs.

## ARTICLE 13.   DEFERRALS

The Committee may permit or require a Participant to defer such Participant's receipt of the payment of cash or the delivery of Shares that would otherwise be due to such Participant by virtue of lapse or waiver of restrictions with respect to Restricted Stock or Restricted Stock Units, or the satisfaction of any requirements or goals with respect to Performance Shares, Performance Stock Units, or Performance Units. If any such deferral election is required or permitted, the Committee shall, in its sole discretion, establish rules and procedures for such deferrals, and the Committee may provide for such arrangements, including conversion to another form of Award that is available under the Plan and has equivalent value, as it deems necessary in order to permit the deferral of taxes in connection with such deferral by the Participant. Any deferrals required or permitted by the Committee of Awards shall be made in compliance with Section 409A of the Code.

## ARTICLE 14.   TAX WITHHOLDING

*14.1    Tax Withholding*. The Company shall have the power and the right to deduct or withhold, or require a Participant to remit to the Company, an amount sufficient to satisfy federal, state, and local taxes, domestic or foreign, required by law or regulation to be withheld with respect to any taxable event arising as a result of this Plan or any Award. The Company shall not be required to issue Shares or to recognize the disposition of such Shares until such obligations are satisfied.

*14.2    Share Withholding*. Except as otherwise determined by the Committee or provided in an Award Agreement, with respect to tax withholding required upon the exercise of Options or SARs, upon the lapse of restrictions on Restricted Stock or Restricted Stock Units, upon the achievement of performance goals related to Performance Shares or Performance Units, or upon any other taxable event arising as a result of or in connection with an Award granted hereunder that is settled in Shares, unless other arrangements are made with the consent of the Committee, Participants shall satisfy the withholding requirement by: (i) having the Company withhold Shares having a Fair Market Value on the date the tax is to be determined equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee), or (ii) if approved by the Committee, authorizing the sale of Shares equal to but not more than the amount necessary to satisfy the Company's withholding obligations at the minimum statutory withholding rates (or any greater rate that will not result in adverse accounting or tax treatment as determined by the Committee). All such withholding arrangements shall be subject to any restrictions or limitations that the Committee, in its sole discretion, deems appropriate.

## ARTICLE 15.   AMENDMENT AND TERMINATION

*15.1    Amendment of Plan*. The Board may at any time terminate or from time to time amend the Plan in whole or in part, but, unless required by applicable law or applicable listing standard, no such action shall materially and adversely affect any rights or obligations with respect to any Awards previously granted under the Plan, unless the affected Participants consent in writing. The Company will also obtain the approval of the shareholders before amending the Plan to the extent required by Section 422 of the Code or the rules of any securities exchange or quotation or trading system on which Shares are traded or other applicable law.

*15.2    Amendment of Award; Repricing*. The Committee may, at any time, amend outstanding Awards in a manner not inconsistent with the terms of the Plan; provided, however, that if such amendment is adverse to the Participant, as determined by the Committee, the amendment shall not be effective unless and until the Participant consents, in writing, to such amendment, except as may be required by applicable law, as provided in Section 15.4 and Section 15.5, or as provided in the Award Agreement. To the extent not inconsistent with the terms of the Plan and the foregoing, the Committee may, at any time, amend an outstanding Award Agreement in a manner that is not unfavorable to the Participant without the consent of such Participant. Notwithstanding the above provision, the Committee shall not permit or effect a repricing, except in accordance with Section 4.4 or to the extent the repricing is approved by the shareholders of the Company; for this purpose, a repricing is an amendment to the terms of an outstanding Option or SAR that would reduce the Option Price or SAR Price of that Option or SAR, respectively, or a cancellation, exchange, substitution, buyout or surrender of an outstanding Option or SAR in exchange for cash, another Award or Option or SAR with an Option Price or SAR Price that is less than the Option Price or SAR Price

of the original Option or SAR, respectively (or as further defined within US generally accepted accounting practices or any applicable stock exchange rule). Notwithstanding anything else in this Section 15.2, (i) no amendment of an Award Agreement shall cause an award to be subject to Section 409A of the Code, unless the Award Agreement, as amended, complies with the requirements of Section 409A of the Code, and (ii) no amendment of an Award Agreement that is subject to Section 409A of the Code shall cause such an Award Agreement (or the underlying Award) to violate Section 409A of the Code.

*15.3    Termination of Plan.* No Awards shall be granted under the Plan after the tenth anniversary of the Effective Date. However, Awards granted under the Plan on or prior to the tenth anniversary of the Effective Date shall remain outstanding beyond that date in accordance with the terms and conditions of the Plan and the Award Agreements corresponding to such Awards.

*15.4    Cancellation of Awards / Clawback.* The Committee may, in its discretion, specify in an Award Agreement or a policy that will be deemed incorporated into an Award Agreement by reference (regardless of whether such policy is established before or after the date of such Award Agreement), that a Participant's rights, payments, and benefits with respect to an Award shall be subject to reduction, cancellation, forfeiture, rescission or recoupment upon the occurrence of certain specified events, in addition to any otherwise applicable vesting, restrictions or performance conditions of an Award. Such events may include, but shall not be limited to, Termination of Service with or without Cause, breach of noncompetition, confidentiality, or other restrictive covenants that may apply to the Participant, or restatement of the Company's financial statements to reflect adverse results from those previously released financial statements, as a consequence of errors, omissions, fraud, or misconduct. In addition, all Awards under the Plan (and payments and Shares in settlement of Awards as well as any proceeds received from the disposition of such property) are subject to any clawback policy implemented, including any clawback policy adopted to comply with the requirements of applicable law, including Section 954 of the Dodd Frank Wall Street Reform and Consumer Protection Act and any rules or regulations promulgated thereunder, Rule 10D 1 under the Act, and the NYSE's listing standards (as applicable).

*15.5    Assumption or Acceleration of Awards.* In the event of a  Change in Control or any other corporate transaction to which the Committee deems this provision applicable (a "***Corporate Event***"), each Award outstanding at the time of the Corporate Event shall be assumed or an equivalent Award shall be substituted by the successor corporation or a parent or subsidiary of such successor corporation (and adjusted as appropriate), unless such successor corporation does not agree to assume the Award or to substitute an equivalent award (including a cash-based award), in which case the ~~Committee may, in lieu of such assumption or substitution, (a) provide for the Participant to have the right to exercise the Option or other Award as to all Shares, including Shares as to which the Option or other Award would not otherwise be exercisable (or with respect to Restricted Stock or Restricted Stock Units, provide that all restrictions shall lapse) or (b) if the Award is an Option or Stock Appreciation Right with an exercise price that equals or exceeds the price paid for a Share in connection with the Change in Control, cancel the Option or Stock Appreciation Right without payment due thereon. If the Committee makes an Option or other Award fully exercisable in lieu of assumption or substitution in the event of a Corporate Event, the~~**time- or service-based vesting of each Award shall fully accelerate and any performance- or milestone-based vesting condition shall be treated in accordance with the applicable Award Agreement. The** Committee shall notify the Participant ~~that~~**of any accelerated vesting provided in accordance with this Section 15.5 or pursuant to an applicable Award Agreement and**, subject to rescission if the Corporate Event is not successfully completed within a certain period, the Option or other Award shall be ~~fully~~ exercisable **as to the vested Shares subject thereto (after giving effect to any such accelerated vesting)** for a period of fifteen (15) days from the date of such notice (or such other period as provided by the Committee), and, to the extent not exercised, the Option or other Award will terminate upon the expiration of such period. Alternatively, the Committee may make provision for a cash payment in settlement of any or all ~~outstanding Awards~~**vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement)** or the cash, securities or property deliverable to the holder of any or all ~~outstanding Awards~~**vested Awards (after giving effect to any accelerated vesting provided under this Section 15.5 or an applicable Award Agreement)**, based upon, to the extent relevant under the circumstances, the distribution or consideration payable to holders of Shares upon or in respect of the Corporate Event. The Committee may adopt such valuation methodologies for outstanding Awards as it deems reasonable in the event of a cash settlement and, in the case of Options, SARs or similar rights, but without limitation on other methodologies, may base such settlement solely upon the excess (if any) of the per share amount payable upon or in respect of such event over the Option Price or SAR Price, as

applicable, of the Award and may cancel each Option or SAR with an Option Price or SAR Price greater than the per share amount payable upon or in respect of such event without any payment to the person holding such Option or SAR. Any actions taken under this Section 15.5 shall be valid with respect to a 409A Award only to the extent that such action complies with Section 409A of the Code.

## ARTICLE 16.   MISCELLANEOUS PROVISIONS

16.1    *Restrictions on Shares*. All certificates for Shares delivered under the Plan shall be subject to such stop-transfer orders and other restrictions as the Committee may deem advisable under the rules and regulations of the Securities and Exchange Commission, any securities exchange or quotation or trading system on which Shares are traded and any applicable federal, state, local or foreign laws, and the Committee may cause a legend or legends to be placed on any such certificates to make appropriate reference to such restrictions. In making such determination, the Committee may rely upon an opinion of counsel for the Company. Notwithstanding any other provision of the Plan, the Company shall have no liability to deliver any Shares under the Plan or make any other distribution of the benefits under the Plan unless such delivery or distribution would comply with all applicable laws (including, without limitation, the requirements of the Securities Act of 1933), and the applicable requirements of any securities exchange or quotation or trading system on which Shares are traded.

16.2    *Rights of a Shareholder*. Except as otherwise provided in Article 7 or in the applicable Restricted Stock Award Agreement, each Participant who receives an Award of Restricted Stock shall have all of the rights of a shareholder with respect to such Shares, including the right to vote the Shares to the extent, if any, such Shares possess voting rights and receive dividends and other distributions. No Participant awarded an Option or Stock Appreciation Right shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares. Except as provided otherwise in the Plan or in an Award Agreement, no Participant awarded a Restricted Stock Unit, Performance Share, Performance Stock Unit, or Performance Unit shall have any right as a shareholder with respect to any Shares covered by such Award (including but not limited to the right to vote the Shares) prior to the date on which the Participant becomes the record holder of such Shares.

16.3    *No Implied Rights*. Nothing in the Plan or any Award granted under the Plan shall confer upon any Participant any right to continue in the service of the Employer, or to serve as a member of the Board, or interfere in any way with the right of the Employer to terminate his or her employment or other service relationship at any time. Except to the extent approved by the Board, no Award granted under the Plan shall be deemed salary or compensation for the purpose of computing benefits under any employee benefit plan, severance program, or other arrangement of the Employer for the benefit of its employees. The Plan is intended to be an "unfunded" plan for incentive  and deferred compensation. No Participant shall have any claim to an Award until it is actually granted under the Plan. To the extent that any person acquires a right to receive payments from the Company under the Plan, such right shall, except as otherwise provided by the Committee, be no greater than the right of an unfunded and unsecured general creditor of the Company.

16.4    *Compliance with Laws*. The Plan and the grant of Awards shall be subject to all applicable federal, state local and foreign laws, rules, and regulations and to such approvals by any government or regulatory agency as may be required. Notwithstanding any other provision of the Plan, the Plan and any Award granted or awarded to an Insider shall be subject to any additional limitations set forth in any applicable exemptive rule under Section 16 of the Act (including Rule 16b-3) that are requirements for the application of such exemptive rule. To the extent permitted by applicable law, the Plan and Awards granted or awarded hereunder shall be deemed amended to the extent necessary to conform to such applicable exemptive rule. Any provision herein relating to compliance with Rule 16b-3 under the Act shall not be applicable with respect to participation in the Plan by Participants who are not Insiders. If the Committee determines that the listing, registration or qualification upon any securities exchange or under any law of shares subject to any Award is necessary or desirable as a condition of, or in connection with, the granting of same or the issue or purchase of Shares thereunder, no such Award may be exercised in whole or in part (as applicable), no such Award may be paid out (as applicable) and no shares may be issued pursuant to such Award (as applicable) unless such listing, registration or qualification is effected free of any conditions not acceptable to the Committee.

16.5    *Section 409A.*

(a)    *General.* The Company intends that all Awards be structured to comply with, or be exempt from, Section 409A of the Code, such that no adverse tax consequences, interest, or penalties under Section 409A of the Code apply. Notwithstanding anything in the Plan or any Award Agreement to the contrary, the Committee may, without a Participant's consent, amend this Plan or Awards, adopt policies and procedures, or take any other actions (including amendments, policies, procedures and retroactive actions) as are necessary or appropriate to preserve the intended tax treatment of Awards, including any such actions intended to (i) exempt this Plan or any Award from Section 409A of the Code, or (ii) comply with Section 409A of the Code, including regulations, guidance, compliance programs and other interpretative authority that may be issued after an Award's grant date. The Company makes no representations or warranties as to an Award's tax treatment under Section 409A of the Code or otherwise. The Company will have no obligation under this Section 16.5 or otherwise to avoid the taxes, penalties or interest under Section 409A of the Code with respect to any Award and will have no liability to any Participant or any other person if any Award, compensation or other benefits under the Plan are determined to constitute noncompliant "nonqualified deferred compensation" subject to taxes, penalties or interest under Section 409A of the Code.

(b)    *Separation from Service.* Any payment or settlement of a 409A Award upon a Participant's Termination of Service will, to the extent necessary to avoid taxes under Section 409A of the Code, be made only upon the Participant's "separation from service" (within the meaning of Section 409A of the Code), whether such "separation from service" occurs upon or after the Participant's Termination of Service. For purposes of this Plan or any Award Agreement relating to any such payments or benefits, references to a "termination," "termination of employment" or like terms means a "separation from service."

(c)    *Payments to Specified Employees.* Notwithstanding any contrary provision in the Plan or any Award Agreement, any payment(s) of "nonqualified deferred compensation" required to be made under a 409A Award to a "specified employee" (as defined under Section 409A of the Code and as the Committee determines) due to such person's "separation from service" will, to the extent necessary to avoid taxes under Section 409A(a)(2)(B)(i) of the Code, be delayed for the six-month period immediately following such "separation from service" (or, if earlier, until the specified employee's death) and will instead be paid (as set forth in the Award Agreement) on the day immediately following such six-month period or as soon as administratively practicable thereafter (without interest). Any payments of "nonqualified deferred compensation" under such 409A Award payable more than six months following the Participant's "separation from service" will be paid at the time or times the payments are otherwise scheduled to be made.

(d)    *Separate Payments.* If an Award includes a "series of installment payments" within the meaning of Section 409A of the Code, the Participant's right to the series of installment payments will be treated as a right to a series of separate payments and not as a right to a single payment and, if an Award includes "dividend equivalents" within the meaning of Section 409A of the Code, the Participant's right to receive the dividend equivalents will be treated separately from the right to other amounts under the Award.

(e)    *Change in Control.* Any payment due under a 409A Award upon a Change in Control of the Company will be paid only if such Change in Control constitutes a "change in ownership" or "change in effective control" within the meaning of Section 409A of the Code, and in the event that such Change in Control does not constitute a "change in the ownership" or "change in the effective control" within the meaning of Section 409A of the Code, such 409A Award for which payment is due upon a Change in Control of the Company will vest upon the Change in Control and any payment will be delayed until the first compliant date under Section 409A of the Code.

16.6    *Employees Based Outside of the United States.* Notwithstanding any provision of this Plan to the contrary, in order to comply with the laws in other countries in which the Company or any Employer (or the Affiliates and/or its subsidiaries of an Employer) operate or have employees or Directors, the Committee, in its sole discretion, shall, in addition to the administrative authority set forth in Section 3.3 of this Plan, have the power and authority to: (a) determine which Affiliates and subsidiaries, if any, may be covered by this Plan in accordance with all applicable laws; (b) determine which employees and/or Directors of an Employer outside the United States are eligible to participate in this Plan; (c) modify the terms and conditions of any Award granted to employees and/or Directors outside the United States, if any, to comply with applicable foreign laws; (d) establish sub-plans and

21

modify exercise procedures and other terms and procedures, to the extent such actions may be necessary or advisable; and (e) take any action, before or after an Award is made, that it deems advisable to obtain approval or comply with any necessary local government regulatory exemptions or approvals. Notwithstanding the above, the Committee may not take any actions hereunder, and no Awards shall be granted, that would violate applicable law. For purposes of clarity, the terms and conditions contained herein which are subject to variation in a non-U.S. jurisdiction shall be reflected in a written addendum to the Plan and/or Award Agreement for such non-U.S. jurisdiction.

    *16.7    Data Privacy.* As a condition for receiving any Award, each Participant explicitly and unambiguously consents to the collection, use and transfer, in electronic or other form, of personal data as described in this Section 16.7 by and among the Company and its subsidiaries and affiliates exclusively for implementing, administering and managing the Participant's participation in the Plan. The Company and its subsidiaries and affiliates may hold certain personal information about a Participant, including the Participant's name, address and telephone number; birthdate; social security, insurance number or other identification number; salary; nationality; job title(s); any Shares held in the Company or its subsidiaries and affiliates; and Award details, to implement, manage and administer the Plan and Awards (the "***Data***"). The Company and its subsidiaries and affiliates may transfer the Data amongst themselves as necessary to implement, administer and manage a Participant's participation in the Plan, and the Company and its subsidiaries and affiliates may transfer the Data to third parties assisting the Company with Plan implementation, administration and management. These recipients may be located in the Participant's country, or elsewhere, and the Participant's country may have different data privacy laws and protections than the recipients' country. By accepting an Award, each Participant authorizes such recipients to receive, possess, use, retain and transfer the Data, in electronic or other form, to implement, administer and manage the Participant's participation in the Plan, including any required Data transfer to a broker or other third party with whom the Company or the Participant may elect to deposit any Shares. The Data related to a Participant will be held only as long as necessary to implement, administer, and manage the Participant's participation in the Plan. A Participant may, at any time, view the Data that the Company holds regarding such Participant, request additional information about the storage and processing of the Data regarding such Participant, recommend any necessary corrections to the Data regarding the Participant or refuse or withdraw the consents in this Section 16.7 in writing, without cost, by contacting the local human resources representative. The Company may cancel Participant's ability to participate in the Plan and, in the Committee's sole discretion, the Participant may forfeit any outstanding Awards if the Participant refuses or withdraws the consents in this Section 16.7. For more information on the consequences of refusing or withdrawing consent, Participants may contact their local human resources representative.

    *16.8    Whistleblower Protection.* Nothing contained in this Plan or any Award Agreement: (i) shall be deemed to prohibit any Participant from responding to a subpoena or order of a court or other governmental authority to testify or give evidence or engaging in conduct otherwise protected by the Sarbanes-Oxley Act; (ii) shall be deemed to prohibit any Participant from providing truthful information in good faith to any federal, state, or local governmental body, agency, or official investigating an alleged violation of any antidiscrimination or other employment-related law or otherwise gathering information or evidence pursuant to any official investigation, hearing, trial, or proceeding; (iii) is intended in any way to intimidate, coerce, deter, persuade, or compensate any Participant with respect to providing, withholding, or restricting any communication whatsoever to the extent prohibited under 18 U.S.C. §§ 201, 1503, or 1512 or under any similar or related provision of state or federal law; and (iv) is intended to require any Participant to provide notice to the Company, any Affiliate or any subsidiary or an attorney of any such entity before reporting any possible violations of federal law or regulation to any governmental agency or entity ("***Whistleblower Disclosures***") or to provide notice to the Company, any Affiliate, or any subsidiary or any attorney of any such entity after any Participant has made any such Whistleblower Disclosures.

    *16.9    Transfer of Employee.* The transfer of an employee of the Company or any Employer from one Employer (or Affiliate or subsidiary of an Employer) to another Employer (or Affiliate or subsidiary of the other Employer) shall not be considered a termination of employment for Plan purposes unless required by applicable law; nor shall it be considered a termination of employment if an employee is placed on military, disability or sick leave or such other leave of absence which is considered by the Committee as continuing intact the employment relationship. If an employee's employment or other service relationship is with an Affiliate or subsidiary of an Employer and that entity ceases to be an Affiliate or subsidiary of the Employer, a termination of employment shall be deemed to have occurred when the entity ceases to be an Affiliate or subsidiary of such Employer unless the

employee transfers the Employee's employment or other service relationship to the Employer or its remaining Affiliates or subsidiaries.

16.10    *Successors*. The terms of the Plan shall be binding upon the Company, and its successors and assigns.

16.11    *Tax Elections*. Each Participant shall give the Committee prompt written notice of any election made by such Participant under Section 83(b) of the Code or any similar provision thereof. Notwithstanding the preceding sentence, the Committee may condition any award on the Participant not making an election under Section 83(b) of the Code.

16.12    *No Fractional Shares*. No fractional Shares shall be issued or delivered pursuant to the Plan or any Award; in the discretion of the Committee, the Company shall forfeit the value of fractional shares or make cash payments in lieu of fractional Shares.

16.13    *Delivery of Title*. The Company shall have no obligation to issue or deliver evidence of title for Shares under the Plan prior to:

(a)    Obtaining any approvals from governmental agencies that the Company determines are necessary or advisable; and

(b)    Completing any registration or other qualification of the Shares under any applicable national or foreign law or ruling of any governmental body that the Company determines are necessary or advisable.

16.14    *Inability to Obtain Authority*. The inability of the Company (after reasonable efforts) to obtain authority from any regulatory body having jurisdiction, which authority is deemed by the Company's counsel to be necessary to the lawful issuance and/or sale of any Awards or Shares hereunder, shall relieve the Company of any liability in respect of the failure to issue and/or sell such Awards or Shares as to which such requisite authority shall not have been obtained.

16.15    *Uncertificated Shares*. To the extent that the Plan provides for issuance of certificates to reflect the transfer of Shares, the transfer of such Shares may be effected on a noncertificated basis, to the extent not prohibited by applicable law or the rules of any stock exchange.

16.16    *Legal Construction*.

(a)    *Severability*. If any provision of this Plan or an Award Agreement is or becomes or is deemed invalid, illegal or unenforceable in any jurisdiction, or would result in the Plan or any Award Agreement not complying with any law deemed applicable by the Committee, such provision shall be construed or deemed amended to conform to applicable laws or, if it cannot be construed or deemed amended without, in the determination of the Committee, materially altering the intent of the Plan or the Award Agreement, it shall be stricken and the remainder of the Plan or the Award Agreement shall remain in full force and effect.

(b)    *Gender and Number*. Where the context permits, words in any gender shall include the other gender, words in the singular shall include the plural and words in the plural shall include the singular.

(c)    *Governing Law*. To the extent not preempted by federal law, the Plan and all Award Agreements hereunder, shall be construed in accordance with and governed by the substantive laws of the State of North Carolina, excluding any conflicts or choice or law rule or principle that might otherwise refer construction or interpretation of the Plan or the Award Agreement (as applicable) to the substantive law of any other jurisdiction. Unless otherwise provided in the applicable Award Agreement, the recipient of an Award is deemed to submit to the exclusive jurisdiction and venue of the Federal and state courts of North Carolina to resolve any and all issues that may arise out of or relate to the Plan or such Award Agreement.

(d)      *Governing Documents*. If any contradiction occurs between the Plan and any Award Agreement or other written agreement between a Participant and the Company (or any subsidiary), the Plan will govern, unless such Award Agreement or other written agreement was approved by the Committee and expressly provides that a specific provision of the Plan will not apply.